UNITED STATED DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

SOUTHEAST FLOATING DOCKS, INC.,

    Plaintiff,

v.                                                      CASE NO: 05CV11039-EFH

AGM MARINE CONSTRUCTORS, INC.,
CHILDS ENGINEERING CORPORATION,
And THE TOWN OF PROVINCETOWN,

    Defendants.
_____/

**PLAINTIFF'S NOTICE OF FILING JUNE 1, 2005 TRANSCRIPT FOR INCLUSION IN RECORD ON APPEAL**

    Plaintiff, Southeast Floating Docks, Inc., gives notice of filing the June 1, 2005 hearing transcript for inclusion in the record on appeal.

**CERTIFICATE OF SERVICE**

    I certify a copy of the foregoing has been electronically filed with the Court and mailed to David Hanrahan, Esquire, Gilman, McLauglin & Hanrahan, LLP, 101 Merrimac Street, Boston, Massachusetts 02114-9601; Charles Schaub, Esquire, Hinckley, Allen, Snyder, LLP, 28 State Street, Boston, Massachusetts 02109; and, Richard T. Holland, Esquire, Kopelman And Paige, P.C., 31 St. James Avenue, Boston, MA 02116-4102 on August 18, 2005.

                                            /s/ Tina L. Caraballo
                                            _____
                                            Rosemary H. Hayes
                                            Florida Bar No. 549509
                                            Tina L. Caraballo
                                            Florida Bar No. 0164275
                                            Hayes & Caraballo, PL
                                            P.O. Box 547248
                                            Orlando, Florida 32854
                                            Telephone (407) 649-9974
                                            Facsimile (407) 649-9379
                                            Attorneys for Plaintiff

cc:  SEFD

```
                              6-1-05 Hrg Transcript.txt
0001
 1                    UNITED STATES DISTRICT COURT
                     FOR THE DISTRICT OF MASSACHUSETTS
 2
     Civil Action No. 05-11039
 3   ******************************************
     SOUTHEAST FLOATING DOCKS, INC.
 4
     vs.
 5
     AGM MARINE CONTRACTORS, INC.
 6   ******************************************
 7
                                  HEARING
 8            BEFORE THE HONORABLE EDWARD F. HARRINGTON
                    UNITED STATES DISTRICT JUDGE
 9
10
     John Joseph Moakley U.S. Courthouse
11   1 Courthouse Way
     Boston, Massachusetts 02210
12   Date:  June 1, 2005
13
14   APPEARANCES:
15
16   Rosemary H. Hayes, Esq., and Leigh A. McLaughlin, Esq., on
     behalf of Southeast Floating Docks,Inc.
17
18   Richard T. Holland, Esq., on behalf of the Town of
     Provincetown, defendant.
19
     Eric Eisenberg, Esq., on behalf of AGM Marine Contractors,
20   Inc.
21   John B. Connarton, Esq., on behalf of Childs Engineering.
22
                    TERI CELESTE GIBSON, COURT REPORTER
23                           P.O. BOX 47
                       DORCHESTER, MASSACHUSETTS 02121
24                           (617)650-6288
25   Mechanical Stenography; computer aided transcription.
0002
 1                    P-R-O-C-E-E-D-I-N-G-S
 2           THE CLERK:  Civil Action 05-11039, Southeast
 3   Floating Docks, Inc. versus AGM Marine Contractors, Inc., et
 4   al.
 5           THE COURT:  I will hear from the plaintiff.
 6           MS. HAYES:  Rosemary Hayes.  I am here from
 7   Orlando, Florida, for the plaintiff, Southeast Floating
 8   Docks, and we have local counsel.
 9           MS. MCLAUGHLIN:  Leah McLaughlin, Your Honor.
10           MS. HAYES:  Judge, I have a -- did you want me to
11   go ahead?
12           THE COURT:  Sure.
13           MS. HAYES:  I have a handout if I can give it to
14   the Court.
15           THE COURT:  Sure.
16        (Document tendered to the Court and defense counsel.)
17           MS. HAYES:  Judge, this case is --
18           THE COURT:  Let me ask you this.  The purpose of
19   the stay is to see if the subpoena should be enforced; is
20   that right?  The subpoenas are in force, then the stay is
21   not required.
22           MS. HAYES:  Judge, the only problem with that is
23   that we have only a very short time until arbitration is set
24   to begin, which is June 20th.  So just a short stay would be
25   necessary, so that we can adequately respond to whatever we
0003
 1   obtain, and records have come in since we filed the suit,
 2   but if we can just briefly go through the handout, and I
 3   will explain where we are.  Tab A is we start without --
 4   with the request for records, and Tab A starts with an order
 5   from an arbitrator.
 6           And the second page of that I highlight and I
 7   numbered the pages with a pen in the upper right-hand corner
 8   to make it easier, Judge.  It's respondent's responsibility
 9   to enforce the compliance of the subpoenas, and so we filed
10   this action because the arbitrator has been unable or
11   unwilling to enforce the subpoenas.  This dates way back.
12           THE COURT:  Let me ask you this question.  Why is
13   he unable to enforce his own subpoena?
14           MS. HAYES:  He didn't have any contempt power,
15   Judge.  So he couldn't find people in contempt or otherwise
16   penalize them when they are non-parties to the arbitration.

                                  Page 1
```

```
                                  6-1-05 Hrg Transcript.txt
17   So the way that it's typically done, we come to a Federal
18   Court and ask the Court to enforce the subpoenas, and in
19   most of the circuits, that can be done.
20             In the state, in particular Pennsylvania, there is
21   some law that says you can't do that.  But in Florida, where
22   I am from and in the First Circuit, generally, if there is a
23   showing that the parties need the records, the courts will
24   enforce the arbitration subpoenas.
25             Page 3 is just to show that this dates back with
0004
 1   the town to a year ago.  We were asking under the Public
 2   Records Act, for copies of the various -- same records that
 3   we are trying to get that have been outstanding today.  The
 4   next pages are production requests, again seeking the
 5   records, and the subpoenas follow beginning at Page 10 to
 6   the Town of Provincetown.
 7             We look at Page 11 as they are numbered in the
 8   upper right-hand corner, there is further back in the
 9   handout, I will show to the Court that there are a number of
10   demands that were made on insurance companies and other
11   people for payment on behalf of the Town that we don't have.
12             There is a number of outstanding issues about
13   insurance coverage that we have not received, and the Childs
14   Engineering report, the one specifically mentioned in the
15   court file, and the complaint was received just last week, a
16   27-page fax from the Town attorney after we filed the
17   lawsuit.
18             The most recent subpoena turned back, and by the
19   way, there has not been a response, complete response, to
20   any of the subpoenas that we have severed in -- in many of
21   the subpoenas, there have been no response at all.  Turning
22   to the same period, that subpoena issued because of the
23   announcement by GM, they were the expert that had the report
24   that wasn't produced and not the Childs' engineering report.
25   So now we are in search of another expert report.
0005
 1             Tab B --
 2             THE COURT:  How many subpoenas are there?
 3             MS. HAYES:  Altogether, there are eight that have
 4   been issued.
 5             Tab B is just a summary of the responses, and I
 6   would just direct the Court's attention to the Town had
 7   Childs Engineering's responses.  The Town produced a total
 8   of 62 pages of records on a fifteen and a half million
 9   dollars project.  Produced the same 62 pages two times.  The
10   consultant produced 69 pages.  Now we have additional pages
11   which is the expert report.
12             Mr. Holland represents the Town.  His responses
13   follow the chart, Judge, and basically he is saying --
14   continues to say today, I believe, that the information
15   after December 1, 2003, constitute work product, and I am
16   reading from Page 3 of Section B.  Work product and inner
17   agency memorandum or letters relating to the policy
18   positions being developed by the Town.
19             Page 4, he again states that the materials are
20   work product and attorney-client privilege and exempt from
21   the Public Records Law, and I recognize we are not here on a
22   Public Records lawsuit, but we are here to enforce the
23   subpoena.
24             Finally, Judge, I would ask you in this section to
25   turn back to Page 9, which is a letter from the attorney for
0006
 1   Childs Engineering.  Childs Engineering has been severed,
 2   but I don't think that they are represented here today.
 3             MR. CONNARTON:  Excuse me.  I am John Connarton
 4   with Callahan of Boston.  My client was served after Your
 5   Honor's order, with the short order of notice, is why I am
 6   here this afternoon.  It's my understanding apparently from
 7   conversation this afternoon, also from what I just heard
 8   from counsel, that in reality, only the document that was at
 9   issue with my client was a report, which I understand now
10   has been produced and any potent privilege, if there was
11   any, was waived.  So if that is all counsel is looking for
12   my client for, I would request Your Honor to allow me to
13   leave and turn my client's clock off.
14             MS. HAYES:  I think there is additional materials
15   that your client has not produced.  If we go through this,
16   there are other things.
17             MR. CONNARTON:  Only the thing sought, Your Honor.
18             THE COURT:  Let he hear argument.
19             MR. CONNARTON:  Thank you, Your Honor.
20             MS. HAYES:  Page 9 states a letter from Craig Sams
21   (ph.) on behalf of Childs Engineer's counsel for the Town of

                                       Page 2
```

```
                                      6-1-05 Hrg Transcript.txt
22    Provincetown objected to release any documents that were
23    prepared for anticipated litigation.  Counsel for
24    Provincetown in the process of writing to you to provide
25    further clarification.  That never happened.  Then page 10
0007
 1    is from FS&T, the Town's engineer for the project, and once
 2    again, states that documents number 105 to 110, 10 and 121
 3    and 123 and 128 have been withheld at the Town's counsel.
 4    Privilege log from -- FS&T are the only ones that provided a
 5    privilege log, show that the documents are being withheld
 6    are clearly not within the attorney-client privilege or the
 7    work product privilege as far as the work product privilege
 8    goes, and I have case law with the Court, there has to be
 9    anticipation of litigation.
10              In this case, AGM and the Town have settled their
11    disagreements.  There is no anticipated litigation that
12    would allow the work product privilege.  The Town asserts
13    the work product privilege in regard to multiple engineering
14    firms, assume we will next get another claim of work product
15    privilege as to the latest engineering firm, and this can --
16    stands for the proposition that you can't have a rolling
17    joint defense agreement where you are entitled to search
18    work product defenses for third parties willie-nillie,
19    because it's against public policy.  We have no other way of
20    obtaining the information.  The Town won't give it to us.
21    The engineers won't give it to us, and the attorney-client
22    privilege is not met because these are privileges, these are
23    communications to third parties.  So the element of being
24    between an attorney and a client would not be met.
25              THE COURT:  You are the defendant in the
0008
 1    arbitration; is that correct?
 2              MS. HAYES:  Yes, sir.
 3              THE COURT:  So if -- what's the position of the
 4    plaintiffs in the arbitration?
 5              MS. HAYES:  Well, I think the attorney is here
 6    representing the plaintiff -- the plaintiffs of the
 7    arbitration, but they have basically said they don't have
 8    anything else to give us, nothing else exists, and they have
 9    tossed --
10              THE COURT:  I am concerned with the consequence.
11    If the Court were to stay this proceeding, the arbitration
12    proceeding, pending a resolution of this matter, that
13    affects adversely, I would think, the plaintiff in that case
14    and whatnot.
15              MS. HAYES:  That is probably true.  They would
16    argue that but the work that --
17              THE COURT:  I am not saying they are arguing it.
18    I am trying to find out if that is true.  Is that true?
19              MS. HAYES:  I don't think a short postponement
20    would --
21              THE COURT:  That's not my point.  My point is if I
22    were to stay this matter, whether you request it or not,
23    without delay, that is not going to affect you, is it?  It's
24    going to be helpful to you.
25              MS. HAYES:  Yes, sir, because we can complete the
0009
 1    discovery, hopefully.
 2              THE COURT:  More than that.  If the case is never
 3    resolved, you can never have anything, a judgment against
 4    you.
 5              MS. HAYES:  Yes, Judge.
 6              THE COURT:  So it's to the advantage, I would
 7    think, of the plaintiff in the arbitration proceeding to
 8    move this case along.
 9              MS. HAYES:  Yes, sir.
10              THE COURT:  I would think so.
11              MS. HAYES:  Yes, sir.  And we would only seek a
12    short stay.  We want to get this over with, also.  But we
13    don't want to go in where we feel that the engineering
14    firms, and to some extent we have felt that the plaintiff in
15    the arbitration and the Town have engaged in a game of hide
16    the pea under the shell, and this expert report existed and
17    it didn't exist, and then a year after, we finally got a
18    copy of it, and now there is another engineering firm.  We
19    would request a 30- to 60-day extension of time to procure
20    the records.
21              THE COURT:  Let me ask the plaintiff in the
22    arbitration proceeding.
23              MR. EISENBERG:  Good afternoon, Your Honor.
24              You are right on point, Your Honor.  I understand
25    where my sister is coming from, but it's not appropriate.
0010
```

```
                                  6-1-05 Hrg Transcript.txt
 1   Under Hickman v. Taylor, if we were there, and I say we are
 2   not because of the arbitration aspect of this one.  Hickman
 3   v. Taylor, she would be entitled to that.  She wouldn't get
 4   anywhere else.  The fact that the Town is not a party to the
 5   arbitration, hired experts, and they came to some
 6   conclusions, is not relevant to her case.
 7           If she were missing climatological data,
 8   videotapes of the waves, measurements of docks, anything
 9   that couldn't be obtained otherwise, she might have an
10   argument, leaving aside arbitration issues, but she hasn't
11   said that.
12           What she is doing, Your Honor, and I know it's
13   kind of ironic.  He is fishing.  We talk about marina.  But
14   she is looking at their expert work product, non-testifying
15   experts, all right.  Or if they are to testify, they would
16   have to come to the arbitration and have to bring their
17   reports and their files.  The law is pretty clear on this,
18   Your Honor.  Your Honor is here in this particular instance,
19   to enforce or refuse to enforce an arbitration ruling by the
20   arbitrator.  There is case law, and it's again not cited.
21           THE COURT:  What is the --
22           MR. EISENBERG:  The arbitrator ruled twice now
23   that my sister is not entitled to an extension of time.  In
24   one document, that's the June 9th order.  He said with
25   regard to the trial report, that single report, he
0011
 1   acknowledges, "We don't have it," and said that if she
 2   wanted to pursue the Town, she could.
 3           All right.  The Town has reasons of its own.  I am
 4   not privy to them, given over the trial's report.  Now I
 5   hear --
 6           THE COURT:  I will get to that.
 7           MR. EISENBERG:  Now I hear there are other reports
 8   and other experts, and this is all a delay.  The fact is I
 9   haven't heard anyone say there is anything unique in the
10   possession of the Town in the way of firsthand knowledge or
11   evidence that they don't have.
12           Beyond that they have got --
13           THE COURT:  You are saying on the thing -- all
14   these subpoenas are seeking to Childs' report?
15           MR. EISENBERG:  That is what it started with.  Now
16   I am hearing something.  Now I hear there is another
17   engineering firm, Simpson, Gumpert & Heger, and I know they
18   are an engineering firm.  I don't know what they have done
19   for the Town, but it doesn't matter.  My sister is not
20   entitled to non-testifying expert materials obtained by the
21   Town.
22           THE COURT:  Let me ask the Town.
23           MR. HOLLAND:  Yes, Your Honor.
24           THE COURT:  Do you have both of these reports,
25   so-called Childs reports and the Heger report?
0012
 1           MR. HOLLAND:  Yes, sir, Your Honor, the Childs'
 2   report has been provided back on May 23rd as well as only
 3   the document prepared by Simpson Gumpert and Heger, that
 4   that was faxed on May 23rd to counsel for Southeast.  So
 5   they have these two reports.  Now what I would like to do,
 6   Your Honor, if I can rewind a little bit.
 7           THE COURT:  Let me -- is that true?  Have you got
 8   those two reports?
 9           MS. HAYES:  I have the Childs report, and I have
10   seven pages of a Powerpoint presentation with nobody's name
11   on it at all.  But the point, Judge, is first of all the
12   arbiter never denied a stay in this case.  Arbitrator
13   waiting --
14           THE COURT:  That is not my question.  My question
15   is it seems at least according to the defendants in this
16   action, that there are two reports that you seek.  It's been
17   represented that the Town has turned over those two reports.
18   Is there anything else that you wish?
19           MS. HAYES:  Yes, sir.  There are other --
20           THE COURT:  What are they?
21           MS. HAYES:  The insurance demands for insurance
22   coverage and responses to the demands for its insurance
23   coverage because --
24           THE COURT:  And who -- and what subpoena was that
25   directed to?
0013
 1           MS. HAYES:  That was into the Town.  We asked for
 2   all the demands for insurance, all demands that were made on
 3   anybody.  There is no evidence of the Town that we have seen
 4   making a demand on AGM, and yet they enter into a settlement
 5   agreement with AGM.  AGM is now trying to turn around --

                                  Page 4
```

```
                                  6-1-05 Hrg Transcript.txt
 6             THE COURT:  She says there is more material than
 7   she subpoenaed in addition to that which you represent to me
 8   has been turned over.
 9             What is your response?
10             MR. HOLLAND:  In fact, there are additional
11   documents.  If I can rewind for a minute, Your Honor.
12             THE COURT:  Sure.
13             MR. HOLLAND:  Did Your Honor have an opportunity
14   to see this?  Of course I apologize.  I submitted it this
15   morning.
16             THE COURT:  I understand.
17             MR. HOLLAND:  May I approach?
18             THE COURT:  Sure.
19             MR. HOLLAND:  Of course it's a bit lengthy.
20             Your Honor, the plaintiff has had ample
21   opportunity to investigate the failures of the floating dock
22   system.  That is the subject of this whole dispute as the
23   memorandum that I just handed sets fort.  They were invited
24   to view the components of the failed system in March of
25   2004.
0014
 1             As a matter of fact, a representative of the
 2   plaintiff visited Town Hall just for that reason.  We met
 3   with them, and we provided to Southeast a copy of the
 4   videotape that showed that was created during the course of
 5   this storm.  They were also provided with a preliminary
 6   analysis in form of charts showing wind speed and wave
 7   heights as calculated by the Town.
 8             In addition, and I also want to reference some of
 9   these issues, Your Honor, because I don't want it to appear
10   that the Town has been uncooperative here.  Counsel for
11   Southeast reference, a June 14, 2004, letter saying that it
12   requested public records.  The letter was submitted to me,
13   Your Honor, and I sent to counsel, that this is misdirected,
14   it should be directed to the custodian of records, but
15   nonetheless, I will give you copies of correspondence among
16   counsel dealing with this issue.  To my knowledge, counsel
17   has never responded to my letter or submitted a public
18   records request to the Town custodian.
19             Now, granted, a subpoena was issued recently.  I
20   responded to that subpoena with a letter within six or seven
21   business days of receipt of that subpoena, and invited
22   counsel to come to inspect the documents at Town Hall.
23   Granted, I did object to the production of certain
24   documents, and ultimately, have evaluated there may not be
25   further litigation involving the Town disclosed in these two
0015
 1   reports at issue.  I never received the call to make
 2   arrangement for the inspection of town documents.  I would
 3   be happy to provide the documents, so that counsel can
 4   inspect them.  The only documents, Your Honor, that I
 5   continue to object to the production of, are those documents
 6   that memorialized communications, which I believe are
 7   protected by the attorney-client privilege.  But it's my
 8   understanding that the only documents at least up to this
 9   hearing, are the documents that were sought, were these
10   expert reports.  They are sought on the basis that they are
11   under hardship because absent these reports, they are unable
12   to discern the features of the Floating document system.
13             Well, as the record will show, as my memorandum
14   will show, that's just not true.  They had ample opportunity
15   to investigate the causes of the failure of the system.
16   They now have the only two documents that were prepared by
17   two consultants retained by the Town, and the Town, I
18   believe, Your Honor, still have an argument to continue to
19   withhold these under an exception.
20             THE COURT:  You said you turned them over.
21             MR. HOLLAND:  That's true.
22             THE COURT:  The complete documentation with regard
23   to the reports.
24             MR. HOLLAND:  That is absolutely true, Your Honor.
25             THE COURT:  The one that consists of seven pages.
0016
 1             MR. HOLLAND:  Yes.  One consistent while is --
 2   Childs prepared a written report.  She has that.  The other
 3   is Simpson, Gumpert & Heger.  The only document that they
 4   prepared, Your Honor, was a Powerpoint presentation type
 5   document with bullet headings, and it contains their
 6   analysis of the wind speeds and wave heights.  That is all
 7   they prepared, and that too was given to counsel for
 8   Southeast.
 9             THE COURT:  So what exactly are you looking for?
10             MS. HAYES:  Judge, if I can beg the Court's

                                   Page 5
```

```
                             6-1-05 Hrg Transcript.txt
11   indulgence.
12           In subsection --
13           THE COURT:  Here is my question:  What are you
14   looking for.
15           MS. HAYES:  I am looking for the materials in this
16   privilege log that were not produced.  That is in the stuff
17   I have given you, Judge, I am looking for under Tab C, we --
18   the insurance that is discussed.  Behind tab --
19           THE COURT:  When did that subpoena go out?
20           MS. HAYES:  Yes.  All of these things are listed
21   on the same subpoena, Your Honor, C119 minutes, meeting
22   where the insurance is discussed.  I put this in here
23   because I knew they were going to come in and feign
24   ignorance, but they discussed the $200,000 deductible on
25   their insurance.
0017
 1           After that, if you turn back, Page 4 and 5 under
 2   that section, Judge, those are from another case that is
 3   pending before this Court.  It's a case by AGM's commercial
 4   general liability insurance company for declaratory judgment
 5   in which AM has filled a motion for summary judgement, that
 6   they have coverage for the same damages that they are trying
 7   to come after my client for.  That letter has a page
 8   missing, and the page that is missing is Page 3 of 5, Judge,
 9   and if we go back to Page 6 as numbered by me at the upper
10   right hand corner, the Court sees that it says there,
11   damages rising out of contractual agreement between the Town
12   and third parties would not constitute an occurrence under
13   the policy.
14           Now, missing is the page before that from the
15   court file.  That is where we got this.  Nobody produced
16   this for us, even though it's insurance information, and we
17   subpoenaed it.  We obtained from the court file that another
18   case is pending in front of this court.
19           Now, the page before that might explain to us
20   whether third party contracts are the fault of the loss that
21   AGM is trying to pass on to my client.  But they know that
22   the wave heights exceeded the designed limits because the
23   report that took us a year to get says that, but who knows
24   what else they know out there, because thus far, in all due
25   respect they have been less than forthcoming with
0018
 1   information.
 2           THE COURT:  How about this insurance, what is your
 3   response to that?
 4           MR. HOLLAND:  Your Honor --
 5           THE COURT:  The insurance material that she just
 6   referenced?
 7           MR. HOLLAND:  As I said, Your Honor, and we have
 8   spoken, I would be happy to provide her any documents that
 9   do not constitute attorney-client privilege.  The insurance
10   information, I would be happy to find out more information
11   about that.  As I said, we invited her in response to the
12   subpoena on -- letter that you see attached to the
13   memorandum, Your Honor, on -- actually, the day escapes me,
14   but before the filing of the complaint, I invited them to
15   come and inspect the Duntos (ph.) documents.  She is arguing
16   a point, Your Honor, that isn't a dispute.
17           THE COURT:  He says he is willing to allow you to
18   inspect that material.
19           MS. HAYES:  I would be glad if that judgment -- so
20   far we asked for specific items, and I wrote we don't have
21   to purge, or we are not going to produce, including
22   everything on the privilege log prepared by those documents,
23   memos, and e-mail from this attorney to FS&T that talk about
24   steel floats that we said -- what they said should have been
25   used to begin with on the project.
0019
 1           The Town made a decision to go with a system that
 2   was not of adequate strength to withstand conditions in
 3   Provincetown, plain and simple, and they took out a
 4   breakwater.  Now, they don't want to expose the underlining
 5   contents of comments and discussions about who was really at
 6   issue here.  Instead, they made a deal with AGM and agreed
 7   to support AGM and try to come -- the dock manufacturer.
 8   These were shipped freight on board to the job site,
 9   offloaded, and installed by AGM.  But they are looking for
10   half a million dollars at last count from my client based on
11   issues that they have nothing to do with us.  They were
12   under design.  The Town made a poor decision being a
13   breakwater, and all of these things are reflected in the
14   documentation, aren't really work product or attorney-client
15   privilege, Judge, they just don't want us to find out about

                                   Page 6
```

```
                                       6-1-05 Hrg Transcript.txt
16   them.  That is the only reason.
17             MR. HOLLAND:  Your Honor, I vehemently object to
18   these statements.
19             THE COURT:  Let me hear what you have to say.
20             MR. HOLLAND:  She can come out and inspect
21   whatever documents she would like to see.  The only
22   documents that I wish to -- to withhold are any documents
23   that I believe are protected by the attorney-client
24   privilege.
25             Counsel referenced FS&T, that is an acronym, Fay,
0020
 1   Spofford & Thorndike.  There are several documents
 2   encompassed between the attorney-client privilege.  There
 3   are communications between me and the project engineer.  The
 4   project engineer being third party closely identified with
 5   the Town.  The purpose for those communications, solely for
 6   me to request information, so that I can give informed and
 7   adequate legal advice to the Town.  As a matter of fact, I
 8   knew there might be an issue even after SFT named a
 9   defendant.  I brought those documents in here.  I would be
10   very happy to hand them to Your Honor for in camera
11   inspection.  The issues that they are concerned with are
12   solely technical issues.
13             THE COURT:  Let me ask you this with respect to
14   the material that you say you have no problem with.
15             MR. HOLLAND:  Yes.
16             THE COURT:  why didn't you turn those over?
17             MR. HOLLAND:  I offered to make information
18   available for inspection.  They never responded to that.
19   They just filed a complaint.
20             THE COURT:  As of now?
21             MR. HOLLAND:  Yes.
22             THE COURT:  Would you turn those where you have no
23   objection to?
24             MR. HOLLAND:  Yes.  I would be happy to, Your
25   Honor.  As a matter of fact, today before the hearing, I
0021
 1   provided a copy of documents.  It's a binder and it -- if,
 2   Counsel, you would be so kind to hold up to the Court,
 3   within that binder are a number of project documents.  That
 4   binder was what the Town provided to its consultant to
 5   review for documentation, so I did provide some documents.
 6   If they have a specific question on -- I know she's looking
 7   for insurance information.  I would be happy to find out
 8   about that.  I will make an inquiry today.
 9             MR. EISENBERG:  Your Honor, if I may, I have been
10   sitting here quietly.  I also object to counsel's comment.
11   The documents were provided.  It will be an issue in the
12   arbitration.  They are missing -- there is a detail in terms
13   of attachment of the main documents to the finger piers that
14   wasn't shown on the drawings, that is an issue for the
15   arbitrator.
16             My only dog in this particular hunt is whatever
17   counsel wants to do by way of discovery, the third party,
18   should have been done long ago.  The arbitrator has twice
19   now extended the deadline for counsel to make an expert
20   report.  They didn't make an expert report we have today for
21   arbitration.
22             If counsel wanted to stay after that arbitration
23   or extension of time, the proper place to go is the
24   arbitrator.  And, Your Honor, knows the case law as well as
25   I do, that the Court really is not supposed to inject
0022
 1   itself, and I can cite cases if you want into the workings
 2   of arbitration.  That is for the arbitrator.  As to the
 3   discovery of a third party, I know it's split in the
 4   circuit.  Some circuits say third party subpoenas can be
 5   enforced by this court.  Other circuits say they can't,
 6   prior to the actual arbitration.
 7             As far as I know, the First Circuit hasn't ruled
 8   on this point, but it's all irrelevant.  She has all of the
 9   documents, or she has a willingness to produce all the
10   documents that aren't privileged, and I didn't want my
11   arbitration delayed on account of this back and forth with
12   parties, other than the other party to the arbitration.
13             Thank you, Your Honor.
14             MS. HAYES:  We did produce a report.  I mean, the
15   inaccuracies here are outrageous, but we did produce a
16   report --
17             MR. EISENBERG:  I said you did eventually but --
18             MS. HAYES:  -- in this.
19             THE COURT:  It's okay.
20             MS. HAYES:  I have given to the Court, if we turn
                                    Page 7
```

```
                                          6-1-05 Hrg Transcript.txt
21    to Tab B, and it's Page Number 14, 13 at the top.  At the
22    upper right, Judge.  E-mail from Provincetown, McMillin,
23    pier damage.  This is the Fay, Spofford & Thorndike
24    privilege log.
25              Now, how can the Fay, Spofford & Thorndike
0023
 1    privilege log include communication, that that is
 2    attorney-client privilege with the Town, and then we go on.
 3    This is immediately after the storm.  The storm was
 4    December 7th and 3rd of '03, so immediately after the storm,
 5    these folks are e-mailing back and forth about the pier,
 6    dock, and the site visit December 8th.  These are critical,
 7    important information to the dock manufacturer.  The next
 8    page, they have a summary of a meeting and telephone calls
 9    and discussion about steel floats.  Completely different.
10    They are concrete floating docks, and what this probably
11    says is what we said from the beginning, you should have
12    used steel floats.  That is important to the defense of my
13    case.  Is that attorney-client privilege, I don't think so.
14              THE COURT:  Let me ask you this, why didn't the
15    other -- what is the position of the arbitrator?  What does
16    he do with respect to the -- his own subpoenas.
17              MS. HAYES:  He has said that he -- that the Court
18    has to speak, has to enforce them, that we have to go to
19    court, he said, and said it during teleconferences that we
20    have to enforce them, that is why we filed this action.  One
21    item -- 110 memos and letters and faxes provided.  Those
22    were all given to Mr. Holland by FS&T, Fay, Spofford &
23    Thorndike, the engineer.  How is that attorney-client
24    privilege?  They are not.
25              MR. EISENBERG:  As far as I know, and I will ask
0024
 1    counsel to correct me if I am -- I don't think the issue,
 2    the subpoena to Fay, Spofford & Thorndike, hasn't been
 3    before the arbitrator.  What was before the arbitrator, the
 4    Childs report, and that issue has involved whether the
 5    arbitrator would or would not agree that this is relevant or
 6    irrelevant to the arbitration to my knowledge has not been
 7    communicated or presented to the arbitrator.  Sorry to
 8    interrupt.
 9              MS. HAYES:  Absolutely every one of the subpoenas
10    has been discussed with the arbitrator.  That is not -- that
11    is totally untrue.  What he said, that we have to enforce
12    them.  That's the only way to do it, is for us to enforce
13    it.  He has no mechanism to enforce them.  The only thing he
14    can do is send out another order, and say, "I order."  He
15    doesn't have a right to fine someone.  He is an arbitrator.
16              The documents in the privilege log --
17              THE COURT:  It seems to me whether he can hold
18    someone in contempt or not, has these issues been brought
19    before him?  Have they been argued?
20              MS. HAYES:  Yes, sir, they have.
21              THE COURT:  What was his action?
22              MS. HAYES:  His action was to send out an order
23    that says it's up to the plaintiff to enforce them.  And
24    pursuant to the Federal Arbitration Act, Section 7, the
25    Federal District Court has jurisdiction to enforce
0025
 1    arbitration subpoenas.  The problem here is that FS&T's only
 2    business basis for withholding the privilege documents, they
 3    did not assert that, their attorney-client privilege.  They
 4    say, "The Town's attorney has told us to withhold these
 5    documents, so we are withholding them."  That's on Page 9 of
 6    subsection of the Section B.  They tell us, "We are holding
 7    these because counsel for the Town of Provincetown has
 8    objected to their release."  They can't be attorney-client,
 9    and I ask the court to order the Town to release the
10    records.
11              MR. EISENBERG:  Your Honor, I haven't seen an
12    order from the arbitrator verifying or ruling relevant these
13    requests.  I don't think this particular issue on these
14    documents has been before the arbitrator.
15              MR. HOLLAND:  I would like to address Your Honor.
16    First, with respect to Section 7 of the Federal Arbitration
17    Act, that section doesn't permit the arbitrator to issue
18    prehearing subpoenas for the production of documents from
19    third parties.  It does not.  It allows the issuance of
20    subpoenas for witnesses to attend and bring documents with
21    them to the hearing.  That said, I would like to address the
22    issue of the log.
23              The log was subjected from Fay, Spofford &
24    Thorndike, who is not a defendant in this action and that
25    log did have certain documents that I had identified without
                                    Page 8
```

```
                                 6-1-05 Hrg Transcript.txt
0026
 1   having first seen them to withhold, I wanted to look at them
 2   to see if I thought there were any communications that I
 3   would have had with this third party for the purposes of
 4   giving legal advice.  Having done that, there are seven
 5   items that counsel has just gone through that I have
 6   determined aren't protected, and they can have those
 7   documents.
 8             And as a matter of fact, I have been in
 9   conversation with Caraballo of your office, and I am going
10   to identify the ones I would withhold, but I haven't had a
11   returned call from her or you.
12             Let me finish, please.
13             I have here, Your Honor, there are about six or
14   seven pages, some of the ones that counsel went through and
15   questioned, How are these privilege?  They are not contained
16   in the folder.
17             I am happy to do whatever I can do to resolve the
18   dispute.  If Your Honor would like to take the documents in
19   camera, you can see they are communications that are merely
20   project engineer, from me, to obtain the relevant facts,
21   legal advice to the Town.  There is nothing in here that
22   bears any relation to the technical issues that counsel is
23   concerned about.  She references a document about steel
24   floats.  That is not in this folder.  They can have access
25   to those documents.  I would be willing to submit this.
0027
 1             THE COURT:  Your representation is that at least
 2   what, that which you claim is attorney-client privilege, you
 3   are committing yourself to allowing the plaintiff in this
 4   action the opportunity to inspect the other material?
 5             MR. HOLLAND:  That's correct, Your Honor.  That's
 6   absolutely correct.
 7             MS. HAYES:  How can there be client-attorney
 8   privilege?
 9             THE COURT:  I am not even talking about that.  You
10   just got, I think, at least half or three quarters of what
11   you are looking for.
12             MS. HAYES:  Great.  Thank you, Judge.
13             THE COURT:  Are you ready to take that?
14             MS. HAYES:  Yes.  I would like all of it though.
15             THE COURT:  I understand you do.  But, you know,
16   when you get three quarters, at least be somewhat happy
17   about it.  Sometimes you can go a thousand percent.  I am
18   not -- I made no ruling with respect to attorney-client, but
19   the man is -- just said he is going to allow you the
20   opportunity to inspect most of the material.
21             MS. HAYES:  I appreciate that.
22             THE COURT:  Are you going to take advantage of
23   that?
24             MS. HAYES:  Yes, I am.
25             THE COURT:  Anything else you want to say?
0028
 1             MS. HAYES:  I just want to read one more paragraph
 2   one time from the arbitrator's order.
 3             If the claimant has in its possession and control
 4   a copy of a report of the Town, consulting, engineering,
 5   Childs Engineer, it shall immediately produce respondent,
 6   otherwise, it is respondent's responsibility to enforce
 7   compliance with its subpoenas, and that is the position the
 8   arbitrator is taking.
 9             MR. CONNARTON:  You want to do this, go do it.  I
10   am not going to do it.  I can't do it, but you can, so
11   that's the reason we are here.
12             THE COURT:  But is it true or isn't it, I am not
13   sure, that this dispute at least originated, was sparked by
14   your desire to obtain two reports, which reports have now
15   already been provided you; is that correct?
16             MS. HAYES:  I understand from what he says, yes,
17   they have been provided to me, yes.  That's part of it, but
18   the other issue, that is just as important.
19             THE COURT:  Is the insurance?
20             MS. HAYES:  Yes.
21             THE COURT:  He indicated that except for certain
22   conversations he might have had, that the insurance material
23   is going to be made available to you.
24             MS. HAYES:  Yes, sir.
25             THE COURT:  Is that true?
0029
 1             MR. HOLLAND:  Yes, Your Honor.  As I sit here, I
 2   don't know what insurance information is available or claims
 3   have been made, but whatever exists, that's not
 4   conversations of mine, I will provide, yes, Your Honor.
                                       Page 9
```

```
                                   6-1-05 Hrg Transcript.txt
 5              THE COURT:  So what remains?
 6              MS. HAYES:  The information in the privileged log
 7    that he is continuing to withhold.
 8              THE COURT:  What does it relate to?
 9              MS. HAYES:  Well, I am not sure which documents he
10    is giving up on and which he is continuing to assert.
11              MR. HOLLAND:  May I approach, Your Honor?  I would
12    be happy to give them to Your Honor.
13              THE COURT:  Is that the privileged log?
14              MR. HOLLAND:  These are the documents, the several
15    pages of documents.
16              THE COURT:  Let me see it.
17         (Document tendered.)
18              MS. HAYES:  The privilege log is in the material
19    that I gave to the Court.
20         (Off the record.)
21              MS. HAYES:  He identified 120, 121, and 123 to 128
22    as being in that folder.
23              MR. HOLLAND:  Yes.
24              MS. HAYES:  And is it my understanding the rest of
25    those, you have no objection to giving us now?
0030
 1              MR. HOLLAND:  That's right.
 2              MS. HAYES:  All the ones that are in here.
 3              MR. HOLLAND:  The only one withheld were the
 4    highlighted ones, I believe.
 5              MS. HAYES:  I want to make sure we are on the same
 6    page.
 7              MR. HOLLAND:  The only one being withheld to look
 8    at were the highlighted versions, and I looked at these, and
 9    I just replaced these.  These are the only ones I have
10    objections.  Everything else, you can have.  And all of the
11    items in that index were documents as I understood were to
12    be provided, except for the highlighted portions.
13              MS. HAYES:  That's correct.
14         (Documents tendered back to counsel by the Court.)
15              THE COURT:  All right.  Is there anything else to
16    be said prior to my taking this matter under advisement?
17              MR. CONNARTON:  On behalf of myself and my client,
18    when we started this, I think Your Honor now is very clear
19    that the only issue with respect to my client who was made a
20    defendant in this lawsuit and served with, Your Honor, short
21    order of notice was the alleged Childs' report, which is my
22    understanding has been turned over, and has now for about a
23    week, that's the only thing that was mentioned in the
24    complaint from which your short order was issued that has
25    been done, and what I would like to do, just somehow get my
0031
 1    client out of this and not have to spend any more money, to
 2    make him happy, because it may not necessarily make me
 3    happy.
 4              THE COURT:  You want for --
 5              MS. HAYES:  I attach the subpoena.  If they want
 6    to send me a letter saying, "Now that you have the report
 7    and other records that we produced," they gave me 68 pages,
 8    and that is all we have in response to our subpoena, I would
 9    gladly dismiss him.  I would like something affirmative
10    stating that they don't have anything else responsive to the
11    subpoena.
12              MR. CONNARTON:  Your Honor, please, my client did
13    provide counsel with a response and provided counsel with
14    documentation.  Other than what was asked for by my client
15    to withhold, under the attorney-client privilege, which was
16    in fact the Childs report.
17              And in fact, if Your Honor just simply takes a
18    look at the complaint that started this proceeding, that is
19    all they ever mentioned.  It's a little bit like I hear
20    counsel saying today all of a sudden this afternoon we are
21    getting here, it may be this and it may be that.  It's the
22    Childs report that's been produced, that is the only thing
23    that was even mentioned in the complaint, and we did provide
24    a response to the original subpoena with documentation at
25    the time they were served.
0032
 1              THE COURT:  All right.  I will take the matter
 2    under advisement.  I will review the material submitted by
 3    the plaintiff and the Town.
 4              Thank you.
 5              COUNSEL:  Thank you, Judge.
 6              THE CLERK:  All rise.  Count is adjourned.)
 7                             *****
 8                        C-E-R-T-I-F-I-C-A-T-E
 9
                                    Page 10
```

```
                              6-1-05 Hrg Transcript.txt
        I, TERI CELESTE GIBSON, CSR, RPR, CRR, do hereby certify
10      that the foregoing pages 1 through 32, which are a true and
        accurate transcription of my stenographic notes taken in the
11      above-entitled hearing, prepared to the best of my
        knowledge, skill, and ability at the time and place
12      aforementioned.
13
14      _____
        TERI CELESTE GIBSON, CSR, RPR       DATE:  8/13/05
15
16      This certificate only applies to transcripts produced,
        copied, and signed by Teri Celeste Gibson, Court Reporter.
17
18
19
20
21
22
23
24
25
```