UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION
NO. 05CV11039EFH

SOUTHEAST FLOATING DOCKS, INC.,

      Plaintiff

v.

AGM MARINE CONTRACTORS, INC.,
CHILDS ENGINEERING CORPORATION,
AND THE TOWN OF PROVINCETOWN,

      Defendants

DEFENDANT TOWN OF
PROVINCETOWN'S MEMORANDUM
PURSUANT TO THE DISTRICT
COURT'S OCTOBER 18, 2007 ORDER

## INTRODUCTION

The Town of Provincetown submits this memorandum pursuant to the Court's

October 18, 2007 Order.  In that order, the Court requested that the plaintiff, Southeast

Floating Docks, Inc. ("Southeast"), "specify in writing, with as much specificity as

reasonable, what document(s) it is seeking to have produced in addition to the so-called

'51 documents' which have already been produced."  A copy of the order is attached

hereto as **Exhibit A**.  On November 1, 2007 (at 5:58  p.m.), in accordance with the

October 18, 2007 Order, Southeast filed a memorandum entitled, "Plaintiff's List of

Records Not Produced by Town in Violation of Multiple Subpoenas, Representations of

Counsel, a Court Order & Appellate Mandates" ("Southeast's Memorandum").  This is

the Town's response to that memorandum.

## FACTUAL BACKGROUND

Southeast alleges that the Town failed to comply with this Court's June 2, 2005 Order, which stated in relevant part as follows: "After a hearing . . . the Court orders the dismissal of the Complaint. . . . This dismissal is conditioned upon the Town of Provincetown complying with its representation to the Court . . . that it would provide the Plaintiff . . . access to such of its subpoenaed documents that are not covered by the attorney-client privilege." The order was made in connection with Southeast's effort to enforce a February 23, 2005 arbitration subpoena issued to the Town (the "Subpoena"), a non-party in the arbitration of a related dispute between Southeast and defendant AGM Marine Contractors, Inc. ("AGM"). AGM won a substantial monetary award in that arbitration, which Southeast now seeks to overturn on the false ground that the Town has not complied with this Court's June 2, 2005 Order.

AGM was the general contractor who, under contract with the Town, performed construction services for the Town's construction project known as "Reconstruction of MacMillan Pier" (the "Project"). Southeast was the manufacturer who, under contract with AGM, supplied defective concrete floating docks for the Project. The concrete floating docks were a small part of the total Project.

Contrary to the broad, discovery-like requests contained in Southeast's Memorandum, the Subpoena was limited in scope. It contained seven separate requests for documents. Other than a request for documents regarding the construction of the so-called "concrete floating docks" and the "removal of the wave attenuator," the Subpoena requested certain documents dated from December 1, 2003 to the date of the Subpoena

2

(February 23, 2005). Many of the documents about which Southeast now complains are not even responsive to the Subpoena.

In response to the Court's June 2, 2005 Order, the Town's counsel offered to have the Town search for and produce to Southeast both printed and electronic versions of documents responsive to the subpoena. As discussed in detail in the "Defendant Town of Provincetown's Second Memorandum in Opposition to Plaintiff's Motion for Contempt Order & Sanctions" ("Town's Second Memorandum") (filed on October 18, 2006), Southeast's counsel rejected that offer and chose instead to inspect personally the Town's non-privileged, printed Project files, which are housed at the offices of the Town's Department of Public Works ("DPW"). For the Court's convenience, a copy of the Town's Second Memorandum (without exhibits) is attached hereto as **Exhibit B**. Thus, the Town allowed Southeast's counsel two full days (June 27 and 28, 2005) to inspect the Town's non-privileged Project files.

In addition, the Town agreed to allow Southeast to scan documents during its inspection of the Town's Project files. The Town agreed to do so because Southeast's counsel promised to create and provide the Town with a copy of a CD Rom containing the images of the documents scanned. See Town of Provincetown's Memorandum in Opposition to Plaintiff's Motion for Entry of Final Appealable Order and Other Relief (filed on August 15, 2005) ("Opposition to Motion for Appealable Order"), a copy of which (without exhibits) is attached hereto as **Exhibit C**. Southeast created the CD Rom, as admitted by its counsel in exhibit A of "Plaintiff's Affidavit of Added Time Spent & Documents Produced Filed in Support of Contempt Motion" ("Plaintiff's Affidavit"), which accompanied Plaintiff's Motion for Contempt Order & Sanctions (filed on July 1,

2005 and denied on July 18, 2005). However, Southeast's counsel has repeatedly refused

to provide the Town with a copy of the promised CD Rom. The Town believes that the

CD Rom would show that many of the documents about which Southeast complains were

scanned by its counsel during the June 2005 document inspection. The Town also

believes that Southeast scanned substantially more documents than the documents

identified in exhibit A of Southeast's memorandum. The likelihood that this is so is

made plain in Plaintiff's Affidavit, discussed above, where Attorney Rosemary Hayes'

entries for June 28, 2005 indicate that she had spent 16 hours scanning (to disk)

documents during Southeast's June 2005 document inspection. See Opposition to

Motion for Appealable Order (Ex. C).

Following the document inspection, the Town, through its counsel, provided

Southeast's counsel with additional documents by hand, mail and email delivery in June

and August 2005. These documents included photographs, emails and electronic

versions of documents. The substantial efforts of the Town and its counsel to comply

with the Court's June 2, 2005 Order were detailed in the Town's Second Memorandum

(Ex. B). Thus, the Town has complied with that order.

ARGUMENT

I. SOUTHEAST'S MEMORANDUM DOES NOT COMPLY WITH THE
   COURT'S OCTOBER 17, 2007 ORDER AND CONSTITUES A NEW
   REQUEST FOR DOCUMENTS BEYOND THE SCOPE OF THE SUBPOENA.

The Town objects to Southeast's Memorandum on the following grounds. The

memorandum does not comply with the Court's October 18, 2007 Order because, rather

than specify particular documents, as required by the Court, Southeast includes requests

for large categories of documents. Second, Southeast fails to cite to the language in the

Subpoena to which its categories of documents allegedly correspond. Indeed, Southeast's Memorandum includes requests for documents that were not requested in, and are therefore not responsive to, the Subpoena. For example, Southeast requests documents regarding the maintenance of the floating docks (p. 5, # 14) and "1999 estimate from Bellingham Marine" (p. 8, # 45), even though such documents are not requested in the Subpoena. (The fact that Southeast has all along been demanding documents that were not requested in the Subpoena is discussed in detail in the <u>Town's Second Memorandum</u> (Ex.B).) Thus, Southeast's Memorandum is tantamount to a new subpoena.

Third, Southeast identifies certain documents or emails as justification for its broad, discovery-like request for documents, but it fails to include the documents or emails referenced. Southeast thus requires that the Town search for documents that allegedly support Southeast's request for categories of documents, some of which do not exist, and that the Town then to confirm whether such documents were produced.

Further, some of Southeast's requests are frivolous. For example, Southeast requests "correspondence that needs to be issued (p. 4, # 10) and, to support that request, cites to a December 8, 2003 memo from the DPW to the Town Manager. In that memo, a copy of which is attached as **Exhibit D**, the DPW Director, in concluding his discussion about his thoughts of what the Town must do in response to the storm damage to the floating docks, states: "There is correspondence that needs to be issued but would ask that this be discussed in executive session." Southeast suggests, by its request, that this statement indicates that the Town has not produced "correspondence." The suggestion is

ludicrous, and there is nothing to support Southeast's apparent suspicion of "missing" correspondence.

Similarly, Southeast requests "Results of 'due diligence; by Town Staff & FST, including info. From NOAA (Taunton)" (p. 4, 11). In support of this request, Southeast again cites to the aforementioned December 8, 2003 memo. The relevant part of that memo states: "To that end, we would want to perform due diligence as to the degree or intensity of the storm and the data collection is on-going by both FST and by staff." Again, there is nothing at all in this statement, nor in the memo as a whole, that indicates that the Town withheld any of the information requested by Southeast. It is clear that Southeast's suspicions are unfounded and are not supported by the documents it invokes, which is, apparently, the reason why Southeast did not provide the cited documents with its memorandum.

Even more astounding is the fact that some of Southeast's requests have been made repeatedly in the past, even though the Town has responded to the requests and there remains nothing more to say. For example, Southeast requests "insurance records" (p. 8, # 46) even though the Town has produced whatever documents exist responsive to the Subpoena's request for "demands for insurance coverage and responses thereto," and even though Southeast's counsel has been advised repeatedly that the Town had not insured the floating docks. This issue was discussed in detail in the Town's Second Memorandum (Ex. B).

Similarly, Southeast requests the "site observation video" (p. 7, # 38), even though that video was shown to Southeast's representatives at a meeting at Town Hall on April 22, 2005, and a copy of the video was delivered to Southeast's counsel under cover

of a letter dated June 3, 2004, a copy of which is attached hereto as **Exhibit E**. By letter

dated August 2, 2005, a copy of which is attached hereto as **Exhibit F**, the Town's

counsel offered to give Southeast's counsel another copy of the video from the Town's

counsel and Southeast's counsel <u>never</u> responded to that offer.

Likewise, Southeast requests a copy of the "AGM settlement agreement with

exhibits" (p. 4, # 7). It should be noted that the agreement is not requested in the

Subpoena and was not signed until after the date of the Subpoena and, therefore, is not

within the scope of that Subpoena. Nevertheless, this document would have been

included in the documents inspected by Southeast's counsel on June 27 and 28, 2005. In

addition, by letter dated August 2, 2005 (Ex. F), Southeast's counsel was offered another

copy of the agreement. No response was ever received from that offer.

Further, Southeast requests "Town correspondence to FST, Zurich and others" (p.

4, # 12) regarding the Town's notice to other parties about potential liability. As

Southeast and its counsel are well aware, the Town produced such written notices,

including by letter dated July 8, 2004 from the Town's counsel, a copy of which is

attached as **Exhibit G**. Notwithstanding this fact, Southeast continues to request the

same documents. It is therefore evidence that Southeast is either oblivious to the

documents in its possession and already produced by the Town, or is making false

requests to support and conceal false claims in this litigation.

Finally, Southeast requests "Childs' preliminary report" (p. 6, #27). However,

Southeast's counsel admitted during the June 1, 2005 hearing before the Court, as

reflected in the transcript of that hearing, that she had received that report. The Town's

counsel faxed the only written report prepared by Childs Engineering Corporation to

Southeast's counsel on May 23, 2005.  See <u>Affidavit of Richard Holland</u>, submitted herewith.

It is clear that Southeast's claim that the Town has not complied with the Court's June 2, 2005 Order, and Southeast's requests for more discovery are based on nothing more than vague suspicion.  Southeast's actions in this litigation are the definition of a "fishing expedition."  Southeast's Memorandum proves more than anything the Town might itself say that Southeast's overly aggressive efforts are motivated by what can only be described as irrational paranoia and constitute a frivolous, bad faith abuse of judicial process for some ulterior purpose.

The Town attaches to this memorandum, as **Exhibit H,** a Table corresponding to the table produced in Southeast's Memorandum.  The Table responds to each of the requests made by Southeast.  The Town also submits herewith an Affidavit of Richard T. Holland and Affidavit of David F. Guertin.  The Table, affidavits and this memorandum show that the Town has complied with the Court's June 2, 2005 Order.

II.  THE SO-CALLED "51 DOCUMENTS" (The Impounded Documents).

1.    The Town's Copies of the 51 Documents.

On motion by the Town (filed on July 15, 2005), the so-called "51 documents" were impounded by the Court by order dated July 18, 2005.  The documents were subsequently disclosed to Southeast's counsel pursuant to the Court's October 18, 2006 Order.  Although the Court's October 18, 2007 Order does not require the Town to respond to Southeast's request regarding the Town's copies of the "51 documents," the Town, in good faith, offers the following response in an effort to bring this matter to its appropriate conclusion.

The "51 documents" actually consist of 62 pages, making up a total of 43 (not 51) documents. They originated from the files of Simpson Gumpertz Heger ("SGH"), the Town's litigation consultant, and Fay Spofford & Thorndike ("FST"), the Project engineer under contract with the Town. Of these 43 documents, 34 (53 pages total) are from SGH's files, and nine (nine pages total) are from FST's files.

The SGH documents are identified on a log prepared by SGH entitled "Privilege Log" (the "SGH Privilege Log"). A copy of the SGH Privilege Log is attached hereto as **Exhibit I.** The SGH Privilege Log lists 34 documents labeled SGH 0001 – SGH 0051. Of the 34 documents, the following 16 documents were not delivered to any Town official or employee and, therefore, are not contained in the Town's Project files:  SGH 0002; SGH 0007; SGH 0008; SGH 0020; SGH 0021; SGH 0022; SGH 0026; SGH 0028; SGH 0029; SGH 0030; SGH 0031; SGH 0032 – SGH 0033; SGH 0034 – SGH 0037; SGH 0039; SGH 0047 – SGH 0048; SGH 0049.  Of the remaining 18 SGH documents, the Town or its counsel possesses the following documents:  SGH 0001; SGH 0003 – SGH 0006; SGH 0009 – SGH 0015 (duplicate copies of the same document); SGH 0023 and SGH 0024 (parts of a privileged attorney-client communication from the Town's counsel to the Town Manager); SGH 0025; SGH 0027; SGH 0038; SGH 0040; SGH 0041 – SGH 0042; SGH 0043; SGH 0044 – SGH 0045; SGH 0046; and SGH 0050 – 0051.  It is important to note that, although some of the 18 documents reference attachments, the attachments were <u>not</u> included in the documents impounded.

The nine remaining 1-page documents are from FST's files.  They, along with a number of other FST documents that have since been produced to Southeast (see section 2, below), are listed  on a log prepared by FST ("FST Log"), a copy of which is attached

hereto as **Exhibit J**. As the Court will recall, the Court impounded only nine, one-page documents from the FST Log. Of these nine documents, five are summaries of telephone calls prepared by FST. These summaries were not provided to the Town and, therefore, are not contained in the Town's Project files.

The remaining four documents from the FST Log include a 1-page July 2, 2004 fax transmission from FST to the Town's counsel, along with a 1-page fax receipt. The fax transmission was not sent to the Town and, therefore, these two 1-page documents are not contained in the Town's Project files. The remaining two documents, which are possessed by the Town or its counsel, consist of two one-page letters from FST to the Town's counsel, one dated June 22, 2004 and the other August 17, 2004. It should be noted, however, that, as with the SGH documents discussed above, the attachments referenced in the FST documents were <u>not</u> included in the documents impounded by the Court.

2.    <u>Southeast's Claimed Confusion About the 51 Documents is Not Credible.</u>

Southeast has expressed confusion about whether it has been provided a complete copy of the documents impounded by the Court. It is important to note that Southeast received no less than three copies of those documents. Southeast first received impounded documents by letter dated June 3, 2005 from Attorney David Corkum of Donovan Hatem, counsel for SGH and FST. In that letter, a copy of which is attached hereto as **Exhibit K**, Attorney Corkum stated: "Enclosed pleased [sic] find copies of the documents that were previously withheld at the request of Town's counsel." <u>See</u> <u>Opposition to Motion for Appealable Order</u> (Ex. C). Southeast and its counsel have apparently forgotten to inform the Court of this fact.

Southeast obtained a second copy of the 51 documents from this Court pursuant to the Court's October 18, 2006 Order.  It obtained a third copy of the documents under cover of a letter dated February 26, 2007 from Attorney Corkum, as Attorney Corkum reported to the Town's counsel by letter dated February 27, 2007, a copy of which is attached hereto as **Exhibit L**.  Attorney Corkum's February 26 letter to Southeast's counsel was sent at the request of the Town's counsel who, in an effort to resolve Southeast's confusion, personally arranged for Attorney Hayes to inspect the original files of FST and SGH at Attorney Corkum's offices.  Initially willing to inspect the documents, Attorney Hayes later refused to do so without any reasonable explanation, and documents were mailed to her instead.  Therefore, the Town seriously doubts the sincerity and credibility of  Southeast's claim of confusion regarding the so-called "51 documents," and believes that Southeast and its counsel are conducting themselves in bad faith in this litigation.

III. THE TOWN'S PRIVILEGED DOCUMENTS

Other than the two FST documents and 18 SGH documents discussed earlier, the only other documents responsive to the Subpoena but not produced by the Town are letters and emails exchanged between Town officials and the Town's counsel.  These documents constitute attorney-client communications and are protected from disclosure by the attorney-client privilege.  The Court's June 2, 2004 order expressly states that the Town need give Southeast access only "to such of its subpoenaed documents that are not covered by the attorney-client privilege."  The Privileged Documents are listed on a privilege log, which is attached to this memorandum as **Exhibit M** (the "Town's Privilege Log").

In addition, some if not many of the documents on the Privilege Log are not responsive to the Subpoena, although some may have been inadvertently produced. By including non-responsive documents on the log, however, the Town does not concede the question of whether they are responsive to the Subpoena. Rather, the Town hopes that, by providing a comprehensive list of the Town's attorney-client communications relating to the Project, the Court's burden in this litigation will be eased, and this matter may finally be concluded.

Thus, other than those of the so-called "51 documents" that may not have been contained in the Town's Project files (18 SGH and 2 FST documents, discussed above) at the time of Southeast's June 27 and 28, 2005 inspection, and the Privileged Documents listed on the Town's Privilege Log, all documents responsive to the Subpoena have been produced or made available to Southeast. Thus, the Town has complied with the Court's June 2, 2005 Order and respectfully requests that the Court issue an order stating that the Town has so complied and dismissing the litigation.

CONCLUSION

For the foregoing reasons, the Town respectfully requests that the Court order that the Town has complied with its June 2, 2005 Order and dismiss the litigation.

TOWN OF PROVINCETOWN

By its attorneys,

/s/ Richard T. Holland
David J. Doneski (BBO# 546991)
Richard T. Holland (BBO# 632661)
Kopelman and Paige, P.C.
  Town Counsel
31 St. James Avenue
Boston, MA 02116
(617) 556-0007

<u>CERTIFICATE OF SERVICE</u>

I, Richard T. Holland, hereby certify that the above document will be served upon any party or counsel of record who is not a registered participant of the Court's ECF system, upon notification by the Court of those individuals who will not be served electronically.

<u>/s/ Richard T. Holland</u>.

Dated:  November 15, 2007

330747/24207v3/0008

# UNITED STATES DISTRICT COURT
# DISTRICT OF MASSACHUSETTS

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

SOUTHEAST FLOATING DOCKS, INC.,
Plaintiff

v.

AGM MARINE CONTRACTORS, INC.,
CHILDS ENGINEERING CORPORATION,
AND THE TOWN OF PROVINCETOWN,
Defendants.

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

CIVIL ACTION NO.:
05-11039-EFH

## <u>ORDER</u>

October 18, 2007

HARRINGTON, S.D.J.

After hearing, the Court orders the Plaintiff, Southeast Floating Docks, Inc., to specify in writing, with as much specificity as reasonable, what document(s) it is seeking to have produced in addition to the so-called "51 documents" which have already been produced, on or before November 1, 2007.

The Defendant, Town of Provincetown, is ordered as to each document either 1) to produce said document; 2) assert a privilege; 3) state that it has already provided said document; or 4) state that said document does not exist, on or before November 15, 2007.

SO ORDERED.

/s/ Edward F. Harrington
EDWARD F. HARRINGTON
United States Senior District Judge

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION
NO. 05CV11039EFH

SOUTHEAST FLOATING DOCKS, INC.,

        Plaintiff

v.

AGM MARINE CONTRACTORS, INC.,
CHILDS ENGINEERING CORPORATION,
AND THE TOWN OF PROVINCETOWN,

        Defendants

DEFENDANT TOWN OF
PROVINCETOWN'S SECOND
MEMORANDUM IN OPPOSITION
TO PLAINTIFF'S MOTION FOR
CONTEMPT ORDER & SANCTIONS

## INTRODUCTION

The Town of Provincetown submits this memorandum in support of the Town's

opposition to plaintiff's Motion for Contempt Order & Sanctions ("Motion for

Contempt"). To avoid duplication of matters already addressed in the Town's prior

submissions to the Court in this litigation, the Town will address herein only certain

allegations raised in the Motion for Contempt, and refers the Court to the Town's initial

Memorandum in Opposition to Plaintiff's Motion for Contempt Order & Sanctions, filed

on or about July 15, 2005; and the Town's Memorandum in Opposition to Plaintiff's

Request for Attorneys' Fees and Costs and to Keep Case Open Pending Compliance With

Court Order,[1] filed on or about June 27, 2006. For the Court's convenience, copies of

both memoranda (without exhibits) are attached hereto as Exhibits A and B, respectively.

---

[1] The Town's Memorandum in Opposition to Plaintiff's Request for Attorneys' Fees and Costs and to Keep Case Open Pending Compliance With Court Order addresses the issue of the applicability of the attorney-client privilege to the documents sealed pursuant to the Town of Provincetown's Emergency Motion to Impound Pursuant to Local Rule 7.2, filed on or about July 15, 2005.

At issue is whether the Town complied with this Court's June 2, 2005, order (the "Order"). The Order was issued after a June 1, 2005, hearing regarding plaintiff's request to enforce a third-party arbitration subpoena against the Town. The subpoena was issued in connection with an arbitration between the plaintiff and defendant AGM Marine Contractors, Inc. ("AGM"), and it requested documents from the Town relating to the project known as the "MacMillan Pier Reconstruction" (the "Project").

At the June 1 hearing, the Town's counsel represented that the Town would permit the plaintiff to inspect the Town's non-privileged Project documents. The Order stated in part: "After a hearing . . . the Court orders the dismissal of the Complaint. . . . This dismissal is conditioned upon the Town of Provincetown complying with its representation to the Court . . . that it would provide the Plaintiff . . . access to such of its subpoenaed documents that are not covered by the attorney-client privilege." On June 27 and 28, 2005 the Town allowed plaintiff's counsel to inspect the Town's non-privileged Project files housed at the Department of Public Works ("DPW"), during which time plaintiff's counsel is believed to have scanned hundreds if not thousands of pages of documents.

## ARGUMENT

The Town complied with the Order and, therefore, should not be held in contempt. To succeed on a motion for contempt, "a complainant must prove civil contempt by clear and convincing evidence." Heidelberg Americas, Inc. v. Tokyo Kikai Seisakusho, LTD., 333 F.3d 38, 41 (1st Cir. 2003). In addition, "substantial compliance can avert a finding of contempt." Id. The plaintiff has not and cannot meet this burden, because the Town complied with the Order.

2

In summary, the plaintiff's subpoena requested the following documents relating to the Project:

1. Demands made by the Town under G.L. c.93A;

2. Written communications from December 1, 2003 to the date of the subpoena;

3. Demands for insurance coverage and responses thereto;

4. Proof of wind speed, wind direction, wave height, or any expert opinion regarding the same;

5. Communications from the Town to AGM or AGM's surety for the Project since December 7, 2003;

6. Records concerning modification to the dock system during construction;

7. Expert opinions and reports relating to the damage and fix of the dock system.

All documents responsive to the above requests, if they existed and were not claimed by the Town as privileged, have already been provided to plaintiff's counsel or were included in the documents located at the DPW, which plaintiff's counsel inspected for two full days. Non-privileged documents responsive to item 1 above were provided to plaintiff's counsel by letter dated July 8, 2004, from the Town's counsel. A copy of that letter is attached to the Affidavit of Richard T. Holland that accompanied the Town of Provincetown's Memorandum in Opposition to Plaintiff's Application for Stay of Arbitration and Enforcement of Arbitration Subpoenas ("Opposition to Plaintiff's Application for Stay"), filed on or about June 1, 2005. Much of the communications regarding the Town's effort to obtain relief for the failure of the MacMillan Pier floating dock system, the issue that is the subject of this litigation and plaintiff's arbitration with AGM, were in the form of correspondence between counsel for the Town, AGM, and

AGM's surety (items 2 and 5). That correspondence was also provided to plaintiff's counsel by way of the July 8, 2004 letter from the Town's counsel.

Documents responsive to item 7 were provided to plaintiff's counsel before the June 1 hearing, as the transcript of that hearing indicates (T.12: 1-18). As to item 3, any printed demands for insurance and responses would have been included in the documents inspected by plaintiff's counsel. In addition, by letter from the Town's counsel dated August 2, 2005, plaintiff's counsel was provided a copy of a December 8, 2003 email from the Town's insurance agent, BY&D Insurance Agency, indicating that the Town did not have coverage on the pier or the failed floating dock system. Affidavit of Richard Holland ("Holland Affidavit"), submitted herewith, ¶6.

As to item 6, any responsive printed documents regarding modifications to the pier occurring during construction would have been included in the documents inspected by the plaintiff. Regarding item 4, any printed documents including information about wind speed and direction, and wave height during the December 2003 storm would have been included in the documents inspected by the plaintiff. In addition, the Town provided plaintiff with copies of such documents at a meeting at Town Hall on April 22, 2004, as memorialized in a letter from the Town's counsel to plaintiff's counsel, which is attached as an exhibit to the Affidavit of Richard T. Holland that accompanied the Town's Opposition to Plaintiff's Application for Stay. That information was also included with the documents identified in item 7, as discussed above.

Finally, the Town's counsel, by its August 2, 2005 letter, provided to plaintiff's counsel numerous printed emails and computer-stored data dated on or after December 2003. As stated in that letter: "Hard copies of the enclosed documents, if such had been

printed and filed by the Town, would have been included in the files inspected by you on

June 27 and 28." Holland Affidavit, ¶6. Thus, other than non-privileged documents, the

plaintiff has either been provided all responsive documents or been given the opportunity

to inspect them. Therefore, the Town complied with the Order.

In Plaintiff's Affidavit of Added Time Spent & Documents Produced Filed [sic]

in Support of Contempt Motion, which accompanied the Motion for Contempt, plaintiff

argues that the following documents were not provided:

1.   Records of maintenance of and modifications to the dock system after
     installation;

2.   Damage attributable to each of the two storms;

3.   Full results of investigations by the Town and its consultants;

4.   Details concerning the selection and design of the chosen fix;

5.   Payment records for change order no. 8 and AGM's final payment
     requisition; and

6.   Records of the Town's decision-making since December 7, 2003.

Much of the information about which plaintiff complains was not responsive to

the subpoena. As for item 1, the plaintiff's subpoena did not request records of

maintenance of and modifications to the dock system after installation. It requested only

records "concerning modification of the dock system during construction, installation of

the concrete floating docks, and removal of the wave attenuator or 'breakwater' from the

original project design." As for item 2, other than documents relating to the December

2003 storm, which is the subject of the dispute giving rise to this litigation and plaintiff's

arbitration with AGM, the subpoena does not request information regarding the alleged

second storm. (Indeed, the Town has no idea what this other storm is, nor how it is at all relevant.)

As discussed above, plaintiff's counsel has been provided the documents identified in item 3. Further, the information identified in items 5 and 6 is also not responsive to the subpoena. Nevertheless, any non-privileged documents including information identified in items 1, 2, 5 and 6, if they existed, would have been included in the documents inspected by plaintiff's counsel, or provided to her before or at the June 1, 2005 hearing, or provided to her under cover of the letters from the Town's counsel referenced herein.

Item 4 asks for details concerning the selection and design of the chosen fix. Documents including this information would have been included in the documents inspected by plaintiff's counsel, and to the extent that such information was included in any of the expert materials provided to plaintiff's counsel before the June 1 hearing, discussed above, the plaintiff already has this information.

It should be noted that the Town's counsel offered to have the Town cull from its Project files those non-privileged documents deemed responsive to plaintiff's subpoena. Holland Affidavit, ¶2. Plaintiff's counsel refused that offer and instead chose to inspect the Town's non-privileged Project files herself, as indicated in a June 8, 2005 email from Attorney Rosemary Hayes, counsel for the plaintiff, to Attorney Richard Holland, counsel for the Town. Id. In exchange for the Town's agreement to allow her to scan documents during her inspection, Attorney Hayes promised to create and provide to the Town's counsel a CD Rom containing digital images of the documents scanned, as memorialized in a June 15, 2005 exchange of emails between Attorney Hayes and

Attorney Holland. Holland Affidavit, ¶3. On June 27 and 28, 2005, the Town permitted

Attorney Hayes to inspect the Town's non-privileged Project files, which were housed at

the offices of the Town's Department of Public Works. Thus, the Town complied with

the Order.

The plaintiff filed the Motion for Contempt on or about July 1, 2005. As stated in

the Town's July 15 memorandum (Exhibit A), plaintiff's counsel failed to confer with the

Town's counsel in violation of Local Rule 7.1(A)(2). In a good faith effort to confer with

plaintiff's counsel regarding the allegations in the Motion for Contempt, the Town's

counsel, by email dated July 18, 2005 to Attorney Hayes, requested a copy of the CD

Rom, which Attorney Hayes had promised to provide to the Town. Holland Affidavit,

¶4. Attorney Hayes never provided the CD Rom. Holland Affidavit, ¶6.

Nonetheless, by email dated August 5, 2005, the Town's counsel, in good faith,

emailed to Attorney Hayes certain photographs taken during the December 2003 storm

that was the subject of plaintiff's arbitration with AGM. As stated in that email: "You

may already have these [photographs], but because you have apparently reneged on your

agreement to provide me with a CD Rom of the documents scanned during your June

inspection of documents . . . I cannot know whether you scanned these photographs

during your inspection." Holland Affidavit, ¶5.

In his August 5 email, Attorney Holland referenced his "recent correspondence"

of August 2, 2005. Holland Affidavit, ¶6. That correspondence was in response to

Attorney Hayes' email of June 30, 2005, in which Attorney Hayes alleged that she could

not find certain documents in the Town's non-privileged Project files. As discussed

above, enclosed with Attorney Holland's August 2 letter were hard copies of emails and

other documents. In that letter, Attorney Holland stated: "Finally, I have yet to receive a copy of the CD Rom containing the documents scanned by you during the June 27 and 28 inspection, which you had promised to provide in exchange for the Town permitting you to scan documents during your inspection. Please provide me with such CD Rom." Holland Affidavit, ¶6. Attorney Hayes never responded to that request and never provided the CD Rom. Holland Affidavit, ¶6.

In "Plaintiff's Affidavit of Added Time Spent & Documents Produced Filed [sic] in Support of Contempt Motion" (Exhibit A, page 3 (June 28, 2005 entries)), Attorney Hayes indicates that 16 hours were spent scanning documents during her June 2005 document inspection. Thus the Town believes that the CD Rom, if one was even created, would contain thousands of pages of documents and belie plaintiff's allegation that virtually no responsive documents were contained within the Town's Project files.

Contrary to plaintiff's allegations, the Town has complied with the Order, and the plaintiff has failed to carry its burden to prove the contrary with clear and convincing evidence. The Town provided plaintiff access to the Town's non-privileged Project files in accordance with the Order and as requested by plaintiff's counsel. In addition, plaintiff's counsel has failed and refused to confer in good faith with the Town's counsel in connection with the allegations contained in the Motion for Contempt. Therefore, that motion should be denied.

<u>CONCLUSION</u>

For the foregoing reasons, plaintiff's Motion for Contempt should be denied.

TOWN OF PROVINCETOWN

By its attorneys,


/s/ David J. Doneski
David J. Doneski (BBO# 546991)
Richard T. Holland (BBO# 632661)
Kopelman and Paige, P.C.
 Town Counsel
31 St. James Avenue
Boston, MA 02116
(617) 556-0007

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION
NO. 05CV11039EFH

SOUTHEAST FLOATING DOCKS, INC.,

      Plaintiff

v.

AGM MARINE CONTRACTORS, INC.,
CHILDS ENGINEERING CORPORATION,
AND THE TOWN OF PROVINCETOWN,

      Defendants

TOWN OF PROVINCETOWN'S
MEMORANDUM IN OPPOSITION
TO PLAINTIFF'S MOTION FOR
ENTRY OF FINAL APPEALABLE
ORDER AND OTHER RELIEF

I.    <u>Plaintiff's Motion Must Be Denied Because it is in All Respects Untimely</u>

    Plaintiff's motion should be denied in its entirety. The relief sought by the

plaintiff is not available by way of the motion it has filed. The Court dismissed this

matter by final order dated June 2, 2005. The plaintiff was required to appeal that order

within 30 days of the date of that order pursuant to F.R.A.P. 3(a)(1) and F.R.A.P.

4(a)(1)(A). The plaintiff failed to do so.

    Rule 3(a)(1) states: "An appeal permitted by law as of right from a district court

to a court of appeals may be taken only by filing a notice of appeal with the district clerk

within the time allowed by Rule 4." Rule 4(a)(1)(A) states: "In a civil case, except as

provided in Rules 4(a)(1)(B), 4(a)(4), and 4(c), the notice of appeal required by Rule 3

must be filed with the district clerk within 30 days after the judgment or order appealed

from is entered."

1

Of the three exceptions to the 30-day notice requirement noted in Rule 4(a)(1), only Rule 4(a)(4) could possibly apply here.[1] Rule 4(a)(4) states that the time to file a notice of appeal begins to run from the entry of an order disposing of the last of any of the following motions: (1) motion for judgment after trial under Rule 50(b), which must be filed no later than ten days from the entry of judgment (F.R.C.P. 50(b)); (2) motion to amend or make additional factual findings under Rule 52(b), which must be filed no later than ten days from the entry of judgment (F.R.C.P. 52(b)); (3) motion for attorney's fees under Rule 54 if the district court extends the time to appeal under Rule 58, which motion must be filed no later than 14 days after entry of judgment (F.R.C.P. 54(d)(2)(B)) (emphasis added); (4) motion to alter or amend the judgment under Rule 59, which must be filed no later than ten days after the entry of judgment (F.R.C.P. 59(e)); (5) motion for new trial under Rule 59, which must be filed no later than ten days after the entry of judgment (F.R.C.P. 59(b)); and (6) motion for relief from judgment or order under Rule 60 if the motion is filed no later than ten days after the entry of judgment.

Of the above motions, the plaintiff filed only one that could be deemed timely. On June 16, 2005, the plaintiff filed a Motion for Attorneys' Fees. This motion was denied on July 7, 2005. However, the plaintiff had already requested attorneys' fees in the initial Complaint. That request was denied by this Court when it dismissed this matter by order of June 2, 2005. Therefore, plaintiff's motion for attorneys' fees is essentially a motion for reconsideration of the Court's June 2 order, which does not serve to extend the time for the filing of a notice of appeal. Even were this not the case,

---

[1] Rule 4(a)(1)(B) applies only where the United States or its officer or agency is a party, and Rule 4(c) applies only to an appeal by an inmate confined in an institution.

2

the Court did not extend the time for the plaintiff to appeal under Rule 58, which action is required to toll the running of the 30-day appeal period under F.R.A.P. 4(a)(4). As a result, the time to appeal the Court's June 2, 2005 order has expired. Therefore, the plaintiff's motion must be denied.

In addition, under F.R.C.P. 52(b), a motion for findings of fact and conclusions of law is required to be filed within ten days from the entry of judgment. Plaintiff failed to file timely any such motion. The final order of this Court dismissing this case was entered on June 2, and the last order of this court—denying plaintiff's Motion for Contempt—was entered on July 18, 2005. Thus, the plaintiff's current motion requesting findings of fact, filed on August 3, must be denied as untimely.

Finally, the plaintiff's motion for extension of time to file an appeal was also filed untimely. Pursuant to F.R.A.P. 4(a)(5), a district court "may" extend the time to file a notice of appeal if (1) the movant files its motion no later than 30 days from the expiration of the 30-day filing period prescribed by F.R.A.P. 4(a) (in other words, 60 days from the entry of judgment); and (2) the movant "shows excusable neglect or good cause." The plaintiff filed its current motion on August 3, 2005. However, the plaintiff was required to file such motion no later than August 1, 2005, which date is 30 days after the expiration of the 30-day appeal period that began to run after the June 2 order. Moreover, the plaintiff does not even allege any "excusable neglect" or "good cause" for its failure to file a notice of appeal. Thus, the plaintiff has not, and cannot, comply with Rule 4(a)(5).

II.    Plaintiff's Allegations Regarding the Town's Response to Plaintiff's Arbitration
       Subpoena Are False

The Town also responds to the allegation by plaintiff's counsel that

"Provincetown produced 1-record responsive to the original subpoena where there

obviously exists [sic] thousands." This allegation is contained on page 2 of plaintiff's

motion. Curiously, plaintiff has failed to submit an affidavit to support this statement. In

any event, this allegation is false.

On June 27 and 28, 2005, plaintiff's counsel was provided access to thousands of

pages of documents relating to the MacMillan Pier project, which is the subject of the

plaintiff's arbitration proceeding with AGM Marine Contractors, Inc. Indeed, even

before the June 1, 2005 hearing before this Court, the Town had produced to the plaintiff

or its counsel several of the items within the scope of the subpoena, including (1) the

demands made by the Town pursuant to G.L. c.93A in connection with the defective

floating dock system supplied by the plaintiff; (2) two reports prepared by consultants

retained by the Town in anticipation of litigation; (3) a video recording of the December

2003 storm; and (4) and a binder containing approximately 200 pages of project

documents. These documents are directly responsive to the subpoena.

In her June 30, 2005 email to the Town's counsel, attached hereto as Exhibit A,

plaintiff's counsel admits that the Town produced more than one responsive document.

In that email, Attorney Hayes states:

> Considering the 62-pages (sent in 2004 in response to our PR request and
> in 2005 in response to our subpoena), the 27-page fax of 5-23-05, the 217-
> pages (in a white binder) hand-delivered on 1 June 2005, AND the 2-filing
> cabinets confirmed to be 'everything' at that we spent 2 days reviewing at
> the DPW, there are hundreds of missing, material documents. . . .

4

In that same email, Attorney Hayes admits that more than one responsive document was found within the documents inspected by her on June 27 and 28:

> ALMOST NO INFORMATION AFTER 12/1/03 WAS IN THE
> MATERIALS REVIEWED AT DPW. THERE WAS 1-NEWSPAPER
> ARTICLE FROM 2003, BUT IT WAS BEFORE DECEMBER. THERE
> WAS A COUPLE OF MEMOS, A DRAFT OF THE SETTLEMENT,
> ONE REFERENCE TO C.O. #8 & 1-MEETING MINUTE & THE
> CHILDS ENG'G REPORT. [emphasis in original]

Moreover, in paragraph 14 of "Plaintiff's Affidavit of Added Time Spent & Documents Produced Filed in Support of Contempt Motion," which accompanied Plaintiff's Motion for Contempt Order & Sanctions (filed on July 1 and denied on July 18, 2005), Attorney Hayes states: "The subpoena sought categories of records after December 6-7, 2003; however, only a handful of documents that post-date the storm in question were produced pursuant to the Court's Order." (emphasis added) Further, the following time entries for June 28, 2005, which are included in exhibit A to Attorney Hayes' affidavit, indicate that plaintiff's counsel spent 16 hours scanning documents during the June 2005 document inspection. Apparently, plaintiff's counsel asks this Court to believe that it spent that 16 hours scanning documents that were not responsive to the subpoena.

| | |
|---|---|
| Review of records at DPW-Provincetown | 8.00 |
| Scanning of records and organizing of computer files at Provincetown | 8.00 |
| Scanning of records and organizing of files on disk at Provincetown | 8.00 |

Clearly, the allegation that the Town produced only one responsive document, or that the documents inspected by Attorney Hayes included only one responsive document, is false.

5

Given the history of this matter, it must be assumed that plaintiff's counsel made these allegations despite knowing that they were false.

For the record, it must also be noted that by email dated June 15, 2005, a copy of which is attached hereto as Exhibit B, plaintiff's counsel promised to provide the Town's counsel with a CD Rom containing the digital images of the documents scanned at the June 2005 document inspection. This promise was made in exchange for the Town's agreeing to permit counsel to scan documents during that inspection. However, plaintiff's counsel never provided that CD Rom and has ignored several requests that she do so. As indicated in plaintiff's counsel's June 28 time entry, discussed above, plaintiff's counsel did indeed create a "disk" of the documents scanned. It is believed that plaintiff's counsel scanned dozens if not hundreds of documents during that inspection, and that the CD Rom or disk created by plaintiff's counsel would show as much and would likely further contradict the allegation that the Town produced only one responsive document.

In addition, by letter dated August 1, 2005, the Town's counsel provided the plaintiff's counsel with printed copies of computer-stored documents and emails. A copy that letter is attached hereto as Exhibit C. The electronic versions of the emails and documents were compiled by the Town and forwarded to its counsel for review and production to the plaintiff. A number of these documents are dated on or after December 1, 2003.

Finally, the Court has, presumably, reviewed all of the approximately 42 documents now under seal. Indeed, the Court reviewed eight of those documents during the June 1, 2005 hearing in the presence of counsel. More recently, in its Emergency

Motion to Impound Pursuant to Local Rule 7.2, the Town requested that this Court impound the privileged documents and "review such documents in-camera to determine whether such documents are protected from disclosure by the attorney-client privilege." The Court allowed this motion by order dated July 18, 2005. Thus, by requesting that this Court inspect in-camera the documents in question, the plaintiff is asking this Court to do that which it has already done.

III.    As this Matter Has Been Dismissed and Plaintiff's Counsel Have Violated the Standards Applicable to Attorneys Who Seek Admission to Appear Before the Court Pro Hac Vice, the Order Granting Plaintiff's Counsel's Application for Such Admission Should be Vacated

Pursuant to Local Rule 83.5.3(b), this Court, in its discretion, may grant leave to permit the appearance and practice of an attorney not admitted to practice before it if that attorney files a certificate averring that (1) such attorney is a member of the bar in good standing in every jurisdiction where that attorney has been admitted to practice; (2) there are no disciplinary proceedings pending against that attorney; and (3) the attorney is familiar with the local rules of this Court. On May 18, 2005, this Court allowed the application of attorneys Rosemary Hayes and Tina Caraballo to practice before it as counsel for the plaintiff in this matter.

Plaintiff's counsel's application for leave to appear *pro hac vice* applies to this matter only. However, this matter was dismissed by a June 2, 2005 order of this Court. Since this matter has been dismissed, the leave granted plaintiff's counsel has expired. Plaintiff's counsel would be required to file another application should it wish to continue to practice before this Court.

Regrettably, the conduct of plaintiff's counsel, as outlined below and discussed in each of the Town's memoranda submitted to the Court in opposition to the plaintiff's

7

several motions, constitutes un-lawyerlike conduct and, perhaps, violations of the

Massachusetts Rules of Professional Conduct for which this Court may deny admission

*pro hac vice.* See <u>Panzardi-Alvarez</u> v. <u>United States</u>, 879 F.2d 975, 981 (1st Cir. 1989);

<u>Thomas</u> v. <u>Cassidy</u>, 249 F.2d 91, 92 (1957).

A.    <u>Plaintiff's Counsel Has Made Affirmative Misrepresentations to this Court</u>

Rule 3.3(a)(1) of the Massachusetts Rules of Professional Conduct states that a

"lawyer shall not knowingly . . . (1) make a false statement of material fact or law to a

tribunal." In the comments following that rule, Comment no. 2 states:

> An advocate is responsible for pleadings and other documents prepared
> for litigation, but is usually not required to have personal knowledge of
> matters asserted therein. . . . However, an assertion purporting to be on
> the lawyer's own knowledge, as in an affidavit by the lawyer or in a
> statement in open court, may properly be made only when the lawyer
> knows the assertion is true or believes it to be true on the basis of a
> reasonably diligent inquiry. <u>There are circumstances where failure to
> make a disclosure is the equivalent of an affirmative misrepresentation</u>."
> [emphasis added]

In direct contravention of this Court's June 2, 2005 order, which precluded access

by the plaintiff to such of the Town's documents that are protected from disclosure by the

attorney-client privilege, and contrary to objections by the Town's counsel, Attorney

Hayes obtained documents that she knew were being claimed by the Town as being so

protected. By letter dated June 3, 2005, Attorney Hayes demanded the production of

such documents from Attorney David Corkum, counsel for Fay Spofford & Thorndike

(FST), the engineer for the MacMillan Pier Project, and Simpson Gumpertz Heger

(SGH), the consultant retained by the Town to prepare for litigation. In so doing,

however, Attorney Hayes failed to inform Attorney Corkum that this Court had

conducted a review of those documents at the June 1, 2005 hearing in the presence of

8

counsel of record, including Attorney Hayes, and that the Court, after such review, did not order the production of such documents.

Further, plaintiff's counsel has never informed this Court that it had obtained privileged documents after the issuance of the Court's June 2 order. Since that date, the plaintiff has filed three motions, including the pending Motion for Entry of Final Appealable Order and Other Relief, in which the plaintiff asks this Court to again conduct an in-camera review of the documents in question. In not one of those motions does plaintiff's counsel mention that it has already obtained copies of privileged documents.

Indeed, Attorney Hayes' efforts to obtain privileged materials continue unabated. By facsimile transmittal dated August 9, 2005, to counsel for SGH and FST, both of whom have been subpoenaed to attend the arbitration, Attorney Hayes demanded that FST and SGH bring with them to the arbitration "any 'privileged records' withheld so that they may be reviewed by the arbitrator or otherwise addressed, as appropriate." A copy of this transmittal is attached hereto as Exhibit D. Although Attorney Hayes is well aware that the documents being withheld by SGH and FST are the documents claimed as privileged by the Town, she failed to provide the Town's counsel with a copy of that transmittal. (Counsel for FST and SGH provided the Town's counsel with a copy of that document.)

In addition, in plaintiff's Motion for Entry of Appealable Order (at p.2), filed on August 3, 2005, plaintiff's counsel alleges that "Provincetown produced 1-record responsive to the original subpoena where there exists thousands." Plaintiff's counsel submitted no affidavit to support this allegation. Contrary to this allegation, on June 27

9

and 28, 2005, plaintiff's counsel was provided access to thousands of pages of documents relating to the MacMillan Pier project, which is the subject of the plaintiff's arbitration with AGM Marine Contractors, Inc.

Indeed, as set forth above, the Town had produced to the plaintiff or its counsel several documents directly responsive to the subpoena even before the June 1, 2005 hearing. As detailed in section II, supra, plaintiff's counsel previously admitted that the Town had produced more than one responsive document. Without question, the allegation that the Town produced only one responsive document, or that the documents inspected by plaintiff's counsel included only one responsive document, is false; and it can only be presumed that plaintiff's counsel made such allegation despite knowing that it was false.

B.    Counsel Has Shown a Lack of Familiarity With and a Disregard for L.R. 7.1

Despite certifying to this Court in their application for admission *pro hac vice* a familiarity with the local rules, Attorney Hayes and Attorney Caraballo have failed to comply with the letter and spirit of Local Rule 7.1(A)(2). As discussed in the Town's Memorandum in Opposition to Plaintiff's Motion for Attorneys' Fees, plaintiff's counsel failed to confer with the Town's counsel before filing plaintiff's Motion for Attorneys' Fees. In addition, as is discussed in the Town's Opposition to Plaintiff's Motion for Contempt, plaintiff's counsel again failed to comply with Local Rule 7.1(A)(2) when filing its Motion for Contempt (filed on July 1, 2005).

C.    Plaintiff's Conduct is Intended to Harass and Burden the Defendants

The plaintiff filed the complaint in this matter on May 18, 2005. In that complaint, the plaintiff sought a report prepared by defendant Childs Engineering

10

Corporation. That complaint contained a request for attorneys' fees. Following a hearing on June 1, 2005, this Court dismissed the complaint, and the request for attorneys' fees contained therein, by order of June 2, 2005.

Despite the Court's June 2 order dismissing this action, and absent any justification, the plaintiff filed a Motion for Attorneys' Fees on June 16, 2005, requesting the same relief that this Court expressly denied by virtue of the June 2 order. Amazingly, before this motion was even heard—it was denied on July 7—the plaintiff filed a Motion for Contempt on July 1, 2005. That motion, too, was denied on July 18, 2005. Plaintiff has now filed a third motion. In this motion, the plaintiff asks this Court for relief that is clearly untimely under the Federal Rules of Civil Procedure and Appellate Procedure. This conduct is clearly an abuse of process, intended to coerce the Town of Provincetown to waive its attorney-client privilege lest it continue to be compelled to spend thousands of dollars to defend against frivolous motions. It is unprofessional, unbecoming and deserving of sanctioning by this Court.

11

CONCLUSION

For the foregoing reasons, the plaintiff's motion should be denied, and this Court

should vacate the order granting plaintiff's counsel's application for admission *pro hac*

*vice* and enter appropriate sanctions.

TOWN OF PROVINCETOWN

By its attorneys,

David J. Doneski (BBO# 546991)
Richard T. Holland (BBO# 632661)
Kopelman and Paige, P.C.
 Town Counsel
31 St. James Avenue
Boston, MA 02116
(617) 556-0007

CERTIFICATE OF SERVICE

I hereby certify that on the below date, I served on counsel of record by first class
mail, postage prepaid,  a copy of the foregoing Memorandum in Opposition to Plaintiff's
Motion for Entry of Appealable Order and Other Relief.

DATED:  August 15, 2005

Richard T. Holland

256174/24207/0008



**Provincetown DPW**

# Memo

**To:** Keith Bergman, Town Manager

**From:** David F. Guertin, DPW Director

**Cc.** Building Com Chair Ginny Binder & Members, Rosemary Heard, MassDev, Pier Manager Rex McKinsey, Don Harvie, FS&T, Sandra Turner, Deputy Director

**Date:** December 8, 2003

**Re:** MacMillan Pier Project; *Damage from Storm of Dec 6th & 7th, 2003*

---

Damage was sustained to two (2) areas of the pier; the floating dock system and two (2) connections at the handicap float assembly located adjacent to the west side of the "T".

Damage was sustained during the time period of approximately 9:00 am Saturday [first report of 3 floating docks being broken] to reports of other sections suffering damage from 5:00 pm till 11:00 pm Saturday. For purposes of analysis, we would want to consider any study of the wind/wave action to be from Friday, December 5th, 2003 to 8:00 pm Sunday, December 07, 2003.

For the floating dock system, initial inventory by both AGM and FS&T today reflects that thirteen (13) finger units have damage with three (3) of those units thought to be completely usable, two (2) units are questionable leaving eleven (11) sustaining moderate to severe damage. This is a preliminary count and AGM is hoisting sections over the next several days to make a more accurate determination. FS&T can then also perform a more detailed review.

For the handicap float assembly, damage was to the pin connection to the smaller of the two (2) component barge assembly in two (2) locations where it mates to the main barge. The pintle connection was sheared in both locations. [plate steel was ripped]

It is the opinion of AGM, at this juncture, that damage is on the order of one hundred fifty thousand dollars ($150,000) and we would caution that the retrieval process ongoing by AGM directly relates to a modification of this number as floating dock

● Page 1

pieces are hauled out and examined. It is AGM's position that they are here assisting and does not reflect culpability.

Since most of the damage was sustained by the concrete floating dock system, we need to understand the design criteria that was used. FS&T did not design the floating dock system. They provided a "performance" specifications that the contractor would utilize. The contractor offers a design that fits the parameters and it is the shop drawing process that affords the engineer (FS&T) his opportunity to verify compliance. Performance (the criteria) was based on concrete modules having the ability to withstand certain winds and wave action [Sect. B, Technical Specs page TS-110) and Impact loading (the loading by a boat of a certain size) and Stability of System (TS-111) which is list or pitch when loaded. This then gives rise to the simple question as to whether this storm produced what wave and was that wave action within the criteria…or not. This is the central question.

To that end, we would want to perform due diligence as to the degree or intensity of the storm and that data collection is on-going by both FS&T and by staff.

More thought has been given to what was published via e-mail on Sunday by the Dept and it is holding true that we have three (3) matters to concern ourselves with;
- Immediate "make safe" efforts which AGM has come forward to perform
- Intermediate steps to be taken in the next several weeks to mitigate any potential for more damage to those sections of the floating docks not damaged
- Long term assessment on what floating docks we should have and the host of operational issues we have with no disassembly opportunities or no protection mechanisms in place.

There is correspondence that needs to be issued but would ask that this be discussed in executive session.

**KOPELMAN AND PAIGE, P. C.**

ATTORNEYS AT LAW

31 ST. JAMES AVENUE

BOSTON, MASSACHUSETTS 02116-4102

(617) 556-0007
FAX (617) 654-1735

PITTSFIELD OFFICE
(413) 443-6100

NORTHAMPTON OFFICE
(413) 585-8632

WORCESTER OFFICE
(508) 752-0203

LEONARD KOPELMAN
DONALD G. PAIGE
ELIZABETH A. LANE
JOYCE FRANK
JOHN W. GIORGIO
BARBARA J. SAINT ANDRE
JOEL B. BARD
JOSEPH L. TEHAN, JR.
THERESA M. DOWDY
DEBORAH A. ELIASON
RICHARD BOWEN
DAVID J. DONESKI
JUDITH C. CUTLER
KATHLEEN E. CONNOLLY
DAVID C. JENKINS
MARK R. REICH
BRIAN W. RILEY
DARREN R. KLEIN
JONATHAN M. SILVERSTEIN
ANNE-MARIE HYLAND

EDWARD M. REILLY
DIRECTOR WESTERN OFFICE

WILLIAM HEWIG III
JEANNE S. McKNIGHT
KATHLEEN M. O'DONNELL

PATRICIA A. CANTOR
THOMAS P. LANE, JR.
MARY L. GIORGIO
THOMAS W. McENANEY
KATHARINE GOREE DOYLE
GEORGE X. PUCCI
LAUREN F. GOLDBERG
JASON R. TALERMAN
JEFFREY A. HONIG
MICHELE E. RANDAZZO
GREGG J. CORBO
RICHARD T. HOLLAND
LISA C. ADAMS
ELIZABETH R. CORBO
MARCELINO LA BELLA
VICKI S. MARSH
JOHN J. GOLDROSEN
SHIRIN EVERETT
BRIAN E. GLENNON, II
JONATHAN D. EICHMAN
JOSEPH S. FAIR
LAURA H. PAWLE
JACKIE COWIN
SARAH N. TURNER
JEFFREY T. BLAKE
CAROLYN M. MURRAY
R. ERIC SLAGLE

June 3, 2004

<u>BY FACSIMILE – (407) 649-9974</u>

Rosemary H. Hayes, Esq.
Hayes & Caraballo, P.L.
3117 Edgewater Drive
Orlando, FL 32804

Re:    <u>Warranty Claim on MacMillan Pier, Provincetown, MA</u>

Dear Ms. Hayes:

As you know, by letter dated March 29, 2004 I submitted to you the Town's demand for relief pursuant to G.L. c.93A in connection with its warranty claim for the failure of the floating dock system. That system was manufactured by your client, Southeast Floating Docks, Inc. ("Southeast"), and installed by AGM Marine Contractors ("AGM") as part of the Town's MacMillan Pier Reconstruction (the "Project"). Southeast has made no tender of relief in response to that demand. As you may know, pursuant to G.L. c.93A, §9(3), failure to tender any relief within 30 days of such demand may expose Southeast to damages up to three times the amount of actual damages sustained by the Town.

As you also know, representatives of the Town met with Southeast and the general contractor for the Project, AGM Marine Contractors, at Provincetown Hall on April 22, 2004. At that meeting, AGM and the Town provided additional information to Alan Simpson of Southeast and Gary Greene of Gary Greene Consulting Engineers, Southeast's consultant. That information included an analysis of the wind speeds and wave heights during the storm of December 6-7, 2003, as well as the viewing of a video tape recorded during that storm. As can be seen in that video, a copy of which is enclosed, the floating dock system began to fail early in the day on December 6, 2003, well before the peak of the storm. The information provided by AGM and the Town confirms that the wave heights and wind speeds during the storm did not exceed the design wave height and wind speed specified by the engineer for the project, Fay Spofford & Thorndike, Inc.

KOPELMAN AND PAIGE, P.C.

Rosemary H. Hayes, Esq.
June 3, 2004
Page 2

At the end of the April 22 meeting, Southeast advised that it would review the information provided and conduct its own analysis of the storm and the failure of the floating dock system. To date, I have received no response from Southeast on the status or results of its analysis. In addition, you agreed in your letter of March 30, 2004 to prepare and forward a package of information concerning the alleged material alterations to the floating dock system and other relevant communications. By letter dated April 14, 2004, I requested that such information be delivered to my attention before the April 22 meeting. To date, I have received nothing.

The Town requests that Southeast provide a response to the Town's warranty claim and the results of its investigation into the failure of the floating dock system, along with the information promised in your letter of March 30, within ten days from the date of this letter. Failure to respond within such time will be interpreted as a rejection of the Town's warranty claim, and the Town will pursue all available remedies. Please be advised that the Town reserves all rights under the warranty and at law.

Very truly yours,

Richard T. Holland

RTH/jmv
Enc.
cc:    Town Manager (w/o enc.)
       Director of Public Works (w/o enc.)
221527/PROVMACPIER/0008

LEONARD KOPELMAN
DONALD G. PAIGE
ELIZABETH A. LANE
JOYCE FRANK
JOHN W. GIORGIO
BARBARA J. SAINT ANDRE
JOEL B. BARD
JOSEPH L. TEHAN, JR.
THERESA M. DOWDY
DEBORAH A. ELIASON
RICHARD BOWEN
DAVID J. DONESKI
JUDITH C. CUTLER
KATHLEEN E. CONNOLLY
DAVID C. JENKINS
MARK R. REICH
BRIAN W. RILEY
DARREN R. KLEIN
JONATHAN M. SILVERSTEIN
ANNE-MARIE M. HYLAND
JASON R. TALERMAN
GEORGE X. PUCCI

EDWARD M. REILLY
  DIRECTOR WESTERN OFFICE
WILLIAM HEWIG III
JEANNE S. McKNIGHT

**KOPELMAN AND PAIGE, P. C.**

ATTORNEYS AT LAW

31 ST. JAMES AVENUE

BOSTON, MASSACHUSETTS 02116-4102

(617) 556-0007
FAX (617) 654-1735
————
PITTSFIELD OFFICE
(413) 443-6100
————
NORTHAMPTON OFFICE
(413) 585-8632
————
WORCESTER OFFICE
(508) 752-0203

KATHLEEN M. O'DONNELL
PATRICIA A. CANTOR
THOMAS P. LANE, JR.
MARY L. GIORGIO
MICHELE E. RANDAZZO
THOMAS W. McENANEY
KATHARINE GOREE DOYLE
LAUREN F. GOLDBERG
JEFFREY A. HONIG
GREGG J. CORBO
RICHARD T. HOLLAND
ELIZABETH R. CORBO
MARIA C. ROTA
VICKI S. MARSH
JOHN J. GOLDROSEN
SHIRIN EVERETT
BRIAN E. GLENNON, II
JONATHAN D. EICHMAN
JOSEPH S. FAIR
LAURA H. PAWLE
CAROLYN M. MURRAY
JACKIE COWIN
SARAH N. TURNER
JEFFREY T. BLAKE
R. ERIC SLAGLE
CAROLYN KELLY MACWILLIAM
ANNE C. ROSENBERG
PETER L. MELLO

August 2, 2005

Rosemary H. Hayes, Esq.
Hayes & Caraballo, PL
830 Lucerne Terrace
Orlando, Fl 32801

Re:     Southeast Floating Docks, Inc. v. AGM Marine Contractors, Inc. et al.
        <u>U.S. District Court, C.A. No. 05-10039-EFH</u>

Dear Ms. Hayes:

As we discussed via email on or about July 18, I offer the following in response to your email of June 30, 2005, in connection with the above-referenced matter. In that email, you state that "there are hundreds of missing, material documents." This bald allegation has no merit and is deserving of no response other than the following: The Town has complied with the Court's June 2 order by providing you access to the Town's files for the MacMillan Pier project.

In your email you reiterate the requests for documents contained in the exhibit appended to the arbitration subpoena served on the Town in February 2005. Since the Town has provided you with access to the Town's project files, I do not intend to respond in detail to each such request. However, certain items should be noted for the record. First, as to your suggestion that you have not been provided with copies of all written demands made by or on behalf of the Town pursuant to G.L. c.93A in connection with the failure of the floating dock system, such demands were identified and provided to you with my letter dated July 8, 2004.

Second, regarding your suggestion that the Town did not provide a copy of the video recording of the December, 2003 storm, please be reminded that I provided a copy of this video to you with my letter of June 3, 2004. If you require additional copies of any materials already provided, I will be happy to do so at your expense.

KOPELMAN AND PAIGE, P.C.
Rosemary H. Hayes, Esq.
August 2, 2005
Page 2

Third, as for the settlement agreement between AGM Marine Contractors and the Town, it is my understanding that you have a copy of this agreement. If this is not true, please call me and I shall provide you with a copy.

Fourth, as for computer-stored data and electronic mail dated on or after December 1, 2003, I enclose hard copies of e-mails and documents which were compiled electronically and forwarded to me for printing and production to you. Hard copies of the enclosed documents, if such had been printed and filed by the Town, would have been included in the files inspected by you on June 27 and 28.

Finally, I have yet to receive a copy of the CD Rom containing the documents scanned by you during the June 27 and 28 inspection, which you had promised to provide in exchange for the Town permitting you to scan documents during your inspection. Please provide me with such CD Rom.

Should you have any questions, please call me.

Very truly yours,

Richard T. Holland

RTH/sjm
Enc.
cc:    Town Manager
       Public Works Director
       Charles Schaub, Esq.

257090/PROV/0008

KOPELMAN AND PAIGE, P. C.

ATTORNEYS AT LAW

31 ST. JAMES AVENUE

BOSTON. MASSACHUSETTS 02116-4102

(617) 556-0007
FAX (617) 654-1735

PITTSFIELD OFFICE
(413) 443-6100

NORTHAMPTON OFFICE
(413) 585-8632

WORCESTER OFFICE
(508) 752-0203

LEONARD KOPELMAN
DONALD G. PAIGE
ELIZABETH A. LANE
JOYCE FRANK
JOHN W. GIORGIO
BARBARA J. SAINT ANDRE
JOEL B. BARD
JOSEPH L. TEHAN, JR.
THERESA M. DOWDY
DEBORAH A. ELIASON
RICHARD BOWEN
DAVID J. DONESKI
JUDITH C. CUTLER
KATHLEEN E. CONNOLLY
DAVID C. JENKINS
MARK R. REICH
BRIAN W. RILEY
DARREN R. KLEIN
JONATHAN M. SILVERSTEIN
ANNE-MARIE HYLAND

EDWARD R. REILLY
DIRECTOR WESTERN OFFICE

WILLIAM HEWIG III
JEANNE S. McKNIGHT
KATHLEEN M. O'DONNELL

PATRICIA A. CANTOR
THOMAS P. LANE, JR.
MARY L. GIORGIO
THOMAS W. McENANEY
KATHARINE GOREE DOYLE
GEORGE X. PUCCI
LAUREN F. GOLDBERG
JASON R. TALERMAN
JEFFREY A. HONIG
MICHELE E. RANDAZZO
GREGG J. CORBO
RICHARD T. HOLLAND
LISA C. ADAMS
ELIZABETH R. CORBO
MARCELINO LA BELLA
VICKI S. MARSH
JOHN J. GOLDROSEN
SHIRIN EVERETT
BRIAN E. GLENNON, II
JONATHAN D. EICHMAN
JOSEPH S. FAIR
LAURA H. PAWLE
JACKIE COWIN
SARAH N. TURNER
JEFFREY T. BLAKE
CAROLYN M. MURRAY
R. ERIC SLAGLE

July 8, 2004

BY FACSIMILE – (407) 649-9974 9379

Rosemary H. Hayes, Esq.
Hayes & Caraballo, P.L.
3117 Edgewater Drive
Orlando, FL 32804

Re:    Warranty Claim on MacMillan Pier, Provincetown, MA

Dear Ms. Hayes:

I am in receipt of your letter of June 14, 2004, which is in response to my letter of June 3, 2004. In my June 3 letter, I requested a response to the Town's warranty claim and the results of the investigation by Southeast Floating Docks, Inc. into the failure of its floating dock system, along with the information promised in your letter of March 30, 2004. Your June 14 letter provided none of this information. Southeast has refused and failed to honor its obligations under the express warranty. Therefore, the Town shall pursue its legal remedies against Southeast for breach of warranty and any violations of G.L. c.93A.

Further, I note that you have made several requests for documents in your letter. First, you have requested documents upon which I relied in paragraph 2 of my letter of June 3, alleging that such paragraph includes "details not contained in our specifications." Please note that the project records, already available to Southeast, including the specifications, indicate the parameters of the design, which the floating dock system, as provided by Southeast, failed to satisfy. Should you need additional copies, please specify the documents you seek.

Second, you have requested documents pursuant to G.L. c.66, § 10, the Public Records Law. Please be advised that I am neither an officer nor employee of the Town under the definition of "public records" contained within G.L. c.4, §7. Nor is this firm a "custodian" or "governmental entity," as those terms are defined by the applicable regulations. See 950 CMR 32.03. Nevertheless, I will respond to your request for written demands made by or on behalf of the Town under G.L. c.93A by confirming that the only such written demand made by this office

KOPELMAN AND PAIGE, P.C.

Rosemary H. Hayes, Esq.
July 8, 2004
Page 2

on behalf of the Town was the March 29, 2004 demand delivered to and received by you on behalf of Southeast. Should you need another copy of this letter, please let me know. As to your request for all written and printed communications relating to the damage to the floating dock system and dated on or after December 1, 2003, I enclose correspondence between this office and counsel for AGM Marine Contractors (AGM) and counsel for the surety that issued the performance bond to AGM for the project. Please be advised that the remaining written or printed communications dated on or after December 1, 2003 constitute work product and intra-agency memoranda or letters relating to policy positions being developed by the Town, and therefore, such documents are exempted from disclosure pursuant to G.L. c.4, §7, cl.26(d).

Should you have any questions or comments, please contact me.

Very truly yours,

Richard T. Holland

RTH/ja
Enc.
cc:    Town Manager (w/o enc.)
       Director of Public Works (w/o enc.)
224780/PROVMACPIER/0008

# EXHIBIT H

| NO. | DOC. REQUEST | OBJECTION | PRODUCED? | COMMENTS[1] | SUPPORT |
|---|---|---|---|---|---|
| 1 | Town's 51 pages of SGH documents with exhibits | The Court's order does not require a response to this request. | See Town's Memorandum, submitted herewith. | See Town's Memorandum. | |
| 2 | Town's 9 pages of FST documents with exhibits | The Court's order does not require a response to this request. | See Town's Memorandum. | See Town's Memorandum. | |
| 3 | Records of maintenance & modifications to docks | (1) Southeast does not specify a particular document and did not provide a copy of the document that it claims refers to the documents requested; (2) "Records of maintenance" were not requested in the Subpoena. | Yes, if the document(s) existed. | Any documents concerning maintenance and modifications to the floating docks would have been included in the documents inspected by Southeast's counsel on June 27 and 28, 2005. | David F. Guertin ("Guertin Affidavit"), submitted herewith; see also Town's Memorandum and exhibit B thereto. |
| 4 | Details of selection & design of fix. | Southeast does not specify a particular document and did not provide a copy of the report it claims refers to the documents requested. | Yes. | Any non-privileged documents regarding the repair and replacement of the floating docks following the December 2003 storm have been produced. | Guertin Affidavit; see also Town's Memorandum and exhibit B thereto. |

---

[1] References in the comments to documents that have been produced refers to non-privileged documents. See the Town's Privilege Log, submitted herewith.

| 5 | Backup & payment records, including C.O. #8 & Final Pay Application | N/A | Yes. | Documents regarding payments to AGM for the Project have been produced, including change order # 8 and all of AGM's applications for payment. (It should be noted that Change order # 8 was not approved by the Board of Selectmen until September 26, 2005, after AGM fulfilled its obligations under the settlement agreement between it and the Town; well after the issuance of the Subpoena on February 23, 2005; and well after the Town's production of documents to Southeast in accordance with the Subpoena.) | Guertin Affidavit; see also Town's Memorandum and exhibit B thereto. |
| 6 | Data on both storms | The Subpoena does not request data regarding any storm other than the storm that occurred in December 2003. | Yes, if the document(s) existed. | All written data regarding the December 2003 storm that caused damage to the floating docks were produced at various times, including at a meeting with Southeast on April 22, 2004, and pursuant to a letter from the Town's counsel dated August 2, 2005. In addition, any storm data existing in printed form would have been included in the documents inspected by Southeast's counsel in June 2005. | Guertin Affidavit; see also Town's Memorandum and exhibit B thereto. |
| 7 | Fully executed AGM settlement agreement with exhibits. | The Subpoena does not request a copy of any settlement agreements. | Yes. | The signed settlement agreement was produced. By letter dated August 2, 2005, from the Town's counsel, Southeast's counsel was asked if she needed another copy of the settlement | Guertin Affidavit; see also Town's Memorandum and exhibit F thereto. |

| | | | | | |
|---|---|---|---|---|---|
| | | | | agreement, and she never responded. | |
| 8 | Records relating to 1/05 nor'easter. | See Town's response to # 6, above. | Yes, if the document(s) existed. | See Town's response to # 6, above. | Guertin Affidavit. |
| 9 | Records relating to Town/FST settlement | (1) Southeast does not specify a particular document and did not provide copies of the documents it claims refer to the documents requested; (2) The Subpoena did not request documents regarding any such settlement. | No, because the documents do not exist. | There is no settlement agreement between the Town and FST in connection with the Project. | Guertin Affidavit. |
| 10 | "correspondence that needs to be issued" | (1) This request is vague; (2) Southeast does not specify a particular document and did not provide a copy of the memo that it claims refer to the documents requested. | Yes (see comments). | All non-privileged correspondence to or from the Town in connection with the Project and responsive to the Subpoena has been produced. | Guertin Affidavit; see also Town's Memorandum and exhibit B thereto. |
| 11 | Results of "due diligence" by Town staff & FST, including info. From NOAA (Taunton) | (1) This request is vague; (2) Southeast does not specify a particular document and did not provide copies of the memo and email it claims refers to the documents requested. | Yes (see comments). | Any documents reflecting the results of any investigation of the December 2003 storm damage to the floating docks have been produced. | Guertin Affidavit; see also Town's Memorandum and exhibit B thereto. |

| | | | | |
|---|---|---|---|---|
| 12 | Town correspondence to FST, Zurich and others and all responses thereto. | Southeast does not specify a particular document and did not provide a copy of the memo it claims refers to the documents requested. | Yes. | Any correspondence from the Town to FST, Zurich North America (AGM's surety) and any correspondence received by the Town from those parties has been produced, including by way of cover letter dated July 8, 2004 from the Town's counsel. | Guertin Affidavit; see also Town's Memorandum and exhibit G thereto. |
| 13 | 9/23/04 meeting minutes. | (1) The subpoena does not request meeting minutes; (2) Southeast does not identify the Town board whose meeting minutes it claims were not produced. | Yes, if a meeting was held and minutes were prepared. | Minutes of meetings of the Town's boards and the Pier Corporation were available to Southeast on the Town's website, as Southeast's counsel was advised by the Town's counsel verbally in June 2005, and by email sent June 8, 2005. Moreover, meeting minutes relating to the Project would have been included in the documents inspected by Southeast's counsel on June 27 and 28, 2005, as confirmed by the documents listed in exhibit A of Southeast's Memorandum, which includes meeting minutes. | Guertin Affidavit; see also Town's Memorandum and exhibit B thereto. |
| 14 | Maintenance logs or other records of maintenance. | (1) Southeast does not specify a particular document and did not provide a copy of the document that it claims refers to the documents requested; (2) The Subpoena did not request maintenance logs or other records of maintenance. | Yes, if the document(s) existed. | Any records of maintenance of the floating docks have been produced, including by way of the documents inspected by Southeast's counsel on June 27 and 28, 2005. | Guertin Affidavit; see also Town's Memorandum and exhibit B thereto. |

| 15 | Correspondence/proposed fix for steel float. | (1) Southeast does not specify a particular document and did not provide copies of the emails it claims refer to the documents requested; (2) The subpoena does not request correspondence or any proposed fix for a steel float, which is not part of the floating docks manufactured by Southeast. | Yes, if the document(s) existed. | Any correspondence regarding the steel float has been produced, including by way of the documents inspected by Southeast's counsel on June 27 and 28, 2005. | Guertin Affidavit; see also Town's Memorandum and exhibit B thereto. |
|----|----|----|----|----|----|
| 16 | Records relating to AGM's ownership of pieces of floats. | (1) This request is vague; (2) Southeast does not specify a particular document and did not provide a copy of the email it claims refers to the documents requested. | Yes, if the document(s) existed. | Non-privileged records regarding the floating docks have been produced, including documents, if any, that may relate to the allegation of "AGM's ownership of pieces of floats," including by way of the documents inspected by Southeast's counsel on June 27 and 28, 2005. | Guertin Affidavit; see also Town's Memorandum and exhibit B thereto. |
| 17 | AGM letter. | (1) This request is vague; (2) Southeast does not specify a date of the "AGM letter," and did not provide a copy of the report it claims refers to the letter requested. | Yes (see comments) | All letters from AGM received by the Town have been produced, including by way of the documents inspected by Southeast's counsel on June 27 and 28, 2005. | Guertin Affidavit; see also Town's Memorandum and exhibit B thereto. |
| 18 | Questionnaire re: AGM | (1) The Subpoena does not request such a | Yes. | There does exist a March 8, 2005 Past Performance Questionnaire signed by | Guertin Affidavit; see also Town's |

| | | | | | |
|---|---|---|---|---|---|
| | | document; (2) This request is vague; (3) Southeast did not provide a copy of the letter that it claims refers to the "questionnaire." | | the DPW Director for AGM. It would have been included with the documents inspected by Southeast's counsel on June 27 and 28, 2005. | Memorandum and exhibit B thereto. |
| 19 | Report of Zurich meeting dated 8/26/04 | The Subpoena does not request any "Report of Zurich meeting" or any other meeting. | Yes. | There exists an August 27, 2004 memo between the Town Manager, DPW Director and the Town's Counsel. The document was produced to Attorney Rosemary Hayes under cover of letter dated August 2, 2005 from the Town's counsel. | Guertin Affidavit; see also Town's Memorandum and exhibit B thereto. |
| 20 | AGM letter of 9/23/04 | Southeast did not provide a copy of the memo it claims refers to the "AGM letter of 9/23/04." | Yes, if the document(s) existed. | All letters received by the Town from AGM in connection with the Project have been produced, including by way of the documents inspected by Southeast's counsel on June 27 and 28, 2005. | Guertin Affidavit; see also Town's Memorandum and exhibit B thereto. |
| 21 | Exhibits to 9/23/04 Memo | Southeast did not provide a copy of the memo it claims refers to "exhibits to 9/23/04 Memo." | Yes. | The exhibits to the September 23, 2004 memo relate to a difference project, save for two (the "Pier Floating Dock Matrix" and "DEP Chapter 91 Plans"), both of which would have been included in the documents inspected by Southeast's counsel on June 27 and 28, 2005. | Guertin Affidavit; see also Town's Memorandum and exhibit B thereto. |
| 22 | Executed agreement for services & documentation relating thereto (Childs Eng'g) | The Subpoena did not request such a document. | Yes, if it existed. | The Town produced a copy of a December 15, 2003 letter proposal from Childs Engineering. That proposal, along with other correspondence from | Guertin Affidavit; see also Town's Memorandum and exhibit B thereto. |

| | | | | Childs to the Town, was produced to Attorney Rosemary Hayes under cover of letter dated August 2, 2005 from the Town's counsel. | |
|---|---|---|---|---|---|
| 23 | Documentation of AGM estimate of $150,000 | (1) This request is vague; (2) Southeast does not specify a particular document and did not provide a copy of the memo it claims refers to the documents requested. | Yes, if the document(s) existed. | Any documents regarding any estimate of AGM concerning the Project would have been included in the documents inspected by Southeast's counsel on June 27 and 28, 2005. | Guertin Affidavit; see also Town's Memorandum and exhibit B thereto. |
| 24 | FS&T 'post-mortem' & documents relating to sufficiency of FS&T design, the piling, its subconsultant's wind/wave analysis and issues relating thereto & responses to such inquiries | (1) This request is vague; (2) Southeast did not provide a copy of the memo it claims refers to the documents requested. | Yes, if the document(s) existed. | Any documents regarding any wind or wave analysis performed by FST or any of its consultants have been produced, including by way of a letter dated August 2, 2005 from the Town's counsel. | Guertin Affidavit; see also Town's Memorandum and exhibit B thereto. |
| 25 | Complete Zoino information re: piling | (1) This request is vague; (2) Southeast did not provide a copy of the memo it claims refers to the documents requested; (3) The Subpoena did not request "Zoino information." | Yes, if the document(s) existed. | The Town does not know what documents Southeast is referring to. Nevertheless, any documents containing such information, if related to the Project, would have been included in the documents inspected by Southeast's counsel on June 27 and 28, 2005. | Guertin Affidavit; see also Town's Memorandum and exhibit B thereto. |
| 26 | SK #1, FS&T report, email to pier users, notice of meeting, DPW report | (1) The Subpoena did not request "email to pier users" or "notice of | Yes, if the document(s) existed. | Southeast fails to specify the documents sought. Nevertheless, documents responsive to the Subpoena have been | Guertin Affidavit; see also Town's Memorandum and |

| # | Document | Objection | Response | | Reference |
|---|---|---|---|---|---|
| | | meeting"; (2) This request is vague; (3) Southeast did not provide a copy of the memo it claims refers to the documents requested. | | produced, including documents received by the Town from FST. | exhibit B thereto. |
| 27 | Childs' preliminary report, DPW's commentary, DPW 12/28/03 transmittal & attachments, color photos | (1) This request is vague; (2) Southeast did not provide a copy of the memo it claims refers to the documents requested. | Yes, if the document(s) existed. (See comments) | The single report prepared by Childs Engineering was produced, as were all non-privileged documents responsive to the Subpoena, including transmittals from the DPW. Photographs of the storm damage to the floating docks have been produced, including by way of an August 5, 2005 email from the Town's counsel. | Guertin Affidavit; Affidavit of Richard T. Holland, submitted herewith; see also Town's Memorandum and exhibit B thereto. |
| 28 | 9/23/04, 9/28/04 meeting minutes. | (1) The Subpoena does not request meeting minutes; (2) Southeast does not identify the Town board whose meeting minutes it claims were not produced; (3) Southeast did not provide a copy of the notice it claims references the meetings. | See # 13, above. | See the Town's comments to # 13, above. | Guertin Affidavit; see also Town's Memorandum and exhibit B thereto. |
| 29 | Pier Corp meeting minutes | The Subpoena does not request meeting minutes | Yes. | See the Town's comments to # 13, above. | Guertin Affidavit; see also Town's Memorandum and exhibit B thereto. |

| | | | | |
|---|---|---|---|---|
| 30 | Calculations, results and records of remedial tests, testing in regard to southwest exposure, etc. | (1) This request is vague; (2) Southeast does not specify a particular document, and did not provide a copy of the memo it claims refers to the documents requested. | Yes, if the document(s) existed. | The Town does not know what calculations, results or tests Southeast is referring to. The Town did not conduct "testing in regard to southwest exposure." If any such documents existed, they would have been included in the documents inspected by Southeast's counsel on June 27 28, 2005, or included with letters from the Town's counsel. | Guertin Affidavit; see also Town's Memorandum and exhibit B thereto. |
| 31 | Wave analysis, wave design criteria, information on marina design criteria, ADA docking system criteria, preliminary design assumptions & parameters, design criteria for wave attenuation system | (1) Other than "proof of wind speed, wind direction, wave height," and "records concerning . . . removal of the wave attenuator," the Subpoena did not request such information; (2) Southeast does not specify a particular document. | Yes, if the document(s) existed. (See comments) | Documents referencing wave analysis or wave criteria were produced at various times, including at a meeting with representatives of Southeast on April 22, 2004, and pursuant to a letter from the Town's Counsel dated August 2, 2005. | Guertin Affidavit; see also Town's Memorandum and exhibits B and F thereto. |
| 32 | FEMA information and any requests & responses | (1) The Subpoena did not request FEMA information; (2) The request is vague; (3) Southeast did not provide a copy of the memo it claims refers to the documents requested. | Yes, if the document(s) existed. | Any correspondence to and from the Town regarding damage to the floating docks responsive to the Subpoena have been produced, including by way of the documents inspected by Southeast's counsel on June 27 28, 2005. | Guertin Affidavit; see also Town's Memorandum and exhibit B thereto. |
| 33 | All written, printed or pictorial materials | (1) The Subpoena does not request information | Yes, if the document(s) | Any documents responsive to the Subpoena and referencing or relating to | Guertin Affidavit; see also Town's |

| # | Description | Objection | Answer | Explanation | Reference |
|---|---|---|---|---|---|
| | referencing or relating to design errors and/or negligence (including, but not limited to, piling and wind/wave analysis) by FS&T or its privies | regarding design errors or negligence of FST or its privies; (2) Southeast does not specify a particular document, and did not provide copies of the documents it claims refer to the information requested. | existed. | any design errors or negligence of FST in connection with the floating docks would have been included in the documents produced to Southeast. | Memorandum and exhibit B thereto. |
| 34 | Interim Agreement/Plan and weekend work product | (1) The Subpoena did not request such a document; (2) The request is vague; (3) Southeast did not provide a copy of the email it claims refers to the documents requested. | Yes, if the document(s) existed. | The June 14, 2004 email referenced by Southeast in support of its request includes the attachment referenced in the email. There is no other document known to exist by the Town. | Guertin Affidavit; see also Town's Memorandum and exhibit B thereto. |
| 35 | Plan for seasonal removal of docks and tests and results relating thereto | (1) The Subpoena did not request such a document; (2) The request is vague; (3) Southeast did not provide a copy of the email it claims refers to the documents requested. | Yes, if the document(s) existed. | The subject matter of the April 20, 2005 email referenced by Southeast in support of its request is not responsive to the Subpoena, and the email itself is dated after the date of the Subpoena. Thus, the email is not responsive to the Subpoena. Nevertheless, such documents, if the document(s) existed, would have been included in the documents inspected by Southeast's counsel on June 27 and 28, 2005. | Guertin Affidavit; see also Town's Memorandum and exhibit B thereto. |
| 36 | The simple matrix and subsequent analysis to include expenses | The matrix constitutes an attorney-client communication and is protected from disclosure | No, because it is privileged. | See Town's Privilege Log, submitted herewith. | Privilege Log; June 2, 2005 Order. |

| # | Request | Southeast's Response | Produce | Town's Response | Authority |
|---|---------|----------------------|---------|-----------------|-----------|
| | | by the attorney-client privilege. | | | |
| 37 | Responsive email [to 3/24/04 email referenced by Southeast] | (1) The request is vague; (2) Southeast did not provide a copy of the email it claims refers to the documents requested. | Yes, if it existed, but there is no known email response to the 3/24/04 email. | The March 24, 2004 email referenced by Southeast in support of its request does not request an email response, and nothing indicates that one was ever sent. In addition, emails responsive to the Subpoena have been produced, including by way of a letter dated August 2, 2005 from the Town's counsel. | Guertin Affidavit; see also Town's Memorandum and exhibit B thereto. |
| 38 | Site observation video. | Southeast continues to request the video of the December 2003 storm, even though it was shown the video and its counsel has acknowledged receiving a copy of the video. | Yes. | The video of the December 2003 storm was shown to Southeast's representatives at an April 22, 2004 meeting, and was delivered to Attorney Rosemary Hayes under cover of a letter dated June 3, 2005 from the Town's Counsel. | Guertin Affidavit; see also Town's Memorandum and exhibits B and E thereto. |
| 39 | Repair procedure submitted to DPW | (1) The request is vague; (2) Southeast does not specify a particular document, and did not provide a copy of the email it claims refers to the "repair procedure." | Yes, if the document(s) existed. | The Town is not aware of what document Southeast is referring to. Any documents made or received by the Town regarding the repair of storm damage to the floating docks have been produced, including by way of the documents inspected by Southeast's counsel on June 27 and 28, 2005. | Guertin Affidavit; see also Town's Memorandum and exhibit B thereto. |
| 40 | All communications to/from steel float supplier regarding failure of steel float during 12/03 | (1) The Subpoena did not request such communications; (2) Southeast does not | Yes, if the document(s) existed. | The steel float has nothing to do with, and is not a part of, the floating docks, and is not the subject of any of the requests in the Subpoena. Nevertheless, | Guertin Affidavit; see also Town's Memorandum and exhibit B thereto. |

| | | | | |
|---|---|---|---|---|
| | and/or 1/05 storms | specify a particular document. | | any documents regarding the steel float, if the document(s) existed, have been produced, including by way of the documents inspected by Southeast's counsel on June 27 and 28, 2005. | |
| 41 | 35 pages of backup for C.O. #8, original transmittal | N/A | Yes. | Change Order No. 8 and its attachments have been produced. | Guertin Affidavit; see also Town's Memorandum and exhibit B thereto. |
| 42 | Final application for payment & backup | N/A | Yes. | AGM's final application for payment to the Town, and any "backup" to that change order, have been produced. | Guertin Affidavit; see also Town's Memorandum and exhibit B thereto. |
| 43 | 2/19/99 meeting minutes and information provided by Bellingham Marine | (1) The Subpoena does not request meeting minutes; (2) Southeast does not identify the Town board whose meeting minutes it claims were not produced; (3) Southeast did not provide a copy of the memo it claims references the meeting. | Yes, if the document(s) existed. | As to the request for meeting minutes, see the Town's comments to # 13, above. | Guertin Affidavit; see also Town's Memorandum and exhibit B thereto. |
| 44 | 12/07/04 meeting minutes & draft of BOS re: dock re-design | (1) The Subpoena does not request meeting minutes; (2) Southeast does not identify the Town board whose meeting minutes it claims were not produced; (3) | Yes, it the documents existed. (See also # 13, above) | As to request for meeting minutes, see the Town's comments to # 13, above. | Guertin Affidavit; see also Town's Memorandum and exhibit B thereto. |

| | | | | |
|---|---|---|---|---|
| | | Southeast did not provide a copy of the notice it claims references the meeting. | | |
| 45 | 1999 estimate from Bellingham Marine. | (1) The Subpoena did not request estimates from Bellingham Marine; (2) Southeast did not provide a copy of the memo it claims refers to the documents requested. | Yes, if the estimate existed. | The Town is not aware of what estimate Southeast is referring to. If such an estimate had been received by the Town for the Project, it would have been included in the documents inspected by Southeast's counsel on June 27 and 28, 2005. | Guertin Affidavit; see also Town's Memorandum and exhibit B thereto. |
| 46 | Insurance records. | The Subpoena does not request "insurance records," but instead requests "all demands for insurance coverage and responses thereto." | Yes. (See comments) | Documents regarding "demands for insurance coverage and responses thereto," as requested in the Subpoena, have been produced. The Town had no insurance for the floating docks, and Southeast's counsel has been advised of this fact repeatedly. | Guertin Affidavit; see also Town's Memorandum and exhibit B thereto. |
| 47 | February 2004 Town meeting minutes. | (1) The Subpoena does not request meeting minutes; (2) Southeast does not identify the Town board whose meeting minutes it claims were not produced; (3) Southeast did not provide a copy of the memo it claims references the meetings. | See # 13, above. | As to the request for meeting minutes, see the Town's comments to # 13, above. | Guertin Affidavit; see also Town's Memorandum and exhibit B thereto. |
| 48 | Records reflecting how Town came to blame | Southeast does not specify a particular | Yes. (See comments) | All documents responsive to the Subpoena have been produced or made | Guertin Affidavit; see also Town's |

| | | | | |
|---|---|---|---|---|
| | Southeast & meeting minutes reflecting this decision | document, and did not provide a copy of the meeting minutes that it claims refers to the records requested. | | available to Southeast. (In addition, the Town sought relief for the damage to the floating docks from AGM who, in turn, sought relief from Southeast, with whom AGM, and not the Town, had a contract. | Memorandum and exhibit B thereto. |
| 49 | Complete expert opinions and information, including in regard to FS&T and its subconsultants | Southeast continues to request expert opinions even though the Town has repeatedly represented that all such opinions have been produced or made available to Southeast | Yes, if the document(s) existed. (See comments) | The Town has produced or made available to Southeast all expert opinions received by the Town regarding the storm damage to the floating docks. | Guertin Affidavit; Holland Affidavit; see also Town's Memorandum and exhibit B thereto. |
| 50 | Records of investigation, analysis & decision on "survivability without a wave barrier." | (1) The Subpoena did not request such documents, but instead requested only documents "concerning . . . removal of the wave attenuator or 'breakwater' from the original project design"; (2) Southeast does not specify a particular document, and did not provide a copy of the email it claims refers to the records requested. | Yes, if the document(s) existed. (See comments) | The December 7, 2003 email does not state that there was any "investigation, analysis & decision on 'survivability without a wave barrier.'" Any documents regarding any such investigation, analysis or decision have been produced or made available to Southeast, including by way of the documents inspected by Southeast's counsel on June 27 and 28, 2005. | Guertin Affidavit; see also Town's Memorandum and exhibit B thereto. |
| 51 | Meeting minutes for 12/8/03 Town meeting(s) | (1) The Subpoena does not request meeting minutes; (2) Southeast | See # 13, above. | See the Town's comments to # 13, above. | Guertin Affidavit; see also Town's Memorandum and |

| | | | | exhibit B thereto. |
|---|---|---|---|---|
| | | does not identify the Town board whose meeting minutes it claims were not produced; (3) Southeast did not provide a copy of the memo it claims references the meetings. | | |
| 52 | Buoy data obtained by Harbor Master | (1) The Subpoena does not request buoy data; (2) Southeast does not specify a particular document, and did not provide a copy of the memo it claims references the data requested. | Yes, if the document(s) existed. | Any buoy data regarding the December 2003 storm existing in printed form would have been produced or made available to Southeast by way of the documents inspected by Southeast's counsel on June 27 and 28, 2005, or the documents transferred to Southeast by the Town's counsel. | Guertin Affidavit; see also Town's Memorandum and B thereto. |
| 53 | R. Holland's request for info provided by FS&T on 6/22/04, all materials provided & analysis of wavelength, etc. referenced | N/A | Yes. | All documents attached to the June 22, 2004 letter to Attorney Richard Holland have been produced by way of the documents inspected by Southeast's counsel on June 27 and 28, 2005, or the documents transferred to Southeast by the Town's counsel. | Guertin Affidavit; see also Town's Memorandum. |

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION
NO. 05CV11039EFH

---

SOUTHEAST FLOATING DOCKS, INC.,

      Plaintiff

v.

AGM MARINE CONTRACTORS, INC.,
CHILDS ENGINEERING CORPORATION,
AND THE TOWN OF PROVINCETOWN,

      Defendants

---

<u>AFFIDAVIT OF DAVID F. GUERTIN</u>

     I, David F. Guertin, on oath, hereby depose and say of my own personal knowledge as follows:

1.     I am the Director of the Department of Public Works ("DPW") for the Town of Provincetown and have been so employed since 1998.

2.     In or about 2000, the DPW was made responsible for administering the project commonly known as "MacMillan Pier Reconstruction" ("Project"), which is the subject of this litigation. I was designated by the Town Manager to be his liaison with the Town's Building Committee, which, under the Town Charter, is responsible for overseeing, generally, the Town's construction projects and making recommendations regarding such projects to the Town's Board of Selectmen.

3.     The DPW is required to maintain, at its offices, documents created or received by the Town for those construction projects administered by the DPW, like the Project. The DPW was therefore required to maintain Project documents at the DPW's offices located at 26 Alden Street, Provincetown.

4.      On June 27 and 28, 2005, Attorney Rosemary Hayes, represented to be counsel for Southeast Floating Docks, Inc., inspected and scanned Project documents maintained at the DPW's offices.  Other than written communications to and from the Town and its counsel, all of the Town's Project documents maintained at the DPW were made available to Attorney Hayes for inspection on June 27 and 28, 2005.

5.      I reviewed the February 4, 2005 Subpoena issued on behalf of Southeast Floating Docks, Inc., at or about the time of its issuance.  I understand that a copy of the Subpoena is included in exhibit D of "Plaintiff's List of Records Not Produced by Town in Violation of Multiple Subpoenas, Representations of Counsel, a Court Order & Appellate Mandates," dated November 1, 2007.

6.      The "Exhibit A" that is attached to the Subpoena lists seven requests for documents.  If the documents requested in the Subpoena existed in printed form, they would have been included in the documents inspected by Attorney Hayes on June 27 and 28, 2005, except for the documents requested in subparagraph (a) of the exhibit ("all written demands made by or on behalf of the town . . . under M.G.L. 93A") and any documents prepared by the Town's litigation consultants (Childs Engineering Corporation and Simpson Gumpertz Heger), which I understand have been provided to Attorney Hayes by the Town's counsel, and except for those documents withheld by the Town's counsel under a claim of attorney-client privilege.

SIGNED UNDER THE PAINS AND PENALTIES OF PERJURY THIS FIFTEENTH

DAY OF NOVEMBER 2007.

/s/ David F. Guertin_____
David F. Guerin

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION
NO. 05CV11039EFH

SOUTHEAST FLOATING DOCKS, INC.,

       Plaintiff

v.

AFFIDAVIT OF RICHARD T. HOLLAND

AGM MARINE CONTRACTORS, INC.,
CHILDS ENGINEERING CORPORATION,
AND THE TOWN OF PROVINCETOWN,

       Defendants

I, Richard T. Holland, on oath, hereby depose and say as follows:

1.     I am an attorney employed by Kopelman and Paige, P.C., which serves as Town Counsel to the Town of Provincetown.

2.     In response to the February 4, 2005 arbitration Subpoena of Southeast Floating Docks, Inc. ("Southeast") issued to the Town in connection with an arbitration between Southeast and defendant AGM Marine Contractors, Inc. ("AGM"), I faxed on May 23, 2005 to Southeast's counsel, Attorney Rosemary Hayes, a written report dated January 6, 2004, prepared by Childs Engineering Corporation ("Childs"), and an undated power-point presentation document created by Simpson Gupertz Heger ("SGH"). Childs and SGH were retained by the Town in anticipation of litigation as a result of the failure of the so-called floating docks.

SIGNED UNDER THE PAINS AND PENALTIES OF PERJURY THIS FIFTEENTH

DAY OF NOVEMBER 2007.

/s/ Richard T. Holland____
Richard T. Holland

PRIVILEGE LOG

AGM Marine Contractors, Inc. v. Southeast Floating Docks, Inc.
SGH's Response to Subpoena Duces Tecum

| Bates No. | Type | To | From | Cc | Date | Description | Privilege |
|---|---|---|---|---|---|---|---|
| SGH 0001 | Correspondence | Richard Holland, Esq. of Kopelman & Paige P.C. | Robert Bertolino, Senior V.P. of Fay, Spofford & Thorndike, LLC (FST) | David Guertin, DPW Director | 8/17/04 | Detailing Fay Spofford & Thorndike's production of documents regarding the floating docks | A/C |
| SGH 0002 | Facsimile Cover Sheet | Dr. Rasko Ojdrovic | Richard Holland | | 8/04/04 | Forwarding documents for review | A/C |
| SGH 0003 - SGH 0006 | Index | Richard Holland | Robert Bertolino | David Guertin | 8/17/04 | List of documents regarding floating docks | A/C |
| SGH 0007 | Facsimile Cover Sheet | Donald Dusenberry of Simpson Gumpertz & Heger, Inc. (SGH) | David Doneski, Esq. of Kopelman & Paige P.C. | | 2/20/04 | Forwarding information regarding MacMillan Pier | A/C |
| SGH 0008 | Facsimile Cover Sheet | Donald Dusenberry | David Doneski | | 3/05/04 | Forwarding information regarding MacMillan Pier floating dock system | A/C |
| SGH 0009 | Facsimile | Donald Dusenberry | David Doneski | Town Manager (Keith Bergman); Director of Public Works (David Guertin) | 3/05/04 | Regarding retainment of Simpson, Gumpertz and Heger, Inc. | A/C |
| SGH 0010 - SGH 0013 | Facsimile | Donald Dusenberry | David Doneski | Town Manager (Keith Bergman) | | Agreement between the Town of Provincetown and SGH | A/C |
| SGH 0014 | Correspondence | Donald Dusenberry | David Doneski | Town Manager (Keith Bergman); Director of Public Works (David Guertin) | 3/05/04 | Regarding retainment of SGH | A/C |

1

## PRIVILEGE LOG

AGM Marine Contractors, Inc. v. Southeast Floating Docks, Inc.
SGH's Response to Subpoena Duces Tecum

| Bates No. | Type | To | From | Cc | Date | Description | Privilege |
|---|---|---|---|---|---|---|---|
| SGH 0015 | Correspondence | Donald Dusenberry | David Doneski | Town Manager (Keith Bergman); Director of Public Works (David Guertin) | 3/05/04 | Regarding retainment of Simpson, Gumpertz and Heger, Inc., with notes | A/C |
| SGH 0016 - SGH 0019 | Agreement | Donald Dusenberry | David Doneski | Town Manager (Keith Bergman) | | Draft Agreement between Town of Provincetown and SGH, with notes | A/C |
| SGH 0020 | E-mail | Donald Dusenberry | Rasko Ojdrovic | | 4/11/05 | E-mail chain regarding Provincetown MacMillan Pier | A/C |
| SGH 0021 | E-mail | Donald Dusenberry | Richard Holland | | 2/25/05 | E-mail chain regarding Comments on Agreement | A/C |
| SGH 0022 | E-mail | Donald Dusenberry | Rasko Ojdrovic | | 4/23/04 | E-mail regarding RFI from FST | A/C |
| SGH 0023 | Facsimile Cover Sheet | Keith Bergman | David Doneski | | 2/27/04 | Regarding MacMillan Pier Reconstruction with notes | A/C |
| SGH 0024 | Correspondence | Keith Bergman | David Doneski | Board of Selectman; DPW Director (David Guertin) | 2/27/04 | Regarding retainment of SGH | A/C |
| SGH 0025 | Correspondence | Rasko Ojdrovic | Richard Holland | Town Manager (Keith Bergman); DPW Director (David Guertin) | 8/30/04 | Forwarding documents regarding MacMillan Pier Project | A/C |
| SGH 0026 | Facsimile Cover Sheet | Richard Holland | Don Harvie | | 7/02/04 | Forwarding documents regarding MacMillan Pier Rehabilitation – Concrete Floating Docks | A/C |
| SGH 0027 | Correspondence | Rasko Ojdrovic | Richard Holland | Town Manager (Keith Bergman); DPW Director (David Guertin) | 4/26/04 | Forwarding documents regarding MacMillan Pier Project | A/C |

2

00927234

PRIVILEGE LOG

AGM Marine Contractors, Inc. v. Southeast Floating Docks, Inc.
SGH's Response to Subpoena Duces Tecum

| Bates No. | Type | To | From | Cc | Date | Description | Privilege |
|---|---|---|---|---|---|---|---|
| SGH 0028 | Note | | | | 2/23/05 | Handwritten note regarding phone call from Richard Holland | A/C |
| SGH 0029 | Note | | | | | Handwritten note regarding Town of Provincetown and Contractor | A/C |
| SGH 0030 | E-mail | Richard Holland | Donald Dusenberry | Rasko Ojdrovic | 4/14/05 | E-mail regarding Amendment to Agreement | A/C |
| SGH 0031 | E-mail | Richard Holland | Donald Dusenberry | Rasko Ojdrovic | 2/25/05 | E-mail regarding suggestions for inclusion in Settlement Agreement | A/C |
| SGH 0032 - SGH 0033 | List | Richard Holland | Donald Dusenberry | Rasko Ojdrovic | 2/24/05 | List of issues regarding replacement dock | A/C |
| SGH 0034 - SGH 0037 | E-mail | Donald Dusenberry | Rasko Ojdrovic | | 4/05/04 | E-mail chain regarding storm data | A/C |
| SGH 0038 | Correspondence | Donald Dusenberry | Richard Holland | Town Manager (Keith Bergman) | 4/13/05 | Enclosing executed copy of Settlement Agreement | A/C |
| SGH 0039 | Facsimile Cover Sheet | Rasko Ojdrovic | Richard Holland | | 3/03/05 | Forwarding documents regarding Provincetown Floating Dock | A/C |
| SGH 0040 | E-mail | Donald Dusenberry | Richard Holland | Rasko Ojdrovic; DPW Director (David Guertin) | 2/23/05 | E-mail regarding MacMillan Pier Floating Dock | A/C |
| SGH 0041 - SGH 0042 | E-mail | Richard Holland | David Guertin | Rasko Ojdrovic; Keith Bergman | 4/19/05 | E-mail chain regarding Release | A/C |
| SGH 0043 | Correspondence | Rasko Ojdrovic | Richard Holland | Town Manager (Keith Bergman); Director of Public Works (David Guertin) | 5/23/05 | Forwarding original Release Agreement | A/C |
| SGH 0044 - SGH 0045 | E-mail | Richard Holland | Richard Holland | DPW Director (David Guertin) | 7/16/04 | E-mail chain regarding analysis of the failure of the floating dock system | A/C |
| SGH 0046 | E-mail | Rasko Ojdrovic | Richard Holland | DPW Director (David Guertin) | 7/16/04 | E-mail regarding analysis of the failure of the floating dock system | A/C |
| SGH 0047 - SGH 0048 | E-mail | Rasko Ojdrovic | Richard Holland | | 7/26/04 | E-mail chain regarding analysis of the failure of the floating dock system | A/C |
| SGH 0049 | E-mail | Rasko Ojdrovic | Richard Holland | | 4/23/04 | E-mail regarding wave analysis | A/C |

3

00927234

PRIVILEGE LOG

AGM Marine Contractors, Inc. v. Southeast Floating Docks, Inc.
SGH's Response to Subpoena Duces Tecum

| Bates No. | Type | To | From | Cc | Date | Description | Privilege |
|---|---|---|---|---|---|---|---|
| SGH 0050 - SGH 0051 | E-mail | DPW Director (David Guertin); Rasko Ojdrovic | Richard Holland | | 4/23/04 | E-mail chain regarding RFI from FST | A/C |

4

00927234

FAY, SPOFFORD, and THORNDIKE

4/28/05

FAY 0002
5-2-05

## LOG OF INFO PROVIDED TO SOUTHEAST FLOATING DOCKS PER ARBITRATIONS TRIBUNALS SUBPOENA

| No. | Description | Author | Dated |
|---|---|---|---|
| 1 | Memo of September 17, 1998 - Partnering Session | FST | 9/22/98 |
| 2 | Memo of January 6, 1999 Building Committee Meeting | FST | 1/13/99 |
| 3 | Proposal for Floating Wave Attenuator | Bellingham Marine | 1/22/99 |
| 4 | Memo of January 19, 1999 - | FST | 1/25/99 |
| 5 | Memo of January 19, 1999 - | FST | 1/26/99 |
| 6 | Memo of February 3, 1999 - Wave Barrier | FST | 2/3/99 |
| 7 | Memo of February 4, 1999 - Building Committee Meeting | FST | 2/17/99 |
| 8 | Memo of March 3, 1999 - Building Committee Meeting | FST | 3/10/99 |
| 9 | Memo of February 19, 1999 - Building Committee Meeting | FST | 3/10/99 |
| 10 | Letter to Town of Provincetown - Small Boat Floating Docks | FST | 7/21/99 |
| 11 | Memo of May 19, 1999 - Building Committee Meeting | FST | 7/23/99 |
| 12 | Memo - Ice Forces on Wave Barrier | FST | 9/23/99 |
| 13 | Letter to Provincetown DPW - MacMillan Pier Rehabilitation Timber Wave Barrier | FST | 12/13/99 |
| 14 | Letter to FST - MacMillan Pier Timber Wave Barrier | Town of Provincetown, DPW | 12/17/99 |
| 15 | Fax to Mass. Development Finance Agency - Summary of Telephone Calls | FST | 12/29/99 |
| 16 | Summary of Telephone Call to Provincetown DPW (Dave Guertin) - January 5, 2000 Town Mtg. | FST | 12/30/99 |
| 17 | Summary of Telephone Call to Bellingham Marine (Jay Varga) - Floating Wave Attenuator | FST | 1/7/00 |
| 18 | Summary of Telephone Call to Bellingham Marine (John Colonel) - Anchorage for Wave Attenuator | FST | 1/24/00 |
| 19 | Summary of Telephone Call to Provincetown DPW (Dave Guertin) - Concrete Floats | FST | 11/6/01 |
| 20 | Letter to AGM Marine Contractors, Inc. - Concrete Floating Docks | FST | 11/6/01 |
| 21 | Letter from AGM - PCO No. 42 Concrete Float Alternative | AGM | 11/28/01 |
| 22 | Fax to Provincetown DPW - MacMillan Pier Rehabilitation | FST | 12/3/01 |
| 23 | Letter from AGM - PCO No. 62 Concrete Float Dock Wall Upgrade | AGM | 1/7/02 |
| 24 | Letter to Provincetown DPW - MacMillan Pier Reconstruction | FST | 1/29/02 |
| 25 | Summary of Telephone Call to AGM (Bill Lovely) - Wavelength | FST | 2/12/02 |
| 26 | Fax to Provincetown DPW, AGM, & Res. Engineer - Cracks in concrete floats | FST | 2/27/02 |
| 27 | Fax to AGM - Evaluation of the Concrete Floating Dock Guide Piles | FST | 3/11/02 |
| 28 | Fax to Provincetown DPW - AGM's requested extra for the concrete floats | FST | 3/21/02 |
| 29 | Fax to AGM - Memo from Southeast Floating Docks | FST | 3/29/02 |
| 30 | Memo of March 28, 2002 - Job Meeting | FST | 4/4/02 |
| 31 | Letter to Provincetown DPW - East Floating Docks | FST | 4/26/02 |
| 32 | Summary of Telephone Call to DPW (Dave Guertin) - Walkway | FST | 5/3/02 |
| 33 | Letter to AGM - Floating Dock Guide Piles | FST | 5/14/02 |

FAY, SPOFFORD, and THORNDIKE

4/28/05

FAY 0003
5-2-05

| # | Description | Party | Date |
|---|---|---|---|
| 34 | Memo of May 15, 2002 - Job Meeting | FST | 5/20/02 |
| 35 | Letter to AGM - PCO-42 Concrete Float Escalation | FST | 5/21/02 |
| 36 | Fax from AGM - RFI for Concrete Float Suppliers Engineer | AGM | 5/23/02 |
| 37 | Summary of Telephone Call Gary Greene - Concrete Floating Docks | FST | 5/31/02 |
| 38 | Fax to AGM - telephone memo between FST & Gary Greene (concrete float supplier) | FST | 5/31/02 |
| 39 | Memo of May 29, 2002 - Job Meeting | FST | 6/4/02 |
| 40 | Memo of July 10, 2002 - Job Meeting | FST | 7/16/02 |
| 41 | Letter from AGM - PCO No. 40 - Float Pile Alternative | AGM | 7/19/02 |
| 42 | Fax to AGM - Ramp Rider | FST | 7/19/02 |
| 43 | Letter to AGM - Concrete Float Hinges | FST | 7/22/02 |
| 44 | Fax from AGM - PCO 57 - Concrete Float Hinges Letter | AGM | 7/22/02 |
| 45 | Summary of Telephone Call to AGM (Bill Lovely) - Concrete Floats | FST | 7/23/02 |
| 46 | Summary of Telephone Call to SE Dock (Allan Simpson) - Technical Issues | FST | 7/24/02 |
| 47 | Summary of Telephone Call to AGM (Bill Lovely) - Concrete Floats Letter | FST | 7/24/02 |
| 48 | Summary of Telephone Call to SE Dock (Allan Simpson) - Concrete Floats | FST | 7/24/02 |
| 49 | Letter from Town of Provincetown - Floating Dock System & Handicap Accessible Gateway | Town of Provincetown, DPW | 7/25/02 |
| 50 | Summary of Telephone Call to AGM (Bill Lovely) - Concrete Floats | FST | 7/30/02 |
| 51 | Letter to AGM - Concrete Floating Docks | FST | 8/1/02 |
| 52 | Memo of July 31, 2002 - Job Meeting | FST | 8/7/02 |
| 53 | Transmittal from AGM - Submittals Concrete Floats | AGM | 8/14/02 |
| 54 | Transmittal to AGM - Concrete Floating Docks PE Calcs & Drawings | FST | 8/22/02 |
| 55 | Summary of Telephone Call to SE Floats (Sandy Kiciter) - Concrete Floats | FST | 8/27/02 |
| 56 | Memo of August 28, 2002 - Job Meeting | FST | 9/3/02 |
| 57 | Summary of Telephone Call to AGM (Bill Lovely) - Concrete Floats | FST | 9/6/02 |
| 58 | Fax from AGM - Concrete Float Plans Transmittal | AGM | 9/12/02 |
| 59 | Fax to Provincetown DPW - List of Outstanding Change Orders | FST | 9/17/02 |
| 60 | Transmittal to AGM - Concrete Floating Docks Shop Drawings | FST | 9/19/02 |
| 61 | Transmittal from AGM - Submittals Concrete Floats | AGM | 9/27/02 |
| 62 | Transmittal to AGM - Concrete Floating Docks Shop Drawings, Certificates, Concrete Mix Design | FST | 10/2/02 |
| 63 | Fax from SE Floating Docks - Concrete Design Mix 4000 PSI Lightweight Pump Mix Changes | SE Floating Docks | 10/8/02 |
| 64 | Transmittal from AGM - Submittals Concrete Floats Concrete Mix Design | AGM | 10/9/02 |
| 65 | Transmittal to AGM - Concrete Floating Docks - Concrete Mix Design | FST | 10/11/02 |
| 66 | Letter to AGM - Change Order No. 7 | FST | 10/14/02 |
| 67 | Memo from Provincetown DPW - MacMillan Pier Project; Decision Time | Town of Provincetown, DPW | 11/6/02 |
| 68 | Fax to Provincetown DPW - Concrete Floating Docks | FST | 12/8/02 |
| 69 | Letter from AGM - PCO No. 67 Remobilization of Crane Barge for Concrete Float Installation | AGM | 12/12/02 |
| 70 | Letter to AGM - Concrete Floating Dock Wale Upgrade | FST | 12/19/02 |

FAY 0004
5-2-05
13

FAY, SPOFFORD, and THORNDIKE

4/28/05

| # | Description | Party | Date |
|---|---|---|---|
| 71 | Fax from AGM - Change Order #3 Response to Letter from SE Floating Docks | AGM | 12/19/02 |
| 72 | Fax from AGM - Change Order #3 Waler and Rod Design | AGM | 12/20/02 |
| 73 | Letter from AGM - 67 Remobilization of Crane Barge for Concrete Float Installation | AGM | 1/6/03 |
| 74 | Fax to AGM - Response to PCO 62, Concrete Floating Dock Wale Upgrade | FST | 1/8/03 |
| 75 | Fax from AGM - Response to PCO 62, Concrete Floating Dock Wale Upgrade | AGM | 1/21/03 |
| 76 | Email from AGM - Floating Dock System | AGM | 2/4/03 |
| 77 | Fax to AGM - RFI 93 - Concrete Floating Dock Location | AGM | 2/7/03 |
| 78 | Fax from AGM - Concrete Floating Docks | AGM | 2/27/03 |
| 79 | Fax from AGM - Concrete Floating Dock Pile Guides Letter | AGM | 4/16/03 |
| 80 | Letter to AGM - Concrete Floating Docks | FST | 2/27/03 |
| 81 | Fax from AGM - Concrete Floating Docks | AGM | 3/4/03 |
| 82 | Fax to AGM - Denedeck Methacrylate Crack Sealer | FST | 3/7/03 |
| 83 | Letter to AGM - Concrete Floating Docks | FST | 3/13/03 |
| 84 | Summary of Telephone Call to (Sue Whittaker) - Concrete Float Conduit | FST | 3/14/03 |
| 85 | Memo of March 19, 2003 - Concrete Floating Docks | FST | 3/19/03 |
| 86 | Memo of March 18, 2003 - Job Meeting | FST | 3/19/03 |
| 87 | Fax from AGM - Concrete Floating Docks Letter | AGM | 3/28/03 |
| 88 | Fax to Provincetown DPW - Correspondence from AGM - Floating Dock Manufacturer | FST | 3/31/03 |
| 89 | Summary of Telephone Call to AGM (Bill Lovely) - Concrete Floating Docks | FST | 4/11/03 |
| 90 | Memo of April 23, 2003 - Job Meeting | FST | 4/28/03 |
| 91 | Fax to Provincetown DPW - Concrete Floating Docks | FST | 4/28/03 |
| 92 | Letter to AGM - Concrete Floating Docks | FST | 4/29/03 |
| 93 | Fax to AGM - Concrete Floating Docks | FST | 4/29/03 |
| 94 | Letter from AGM - Concrete Floating Dock Concrete Compression Test Results | AGM | 5/6/03 |
| 95 | Memo of May 7, 2003 - Job Meeting | FST | 5/9/03 |
| 96 | Fax from AGM - Concrete Floating Docks | AGM | 5/23/03 |
| 97 | Transmittal from AGM - Submittals Concrete Floats | AGM | 5/27/03 |
| 98 | Transmittal to AGM - Shop Drawings | FST | 5/27/03 |
| 99 | Summary of Telephone Call to AGM (Bill Lovely) - Concrete Floating-Docks | FST | 6/2/03 |
| 100 | Summary of Telephone Call to Provincetown DPW (Dave Guertin) - Job Meeting | FST | 6/2/03 |
| 101 | Email from Provincetown DPW - Concrete Floating Dock - Backcharges | Town of Provincetown, DPW | 6/12/03 |
| 102 | Summary of Telephone Call to (Sue Whittaker) - Concrete Floating Docks | FST | 6/19/03 |
| 103 | Email from Provincetown DPW - Concrete Floating Dock - Project Update | Town of Provincetown, DPW | 8/8/03 |
| 104 | Letter to Provincetown DPW - Concrete Floating Dock Crack Survey Plans | FST | 10/16/03 |
| 105 | Email from Provincetown DPW - MacMillan Pier Damage | Town of Provincetown, DPW | 12/8/03 |
| 106 | Email from Regina Binder - MacMillan Pier Damage | ATT Global | 12/8/03 |
| 107 | Memo of December 8, 2003 - Site Visit to Observe Floating Dock Damage | FST | 12/10/03 |

FAY 0005
5-2-05

14

4/28/05

# FAY, SPOFFORD, and THORNDIKE

| # | Description | Source | Date |
|---|---|---|---|
| 108 | Memo of December 8, 2003 Meeting - Floating Dock Damage | FST | 12/10/03 |
| 109 | Summary of Telephone Call to Provincetown DPW (Dave Guertin) - Steel Floats | FST | 12/11/03 |
| 110 | Summary of Telephone Call to Provincetown DPW (Dave Guertin) - Floating Docks | FST | 12/17/03 |
| 111 | Photos - 3/18/03 (4 sheets, 14 total photos) | FST | 3/18/03 |
| 112 | Photos - 5/7/03 (2 sheets, 8 total photos) | FST | 5/7/03 |
| 113 | Photos - 5/19/03 (5 sheets, 5 total photos) | FST | 5/19/03 |
| 114 | Photos - 6/27/03 (5 sheets, 19 total photos) | FST | 6/27/03 |
| 115 | Photos - 12/8/03 (4 sheets, 20 total photos) | FST | 12/28/03 |
| 116 | Response to RFI No. 59 - Design Wave for Concrete Floats | FST | 1/21/04 |
| 117 | Response to RFI No. 72 - Concrete Floats Wave Heights | FST | 3/6/02 |
| 118 | Response to RFI No. 81 - Concrete Float Guide Piles | Woods Hole | 5/22/02 |
| 119 | Transmittal from Woods Hole Group - Wave Calculations & Info | FST | 8/6/04 |
| 120 | Letter to Kopelman & Paige - Wind/Wave Info | FST | 6/22/04 |
| 121 | Fax to Kopelman & Paige - Wave Properties | Woods Hole | 7/2/04 |
| 122 | Transmittal from Woods Hole Group - Wave Heights | FST | 7/1/04 |
| 123 | Summary of Telephone Call to Kopelman & Paige (Rick Holland) - Concrete Floats | FST | 6/28/04 |
| 124 | Summary of Telephone Call to Kopelman & Paige (Rick Holland) - Concrete Floating Docks | FST | 8/23/04 |
| 125 | Summary of Telephone Call to Kopelman & Paige (Rick Holland) - Concrete Floating Docks | FST | 8/24/04 |
| 126 | Summary of Telephone Call to Kopelman & Paige (Rick Holland) - Concrete Floating Docks | FST | 8/25/04 |
| 127 | Summary of Telephone Call to Kopelman & Paige (Rick Holland) - Concrete Floating Docks | FST | 8/26/04 |
| 128 | Letter to Kopelman & Paige w/log of 110 memos/letters/faxes provided | FST | 8/17/04 |
| 129 | Contract Specifications - | | 12/99 |
| A) | T.O.C & Item No. 63 - Concrete Floating Dock System | | |
| B) | Item No. 131 - Floating Dock Power Pedestal | | |
| C) | Item No. 40 - Steel Pipe Piles for Floating Dock | FST | 12/99 |
| 130 | Contract Drawings - | | |
| 1) | Location Plan and Index to Drawings | | |
| 2) | General Site Plan | | |
| 3) | General Plan Pier | | |
| 33) | Floating Docks - Plan and Details | | |
| 42) | Site Plan - Electrical | | |
| 46) | Electrical - Floating Docks Plan and Details | | |
| 47) | Floating Docks - Electrical Details | | |
| 55) | Electrical One-Line Diagram | | |
| 56) | Electrical Panel Schedules | | |

# DONOVAN HATEM LLP

*counselors at law*

**David Corkum**
617 406 4532 direct
dcorkum@donovanhatem.com

June 3, 2005

**VIA FEDERAL EXPRESS**

Rosemary Hayes, Esq.
830 Lucerne Terrace
Orlando, FL 32801

Re:    **AGM Marine Contractors, Inc. v. Southeast Floating Docks, Inc.
Response to Subpoena
DH File:  14354.1004**

Dear Rosemary:

Enclosed pleased find copies of the documents that were previously withheld at the request of Town's counsel.  Please call me with respect to your letter's other issue in which you state: "your client may have inadvertently omitted certain materials relating to criticism of its original design and communications concerning its insurer."

Thank you for your attention to this matter.

Very truly yours,

David Corkum/pa

David H. Corkum
DHC/pa
Enclosures
cc:    David J. Hatem, P.C.
       Richard Holland

00922905

World Trade Center East    617 406 4500  main
Two Seaport Lane    617 406 4501  fax
Boston, MA 02210    www.donovanhatem.com

# DONOVAN | HATEM LLP

*counselors at law*

**David Corkum**
617 406 4532 direct
dcorkum@donovanhatem.com

February 27, 2007

Richard T. Holland, Esq.
Kopelman and Paige, PC
101 Arch Street, 12th Floor
Boston, MA 02110

**Re:    AGM Marine Contractors, Inc. v. Southeast Floating Docks, Inc.**
**XL Design File:  12-BB9148-200**
**DH File:  14354.1004**

Dear Richard:

As you requested in your email dated, February 26, 2007, enclosed please find copies of the privileged documents that we previously sent to Rosemary Hayes on February 12, 2007.

Thank you for your attention to this matter.  Please do not hesitate to contact me should you have any questions or comments.

Very truly yours,

David H. Corkum
DHC/pa
Enclosure
cc:    David J. Hatem, P.C.
       Amanda Sirk, Esq.

01C71842.DOC

SOUTHEAST FLOATING DOCKS, INC.,

     Plaintiff

v.

AGM MARINE CONTRACTORS, INC.,
CHILDS ENGINEERING CORPORATION,
AND THE TOWN OF PROVINCETOWN,

     Defendants

DEFENDANT TOWN OF
PROVINCETOWN'S PRIVILEGE LOG
PURSUANT TO DISTRICT COURT'S
OCTOBER 18, 2007 ORDER

| NO. | DATE | FROM | TO | CC | DOC TYPE | SUBJECT |
|---|---|---|---|---|---|---|
| 1 | 12/12/2003 | DFG | JWG | KB | E-mail | Storm Damage |
| 2 | 12/12/2003 | RH | DFG | | E-mail | MacMillan Pier |
| 3 | 12/15/2003 | RH | DFG | | E-mail | MacMillan Pier |
| 4 | 12/15/2003 | DFG | RH | | E-mail | Proposal for Engineering Services |
| 5 | 12/16/2003 | RH | DFG | | E-mail | Proposal for Engineering Services |
| 6 | 12/16/2003 | RH | DFG | | E-mail | Proposal for Engineering Services |
| 7 | 12/23/2003 | RH | DFG | | E-mail | MacMillan Pier |
| 8 | 12/31/2003 | RH | DFG | | E-mail | MacMillan Pier Project |
| 9 | 02/04/2004 | RH | DFG | | E-mail | MacMillan Pier |
| 10 | 02/09/2004 | KB | JWG | | E-mail | Provincetown Litigation |
| 11 | 02/17/2004 | JWG | KB | DD | E-mail | Provincetown Litigation |
| 12 | 02/29/2004 | KB | JWG, DD, RH | DFG | E-mail | Dusenberry Proposal |
| 13 | 03/02/2004 | DFG | RH | JWG, KB | E-mail | MacMillan Pier |
| 14 | 03/08/2004 | DFG | KB | RH, ST | E-mail | MacMillan Pier |
| 15 | 03/09/2004 | DFG | RH | ST, KB | E-mail | MacMillan Pier |
| 16 | 03/09/2004 | DFG | RH | | E-mail | Report to Town Manager on need for berthing |

| 17 | 03/10/2004 | RH | DFG | | E-mail | Reinstallation Work |
|---|---|---|---|---|---|---|
| 18 | 03/10/2004 | DFG | RH | | E-mail | Reinstallation Work |
| 19 | 03/10/2004 | DFG | RH | | E-mail | Reinstallation Work |
| 20 | 03/11/2004 | KB | DFG | JWG, ST, RH | E-mail | MacMillan Pier |
| 21 | 03/15/2004 | DFG | RH KB | ST | E-mail | MacMillan Pier |
| 22 | 03/16/2004 | DFG | RH | KB | E-mail | MacMillan Pier |
| 23 | 03/17/2004 | DFG | RH | KB | E-mail | Notice of Warranty Claim |
| 24 | 03/26/2004 | RH | DFG | | E-mail | MacMillan Pier |
| 25 | 03/30/2004 | RH | DFG | | E-mail | MacMillan Pier |
| 26 | 04/01/2004 | RH | DFG | | E-mail | MacMillan Pier |
| 27 | 04/05/2004 | RH | DFG | | E-mail | MacMillan Pier Video Tape |
| 28 | 04/06/2004 | RH | DFG | | E-mail | MacMillan Pier |
| 29 | 04/12/2004 | DFG | RH | KB | E-mail | MacMillan Pier/AGM Marine |
| 30 | 04/12/2004 | DFG | RH | KB | E-mail | MacMillan Pier/AGM Marine |
| 31 | 05/25/2004 | DFG | RH | KB | E-mail | Provincetown MacMillan Pier |
| 32 | 06/16/2004 | RH | DFG | | E-mail | MacMillan Pier |
| 33 | 06/16/2004 | DFG | RH | | E-mail | MacMillan Pier |
| 34 | 06/29/2004 | KB | RH | | E-mail | MacMillan Pier Damage |
| 35 | 07/26/2004 | RH | DFG | KB | E-mail | MacMillan Pier |
| 36 | 07/27/2004 | DFG | RH | | E-mail | MacMillan Pier |
| 37 | 07/27/2004 | RH | DFG | KB | E-mail | MacMillan Pier |
| 38 | 08/31/2004 | RH | DFG | KB | E-mail | Floating Dock System |
| 39 | 09/03/2004 | KB | DFG | RH, MJ | E-mail | MacMillan Pier Repairs |
| 40 | 09/03/2004 | DFG | KB | RH, MJ | E-mail | MacMillan Pier Repairs |
| 41 | 09/08/2004 | KB | DFG | RH, MJ | E-mail | MacMillan Pier Repairs |
| 42 | 09/08/2004 | DFG | RH, KB | | E-mail | MacMillan Pier Repairs |
| 43 | 09/09/2004 | DFG | RH, KB | | E-mail | MacMillan Pier Repairs |

| 44 | 09/09/2004 | KB | RH, DFG | | E-mail | MacMillan Pier Repairs |
| 45 | 09/22/2004 | KB | DFG | RH | E-mail | MacMillan Pier Repairs |
| 46 | 10/20/2004 | RH | DFG | | E-mail | MacMillan Pier |
| 47 | 11/15/2004 | RB | KB, DFG | RH, MJ | E-mail | MacMillan Pier-Floating Dock System |
| 48 | 11/15/2004 | KB | DFG, RB | RH, MJ | E-mail | MacMillan Pier-Floating Dock System |
| 49 | 11/16/2004 | KB | RM | RH, MJ, DFG, RB | E-mail | MacMillan Pier-Floating Dock System |
| 50 | 11/22/2004 | RH | DFG | | E-mail | MacMillan Pier-Pier Corp. |
| 51 | 11/30/2004 | DFG | RH | KB | E-mail | MacMillan Pier |
| 52 | 12/06/2004 | DFG | RH | JWG, KB | E-mail | Matrix for Litigation |
| 53 | 12/09/2004 | KB | DFG, JG, DD, RH | | E-mail | Matrix for Litigation |
| 54 | 12/10/2004 | RH | DFG, KB, DD | | E-mail | MacMillan Pier |
| 55 | 12/10/2004 | KB | RH | | E-mail | Floating Docks-Revised Matrix for Litigation |
| 56 | 12/10/2004 | KB | RH | | E-mail | Floating Dock recommend Joint Memo |
| 57 | 12/13/2004 | DFG | KB | | E-mail | Floating Dock recommend Joint Memo |
| 58 | 01/11/2005 | RH | DFG | | E-mail | MacMillan Pier |
| 59 | 01/14/2005 | RH | DFG | KB | E-mail | MacMillan Pier/Settlement Agreement |
| 60 | 01/14/2005 | RH | DFG | KB | E-mail | MacMillan Pier/Settlement Agreement |
| 61 | 01/25/2005 | RH | DFG | KB | E-mail | MacMillan Pier |
| 62 | 02/02/2005 | DFG | RH | JWG, KB, ST | E-mail | MacMillan Pier/Settlement Agreement |

| | | | | | | |
|---|---|---|---|---|---|---|
| 63 | 02/03/2005 | RH | DFG | KB | E-mail | AGM/Settlement Agreement |
| 64 | 02/14/2005 | RH | KB | DFG | E-mail | MacMillan Pier |
| 65 | 02/17/2005 | RH | DFG | | E-mail | MacMillan Pier |
| 66 | 02/17/2005 | RH | DFG | | E-mail | MacMillan Pier |
| 67 | 02/25/2005 | RH | DFG | | E-mail | Floating Dock |
| 68 | 02/28/2005 | RH | DFG | | E-mail | Floating Dock |
| 69 | 03/02/2005 | RH | DFG | KB | E-mail | Floating Dock Settlement Agreement |
| 70 | 03/04/2005 | RH | DFG | KB | E-mail | MacMillan Pier |
| 71 | 03/14/2005 | RH | DFG | | E-mail | MacMillan Pier |
| 72 | 03/14/2005 | RH | DFG | | E-mail | MacMillan Pier |
| 73 | 03/21/2005 | DFG | RH | KB | E-mail | MacMillan Pier |
| 74 | 03/22/2005 | RH | DFG | KB | E-mail | Floating Dock |
| 75 | 03/22/2005 | RH | DFG | | E-mail | AGM/MacMillan Pier |
| 76 | 03/22/2005 | RH | DFG | | E-mail | Floating Dock |
| 77 | 03/28/2005 | DFG | RH | KB | E-mail | MacMillan Pier |
| 78 | 03/31/2005 | RH | KB | DFG | E-mail | MacMillan Pier |
| 79 | 04/19/2005 | RH | DFG | | E-mail | Provincetown Release |
| 80 | 04/20/2005 | DFG | RH, KB | | E-mail | SGH Release |
| 81 | 02/03/2004 | KB | JWG | BOS, DFG | Facsimile | Floating Dock Costs |
| 82 | 02/06/2004 | RH | KB | | Facsimile | MacMillan Pier Reconstruction |
| 83 | 02/27/2004 | RH | KB | BOS, DFG | Memo | MacMillan Pier Reconstruction |
| 84 | 03/29/2004 | RH | DFG | | Facsimile | MacMillan Pier |
| 85 | 06/24/2004 | RH | KB | DFG | Facsimile | MacMillan Pier Reconstruction |
| 86 | 09/10/2004 | KB | RH | | Facsimile | Floating Dock System |
| 87 | 12/09/2004 | RH | KB | | Facsimile | MacMillan Pier Reconstruction |
| 88 | 12/10/2004 | RH | KB | | Facsimile | MacMillan Pier Reconstruction |
| 89 | 12/14/2004 | KB | RH | | Facsimile | Restoration of the MacMillan Pier Floating Dock System |
| 90 | 03/31/2005 | RH | KB | DFG | Facsimile | MacMillan Pier, Floating Dock System |

| | 03/31/2005 | PH | RH | KB, BOS | Letter | Settlement Agreement/Signature Page |
|---|---|---|---|---|---|---|

John W. Giorgio, Esq. (JWG) – Kopelman and Paige, P.C., Town's counsel.
Keith Bergman (KB) – Town Manager.
David F. Guertin (DFG) – Director, Town's Dept. of Public Works.
Richard Holland, Esq. (RH) – Kopelman and Paige, P.C., Town Counsel.
David Doneski, Esq. (DD) – Kopelman & Paige, P.C.
Sandra Turner (ST) – Deputy Director, Town's Dept. of Public Works.
Michelle Jarusiewicz (MJ) – Assistant Town Manger.
Regina "Ginny" Binder (RB) – Building Committee Member.
Rex McKinsey (RM) – MacMillan Pier Manager.
Board of Selectmen (BOS) – Provincetown Board of Selectmen.
Pam Hudson (PH) – Secretary to the Town Manager.