IN THE UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| SOUTHEAST FLOATING DOCKS, INC., <br><br> Plaintiff, <br><br> vs. <br><br> TOWN OF PROVINCETOWN, MASS, ETC., <br><br> Defendants. | Case No.: 1:06-CV-11039 <br> Assigned to: Senior Judge Harrington <br><br> **SOUTHEAST'S FILING PURSUANT TO COURT-ORDER OF 11/20/2007 (Doc. 58)** |

Southeast Floating Docks, Inc. (Southeast) is ordered to forward a CD Rom containing documents scanned at the Department of Public Works (DPW) June 27-28, 2005, which it has done. (Doc. 58)

The Court's Order directs Southeast to identify pages within the records filed under seal which it is unable to match with attachments that are referenced. *Id.* Copies of sealed SGH and FS&T documents are Exhibit 1 and 2, respectively.

Southeast is also to specify what issues are left for the Court regarding documents on Southeast's Table 1 "in light of Defendant's November 15, 2007 response." *Id.* As set forth below, (A) Southeast asserts the Court should order production of records on the privilege log, or, (B) at minimum, review the logged records *in camera*, (C) require the Town to submit to a deposition, and (D) reconsider denial of Southeast's motion for contempt.

The subpoenas were served after 2/28/05 and request material as follows:

Pursuant to M.G.L. 66, § 10, and this subpoena we request copies relating to the storm damage on December 7, 2003 (a) all written demands made by or on behalf of the town in regard to MacMillan Pier under M.G.L. 93A and any responses thereto; (b) all written or printed communications, including electronic transmissions and computer stored data relating to or referencing damage at MacMillan Pier from December 1, 2003 to the present; (c) all demands for insurance coverage and responses thereto; (d) proof of wind speed, wind direction, wave height, or any expert opinion or documentation used to establish same; (e) all communications from the Town to AGM or its Surety since December 7, 2003, including electronic mail or other computer stored data; (f) all records concerning modification of the dock system during construction, installation of the concrete floating docks, and removal of the wave attenuator or "breakwater" from the original project design; (g) all expert opinions, reports, calculations, drawings, or other written, printed or pictorial material, including electronic mail or other computer stored data, relating to or referencing the damage and fix of the dock system at the subject marina.

(Doc. 54, Exhibit D at p. 7)

(1) Southeast's identification of issues left for the Court's determination following Defendant's 11/15/07 response

## A. 11/15/07 LOG IS INSUFFICIENT & PRIVILEGE IS WAIVED

The Town's privilege log, filed herewith as Exhibit 3, is ineffective as a matter of law –it is both tardy, resulting in waiver of privilege claims, and its substance fails to meet minimal standards of legal cogency. (Exhibit 3) Efforts to evaluate the source of bald claims of privilege suggest most records identified on Southeast's Table 1 are not on the privilege log. *See* Revised Table 1, below.

For the first time 2 and 1/2 years after service of subpoenas, on 11/15/07 the Town submitted a nebulous privilege log. (Doc. 55, Ex. #13) Southeast must

HAYES & CARABALLO, PL
830 Lucerne Terrace
Orlando, FL 32801

engage in rank speculation to identify logged items. *See* Revised Table 1, below. In addition, in the privilege log and Town's commentary furnished in response to Table 1, the Town simply fails to account for legitimate requests for non-privileged data. (Exhibit 4, Town's restated Table 1)

The Court Rule regarding privilege provides that:

> **When information subject to a subpoena is withheld on a claim that it is privileged** or subject to protection as trial preparation materials, **the claim** *shall* **be made expressly and** *shall* **be supported by a description of the nature of the documents**, communications or things **not produced that is sufficient to enable the demanding party to contest the claim.**

Fed. R. Civ. P. 45(d)(2)(emphasis added).

The operative language is mandatory and courts have consistently held that the Rule requires the party resisting disclosure to timely produce a document index or privilege log. *In re Grand Jury Subpoena*, 274 F. 3d 563, 576 (1st Cir. 2001). A party that fails to properly submit a privilege log is deemed to waive the underlying privilege claim. *Id., citing*, *Dorf & Stanton Comms., Inc. v. Molson Breweries,* 100 F.3d 919, 923 (2d Cir.1996) (holding that failing "to provide a complete privilege log demonstrating sufficient grounds for taking the privilege" waives it). Although most often in the context of a claim of attorney-client privilege, the "specify or waive" rule applies equally to work product privilege. *See Smith v. Conway Org., Inc.,* 154 F.R.D. 73, 76 (S.D.N.Y. 1994).

HAYES & CARABALLO, PL
830 Lucerne Terrace
Orlando, FL 32801

As in the *Grand Jury Subpoena* case, the Town's lawyer has had possession of the records and knowledge of the communications subject to subpoenas, Court Order, and the appellate opinion of 8/3/06, wherein it is noted the Town failed to "**assert the attorney-client privilege as to particular documents it may have withheld from its own files**." (Doc. 36 at pp. 3, 5) Where a lawyer is in possession of  privileged documents and makes no effort to prepare a timely, appropriate privilege log, the omission is fatal to claims of privilege. *Grand Jury Subpoena*, 274 F.3d at 575 -576. The Town failed without justification to provide a privilege log and binding authority is that it has waived any claim of privilege. The Town should be ordered to produce the records, which obviously directly implicate the case of AGM against Southeast. *Id.*

In regard to the substance of the log, Southeast recognizes that privilege logs "do not need to be precise to the point of pedantry." *Id.* Here, the Town completely fails to comport with the law's minimum requirements. Fed. R. Civ. P. 45(d)(2)(A). The Town's log is attached as Exhibit 3 and it does not contain a single "description of the nature of [any of 91] documents...sufficient to enable the demanding party to contest the claim," nor does it "expressly" identify any privilege(s) claimed. *Id.; see also* Revised Table 1.

The Town identifies 33 of 91 communications, more than 1/3 of the items listed, merely as "MacMillan Pier." It includes records described only as

HAYES & CARABALLO, PL
830 Lucerne Terrace
Orlando, FL 32801

"Provincetown MacMillan Pier," "Floating Dock," or similar. The log lists several settlement agreements, i.e., "AGM/Settlement Agreement," "Floating Dock/Settlement Agreement," "MacMillan Pier/Settlement Agreement," and "Settlement Agreement." It is impossible for Southeast or the Court to evaluate the Town's claims. *Cf.* Fed. R. Civ. P. 45(d).

**Revised Table 1**

| On Town log? | # | Records | The Records are thought to exist based on the following:[1] | Appellate Mandate | Court Order |
|---|---|---|---|---|---|
| NO | 1 | Town's 51 pages of SGH documents with exhibits | Town must have copies of SGH documents and copies should include correlated exhibits | 05-2262, p. 4  06-2703, p. 2 | 6/2/05 |
| NO | 2 | Town's 9 pages of FST documents with exhibits | Town must have copies of FST documents Town filed under seal and any correlated exhibits | 05-2262, p. 4  06-2703, p. 2 | 6/2/05 |
| NO | 3 | Records of maintenance & modifications to docks | 6/4/3 email to Town Manager from DPW & maintenance required to avoid storm damage & maintenance manual in records | 05-2662, p. 3-4  06-2703, p. 2 | 6/2/05 |
| 39-45 ARE DATED 9/04 & RE: REPAIRS | 4 | Details of selection & design of fix | Details must exist and are referenced in other records such as the 9/24/04 report from DPW | 05-2662, p. 3-4  06-2703, p. 2 | 6/2/05 |
| NO | 5 | Backup & pymnt records, incl. C.O. #8 & Final Pay Application | Records concerning payment and charges by AGM that were requested exist | 05-2662, p. 3-4  06-2703, p. 2 | 6/2/05 |
| NO | 6 | Data on both storms | 01/05 storm was worse than 12/03 storm & predated repairs with which Southeast was charged | 05-2262, p. 4  06-2703, p. 2 | 6/2/05 |
| 59,60,62-63,69,91 – (3) STLMT AGRMTS REFERENCED | 7 | Fully Executed AGM settlement agreement with exhibits | Red-lined version of settlement agreement w/o attachments is SGH 51 pages | 05-2262, p. 4  06-2703, p. 2 | 6/2/05 |

---

[1] As aptly noted by the appellate tribunal, "a party trying to enforce a subpoena for documents it has never seen may need to establish noncompliance by inference, indeed, by circumstantial evidence…" (Doc. 36, opinion, case 05-2262 at p. 4)

HAYES & CARABALLO, PL
830 Lucerne Terrace
Orlando, FL 32801

| | | | | | |
|---|---|---|---|---|---|
| NO-TOWN REFUSED TO PRODUCE | 8 | Records relating to 1/05 nor'easter | SGH 51 pages & other SGH records; storm data indicating conditions; email from Harbor Master re: destruction of additional fingers | 05-2662, p. 3-4 <br> 06-2703, p. 2 | 6/2/05 |
| TOWN SAYS 'NO,' BUT- 59,60,62 REFER TO 'MAC PIER STLMT' | 9 | Records relating to Town/FST settlement | Town meeting minutes: referenced in a couple of documents produced on 6/27/05 – <u>See</u> Exhibit A – Index | 05-2262, p. 4 <br><br> 06-2703, p. 2 | 6/2/05 |
| NO | 10 | "correspondence that needs to be issued" | 12/8/03 memo to Town Manager from DPW | 05-2262, p. 4 <br><br> 06-2703, p. 2 | 6/2/05 |
| UNKNOWN-1 - REFERS TO 'STORM DAMAGE' | 11 | Results of "due diligence" by Town Staff & FST, including info. from NOAA (Taunton) | Data being collected per 12/8/03 memo + email to Town Manager from DPW | 05-2262, p. 3-4 <br><br> 06-2703, p. 2 | 6/2/05 |
| NO | 12 | Town correspondence to FST, Zurich and others and all responses thereto | See memo above. Town certainly put all possibly liable parties on notice, including FST | 05-2262, p. 3-4 <br><br> 06-2703, p. 2 | 6/2/05 |
| NO | 13 | 9/23/04 meeting minutes | 9/23/04 email from DPW to DEP | 05-2262, p. 3-4 <br><br> 06-2703, p. 2 | 6/2/05 |
| NO | 14 | Maintenance Logs or other record of maintenance | Float hardware required regular tightening to prevent storm damage per maintenance manual in records | 05-2262, p. 3-4 <br><br> 06-2703, p. 2 | 6/2/05 |
| NO | 15 | Correspondence/ fix for steel float | 9/20/04 email from Town Manager to Pier Manager & 2/7/04 email between Pier Manager & AGM | 05-2262, p. 3-4 <br><br> 06-2703, p. 2 | 6/2/05 |
| UNKNOWN-63-RE: AGM STLMT AGRMT? | 16 | Records relating to AGM's ownership of pieces of floats | 4/26/05 email from DPW to Pier Manager | 05-2262, p. 3-4 <br><br> 06-2703, p. 2 | 6/2/05 |
| NO | 17 | AGM letter | 8/27/04 report by DPW refers to attached letter | 05-2262, p. 3-4 <br><br> 06-2703, p. 2 | 6/2/05 |
| NO | 18 | Questionnaire re: AGM | Referenced in 3/9/05 letter from DPW to US Coast Guard (attached page is blank) | 05-2262, p. 3-4 <br><br> 06-2703, p. 2 | 6/2/05 |
| NO | 19 | Report of Zurich meeting dated 8/26/04 | Described in and attached to 9/10/04 memo from DPW | 05-2262, p. 3-4 <br><br> 06-2703, p. 2 | 6/2/05 |
| UNKNOWN-43-44 DATED 9/9/04 | 20 | AGM letter of 9/9/04 | Described in and attached to 9/10/04 memo from DPW | 05-2262, p. 3-4 <br><br> 06-2703, p. 2 | 6/2/05 |

HAYES & CARABALLO, PL
830 Lucerne Terrace
Orlando, FL 32801

| | | | | | |
|---|---|---|---|---|---|
| NO | 21 | Exhibits to 9/23/04 Memo | Memo from DPW references multiple exhibits not included | 05-2262, p. 3-4<br><br>06-2703, p. 2 | 6/2/05 |
| 4-6 RE: 'PROPOSAL FOR ENG'G SERVICES' | 22 | Executed agreement for services & documentation relating thereto (Childs Eng'g) | Unexecuted agreement is produced. Communications between Town & Childs – None. | 05-2262, p. 3-4<br><br>06-2703, p. 2 | 6/2/05 |
| NO | 23 | Documentation of AGM estimate of $150,000 | Referenced in 12/8/03 DPW memo | 05-2262, p. 3-4<br><br>06-2703, p. 2 | 6/2/05 |
| NO | 24 | FS&T 'post-mortem' & docs relating to sufficiency of FS&T design, the piling, its sub-consultant's wind/wave analysis and issues relating thereto & responses to such inquiries | 12/10/03 memo from DPW | 05-2262, p. 3-4<br><br>06-2703, p. 2 | 6/2/05 |
| NO | 25 | Complete Zoino information re: piling | Referenced in change order tracking | 05-2262, p. 3-4<br><br>06-2703, p. 2 | 6/2/05 |
| NO | 26 | SK#1, FS&T report, email to pier users, notice of meeting, DPW report | Referenced & attached to 12/11/03 DPW memo | 05-2262, p. 3-4<br><br>06-2703, p. 2 | 6/2/05 |
| NO | 27 | Childs' preliminary report, DPW's commentary, DPW 12/18/03 transmittal & attachments, color photos | Referenced in Craig Sams' letter in 12/03 | 05-2262, p. 3-4<br><br>06-2703, p. 2 | 6/2/05 |
| NO | 28 | 9/23/04, 9/28/04 meeting minutes | Referenced in meeting notice provided by Town | 05-2262, p. 3-4<br><br>06-2703, p. 2 | 6/2/05 |
| NO | 29 | PierCorp meeting minutes | Referenced on-line as indicated in Exhibit B | 05-2262, p. 3-4<br><br>06-2703, p. 2 | 6/2/05 |
| NO | 30 | Calculations, results and records of remedial tests, testing in regard to southwest exposure, etc. | As referenced in a joint memo of ProFish & the Town of unknown date (updated field shows 6/15/05 print date | 05-2262, p. 3-4<br><br>06-2703, p. 2 | 6/2/05 |

HAYES & CARABALLO, PL
830 Lucerne Terrace
Orlando, FL 32801

| | | | | | |
|---|---|---|---|---|---|
| NO | 31 | Wave analysis, wave design criteria, information on marina design criteria, ADA docking system criteria, preliminary design assumptions & parameters, design criteria for wave attenuation system | As furnished to the Town's consultants for analysis and requested by AGM's consultant | 05-2262, p. 3-4<br><br>06-2703, p. 2 | 6/2/05 |
| NO | 32 | FEMA information and any requests & responses | Memo to BOS from Town Manager of 12/8/03 | 05-2262, p. 3-4<br><br>06-2703, p. 2 | 6/2/05 |
| NO | 33 | All written, printed or pictorial materials referencing or relating to design errors and/or negligence (including, but not limited to, piling and wind/wave analysis) by FS&T or its privies | Settlement referenced in on-line meeting minutes and a couple of records produced on 6/27-28/05 See Exhibit A – Index | 05-2262, p. 3<br><br>06-2703, p. 2 | 6/2/05 |
| NO | 34 | Interim Agreement/Plan and weekend work product | 6/14/04 email to Town Manager from DPW | 05-2262, p. 3-4<br><br>06-2703, p. 2 | 6/2/05 |
| NO | 35 | Plan for seasonal removal of docks and tests and results relating thereto | 4/20/05 email from DPW to Pier Manager | 05-2262, p. 3-4<br><br>06-2703, p. 2 | 6/2/05 |
| 52,53,55 RE: LITIG. MATRIX (DATED 12/04) | 36 | The simple matrix and subsequent analysis to include expenses | 9/3/04 email from DPW to Town Manager | 05-2262, p. 3-4<br><br>06-2703, p. 2 | 6/2/05 |
| UNKNOWN-47-49 REFER TO "RB" | 37 | Responsive email | 3/24/04 Regina Binder (RB) request for information regarding docks | 05-2262, p. 3-4<br><br>06-2703, p. 2 | 6/2/05 |
| UNKNOWN-27 (4/04) EMAIL RE: 2005 VIDEO DOES NOT INC.PIER MGR | 38 | Site observation video | 4/2/05 email from Pier manager to DPW | 05-2262, p. 3-4<br><br>06-2703, p. 2 | 6/2/05 |
| NO | 39 | Repair procedure submitted to DPW | 2/27/04 email from AGM to Pier Manager | 05-2262, p. 3-4<br><br>06-2703, p. 2 | 6/2/05 |

-8-

HAYES & CARABALLO, PL
830 Lucerne Terrace
Orlando, FL 32801

| | | | | | |
|---|---|---|---|---|---|
| NO | 40 | All communications to/from steel float supplier regarding failure of steel float during 12/03 and/or 1/05 storms | The steel float was substantially damaged and repaired. There have been no communications regarding cause of or liability for the failure produced to date. | 05-2262, p. 3-4<br><br>06-2703, p. 2 | 6/2/05 |
| NO | 41 | 35 pages of backup for C.O. #8, original transmittal | Fax from FS&T to DPW 8/26/04 | 05-2262, p. 3-4<br><br>06-2703, p. 2 | 6/2/05 |
| NO | 42 | Final application for payment & backup | Final pay application and backup must exist but has never been produced | 05-2262, p. 3-4<br><br>06-2703, p. 2 | 6/2/05 |
| NO | 43 | 2/19/99 meeting minutes and information provided by Bellingham Marine | 5/4/99 Building Committee memo of meeting | 05-2262, p. 3-4<br><br>06-2703, p. 2 | 6/2/05 |
| NO | 44 | 12/7/04 meeting minutes & draft of BOS re: dock re-design | Public Meeting Notice | 05-2262, p. 3-4<br><br>06-2703, p. 2 | 6/2/05 |
| NO | 45 | 1999 estimate from Bellingham Marine | 1/24/99 memo from FS&T | 05-2262, p. 3-4<br><br>06-2703, p. 2 | 6/2/05 |
| NO | 46 | Insurance records | Town produced email contending it proves it has no insurance; however, Pier Corp meeting minutes for 12/20/03 reflect that DPW said the insurance has a $200,000 deductible for repairs of the floating docks | 05-2262, p. 3-4<br><br>06-2703, p. 2 | 6/2/05 |
| UNKNOWN-81 (2/04) RE: DOCK COSTS | 47 | February 2004 Town meeting minutes | Attenuator to come before BOS per 12/20/03 Pier Corp meeting minutes | 05-2262, p. 3-4<br><br>06-2703, p. 2 | 6/2/05 |
| NO | 48 | Records reflecting how Town came to blame Southeast & meeting minutes reflecting this decision | There are no meeting minutes wherein there is any discussion of Southeast being at fault. There are meeting minutes that describe the removal of the wave attenuator as causing the problem, but nothing to support claims against AGM or Southeast See, e.g., 12/10/03 Pier Corp minutes | 05-2262, p. 3-4<br><br>06-2703, p. 2 | 6/2/05 |
| NO | 49 | Complete expert opinions and information, including in regard to FS&T and its subconsultants | There is no record of the Town's examination of FS&T's work in regard to the docks and dock pile. This makes no sense based on industry standards or the facts. According to email from Richard Holland to SGH produced in the "impounded" documents, SGH prepared for and attended a meeting with FS&T to discuss such matters. See Exhibit E, email. | 05-2262, p. 3-4<br><br>06-2703, p. 2 | 6/2/05 |

HAYES & CARABALLO, PL
830 Lucerne Terrace
Orlando, FL 32801

| NO | 50 | Records of investigation, analysis & decision on "survivability without a wave barrier." | DPW email 12/7/03 | 05-2262, p. 3-4  06-2703, p. 2 | 6/2/05 |
|----|----|----|----|----|----|
| NO | 51 | Meeting minutes for 12/8/03 Town meeting(s) | Per FS&T memo of 12/8/03 | 05-2262, p. 3-4  06-2703, p. 2 | 6/2/05 |
| NO | 52 | Buoy data obtained by Harbor Master | Per FS&T memo of 12/8/03 | 05-2262, p. 3-4  06-2703, p. 2 | 6/2/05 |
| NO | 53 | R. Holland's request for info provided by FS&T on 6/22/04, all materials provided & analysis of wavelength, etc. referenced | FS&T letter of 6/22/04 to Rick Holland | 05-2262, p. 3-4  06-2703, p. 2 | 6/2/05 |

### B. *IN CAMERA* INSPECTION

At a minimum, *in camera* review is required. The materials may not be privileged, the privilege was waived, or the Town is not entitled to assert it.

Particularly, the crime-fraud exception--one of several qualifications to the attorney-client privilege--withdraws protection where the client sought or employed legal representation in order to commit or facilitate a fraud. Courts have required the privilege challenger to present evidence: "(1) that the client was engag[ed] in (or was planning) criminal or fraudulent activity when the communications took place; and (2) that the communications were intended by the client to facilitate or conceal the criminal or fraudulent activity." *See In re Grand Jury Proceedings,* 417 F.3d 18, 22 (1st Cir. 2005).

### C. REQUEST FOR DEPOSITION SHOULD BE RECONSIDERED

HAYES & CARABALLO, PL
830 Lucerne Terrace
Orlando, FL 32801

Further to consideration of the Town's present entitlement to assert privileges, Southeast had sought to depose David Guertin, the DPW Director, and the Court did not permit the deposition. However, Mr. Guertin is author of 26 of 80 electronic mail messages on the Town's log, including #57, which was not sent or copied to counsel and is party to 80 of 91 listed communications. (Exhibit 3, 4 at p. 17) A major deficiency in the Town's production is observable in Mr. Guertin's affidavit,[2] which states that the June 27-28, 2005 production was limited to "the Town's project documents *maintained at DPW...* ***if the documents requested in the subpoena existed in printed form,***" limits never disclosed by Town counsel. (Exhibit 4, p. 17 at ¶¶ 4, 6) The subpoenas for records and attendance at arbitration specifically sought "electronic mail or other computer stored data." *See* p. 2, above. A person responding to a subpoena is required to produce information in the form it is maintained. Fed. R. Civ. P. 45(d).

Notably, the documents the Town has produced do not establish that the Town has ever blamed the concrete floating dock manufacturer, Southeast, for the storm damage at MacMillan Pier. **As Southeast has strongly suspected all along, whether listed on the log or apparent by the Town's neglect of particular record requests in its "comments" to Table 1, the documentation withheld explains the lack of mention of Southeast's negligence and liability in the**

---

[2] Albeit an unsigned affidavit from David Guertin. (Doc. 55, Ex. 8 at pp. 16-18)

HAYES & CARABALLO, PL
830 Lucerne Terrace
Orlando, FL 32801

**records the Town and others did produce.** (Exhibit 3, 4)[3] The Town has avoided

disclosure of facts that would have exposed Town officials to criticism and

defeated AGM's claim against Southeast. For example:

- Specifics about the Town's storm video, relied upon by the Arbitrator.

- Southeast was charged with financial responsibility for repair work by AGM, for which AGM was purportedly not compensated, yet the Town has withheld information regarding the repairs, terms of its settlement with AGM **and the payment the Town made** under the guise of a stale change order it claims it did not approve until after arbitration. (Exhibit 4 at ##4, 5, 7)

- The Town's pre-storm resolution of a claim for engineering fees associated with the project piling and release of FS&T, which:

    o Did not comprehend the importance of the wind/wave analysis;

    o Provided inaccurate wind direction and wave data;

    o Did not require a lateral load test on the dock pile;

    o Downgraded the dock pile, contrary to Southeast's direction;

    o Did not update wind/wave analysis for removal of wave attenuator;

---

[3] For one example, #7 on Table 1 is the **"[f]ully executed settlement agreement with exhibits."** The subpoenas request documents **"relating to or referencing... storm damage...at MacMillan Pier."** The Town's comment is "[t]**he signed settlement agreement was produced**," noting it offered another copy of the settlement agreement to undersigned counsel; however, the Town has never addressed the missing exhibits. (Exhibit 4, pp. 2-3 at #7) Similar neglect of detail is observable throughout the Town's commentary in response to Table 1. (Exhibit 4)

HAYES & CARABALLO, PL
830 Lucerne Terrace
Orlando, FL 32801

- o Did not obtain appropriate data from Woods Hole Group;

- o Rejected Southeast's more substantial design;

- o Insisted upon installation with oversized pile guides;

- o Permitted installation during adverse weather; and

- o Generally failed to meet professional standards.

The Town is finally admitting, in its calculatingly indistinct style, that it <u>has</u> <u>not</u> fully disclosed the terms of the settlement[s], opinions and findings of experts, the stronger, 01/05 Nor'easter, and decision-making at meetings that were not reflected in the DPW records and are not with meeting minutes posted on-line. (Exhibit 4 at ##4-8, 9-11, 13, 16, 19, 21)[4] A deposition at which Southeast may undertake added inquiry should be permitted.

### D. TOWN SHOULD BE FOUND IN CONTEMPT

The filing under seal offers a fleeting glimpse of the Town's approach, which should really no longer be tolerated. In Exhibit 1 to this brief, utilizing the red, penned numbers, page 31 is a Town expert's barely legible notes. It refers to a meeting with Southeast in 2004, at which SGH was not to "**disclose anything**

---

[4] Interestingly, the admittedly omitted Exhibits from a "different project" referenced by the Town at #21 relate to the Pier's competition for funds due to a similarly grossly underfunded library project ongoing at the same time. In regard to the Town's library, Southeast belatedly learned the Arbitrator failed to disclose Provincetown's ownership of the project when revealing he had filed suit for an unpaid subcontractor just before the arbitration hearings commenced.

HAYES & CARABALLO, PL
830 Lucerne Terrace
Orlando, FL 32801

other than wave **height.**" (Exhibit 1 at p. 31)[5] Today, the Town continues to avoid discovery of information that vindicates Southeast and proves the Town's participation in fraud. *See Grand Jury Proceedings,* 417 F.3d at 22.

The first and second appeal by Southeast was of the Court's denial of Southeast's motion for an order of contempt. (Doc. 36) The privilege log is too little, too late and serves to prove the Town's repeated assurances are incomplete at best. **The Court's attention is directed to Exhibit 5, attached and incorporated by reference, which demonstrates the Town's omissions about records**.

The sworn statements by Town counsel throughout have implied that the only privileged materials were those filed under seal. The Town's obfuscation served its intended purpose; however, the manner in which the Town presents its claims of privilege by sworn testimony of its counsel, creates a situation where the failure to reveal the additionally "privileged" records first disclosed on 11/15/07 is equivalent to a false statement. *Sheppard v. River Valley Fitness One, L.P.*, 428 F.3d 1, 10 (1st Cir. 2005); *see* Exhibit 5.

2. Southeast identifies records in Exhibit 1 & 2 missing attachments

In Exhibit 1 and 2 (Table 1 #1-2), unidentifiable attachments are as follows:

| MISSING ATTACHMENTS – EXHIBIT 1 (53 PAGES) | |
|---|---|
| P. 2[6] | MISSING 51-PAGES |
| P. 7 | MISSING 13-PAGES |

---

[5] Page 31 from the Court was illegible and the attached was obtained subsequently, from SGH.
[6] Page cites are to the red, typewritten page numbers added by Southeast for ease of reference.

HAYES & CARABALLO, PL
830 Lucerne Terrace
Orlando, FL 32801

| P. 20 | MISSING EMAIL ATTACHMENTS |
|---|---|
| P. 21 | MISSING REFERENCED LIST OF ISSUES, ATTACHED |
| P. 23 | FIRST 4 PAGES APPEAR ATTACHED, 5-12 MISSING |
| P. 27 | ATTACHMENTS NOT IDENTIFIED OR INCLUDED |
| P. 28 | REFERENCED WAVE PROPERTIES NOT ATTACHED |
| P. 29 | ADDITIONAL ATTACHMENTS REFERENCED MISSING |
| P. 36 | ATTACHED WIND WAVE CHARTS AS OF 4/04 MISSING |
| P. 40 | ATTACHED EXECUTED SETTLEMENT AGREEMENT MISSING |
| P. 41 | REFERENCED ATTACHMENTS MISSING |
| P. 42 | ATTACHMENT FROM AGM MISSING |
| P. 43 | REFERENCED "PROVINCETOWN RELEASE" MISSING |
| P. 45 | NO SIGNED RELEASE AGREEMENT AS REFERENCED |
| P. 46 | MISSING MATERIALS FROM SUB-CONSULTANT WOODS-HOLE |

| MISSING ATTACHMENTS – EXHIBIT 2 (9 PAGES) | |
|---|---|
| P. 6 | REFERENCED MEMO IN FINAL PARAGRAPH (SEE PP. 8-9) |
| PP. 8, 9 | NO ATTACHMENT–REVISED WAVE PROPERTIES |

3. <u>As stated, a CD Rom of records scanned June 27-28, 2005 has been sent to Richard Holland, Esq. contemporaneous with filing this brief.</u>

<u>CERTIFICATE OF SERVICE</u>

I certify this brief was filed via the CM/ECF system on December 4, 2007

which sends notification by email to: rholland@k-plaw.com

s/Rosemary H. Hayes
Rosemary H. Hayes
Florida Bar no.: 549509
Hayes & Caraballo, PL
830 Lucerne Terrace
Orlando, FL 32801
(Voice) 407.649.9974
(Fax) 407.649.9379
rhayes@const-law.com
*Attorneys for Plaintiff*

HAYES & CARABALLO, PL
830 Lucerne Terrace
Orlando, FL 32801

*Exhibit #1*

*10-17-06*

FAY, SPOFFORD & THORNDIKE, LLC

Engineers • Planners • Scientists • Landscape Architects • Surveyors

CELEBRATING

**90**

YEARS

*Now, more than ever...*

August 17, 2004

Kopelman and Paige, P.C.
31 St. James Avenue
Boston, MA 02116

Attention:     Mr. Richard T. Holland

            Subject:     Town of Provincetown, MA
                      MacMillan Pier - Concrete Floating Docks

Dear Mr. Holland:

    We are sending herewith a copy of 110 memos/letters/faxes dating from September 1998 through December 2003 dealing with the floating docks.

    We retrieved this material from our files and believe that all of it has been previously sent to the Town.

    We have prepared a listing of this information for your use.

                        Very truly yours,

                        FAY, SPOFFORD & THORNDIKE, INC.
                        By:

                        Robert E. Bertolino,
                        Senior Vice President

cc:   D. Guertin, DPW Director, w/copy of document listing

R:\TP-090A\K&P1_081704.WPD

5 Burlington Woods
Burlington, MA 01803
T: 800.835.8666  |  T: 781.221.10
F: 781.229.1115  |  www.fstinc.c

08/04/2004 16:20 FAX 617 654 1735    KOPELMAN AND PAIGE    ☑001

| Boston | **Kopelman and Paige P.C.** | Northampton |
|---|---|---|
| | 31 St. James Avenue | |
| | Boston, MA 02116 | |
| Worcester | (617)556-0007 / (617)654-1735 - fax | Pittsfield |

## THIS DOCUMENT IS CONFIDENTIAL

## FAX TRANSMITTAL COVER SHEET

Date: ____**August 4, 2004**____    Number of Pages Including Cover: __52__

Account Code: _____    Original Will Follow:    Yes **X**    No____

This Fax was Sent By: ____**Richard T. Holland, Esq.**____    Operator Initials: **jmv**

**PLEASE DELIVER TO:**

| Name | Fax Number |
|---|---|
| **Dr. Rasko P. Ojdrovic** | **(781)907-9009** |

**COMMENTS OR INSTRUCTION:**

As we discussed, please review accompanying documents as part of your analysis and our discussion.

PLEASE CONTACT SENDER AT (617)654-1754 IF YOU HAVE NOT RECEIVED THE NUMBER OF PAGES NOTED ABOVE OR IF THERE ARE ANY PROBLEMS WITH THIS TRANSMISSION

8/17/04

FAY, SPOFFORD, and THORNDIKE

## LOG OF INFO PROVIDED TO KOPELMAN AND PAIGE ON 8/17/04 - PROVINCETOWN

| No. | Description | Author | Dated |
|-----|-------------|--------|-------|
| 1 | Memo of September 17, 1998 - Partnering Session | FST | 9/22/98 |
| 2 | Memo of January 6, 1999 Building Committee Meeting | FST | 1/13/99 |
| 3 | Proposal for Floating Wave Attenuator | Bellingham Marine | 1/22/99 |
| 4 | Memo of January 19, 1999 - | FST | 1/25/99 |
| 5 | Memo of January 19, 1999 - | FST | 1/26/99 |
| 6 | Memo of February 3, 1999 - Wave Barrier | FST | 2/3/99 |
| 7 | Memo of February 4, 1999 - Building Committee Meeting | FST | 2/17/99 |
| 8 | Memo of March 3, 1999 - Building Committee Meeting | FST | 3/10/99 |
| 9 | Memo of February 19, 1999 - Building Committee Meeting | FST | 3/10/99 |
| 10 | Letter to Town of Provincetown - Small Boat Floating Docks | FST | 7/21/99 |
| 11 | Memo of May 19, 1999 - Building Committee Meeting | FST | 7/23/99 |
| 12 | Memo - Ice Forces on Wave Barrier | FST | 9/23/99 |
| 13 | Letter to Provincetown DPW - MacMillan Pier Rehabilitation Timber Wave Barrier | FST | 12/13/99 |
| 14 | Letter to FST - MacMillan Pier Timber Wave Barrier | Town of Provincetown, DPW | 12/17/99 |
| 15 | Fax to Mass. Development Finance Agency - Summary of Telephone Calls | FST | 12/29/99 |
| 16 | Summary of Telephone Call to Provincetown DPW (Dave Guertin) - January 5, 2000 Town Mtg. | FST | 12/30/99 |
| 17 | Summary of Telephone Call to Bellingham Marine (Jay Varga) - Floating Wave Attenuator | FST | 1/7/00 |
| 18 | Summary of Telephone Call to Bellingham Marine (John Colonel) - Anchorage for Wave Attenuator | FST | 1/24/00 |
| 19 | Summary of Telephone Call to Provincetown DPW (Dave Guertin) - Concrete Floats | FST | 11/6/01 |
| 20 | Letter to AGM Marine Contractors, Inc. - Concrete Floating Docks | FST | 11/6/01 |
| 21 | Letter from AGM - PCO No. 42 Concrete Float Alternative | AGM | 11/28/01 |
| 22 | Fax to Provincetown DPW - MacMillan Pier Rehabilitation | FST | 12/3/01 |
| 23 | Letter from AGM - PCO No. 62 Concrete Float Dock Wall Upgrade | AGM | 1/7/02 |
| 24 | Letter to Provincetown DPW - MacMillan Pier Reconstruction | FST | 1/29/02 |
| 25 | Summary of Telephone Call to AGM (Bill Lovely) - Wavelength | FST | 2/12/02 |
| 26 | Fax to Provincetown DPW, AGM, & Res. Engineer - Cracks in concrete floats | FST | 2/27/02 |
| 27 | Fax to AGM - Evaluation of the Concrete Floating Dock Guide Piles | FST | 3/11/02 |
| 28 | Fax to Provincetown DPW - AGM's requested extra for the concrete floats | FST | 3/21/02 |
| 29 | Fax to AGM - Memo from Southeast Floating Docks | FST | 3/29/02 |
| 30 | Memo of March 28, 2002 - Job Meeting | FST | 4/4/02 |
| 31 | Letter to Provincetown DPW - East Floating Docks | FST | 4/26/02 |
| 32 | Summary of Telephone Call to DPW (Dave Guertin) - Walkway | FST | 5/3/02 |
| 33 | Letter to AGM - Floating Dock Guide Piles | FST | 5/14/02 |



FAY, SPOFFORD, and THORNDIKE

8/17/04

| # | Description | | Date |
|----|----|----|----|
| 34 | Memo of May 15, 2002 - Job Meeting | FST | 5/20/02 |
| 35 | Letter to AGM - PCO-42 Concrete Float Escalation | FST | 5/21/02 |
| 36 | Fax from AGM - RFI for Concrete Float Suppliers Engineer | AGM | 5/23/02 |
| 37 | Summary of Telephone Call Gary Greene - Concrete Floating Docks | FST | 5/31/02 |
| 38 | Fax to AGM - telephone memo between FST & Gary Greene (concrete float supplier) | FST | 5/31/02 |
| 39 | Memo of May 29, 2002 - Job Meeting | FST | 6/4/02 |
| 40 | Memo of July 10, 2002 - Job Meeting | FST | 7/16/02 |
| 41 | Letter from AGM - PCO No. 40 - Float Pile Alternative | AGM | 7/19/02 |
| 42 | Fax to AGM - Ramp Rider | FST | 7/19/02 |
| 43 | Letter to AGM - Concrete Float Hinges | FST | 7/22/02 |
| 44 | Fax from AGM - PCO 57 - Concrete Float Hinges Letter | AGM | 7/22/02 |
| 45 | Summary of Telephone Call to AGM (Bill Lovely) - Concrete Floats | FST | 7/23/02 |
| 46 | Summary of Telephone Call to SE Dock (Allan Simpson) - Technical Issues | FST | 7/24/02 |
| 47 | Summary of Telephone Call to AGM (Bill Lovely) - Concrete Floats Letter | FST | 7/24/02 |
| 48 | Summary of Telephone Call to SE Dock (Allan Simpson) - Concrete Floats | FST | 7/24/02 |
| 49 | Letter from Town of Provincetown - Floating Dock System & Handicap Accessible Gateway | Town of Provincetown, DPW | 7/25/02 |
| 50 | Summary of Telephone Call to AGM (Bill Lovely) - Concrete Floats | FST | 7/30/02 |
| 51 | Letter to AGM - Concrete Floating Docks | FST | 8/1/02 |
| 52 | Memo of July 31, 2002 - Job Meeting | FST | 8/7/02 |
| 53 | Transmittal from AGM - Submittals Concrete Floats | AGM | 8/14/02 |
| 54 | Transmittal to AGM - Concrete Floating Docks PE Calcs & Drawings | FST | 8/22/02 |
| 55 | Summary of Telephone Call to SE Floats (Sandy Kicliter) - Concrete Floats | FST | 8/27/02 |
| 56 | Memo of August 28, 2002 - Job Meeting | FST | 9/3/02 |
| 57 | Summary of Telephone Call to AGM (Bill Lovely) - Concrete Floats | FST | 9/6/02 |
| 58 | Fax from AGM - Concrete Float Plans Transmittal | AGM | 9/12/02 |
| 59 | Fax to Provincetown DPW - List of Outstanding Change Orders | FST | 9/17/02 |
| 60 | Transmittal to AGM - Concrete Floating Docks Shop Drawings | FST | 9/19/02 |
| 61 | Transmittal from AGM - Submittals Concrete Floats | AGM | 9/27/02 |
| 62 | Transmittal to AGM - Concrete Floating Docks Shop Drawings, Certificates, Concrete Mix Design | FST | 10/2/02 |
| 63 | Fax from SE Floating Docks - Concrete Design Mix 4000 PSI Lightweight Pump Mix Changes | SE Floating Docks | 10/8/02 |
| 64 | Transmittal from AGM - Submittals Concrete Floats Concrete Mix Design | AGM | 10/9/02 |
| 65 | Transmittal to AGM - Concrete Floating Docks - Concrete Mix Design | FST | 10/11/02 |
| 66 | Letter to AGM - Change Order No. 7 | FST | 10/14/02 |
| 67 | Memo from Provincetown DPW - MacMillian Pier Project; Decision Time | Town of Provincetown, DPW | 11/6/02 |
| 68 | Fax to Provincetown DPW - Concrete Floating Docks | FST | 12/8/02 |
| 69 | Letter from AGM - PCO No. 67 Remobilization of Crane Barge for Concrete Float Installation | AGM | 12/12/02 |
| 70 | Letter to AGM - Concrete Floating Dock Wale Upgrade | FST | 12/19/02 |

(4)

FAY, SPOFFORD, and THORNDIKE

8/17/04

| 71 | Fax from AGM - Change Order #3 Response to Letter from SE Floating Docks | AGM | 12/19/02 |
|---|---|---|---|
| 72 | Fax from AGM - Change Order #3 Waler and Rod Design | AGM | 12/20/02 |
| 73 | Letter from AGM - 67 Remobilization of Crane Barge for Concrete Float Installation | AGM | 1/6/03 |
| 74 | Fax to AGM - Response to PCO 62, Concrete Floating Dock Wale Upgrade | FST | 1/8/03 |
| 75 | Fax from AGM - Response to PCO 62, Concrete Floating Dock Wale Upgrade | AGM | 1/21/03 |
| 76 | Email from AGM - Floating Dock System | AGM | 2/4/03 |
| 77 | Fax to AGM - RFI 93 - Concrete Floating Dock Location | AGM | 2/7/03 |
| 78 | Fax from AGM - Concrete Floating Docks | AGM | 2/27/03 |
| 79 | Fax from AGM - Concrete Floating Dock Pile Guides Letter | AGM | 4/16/03 |
| 80 | Letter to AGM - Concrete Floating Docks | FST | 2/27/03 |
| 81 | Fax from AGM - Concrete Floating Docks | AGM | 3/4/03 |
| 82 | Fax to AGM - Denedeck Methacrylate Crack Sealer | FST | 3/7/03 |
| 83 | Letter to AGM - Concrete Floating Docks | FST | 3/13/03 |
| 84 | Summary of Telephone Call to (Sue Whittaker) - Concrete Float Conduit | FST | 3/14/03 |
| 85 | Memo of March 19, 2003 - Concrete Floating Docks | FST | 3/19/03 |
| 86 | Memo of March 18, 2003 - Job Meeting | FST | 3/19/03 |
| 87 | Fax from AGM - Concrete Floating Docks Letter | AGM | 3/28/03 |
| 88 | Fax to Provincetown DPW - Correspondence from AGM - Floating Dock Manufacturer | FST | 3/31/03 |
| 89 | Summary of Telephone Call to AGM (Bill Lovely) - Concrete Floating Docks | FST | 4/11/03 |
| 90 | Memo of April 23, 2003 - Job Meeting | FST | 4/28/03 |
| 91 | Fax to Provincetown DPW - Concrete Floating Docks | FST | 4/28/03 |
| 92 | Letter to AGM - Concrete Floating Docks | FST | 4/29/03 |
| 93 | Fax to AGM - Concrete Floating Docks | FST | 4/29/03 |
| 94 | Letter from AGM - Concrete Floating Dock Concrete Compression Test Results | AGM | 5/6/03 |
| 95 | Memo of May 7, 2003 - Job Meeting | FST | 5/23/03 |
| 96 | Fax from AGM - Concrete Floating Docks | AGM | 5/27/03 |
| 97 | Transmittal from AGM - Submittals Concrete Floats | AGM | 5/27/03 |
| 98 | Transmittal to AGM - Shop Drawings | FST | 6/2/03 |
| 99 | Summary of Telephone Call to AGM (Bill Lovely) - Concrete Floating Docks | FST | 6/2/03 |
| 100 | Summary of Telephone Call to Provincetown DPW (Dave Guertin) - Job Meeting | FST | 6/2/03 |
| 101 | Email from Provincetown DPW - Concrete Floating Dock - Backcharges | Town of Provincetown, DPW | 6/12/03 |
| 102 | Summary of Telephone Call to (Sue Whittaker) - Concrete Floating Docks | FST | 6/19/03 |
| 103 | Email from Provincetown DPW - Concrete Floating Dock - Project Update | Town of Provincetown, DPW | 8/8/03 |
| 104 | Letter to Provincetown DPW - Concrete Floating Dock Crack Survey Plans | FST | 10/16/03 |
| 105 | Email from Provincetown DPW - MacMillan Pier Damage | Town of Provincetown, DPW | 12/8/03 |
| 106 | Email from Regina Binder - MacMillan Pier Damage | ATT Global | 12/8/03 |
| 107 | Memo of December 8, 2003 - Site Visit to Observe Floating Dock Damage | FST | 12/10/03 |



FAY, SPOFFORD, and THORNDIKE

8/17/04

| 108 | Memo of December 8, 2003 Meeting - Floating Dock Damage | FST | 12/10/03 |
| 109 | Summary of Telephone Call to Provincetown DPW (Dave Guertin) - Steel Floats | FST | 12/11/03 |
| 110 | Summary of Telephone Call to Provincetown DPW (Dave Guertin) - Floating Docks | FST | 12/17/03 |

6

Boston

# Kopelman and Paige P.C.
### 31 St. James Avenue
**Boston, MA 02116**
(617)556-0007 / (617)654-1735 – fax

Northampton

Worcester

Pittsfield

## THIS DOCUMENT IS CONFIDENTIAL

## FAX TRANSMITTAL COVER SHEET

Date: _____ February 20, 2004 _____    Number of Pages Including Cover: **14** _____

Account Code: _____ 0058 _____    Original Will Follow:    Yes_____    No__X__

This Fax was Sent By: _____ **DAVID DONESKI** _____    Operator Initials:_____

## PLEASE DELIVER TO:

| Name | Fax Number |
|------|-----------|
| **DON DUSENBERRY** | **(781) 907-9009** |

## COMMENTS OR INSTRUCTION:

**Attached please find some background materials on the MacMillan Pier matter in Provincetown, including portions of a previous report prepared for the Town on the issues in question.**

**Please call with any questions.**

PLEASE CONTACT SENDER AT (617)654-1754 IF YOU HAVE NOT RECEIVED THE NUMBER OF PAGES NOTED ABOVE OR IF THERE ARE ANY PROBLEMS WITH THIS TRANSMISSION

03/05/2004 12:50 FAX 617 654 1735    KOPELMAN AND PAIGE    ☑001

| Boston | **Kopelman and Paige P.C.** | Northampton |
|---|---|---|
| | 31 St. James Avenue | |
| | Boston, MA 02116 | |
| Worcester | (617)556-0007 / (617)654-1735 - fax | Pittsfield |

## THIS DOCUMENT IS CONFIDENTIAL

## FAX TRANSMITTAL COVER SHEET

Date: _____**March 5, 2004**_____    Number of Pages Including Cover: ___6___

Account Code: ___0058___    Original Will Follow:    Yes _X_    No_____

This Fax was Sent By: ___David J. Doneski, Esq.___    Operator Initials: _jmv_

## PLEASE DELIVER TO:

| Name | Fax Number |
|---|---|
| Donald O. Dusenberry, P.E. | (781)907-9009 |

## COMMENTS OR INSTRUCTION:

Re:    Assessment of Storm Effects on MacMillan Pier Floating Dock System

PLEASE CONTACT SENDER AT (617)654-1754 IF YOU HAVE NOT RECEIVED THE NUMBER OF PAGES NOTED ABOVE OR IF THERE ARE ANY PROBLEMS WITH THIS TRANSMISSION



**KOPELMAN AND PAIGE, P. C.**

ATTORNEYS AT LAW

91 ST. JAMES AVENUE

BOSTON, MASSACHUSETTS 02116 4102

(617) 556-0007
FAX (617) 654-1735

PITTSFIELD OFFICE
(413) 443-6100

NORTHAMPTON OFFICE
(413) 585-8632

WORCESTER OFFICE
(508) 752-0203

LEONARD KOPELMAN
DONALD G. PAIGE
ELIZABETH A. LANE
JOYCE FRANK
JOHN W. GIORGIO
BARBARA J. SAINT ANDRE
JOEL B BARD
JOSEPH L. TEHAN, JR.
THERESA M. DOWDY
DEBORAH A. ELIASON
RICHARD BOWEN
DAVID J. DONESKI
JUDITH C. CUTLER
KATHLEEN E. CONNOLLY
DAVID C. JENKINS
MARK R. REICH
BRIAN W. RILEY
DARREN R. KLEIN
JONATHAN M. SILVERSTEIN

EDWARD M. REILLY
DIRECTOR WESTERN OFFICE

WILLIAM HEWIG III
JEANNE S. McKNIGHT

KATHLEEN M. O'DONNELL
SANDRA M. CHARTON
PATRICIA A. CANTOR
THOMAS P. LANE, JR.
MARY L. GIORGIO
THOMAS N. McENANEY
KATHARINE GOREE DOYLE
GEORGE X. PUCCI
LAUREN F. GOLDBERG
JASON R. TALERMAN
JEFFREY A. HONIG
MICHELE E. RANDAZZO
GREGG J. CORBO
RICHARD T. HOLLAND
L SA C. ADAMS
ELIZABETH R. CORBO
MARCELINO LA BELLA
VICKI S. MARSH
JOHN J. GOLDROSEN
SHIRIN EVERETT
BRIAN E. GLENNON, II
JONATHAN D. EICHMAN
LAJRA H PAWLE
TODD A. FRAMPTON
JACKIE COWIN
SARAH N. TURNER

March 5, 2004

**BY FACSIMILE – (781)907-9009**
**AND FIRST CLASS MAIL**

Donald O. Dusenberry, P.E.
Simpson Gumpertz & Heger, Inc.
41 Seyon Street
Building 1, Suite 500
Waltham, MA 02453

Re:   Assessment of Storm Effects on MacMillan Pier Floating Dock System

Dear Mr. Dusenberry:

     As we discussed, the Town of Provincetown would like to retain Simpson Gumpertz and Heger, Inc. for professional consultant services in connection with recent storm damage to the MacMillan Pier. To that end, I have reviewed the contract materials you forwarded to me with your letter of February 12, 2004 and I enclose two originals of our form of Agreement for Professional Services with your firm's Fee Schedule and Payment Terms attached. Please review and arrange for execution of the Agreement by SGH, and return the originals to me for signature by the Town.

     I understand that you are scheduled to begin your review of the floating dock system this week pursuant to your recent discussions with David Guertin, Director of the Provincetown Department of Public Works. I ask that you coordinate your work with Mr. Guertin, who shall be your primary contact for the Town, and keep me informed of your progress.

     Thank you for services on this matter. Should you have any questions or comments, please contact me.

Very truly yours,

David J. Doneski

DJD/RTH/jmv
Enc.
cc:   Town Manager
      Director of Public Works (w/o enc.)



## AGREEMENT FOR PROFESSIONAL SERVICES
### BETWEEN
### THE TOWN OF PROVINCETOWN
### AND SIMPSON GUMPERTZ & HEGER, INC.

The Town of Provincetown, Massachusetts, acting by and through its Town Manager, with an address of 260 Commercial Street, Provincetown, Massachusetts, 02657 ("Town") and Simpson Gumpertz & Heger, Inc. with an address of 41 Seyon Street, Building 1, Suite 500, Waltham, Massachusetts 02453 ("SGH") hereby agree as follows:

**1. Procurement of Services.** The Town hereby retains SGH for the purpose of providing professional analysis and support services in connection with the matter known as the MacMillan Pier Reconstruction (the "Project"). Said services shall include review and analysis of (1) storm damage to MacMillan Pier and the cause(s) of the failure of the pier's floating dock system; (2) claims which have been/may be asserted by or against the Town in connection with the Project; and (3) claims which have been/may be asserted by or against the Project engineer, contractor, or manufacturer (of the floating dock system) involved with the Project. Said services shall also include consultation with designated officials and agents of the Town for the purpose of performing such analysis and valuing said claims; defending against the claims of the contractor or engineer and prosecuting claims against the contractor, engineer and/or manufacturer. It is understood that SGH's services relating to No. (2) and No. (3), above, may include technical and professional support and testimony at or in mediation, arbitration or judicial proceedings, including depositions related thereto, and may include, if requested by the Town, such support and testimony in additional proceedings relating to the Project. As of the date of this agreement, however, and until further written notice from the Town, the scope of SGH's services shall be limited to the review and analysis of the storm damage to MacMillan Pier and the cause(s) of the failure of the floating dock system, as identified in No. (1), above. No written report of such review and analysis shall be issued by SGH unless and until specifically authorized by the Town.

**2. Compensation.** For the performance of services hereunder, the Town shall compensate SGH as follows:

16

| Donald O. Dusenberry | $215/hour |
| Other SGH Employees | At the rates indicated in the Fee Schedule and Payment Terms form which is attached hereto as Exhibit A. |
| Outside consultants to SGH (only when specifically authorized by the Town) | 1.15 times consultant's fee |
| Reimbursable expenses | 1.1 times cost |

The Town shall make an initial retainer payment to SGH in the amount of one thousand dollars ($1,000.00) after execution of this agreement. SGH shall not perform services that will result in billings that will exceed $10,000.00 without further written authorization of the Town. SGH may stop work hereunder if the Town fails to make payment in a timely manner. If, at the conclusion of SGH's services hereunder, there is any portion of a payment made by the Town against which SGH has not provided billable services, that portion shall promptly be repaid to the Town.

**3. Coordination of Services.** In the performance of services hereunder, SGH shall work under the direction and supervision of the Town's counsel, Kopelman and Paige, P.C.

**4. Preservation of Rights and Privileges.** It is expressly understood and agreed that the Town is retaining the services of SGH in connection with dispute resolution proceedings relating to the Project and possible litigation. Therefore, SGH shall take reasonable steps to preserve the confidentiality of materials, reports and opinions provided to the Town. In addition, SGH shall comply with reasonable requests of the Town's counsel regarding the performance of services and communication of information as necessary to preserve the attorney work-product privilege as it relates to information and opinions provided by SGH hereunder.

**5. Availability of Funds.** The compensation provided by this Agreement is subject to the availability and appropriation of funds. SGH shall not be required to perform services that have an associated cost that exceeds the then current appropriation for compensation hereunder.

11

**6. Assignment.** SGH shall not make any assignment of this Agreement without the prior written approval of the Town.

**7. Termination.** Either party may terminate this Agreement upon ten (10) days written notice to the other party. In the event of termination by the Town, the Town shall pay SGH for services performed up to the date of notice of termination, provided that no payment shall be made for reports, analyses or other deliverables until the same have been delivered to the Town.

**8. Applicable Law.** This Agreement shall be governed by and construed in accordance with the law of the Commonwealth of Massachusetts.

**9. Required Certification.** Pursuant to G.L. c.62C, §49A, SGH certifies that it has complied with all laws of the Commonwealth of Massachusetts relating to taxes. SGH's Federal Identification Number is _____.


SIMPSON GUMPERTZ & HEGER, INC.                    TOWN OF PROVINCETOWN
                                                  By its Town Manager


By _____                      _____

    Name: _____

    Title: _____

215217/24207/0008

## SIMPSON GUMPERTZ & HEGER INC.
## FEE SCHEDULE AND PAYMENT TERMS

**EX. A**

| Personnel Category* | Hourly Billing Rate ($ per hour) |
|---|---|
| Senior Principal | $215 |
| Principal | $215 |
| Senior Associate | $205 |
| Associate | $195 |
| | |
| Consulting Architect | $190 |
| Staff Consultant | $190 |
| Senior Project Manager 1 | $170 |
| Senior Project Manager 2 | $160 |
| Senior Project Manager 3 | $154 |
| Project Manager | $154 |
| | |
| Senior Project Supervisor 1 | $160 |
| Senior Project Supervisor 2 | $120 |
| Project Supervisor | $120 |
| | |
| Senior Staff Engineer 1 | $152 |
| Senior Staff Engineer 2 | $132 |
| Staff Engineer 1 | $130 |
| Staff Engineer 2 | $115 |
| Senior Engineer 1 | $110 |
| Senior Engineer 2 | $97 |
| Senior Field Engineer | $97 |
| Engineer | $90 |
| Field Engineer | $90 |
| | |
| Senior Laboratory Technician | $100 |
| Laboratory Technician 1 | $80 |
| Laboratory Technician 2 | $70 |
| Engineering Aide | $58 |
| | |
| Director of Metallurgy | $275 |
| Manager, Electrical Engineering | $145 |
| Petrographer | $185 |
| | |
| Senior Project Drafter | $110 |
| Senior Drafter | $99 |
| Drafter | $84 |
| Senior Illustrator/Programmer | $115 |
| Illustrator/Programmer 1 | $84 |
| Illustrator/Programmer 2 | $65 |
| Data Manager | $95 |
| | |
| Non-Technical | $48 |

\* Personnel categories and rates shown for Engineers apply also to Architects and Conservators.

... consulting services are billed at the applicable rate(s) stated above. An annual rate adjustment, based upon salary increases, will apply on January 1 each year. Annual rate adjustments will not exceed 5% without Client's advance approval.

Direct expenses include out-of-pocket expenses, such as subconsultants, travel, and outside services, and charges for the use of SGH field and laboratory equipment, reproduction facilities, etc. Direct expenses also include all reasonable expenses resulting from required responses to subpoenas or court orders related to work under the Contract.

Invoices will be submitted periodically, and are due and payable upon receipt. Unpaid balances shall be subject to an additional charge at the rate of 1-1/2% per month from the date of invoice if the unpaid balance is not paid within 30 days. Invoices will be submitted showing labor (hours worked) by labor category and total expenses, but not actual documentation. The Client shall reimburse SGH for all attorney's fees and costs related to collection of overdue accounts.

FORM 0120C04                                          Effective 20 January 2004

LEONARD KOPELMAN
DONALD G. PAIGE
ELIZABETH A. LANE
JOYCE FRANK
JOHN W. GIORGIO
BARBARA J. SAINT ANDRE
JOEL B. BARD
JOSEPH L. TEHAN, JR.
THERESA M. DOWDY
DEBORAH A. ELIASON
RICHARD BOWEN
DAVID J. DONESKI
JUDITH C. CUTLER
KATHLEEN E. CONNOLLY
DAVID C. JENKINS
MARK R. REICH
BRIAN W. RILEY
DARREN R. KLEIN
JONATHAN M. SILVERSTEIN

EDWARD M. REILLY
DIRECTOR WESTERN OFFICE

WILLIAM HEWIG III
JEANNE S. McKNIGHT

## KOPELMAN AND PAIGE, P. C.

ATTORNEYS AT LAW

31 ST. JAMES AVENUE

BOSTON, MASSACHUSETTS 02116-4102

(617) 556-0007
FAX (617) 654-1735

PITTSFIELD OFFICE
(413) 443-6100

NORTHAMPTON OFFICE
(413) 585-8632

WORCESTER OFFICE
(508) 752-0203

KATHLEEN M. O'DONNELL
SANDRA M. CHARTON
PATRICIA A. CANTOR
THOMAS P. LANE, JR.
MARY L. GIORGIO
THOMAS W. McENANEY
KATHARINE GOREE DOYLE
GEORGE X. PUCCI
LAUREN F. GOLDBERG
JASON R. TALERMAN
JEFFREY A. HONIG
MICHELE E. RANDAZZO
GREGG J. CORBO
RICHARD T. HOLLAND
LISA C. ADAMS
ELIZABETH R. CORBO
MARCELINO LA BELLA
VICKI S. MARSH
JOHN J. GOLDROSEN
SHIRIN EVERETT
BRIAN E. GLENNON, II
JONATHAN D. EICHMAN
LAURA H. PAWLE
TODD A. FRAMPTON
JACKIE COWIN
SARAH N. TURNER

March 5, 2004

BY FACSIMILE – (781)907-9009
AND FIRST CLASS MAIL

Donald O. Dusenberry, P.E.
Simpson Gumpertz & Heger, Inc.
41 Seyon Street
Building 1, Suite 500
Waltham, MA 02453

Re:     Assessment of Storm Effects on MacMillan Pier Floating Dock System

Dear Mr. Dusenberry:

As we discussed, the Town of Provincetown would like to retain Simpson Gumpertz and Heger, Inc. for professional consultant services in connection with recent storm damage to the MacMillan Pier. To that end, I have reviewed the contract materials you forwarded to me with your letter of February 12, 2004 and I enclose two originals of our form of Agreement for Professional Services with your firm's Fee Schedule and Payment Terms attached. Please review and arrange for execution of the Agreement by SGH, and return the originals to me for signature by the Town.

I understand that you are scheduled to begin your review of the floating dock system this week pursuant to your recent discussions with David Guertin, Director of the Provincetown Department of Public Works. I ask that you coordinate your work with Mr. Guertin, who shall be your primary contact for the Town, and keep me informed of your progress.

Thank you for services on this matter. Should you have any questions or comments, please contact me.

Very truly yours,

David J. Doneski

DJD/RTH/jmv
Enc.
cc:     Town Manager
        Director of Public Works (w/o enc.)
215210/PROVMACPIER/0008

PRINTED ON RECYCLED PAPER



*Please review*
*Thanks, Don*

LEONARD KOPELMAN
DONALD G. PAIGE
ELIZABETH A. LANE
JOYCE FRANK
JOHN W. GIORGIO
BARBARA J. SAINT ANDRE
JOEL B. BARD
JOSEPH L. TEHAN, JR.
THERESA M. DOWDY
DEBORAH A. ELIASON
RICHARD BOWEN
DAVID J. DONESKI
JUDITH C. CUTLER
KATHLEEN E. CONNOLLY
DAVID C. JENKINS
MARK R. REICH
BRIAN W. RILEY
DARREN R. KLEIN
JONATHAN M. SILVERSTEIN

EDWARD M. REILLY
DIRECTOR WESTERN OFFICE

WILLIAM HEWIG III
JEANNE S. McKNIGHT

**KOPELMAN AND PAIGE, P. C.**

ATTORNEYS AT LAW

31 ST. JAMES AVENUE

BOSTON, MASSACHUSETTS 02116-4102

(617) 556-0007
FAX (617) 654-1735

PITTSFIELD OFFICE
(413) 443-6100

NORTHAMPTON OFFICE
(413) 585-8632

WORCESTER OFFICE
(508) 752-0203

KATHLEEN M. O'DONNELL
SANDRA M. CHARTON
PATRICIA A. CANTOR
THOMAS P. LANE, JR.
MARY L. GIORGIO
THOMAS W. McENANEY
KATHARINE GOREE DOYLE
GEORGE X. PUCCI
LAUREN F. GOLDBERG
JASON R. TALERMAN
JEFFREY A. HONIG
MICHELE E. RANDAZZO
GREGG J. CORBO
RICHARD T. HOLLAND
LISA C. ADAMS
ELIZABETH R. CORBO
MARCELINO LA BELLA
VICKI S. MARSH
JOHN J. GOLDROSEN
SHIRIN EVERETT
BRIAN E. GLENNON, II
JONATHAN D. EICHMAN
LAURA H. PAWLE
TODD A. FRAMPTON
JACKIE COWIN
SARAH N. TURNER

March 5, 2004

BY FACSIMILE – (781)907-9009
AND FIRST CLASS MAIL

Donald O. Dusenberry, P.E.
Simpson Gumpertz & Heger, Inc.
41 Seyon Street
Building 1, Suite 500
Waltham, MA 02453

Re:   Assessment of Storm Effects on MacMillan Pier Floating Dock System

Dear Mr. Dusenberry:

As we discussed, the Town of Provincetown would like to retain Simpson Gumpertz and Heger, Inc. for professional consultant services in connection with recent storm damage to the MacMillan Pier. To that end, I have reviewed the contract materials you forwarded to me with your letter of February 12, 2004 and I enclose two originals of our form of Agreement for Professional Services with your firm's Fee Schedule and Payment Terms attached. Please review and arrange for execution of the Agreement by SGH, and return the originals to me for signature by the Town.

I understand that you are scheduled to begin your review of the floating dock system this week pursuant to your recent discussions with David Guertin, Director of the Provincetown Department of Public Works. I ask that you coordinate your work with Mr. Guertin, who shall be your primary contact for the Town, and keep me informed of your progress.

Thank you for services on this matter. Should you have any questions or comments, please contact me.

Very truly yours,

David J. Doneski

DJD/RTH/jmv
Enc.
cc:   Town Manager
      Director of Public Works (w/o enc.)
215210/PROVMACPIER/0008

(15)

PRINTED ON RECYCLED PAPER

### AGREEMENT FOR PROFESSIONAL SERVICES
### BETWEEN
### THE TOWN OF PROVINCETOWN
### AND SIMPSON GUMPERTZ & HEGER, INC.

The Town of Provincetown, Massachusetts, acting by and through its Town Manager, with an address of 260 Commercial Street, Provincetown, Massachusetts, 02657 ("Town") and Simpson Gumpertz & Heger, Inc. with an address of 41 Seyon Street, Building 1, Suite 500, Waltham, Massachusetts 02453 ("SGH") hereby agree as follows:

**1. Procurement of Services.**  The Town hereby retains SGH for the purpose of providing professional analysis and support services in connection with the matter known as the MacMillan Pier Reconstruction (the "Project").  Said services shall include review and analysis of (1) storm damage to MacMillan Pier and the cause(s) of the failure of the pier's floating dock system; (2) claims which have been/may be asserted by or against the Town in connection with the Project; and (3) claims which have been/may be asserted by or against the Project engineer, contractor, or manufacturer (of the floating dock system) involved with the Project.  Said services shall also include consultation with designated officials and agents of the Town for the purpose of performing such analysis and valuing said claims; defending against the claims of the contractor or engineer and prosecuting claims against the contractor, engineer and/or manufacturer.  It is understood that SGH's services relating to No. (2) and No. (3), above, may include technical and professional support and testimony at or in mediation, arbitration or judicial proceedings, including depositions related thereto, and may include, if requested by the Town, such support and testimony in additional proceedings relating to the Project.  As of the date of this agreement, however, and until further written notice from the Town, the scope of SGH's services shall be limited to the review and analysis of the storm damage to MacMillan Pier and the cause(s) of the failure of the floating dock system, as identified in No. (1), above.  No written report of such review and analysis shall be issued by SGH unless and until specifically authorized by the Town.

**2. Compensation.**  For the performance of services hereunder, the Town shall compensate SGH as follows:

16

| | |
|---|---|
| Donald O. Dusenberry | $215/hour |
| Other SGH Employees | At the rates indicated in the Fee Schedule and Payment Terms form which is attached hereto as Exhibit A. |
| Outside consultants to SGH (only when specifically authorized by the Town) | 1.15 times consultant's fee |
| Reimbursable expenses | 1.1 times cost |

The Town shall make an initial retainer payment to SGH in the amount of one thousand dollars ($1,000.00) after execution of this agreement. SGH shall not perform services that will result in billings that will exceed $10,000.00 without further written authorization of the Town. SGH may stop work hereunder if the Town fails to make payment in a timely manner. If, at the conclusion of SGH's services hereunder, there is any portion of a payment made by the Town against which SGH has not provided billable services, that portion shall promptly be repaid to the Town.

**3. Coordination of Services.** In the performance of services hereunder, SGH shall work under the direction and supervision of the Town's counsel, Kopelman and Paige, P.C.

**4. Preservation of Rights and Privileges.** It is expressly understood and agreed that the Town is retaining the services of SGH in connection with dispute resolution proceedings relating to the Project and possible litigation. Therefore, SGH shall take reasonable steps to preserve the confidentiality of materials, reports and opinions provided to the Town. In addition, SGH shall comply with reasonable requests of the Town's counsel regarding the performance of services and communication of information as necessary to preserve the attorney work-product privilege as it relates to information and opinions provided by SGH hereunder.

**5. Availability of Funds.** The compensation provided by this Agreement is subject to the availability and appropriation of funds. SGH shall not be required to perform services that have an associated cost that exceeds the then current appropriation for compensation hereunder.

*[handwritten margin notes:]* Unless compelled by law, *k* *overturned* *by ng* *a court, without,* *n an* *order* *r a court of competent jurisdiction, or unless req'd pursuant to a subpoena deemed by the Town to be duly issued, or unless req'd by SGH pursuant to the proposal or otherwise,*

*[handwritten circled:]* 17

**6. Assignment.** SGH shall not make any assignment of this Agreement without the prior written approval of the Town.

*and commitments their behalf made on*

7. **Termination.** Either party may terminate this Agreement upon ten (10) days written notice to the other party. In the event of termination by the Town, the Town shall pay SGH for services performed up to the date of notice of termination, provided that no payment shall be made for reports, analyses or other deliverables until the same have been delivered to the Town.

*we retain copy*

**8. Applicable Law.** This Agreement shall be governed by and construed in accordance with the law of the Commonwealth of Massachusetts.

**9. Required Certification.** Pursuant to G.L. c.62C, §49A, SGH certifies that it has complied with all laws of the Commonwealth of Massachusetts relating to taxes. SGH's Federal Identification Number is ___04-225-6923_____.


SIMPSON GUMPERTZ & HEGER, INC.             TOWN OF PROVINCETOWN
                                           By its Town Manager

By _____            _____

    Name: _____

    Title: _____

215217/24207/0008

18

FEB.12.2004   2:29PM   SIMPSON,GUMPER&HEGER INC.                    NO.336   P.3

# SIMPSON GUMPERTZ & HEGER INC.
## FEE SCHEDULE AND PAYMENT TERMS

**EX. A**

| Personnel Category* | Hourly Billing Rate ($ per hour) |
|---|---|
| Senior Principal | $215 |
| Principal | $215 |
| Senior Associate | $205 |
| Associate | $195 |
| | |
| Consulting Architect | $190 |
| Staff Consultant | $190 |
| Senior Project Manager 1 | $170 |
| Senior Project Manager 2 | $160 |
| Senior Project Manager 3 | $154 |
| Project Manager | $154 |
| | |
| Senior Project Supervisor 1 | $160 |
| Senior Project Supervisor 2 | $120 |
| Project Supervisor | $120 |
| | |
| Senior Staff Engineer 1 | $152 |
| Senior Staff Engineer 2 | $132 |
| Staff Engineer 1 | $130 |
| Staff Engineer 2 | $115 |
| Senior Engineer 1 | $110 |
| Senior Engineer 2 | $97 |
| Senior Field Engineer | $97 |
| Engineer | $90 |
| Field Engineer | $90 |
| | |
| Senior Laboratory Technician | $100 |
| Laboratory Technician 1 | $80 |
| Laboratory Technician 2 | $70 |
| Engineering Aide | $58 |
| | |
| Director of Metallurgy | $275 |
| Manager, Electrical Engineering | $145 |
| Petrographer | $185 |
| | |
| Senior Project Drafter | $110 |
| Senior Drafter | $99 |
| Drafter | $84 |
| Senior Illustrator/Programmer | $115 |
| Illustrator/Programmer 1 | $84 |
| Illustrator/Programmer 2 | $65 |
| Data Manager | $95 |
| | |
| Non-Technical | $48 |

* Personnel categories and rates shown for Engineers apply also to Architects and Conservators.

... ... following services are billed at the applicable rate(s) stated above. An annual rate adjustment, ba... upon salary increase... will apply on January 1 each year. Annual rate adjustments will not exceed 5% ... ...out Client's advance approval.

Direct expenses include out-of-pocket expenses, s... as subconsu... ..., travel, and outside services, and charges for the use of SGH field and laboratory equipment, rep... ... ...m facilities, etc. Direct expenses also include all reasonable expenses resulting from required ... ...ponses to subpoe... ...s or court orders related to work under the Contract.

Invoices will be submit... ...d periodically, and are due and payable upon receipt. Unpaid ba... ...ces shall be subject to an additional cha... ...e at the rate of 1-1/2% per month from the date of invoice if the unpaid balance ... ...ot paid within 30 days. ...voices will be submitted showing labor (hours worked) by labor category and total expenses, b... ...not ...documentation. The Client shall reimburse SGH for all attorney's fees and costs related to collection of ...verdue payments.

FORM 0120C04                                                    Effective 20 January 2004

19

## Donald O. Dusenberry

| | |
|---|---|
| **From:** | Rasko P. Ojdrovic |
| **Sent:** | Monday, April 11, 2005 4:13 PM |
| **To:** | Donald O. Dusenberry |
| **Subject:** | FW: Provincetown MacMillan Pier |
| **Importance:** | High |
| **Attachments:** | 55q$04!.DOC |

Rasko P. Ojdrovic, Ph.D, P.E.
Staff Consultant
Simpson Gumpertz & Heger Inc.
41 Seyon Street
Building 1, Suite 500
Waltham, MA 02453

Phone: 781-907-9231
Fax:    781-907-9009
rpojdrovic@sgh.com

www.sgh.com

---

**From:** Richard T. Holland [mailto:RHolland@k-plaw.com]
**Sent:** Monday, April 11, 2005 9:51 AM
**To:** Rasko P. Ojdrovic
**Subject:** Provincetown MacMillan Pier
**Importance:** High

Rasko,

AGM has agreed to the attached. I am preparing a release of liability for approval by the Town, which I will then send over to SGH for consideration, as we discussed some time ago. Speak to you soon. Call me if you have any questions.

Rick.

Richard T. Holland
Kopelman and Paige, P.C.
31 St. James Avenue
Boston, MA 02116
(617) 556-0007
(617) 654-1735 (fax)
rholland@k-plaw.com

This message and the documents attached to it, if any, are intended only for the use of the addressee and may contain information that is PRIVILEGED and CONFIDENTIAL and may contain ATTORNEY WORK PRODUCT. If you are not the intended recipient, you are hereby notified that any dissemination of this communication is strictly prohibited. If you have received this communication in error, please delete all electronic copies of this message and attachments thereto, if any, and destroy any hard copies you may have created and notify me immediately.

4/13/2005



## Donald O. Dusenberry

**From:**    Richard T. Holland [RHolland@k-plaw.com]
**Sent:**    Friday, February 25, 2005 11:41 AM
**To:**      Donald O. Dusenberry
**Subject:** RE: Comments on agreement

Thank you for your prompt response. If I have any questions, I will call you.

Rick.

Richard T. Holland
Kopelman and Paige, P.C.
31 St. James Avenue
Boston, MA 02116
(617) 556-0007
(617) 654-1735 (fax)
rholland@k-plaw.com

This message and the documents attached to it, if any, are intended only for the use of the addressee and may contain information that is PRIVILEGED and CONFIDENTIAL and may contain ATTORNEY WORK PRODUCT. If you are not the intended recipient, you are hereby notified that any dissemination of this communication is strictly prohibited. If you have received this communication in error, please delete all electronic copies of this message and attachments thereto, if any, and destroy any hard copies you may have created and notify me immediately.

-----Original Message-----
**From:** Donald O. Dusenberry [mailto:DODusenberry@sgh.com]
**Sent:** Friday, February 25, 2005 11:34 AM
**To:** Richard T. Holland
**Cc:** Rasko P. Ojdrovic
**Subject:** Comments on agreement

Rick,

Attached is a list of issues that you might want to consider in a memo of understanding about the nature of the replacement dock. This list is developed on the understanding that you need to establish the general understanding about the replacement dock, not specifications for its design and construction. It also is based on the understanding that the City has decided that it wants to retain the floats of the main pier and have new wooden finger piers.

Let me know if you have questions.

Don

Donald O. Dusenberry, Principal
Simpson Gumpertz & Heger Inc.
41 Seyon Street, Building 1, Suite 500
Waltham, Massachusetts 02453
Direct Dial: 781-907-9237
Operator: 781-907-9000
Fax: 781-907-9009
E-mail: dodusenberry@sgh.com
www.sgh.com

2/25/2005



Don.    Dusenberry - Fwd: Confidential; Further Info needed from FS&T                                    Page 1

**From:**       Rasko Ojdrovic
**To:**         Dusenberry, Donald
**Date:**       4/23/2004 11:54:06 AM
**Subject:**    Fwd: Confidential; Further Info needed from FS&T


>>> "David F. Guertin" <dpwdirector@provincetown-ma.gov> 4/23/2004 8:41:47 AM >>>
We should consider, in light of yesterday's development, a meeting with Fay
Spoffard & Thorndike. We need to understand the intent of Add #1 and the
clarification they gave with RFI process. We have yet to hear from them but
we have not asked for anything either. Suggest meeting @ K&P w/ Rasko
present...engineer to engineer. We then also get to discuss issue of
"ordinary care" from the engineers of record. We will ultimately need to
answer that question anyway. Your thoughts please. DFG



Boston

**Kopelman and Paige P.C.**
31 St. James Avenue
Boston, MA 02116
(617)556-0007 / (617)654-1735 - fax

Northampton

Worcester

Pittsfield

THIS DOCUMENT IS CONFIDENTIAL

FAX TRANSMITTAL COVER SHEET

Date: _____February 27, 2004_____   Number of Pages Including Cover: __12__

Account Code: _____   Original Will Follow:   Yes _X_   No_____

This Fax was Sent By: ___David J. Doneski, Esq.___   Operator Initials: _jmv_

PLEASE DELIVER TO:

| Name | Fax Number |
|------|-----------|
| Mr. Keith Bergman | (508)487-9560 |

COMMENTS OR INSTRUCTION:

<u>CONFIDENTIAL - NOT A PUBLIC DOCUMENT</u>
<u>INTERDEPARTMENTAL POLICY MEMORANDUM</u>

Re:   <u>MacMillan Pier Reconstruction</u>

PLEASE CONTACT SENDER AT (617)654-1754 IF YOU HAVE NOT RECEIVED THE NUMBER OF PAGES NOTED ABOVE OR IF THERE ARE ANY PROBLEMS WITH THIS TRANSMISSION

LEONARD KOPELMAN
DONALD G. PAIGE
ELIZABETH A. LANE
JOYCE FRANK
JOHN W. GIORGIO
BARBARA J. SAINT ANDRE
JOEL B. BARD
JOSEPH L. TEHAN, JR.
THERESA M. DOWDY
DEBORAH A. ELIASON
RICHARD BOWEN
DAVID J. DONESKI
JUDITH C. CUTLER
KATHLEEN E. CONNOLLY
DAVID C. JENKINS
MARK R. REICH
BRIAN W. RILEY
DARREN R. KLEIN
JONATHAN M. SILVERSTEIN

EDWARD M. REILLY
DIRECTOR WESTERN OFFICE

WILLIAM HEWIG III
JEANNE S. McKNIGHT

**KOPELMAN AND PAIGE, P. C.**

ATTORNEYS AT LAW

31 ST. JAMES AVENUE

BOSTON, MASSACHUSETTS 02116-4102

(617) 556-0007
FAX (617) 654-1735

PITTSFIELD OFFICE
(413) 443-6100

NORTHAMPTON OFFICE
(413) 585-8632

WORCESTER OFFICE
(508) 752-0203

KATHLEEN M. O'DONNELL
SANDRA M. CHARTON
PATRICIA A. CANTOR
THOMAS P. LANE, JR.
MARY L. GIORGIO
THOMAS W. MCGANEY
KATHARINE GOREE DOYLE
GEORGE X. PUCCI
LAUREN F. GOLDBERG
JASON R. TALERMAN
JEFFREY A. HONIG
MICHELE E. RANDAZZO
GREGG J. CORBO
RICHARD T. HOLLAND
LISA C. ADAMS
ELIZABETH R. CORBO
MARCELINO LA BELLA
VICKI S. MARSH
JOHN J. GOLDROSEN
SHIRIN EVERETT
BRIAN E. GLENNON, II
JONATHAN D. EICHMAN
LAURA H. PAWLE
TODD A. FRAMPTON
JACKIE COWIN
SARAH N. TURNER

February 27, 2004

<u>BY FACSIMILE - (508)487-9560</u>

<u>CONFIDENTIAL - NOT A PUBLIC DOCUMENT</u>
<u>INTERDEPARTMENTAL POLICY MEMORANDUM</u>

Mr. Keith Bergman
Town Manager
Provincetown Town Hall
260 Commercial Street
Provincetown, MA 02657

Re:    <u>MacMillan Pier Reconstruction</u>

Dear Mr. Bergman:

This is to provide you with an update on our efforts to retain a consultant to review the damage to the floating dock system and provide an opinion as to the causes for the same. To that end, I have spoken and met with Don Dusenberry, P.E., of Simpson Gumpertz & Heger, Inc. I enclose a copy of Mr. Dusenberry's resume and SGH's fee schedule for your review. Mr. Dusenberry estimates that it will take approximately 80 to 120 engineer hours over a period of approximately three to four weeks to complete an investigation and analysis of the damage and its cause. His time is billed at the principal's rate of $215 per hour; calculations and support work would be performed by engineers billing within the lower rates shown on the fee schedule. The exact breakdown of hours is not known at this time.

Mr. Dusenberry is out of state until March 8, at which time he will be available to begin his services. He informs me that he will be able to view the pier area during that week. His feeling is that the floating docks may be examined either on or off site. My preference would be an examination on site, followed by removal of the damaged docks. If this time frame is not acceptable, Mr. Dusenberry can also arrange for another member of his firm to conduct an earlier view. If possible, I would prefer that Mr. Dusenberry conduct the view since he is the one who would ultimately testify on behalf of the Town in an adversarial proceeding.



KOPELMAN AND PAIGE, P.C.

<u>CONFIDENTIAL - NOT A PUBLIC DOCUMENT</u>
<u>INTERDEPARTMENTAL POLICY MEMORANDUM</u>
Mr. Keith Bergman
Town Manager
February 27, 2004
Page 2

At your direction, I will retain SGH and direct Mr. Dusenberry to begin his work during the week of March 8.

Should you wish to discuss the matter, please contact me.

Very truly yours,

David J. Doneski

DJD/RTH/jmv
Enc.
cc:    Board of Selectmen
       DPW Director
214708/24207/0008

27

FEB.12.2004  2:54PM    SIMPSON,GUMPER&HEGER INC.                           NO. 936    P.5



# Donald O. Dusenberry, P.E.

Principal
781-907-9237

**Simpson Gumpertz & Heger Inc.**
Consulting Engineers

Boston
Los Angeles
San Francisco
Washington, DC

## Experience

Simpson Gumpertz & Heger Inc. from 1975 to present.
Other firms from 1974 to 1975.

## Analysis and Design

### Buildings

- Office Building, Portsmouth, NH (blast-resistant design of scanner wing)
- Exeter Street Theater, Boston, MA (historic building fire damage investigation and repair)
- Odd Fellows Building, Wakefield, MA (historic building fire damage investigation, building stabilization, and repair)
- Bennett Federal Building, Salt Lake City, UT (one of several peer reviews of curtain wall blast design for GSA)
- Amherst College Gymnasium, Amherst, MA (fire damage assessment and rehabilitation design for this reinforced concrete and prestressed concrete structure)
- Sherman Burbank Memorial Chapel, Williamstown, MA (stone tower monitoring and stabilization design)
- Bowdoin College Chapel, Brunswick, ME (stone tower monitoring and stabilization design)
- First Church in Brookline, Brookline, MA (stone tower stabilization and renovation)
- Amherst Town Hall, Amherst, MA (feasibility study to renovate and add new interior floor level to this 1889 structure)
- Ritz Carlton Hotel, Boston, MA (façade replacement design and construction platform design)
- Belle Place Middle School, New Iberia, LA (design of structural upgrade)
- Multiple Mirror Telescope, Mt. Hopkins, AZ (design of modifications to rotating building to accommodate enlarged telescope)
- Portland High School, Portland, ME (analysis and repair of structural deficiencies)
- Barnstable County Fire Academy, Barnstable, MA (consulting on design of burn building for firefighter training)
- 470 Atlantic Avenue, Boston, MA (facade evaluation and remedial design)
- Suffolk Street Garage, Holyoke, MA (analysis and remedial design of connections)
- Holyoke Police Station, Holyoke, MA (peer review)
- Amherst College, Life Sciences Building, Amherst, MA (peer review)
- 973/989 Market Street, San Francisco, CA (evaluation of earthquake performance)
- Ohio State University, Sports Arena, Columbus, OH (spectator-induced vibrations of suspended steel frame balcony)
- Ellis Island, NY (main building design of copper spires and stainless steel supporting structures for the domes)
- Reinforced Concrete, Steel, and Wood Buildings.

### Infrastructure

- 10-ft-diameter High-pressure Water Distribution Tunnel, for the Washington Suburban Sanitary Commission, Laurel, MD (tunnel liner failure investigation, remedial design of thrust block, design review of other components, development of pressure test procedures)
- Brooklyn Bridge Catwalks, for Nab Construction Corporation, College Point, NY (for work in replacement of suspender cables and for rewrapping the main cables)
- Williamsburg Bridge, NY (consulting on catwalk design)
- Park Avenue Viaduct, NY (structural design of main beam connections)
- 275-ft-diameter storage tank (concrete reinforcement design).

(28)

LEONARD KOPELMAN
DONALD G. PAIGE
ELIZABETH A. LANE
JOYCE FRANK
JOHN W. GIORGIO
BARBARA J. SAINT ANDRE
JOEL B. BARD
JOSEPH L. TEHAN, JR.
THERESA M. DOWDY
DEBORAH A. ELIASON
RICHARD BOWEN
DAVID J. DONESKI
JUDITH C. CUTLER
KATHLEEN E. CONNOLLY
DAVID C. JENKINS
MARK R. REICH
BRIAN W. RILEY
DARREN R. KLEIN
JONATHAN M. SILVERSTEIN
ANNE-MARIE HYLAND
JASON R. TALERMAN
GEORGE X. PUCCI
⎯⎯⎯⎯
EDWARD M. REILLY
DIRECTOR WESTERN OFFICE

KOPELMAN AND PAIGE, P. C.

ATTORNEYS AT LAW

31 ST. JAMES AVENUE

BOSTON, MASSACHUSETTS 02116-4102

(617) 556-0007
FAX (617) 654-1735
⎯⎯⎯⎯
PITTSFIELD OFFICE
(413) 443-6100
⎯⎯⎯⎯
NORTHAMPTON OFFICE
(413) 585-8632
⎯⎯⎯⎯
WORCESTER OFFICE
(508) 752-0203

WILLIAM HEWIG III
JEANNE S. McKNIGHT
KATHLEEN M. O'DONNELL
PATRICIA A. CANTOR
THOMAS P. LANE, JR.
MARY L. GIORGIO
THOMAS W. McENANEY
KATHARINE GOREE DOYLE
LAUREN F. GOLDBERG
JEFFREY A. HONIG
MICHELE E. RANDAZZO
GREGG J. CORBO
RICHARD T. HOLLAND
ELIZABETH R. CORBO
MARIA C. ROTA
VICKI S. MARSH
JOHN J. GOLDROSEN
SHIRIN EVERETT
BRIAN E. GLENNON, II
JONATHAN D. EICHMAN
JOSEPH S. FAIR
LAURA H. PAWLE
CAROLYN M. MURRAY
JACKIE COWIN
SARAH N. TURNER
JEFFREY T. BLAKE
R. ERIC SLAGLE

August 30, 2004

**CONFIDENTIAL - NOT A PUBLIC DOCUMENT**

Rasko P. Ojdrovic, PH.D., P.E.
Simpson, Gumpertz & Heger, Inc.
41 Seyon Street
Building 1, Suite 500
Waltham, MA 02453

Re:    MacMillan Pier Project, Provincetown, Massachusetts

Dear Dr. Ojdrovic:

As we discussed, please find the enclosed additional documents from the Project Engineer.

Thank you.

Very truly yours,

Richard T. Holland

RTH/sjm
Enc.
cc:    Town Manager (w/o enc.)
       DPW Director (w/o enc.)

229997/PROVMACPIER/0008

29



# FAY, SPOFFORD & THORNDIKE, INC.
## 5 Burlington Woods • Burlington, Massachusetts 01803

## FAX TRANSMISSION FORM

DATE: July 2, 2004

**ATTENTION:**   Richard T. Holland

**COMPANY:**   Kopelman & Paige P.C.

**CITY, STATE:**   Boston, MA 02116

**PROJECT #:**   TP - 090A

**FAX#:**   617 - 654 - 1735          ☐ ORIGINALS MAILED

**SUBJECT:**   MacMillan Pier Rehabilitation – Concrete Floating Docks

**COMMENTS:**

Copy of revised wave properties (March 5, 2002 from Woods Hole Group) and copy of Certificate of Substantial Completion.

FROM: **FAY, SPOFFORD & THORNDIKE, INC. FAX#: (781) 229-1115**

BY:   Don Harvie

TOTAL NUMBER OF PAGES INCLUDING THIS FORM:      4

IF THERE ARE ANY PROBLEMS, PLEASE CONTACT: Don Harvie
AT (781) 221-1143



LEONARD KOPELMAN
DONALD G. PAIGE
ELIZABETH A. LANE
JOYCE FRANK
JOHN W. GIORGIO
BARBARA J. SAINT ANDRE
JOEL B. BARD
JOSEPH L. TEHAN, JR.
THERESA M. DOWDY
DEBORAH A. ELIASON
RICHARD BOWEN
DAVID J. DONESKI
JUDITH C. CUTLER
KATHLEEN E. CONNOLLY
DAVID C. JENKINS
MARK R. REICH
BRIAN W. RILEY
DARREN R. KLEIN
JONATHAN M. SILVERSTEIN

EDWARD M. REILLY
DIRECTOR WESTERN OFFICE

WILLIAM HEWIG III
JEANNE S. McKNIGHT
KATHLEEN M. O'DONNELL
PATRICIA A. CANTOR

KOPELMAN AND PAIGE, P. C.

ATTORNEYS AT LAW

31 ST. JAMES AVENUE

BOSTON, MASSACHUSETTS 02116-4102

(617) 556-0007
FAX (617) 654-1735
———
PITTSFIELD OFFICE
(413) 443-6100
———
NORTHAMPTON OFFICE
(413) 585-8632
———
WORCESTER OFFICE
(508) 752-0203

THOMAS P. LANE, JR.
MARY L. GIORGIO
THOMAS W. MCENANEY
KATHARINE GOREE DOYLE
GEORGE X. PUCCI
LAUREN F. GOLDBERG
JASON R. TALERMAN
JEFFREY A. HONIG
MICHELE E. RANDAZZO
GREGG J. CORBO
RICHARD T. HOLLAND
LISA C. ADAMS
ELIZABETH R. CORBO
MARCELINO LA BELLA
VICKI S. MARSH
JOHN J. GOLDROSEN
SHIRIN EVERETT
BRIAN E. GLENNON, II
JONATHAN D. EICHMAN
JOSEPH S. FAIR
LAURA H. PAWLE
JACKIE COWIN
SARAH N. TURNER
JEFFREY T. BLAKE
CAROLYN M. MURRAY
R. ERIC SLAGLE

April 26, 2004

**FEDERAL EXPRESS**

**CONFIDENTIAL - NOT A PUBLIC DOCUMENT**

Rasko P. Ojdrovic, PH.D., P.E.
Simpson, Gumpertz & Heger, Inc.
41 Seyon Street
Building 1, Suite 500
Waltham, MA  02453

Re:     MacMillan Pier Project, Provincetown, Massachusetts

Dear Dr. Ojdrovic:

As discussed, enclosed is a binder of additional materials for your use and review.

Thank you.

Very truly yours,

Richard T. Holland

RTH/jmv
Enc.
cc:     Town Manager (w/o enc.)
        DPW Director (w/o enc.)
219749/PROVMACPIER/0008

2/23/05
DOD
040167

Phone call from Rich Holland
Bopleman & Paige

Settlement presently is
subject to original specifications

Floating doc specification
look @ technical specs to see
if there is anything that would
apply to a replacement dock of
wood

He will email specific questions

(32)

040169

Richard Holland, Engelman

617 556 0007

Purpose: Town has a relationship with the contractor and would like to have an amicable solution.

- Contractor has indicated that they would prefer to go to manufacturer.

Talk about the wave heights during the storm.

⟹ Meeting would not include anything other than wave heights during the storm.

Other purpose of the trip - ~~with~~ evaluation of the pontoons to be put in the water.

SGH 0029

## Donald O. Dusenberry

**From:** Donald O. Dusenberry
**Sent:** Thursday, April 14, 2005 2:34 PM
**To:** 'Richard T. Holland'
**Cc:** Rasko P. Ojdrovic
**Subject:** Amendment to agreement

*PL. will want this section ↙*

Rick,

Our agreement as it presently stands is explicit in its limitation of the scope of our assignment to the first of three tasks that are defined in the section titled "Procurement of Services." On oral instructions, we have proceeded with elements of the other two tasks. In addition, we now are being asked to pursue a task not listed: review and comment on the dock design that the Town and the contractor have agreed upon to replace the damaged dock.

The original agreement limited the amount that we could bill prior to receiving additional written authorization. We have accumulated larger fees, operating to date on oral authorization.

To bring our agreement current, we request that the agreement be amended as follows:

Extend authorization to pursue tasks 2 and 3 as described in the agreement.
Add task 4, which is to review and comment on plans for the replacement dock system (I understand that you are working on a release regarding our responsibility for the design of the replacement dock).
Raise our authorized expenditures to $70,000 before requiring additional written authorization (our fees to date are approximately $52,000).

Please call me with questions.

Thanks.

Don

P.S., I received the executed Settlement Agreement today. Thanks.

Donald O. Dusenberry, Principal
Simpson Gumpertz & Heger Inc.
41 Seyon Street, Building 1, Suite 500
Waltham, Massachusetts 02453
Direct Dial: 781-907-9237
Operator: 781-907-9000
Fax: 781-907-9009
E-mail: dodusenberry@sgh.com
www.sgh.com



4/14/2005

## Donald O. Dusenberry

| | |
|---|---|
| **From:** | Donald O. Dusenberry |
| **Sent:** | Friday, February 25, 2005 11:34 AM |
| **To:** | 'rholland@k-plaw.com' |
| **Cc:** | Rasko P. Ojdrovic |
| **Subject:** | Comments on agreement |
| **Contacts:** | Richard T. Holland, Esq. |
| **Attachments:** | Suggestions for Inclusion in Settlement Agreement.doc |

Rick,

Attached is a list of issues that you might want to consider in a memo of understanding about the nature of the replacement dock. This list is developed on the understanding that you need to establish the general understanding about the replacement dock, not specifications for its design and construction. It also is based on the understanding that the City has decided that it wants to retain the floats of the main pier and have new wooden finger piers.

Let me know if you have questions.

Don

Donald O. Dusenberry, Principal
Simpson Gumpertz & Heger Inc.
41 Seyon Street, Building 1, Suite 500
Waltham, Massachusetts 02453
Direct Dial: 781-907-9237
Operator: 781-907-9000
Fax: 781-907-9009
E-mail: dodusenberry@sgh.com
www.sgh.com


35

2/25/2005

Suggestions for Inclusion in Settlement Agreement

City of Provincetown
MacMillan Pier Reconstruction

Prepared by Simpson Gumpertz & Heger Inc.
24 February 2005
Project: 040167

In accordance with an e-mail from Richard Holland, we understand that the City of Provincetown is seeking suggestions about information, in addition to that contained in a letter from AGM Marine Contractors, Inc. dated 17 February 2005, that should be included in a description of the replacement concept for the pier. We understand that the City has accepted a wood system to replace the finger piers, while retaining the concrete floats for the main pier. On this basis, we suggest that the following additional information should be included in the agreement of concept:

1.     There should be a statement of the design-base storm, or another means to quantify the loading that must be used for the design of the new components (page TS-110 of the specifications includes relevant information, although we are not at this time independently endorsing the appropriateness of this information for the replacement dock).

2.     There should be a statement about whether the dock is to be designed to be in the water all year, or if it is to be removed in the winter. If the floats are to be removed for the winter, all connections should be designed for easy disassembly and there should be provisions for lifting the floats to facilitate the work.

3.     There should be a requirement that all connections will be designed to support the induced forces, and that the required design and construction of any modifications needed for the existing concrete floats are part of the agreement.

4.     Cleat loads should be specified (page TS-113 of the original specifications stated that cleats should be designed for a mooring line load of 2,500 lb in any direction).

5.     In addition to the commitment to submit drawings for approval, as stated in the AGM letter, the designer/contractor should be required to submit calculations, certificates, manuals, "as-built" drawings, final complete specifications for the dock system provided, listing of purchased items or parts likely to need replacement, copies of the guarantee and warranty, maintenance program, operating procedures, winterization procedures, and additional information deemed useful to reduce maintenance and extend the life of the dock system (see pages TS-113 and TS-114 of the specifications).

6.     There should be agreement about whether the design will be a "flexible" or "rigid" system, meaning whether connections will be allowed to rotate or pivot, or they will be locked against relative movement.

7.     There should be a statement that the new components will be compatible with the existing components, meaning that the top surfaces are at the same elevation, precautions are provided to prevent the joints from being hazards to users, slip resistance of the top surfaces should be comparable, buoyancy and stability characteristics should be comparable, there are appropriate provisions for electrical and water services, etc.

8.     There should be a statement that any piles that are out of position or are not sufficiently rigid to provide suitable anchorage for the dock will be replaced as part of the contract.



9.      Existing floats to be reused should be thoroughly inspected and repaired or replaced as necessary (there needs to be a definition of an acceptable condition for the reuse of floats).

10.     The Town should state any installation requirements or limitations it wishes to impose (e.g., time of year, lay-out area).

37

**From:**        Rasko Ojdrovic
**To:**          Dusenberry, Donald
**Date:**        4/5/2004 8:33:41 AM
**Subject:**     Fwd: RE: FW: Storm Data

>>> "Richard T. Holland" <RHolland@k-plaw.com> 4/3/2004 12:51:05 PM >>>
Rasko,

As we discussed on Friday, please review thoroughly our wave height
calculations/graphs.  Once done, we will discuss the same.  After this
is done, we need to expeditiously and thoroughly review the causes of
the failure of the system.  In so doing, we should develop an
understanding of what arguments the contractor or the manufacturer will
make against our assertion that they are at fault for the failure.  For
example, (as AGM alluded to on Friday) I suspect the following two
arguments will be alleged/made, and therefore, will need to be refuted
by us:

1.  The Town failed to operate/maintain the dock system as required
(e.g.,   the tightening of the through rods);

2.  Taking the wave attenuator out of the design resulted in the
failure.

While we all agree that the above arguments are unpersuasive, we need to
be well prepared to refute those arguments and any others that may be
raised.

Let me know if you have any questions/comments.

Thank you.

Richard T. Holland
Kopelman & Paige, P.C.
31 St. James Avenue
Boston, MA 02116
(617) 556-0007
(617) 654-1735 (fax)
rholland@k-plaw.com

-----Original Message-----
From: Rasko Ojdrovic [mailto:RPOjdrovic@sgh.com]
Sent: Thursday, April 01, 2004 4:56 PM
To: Richard T. Holland
Subject: RE: FW: Storm Data

Attached are the wind and wave charts.  Please review and comment.

Rasko

>>> "Richard T. Holland" <RHolland@k-plaw.com> 4/1/2004 4:20:17 PM >>>
Rasko,

As we discussed, we will meet between 10 AM and 10:30 at Town Hall,

38

Provincetown, which is located at 260 Commercial Street.  I will email you directions.

Richard T. Holland
Kopelman & Paige, P.C.
31 St. James Avenue
Boston, MA 02116
(617) 556-0007
(617) 654-1735 (fax)
rholland@k-plaw.com

-----Original Message-----
From: Rasko Ojdrovic [mailto:RPOjdrovic@sgh.com]
Sent: Wednesday, March 31, 2004 12:31 PM
To: Richard T. Holland
Cc: Donald Dusenberry
Subject: Re: FW: Storm Data

Dear Mr. Holland,

I will be checking the NOAA site today for updates.  I will give you a call later today to update you on our progress.

Rasko

>>> "Richard T. Holland" <RHolland@k-plaw.com> 3/31/2004 8:30:15 AM
>>>
Dr. Ojdrovic:

As you can see in my email exchange below, NOAA will be posting the storm data for December 2003 for MA on its website today sometime--I hope.  Please let me know if it's available to you by the end of the day.  (You may already have this information?)

Also, please give me a call at the end of today (Wed) or tomorrow morning (Thur) regarding your progress.  If possible, I would like to meet with you prior to Friday to go over your calculations with you.

Thank you.

Richard T. Holland
Kopelman & Paige, P.C.
31 St. James Avenue
Boston, MA 02116
(617) 556-0007
(617) 654-1735 (fax)
rholland@k-plaw.com

-----Original Message-----
From: Joseph Dellicarpini [mailto:Joseph.Dellicarpini@noaa.gov]
Sent: Tuesday, March 30, 2004 10:50 PM
To: Richard T. Holland
Subject: Re: Storm Data

Richard,

39

Sorry about that!  Apparently, our webmaster put the links on the homepage
but didn't put the files there!  I'll talk to him Wednesday morning and
have
him put them on as soon as he can.

Joe

"Richard T. Holland" wrote:

> Joe,
>
> I saw that on the website, but it appears to say that December 2003
> report is not available.  The three reports provided (on the web/in your
> email) are for December '00, '01 and '02?  If I'm overlooking it please
> let me know.  If not, do you have a hard copy available for the December
> 2003 report?
>
> Thank you for your help.
>
> Richard T. Holland
> Kopelman & Paige, P.C.
> 31 St. James Avenue
> Boston, MA 02116
> (617) 556-0007
> (617) 654-1735 (fax)
> rholland@k-plaw.com
>
> -----Original Message-----
> From: Joseph Dellicarpini [mailto:Joseph.Dellicarpini@noaa.gov]
> Sent: Tuesday, March 30, 2004 5:24 AM
> To: Richard T. Holland
> Subject: Re: Storm Data
>
> Richard -
>
> The December 2003 Storm Data report is available - here's the link:
>
> http://www.erh.noaa.gov/box/stormdata/dec03.pdf
>
> Joe
>
> ----- Original Message -----
> From: "Richard T. Holland" <RHolland@k-plaw.com>
> Date: Monday, March 29, 2004 6:31 pm
> Subject: Storm Data
>
> > Do you have any storm data report for December 2003 for
Massachusetts?
> > The NOAA website does not have a report for this period?  I
presume
> > because it has yet to be posted?



> >
> >
> >
> > Thank you for your time.
> >
> >
> >
> > Richard T. Holland
> >
> > Kopelman & Paige, P.C.
> >
> > 31 St. James Avenue
> >
> > Boston, MA 02116
> >
> > (617) 556-0007
> >
> > (617) 654-1735 (fax)
> >
> > rholland@k-plaw.com
> >
> >
> >
> >



LEONARD KOPELMAN
DONALD G. PAIGE
ELIZABETH A. LANE
JOYCE FRANK
JOHN W. GIORGIO
BARBARA J. SAINT ANDRE
JOEL B. BARD
JOSEPH L. TEHAN, JR.
THERESA M. DOWDY
DEBORAH A. ELIASON
RICHARD BOWEN
DAVID J. DONESKI
JUDITH C. CUTLER
KATHLEEN E. CONNOLLY
DAVID C. JENKINS
MARK R. REICH
BRIAN W. RILEY
DARREN R. KLEIN
JONATHAN M. SILVERSTEIN
ANNE-MARIE M. HYLAND
JASON R. TALERMAN
GEORGE X. PUCCI

EDWARD M. REILLY
DIRECTOR WESTERN OFFICE

## KOPELMAN AND PAIGE, P. C.

ATTORNEYS AT LAW

31 ST. JAMES AVENUE

BOSTON, MASSACHUSETTS 02116-4102

(617) 556-0007
FAX (617) 654-1735
———
PITTSFIELD OFFICE
(413) 443-6100
———
NORTHAMPTON OFFICE
(413) 585-8632
———
WORCESTER OFFICE
(508) 752-0203

WILLIAM HEWIG III
JEANNE S. McKNIGHT
KATHLEEN M. O'DONNELL
PATRICIA A. CANTOR
THOMAS P. LANE, JR.
MARY L. GIORGIO
MICHELE E. RANDAZZO
THOMAS W. McENANEY
KATHARINE GOREE DOYLE
LAUREN F. GOLDBERG
JEFFREY A. HONIG
GREGG J. CORBO
RICHARD T. HOLLAND
ELIZABETH R. CORBO
MARIA C. ROTA
VICKI S. MARSH
JOHN J. GOLDROSEN
SHIRIN EVERETT
BRIAN E. GLENNON, II
JONATHAN D. EICHMAN
JOSEPH S. FAIR
LAURA H. PAWLE
CAROLYN M. MURRAY
JACKIE COWIN
SARAH N. TURNER
JEFFREY T. BLAKE
R. ERIC SLAGLE
CAROLYN KELLY MacWILLIAM

April 13, 2005

Donald O. Dusenberry, P.E.
Simpson Gumpertz & Heger, Inc.
41 Seyon Street
Building 1, Suite 500
Waltham, MA 02453

Re:    MacMillan Pier, Floating Dock Systems – AGM Marine Contractors, Inc.

Dear Mr. Dusenberry:

As we discussed, enclosed please find a copy of an executed Settlement Agreement in connection with the above-referenced matter.

Should you have any questions, please feel free to contact me.

Very truly yours,

Richard T. Holland

RTH/sjm
Enc.
cc:    Town Manager

248813/PROV/0008

52

BOSTON

WORCESTER

# KOPELMAN AND PAIGE, P.C.

31 St. James Avenue
Boston, MA 02116
(617) 556-0007 / (617) 654-1735 - fax

NORTHAMPTON

PITTSFIELD

## * * * * * THIS DOCUMENT IS CONFIDENTIAL * * * * * * *

### FAX TRANSMITTAL COVER SHEET

Date _____ 3-3 _____, 2005

Account Code _____

This Fax Sent By _Rick Holland_

Please Deliver To

Number of Pages Including Cover

Original Will Follow. Yes __ No

Operator Initials _____

| Name | Fax No. |
|---|---|
| Dr. Rasko Ojdrovic | 781-907-9009 |

Comments or Instructions

Re: Provincetown Floating Dock
Please Review And call to discuss.

PLEASE CONTACT SENDER AT (617) 654-1754 IF YOU HAVE NOT RECEIVED THE NUMBER OF PAGES NOTED ABOVE OR IF THERE ARE ANY PROBLEMS WITH THIS TRANSMISSION.

40600

43

# Donald O. Dusenberry

| | |
|---|---|
| **From:** | Richard T. Holland [RHolland@k-plaw.com] |
| **Sent:** | Wednesday, February 23, 2005 2:48 PM |
| **To:** | Donald O. Dusenberry |
| **Cc:** | Rasko P. Ojdrovic; dpwdirector@provincetown-ma.gov |
| **Subject:** | Provincetown, MacMillan Pier, Floating Dock |
| **Importance:** | High |

Don,

As we discussed today, I attach a document from AGM. That document represents the work that AGM is agreeing to perform for the Town in settlement of the Town's dispute. The Town is agreeable to this settlement. I have two questions:

1. The purpose of the attachment is merely to memorialize conceptually, though with some detail, what it is that AGM will be doing/installing, so we don't have any fights down the line due to any misunderstanding. That said, recognizing that this document is merely to establish an agreement on a concept of the work and the type of dock system being installed, and that AGM is expected to submit shop drawings and other submittals during the work, are there any other details regarding the timber float installation not contained in the attached document that is advisable for inclusion? I am worried that we don't have a "specification" so to speak. Is there anything else we should include?

2. The work to be performed pursuant to the settlement agreement is to be subject to the contract documents for the initial pier. AGM objects to inclusion of all technical specifications. Is there anything in the technical specifications that you think should remain; in other words, should the installation of the timber system be subject to some portion or portions of the technical specifications.

If possible, please let me know your opinions in a day or two, or sooner if you prefer. We can discuss over the phone when you've concluded your review.

Thank you.

Rick.

Richard T. Holland
Kopelman and Paige, P.C.
31 St. James Avenue
Boston, MA 02116
(617) 556-0007
(617) 654-1735 (fax)
rholland@k-plaw.com

This message and the documents attached to it, if any, are intended only for the use of the addressee and may contain information that is PRIVILEGED and CONFIDENTIAL and may contain ATTORNEY WORK PRODUCT. If you are not the intended recipient, you are hereby notified that any dissemination of this communication is strictly prohibited. If you have received this communication in error, please delete all electronic copies of this message and attachments thereto, if any, and destroy any hard copies you may have created and notify me immediately.



## Rasko P. Ojdrovic

| | |
|---|---|
| **From:** | David F. Guertin [dpwdirector@provincetown-ma.gov] |
| **Sent:** | Tuesday, April 19, 2005 3:55 PM |
| **To:** | Rick Holland |
| **Cc:** | Rasko P. Ojdrovic; Keith Bergman |
| **Subject:** | FW: MacMillan Pier |

**Attachments:**    Provincetown Release.doc



Provincetown
Release.doc (30 K...

       I have spoken to Rasko today about this and find the change to be acceptable.
SGH will not, nor should they be held responsible for a design that is no theirs. They are
needed to ascertain that what is to be installed is consistent to the settlement
agreement. We do acknowledge that these new components are "less" in inherent strength,
are "less" in mass and are "less" than original specification THUS REQUIRING A PROGRAM TO
REMOVE THEM IN THE OFF-SEASON AND BEFORE ANY FORECASTED STORM EVENT. Hence, they need to
be easily disassembled - a funtion of connection details - and fit the bill for summer
dockage. Consider this release signed by me. DFG

-----Original Message-----
From: Richard T. Holland [mailto:RHolland@k-plaw.com]
Sent: Tuesday, April 19, 2005 2:47 PM
To: dpwdirector@provincetown-ma.gov
Subject: FW: MacMillan Pier


David,

I will call you shortly about this and the Ice House matter.  SGH wanted to propose
revises language for the release, which it apparently has done but sent to you.

Richard T. Holland
Kopelman and Paige, P.C.
31 St. James Avenue
Boston, MA 02116
(617) 556-0007
(617) 654-1735 (fax)
rholland@k-plaw.com

This message and the documents attached to it, if any, are intended only for the use of
the addressee and may contain information that is PRIVILEGED and CONFIDENTIAL and may
contain ATTORNEY WORK PRODUCT.  If you are not the intended recipient, you are hereby
notified that any dissemination of this communication is strictly prohibited.  If you have
received this communication in error, please delete all electronic copies of this message
and attachments thereto, if any, and destroy any hard copies you may have created and
notify me immediately.

-----Original Message-----
From: Rasko P. Ojdrovic [mailto:RPOjdrovic@sgh.com]
Sent: Tuesday, April 19, 2005 2:41 PM
To: dpwdirector@provincetown-ma.gov
Cc: Richard T. Holland; Donald O. Dusenberry
Subject: RE: MacMillan Pier


Dear Mr. Guertin,

Attached is a draft release agreement.  Please review and comment.

1



Thank you.

Rasko



LEONARD KOPELMAN
DONALD G. PAIGE
ELIZABETH A. LANE
JOYCE FRANK
JOHN W. GIORGIO
BARBARA J. SAINT ANDRE
JOEL B. BARD
JOSEPH L. TEHAN, JR.
THERESA M. DOWDY
DEBORAH A. ELIASON
RICHARD BOWEN
DAVID J. DONESKI
JUDITH C. CUTLER
KATHLEEN E. CONNOLLY
DAVID C. JENKINS
MARK R. REICH
BRIAN W. RILEY
DARREN R. KLEIN
JONATHAN M. SILVERSTEIN
ANNE-MARIE HYLAND
JASON R. TALERMAN
GEORGE X. PUCCI

EDWARD M. REILLY
DIRECTOR WESTERN OFFICE

**KOPELMAN AND PAIGE, P. C.**

ATTORNEYS AT LAW

31 ST. JAMES AVENUE

BOSTON, MASSACHUSETTS 02116-4102

(617) 556-0007
FAX (617) 654-1735
————
PITTSFIELD OFFICE
(413) 443-6100
————
NORTHAMPTON OFFICE
(413) 585-8632
————
WORCESTER OFFICE
(508) 752-0203

WILLIAM HEWIG III
JEANNE S. McKNIGHT
KATHLEEN M. O'DONNELL
PATRICIA A. CANTOR
THOMAS P. LANE, JR.
MARY L. GIORGIO
THOMAS W. MCENANEY
KATHARINE GOREE DOYLE
LAUREN F. GOLDBERG
JEFFREY A. HONIG
MICHELE E. RANDAZZO
GREGG J. CORBO
RICHARD T. HOLLAND
ELIZABETH R. CORBO
MARIA C. ROTA
VICKI S. MARSH
JOHN J. GOLDROSEN
SHIRIN EVERETT
BRIAN E. GLENNON, II
JONATHAN D. EICHMAN
JOSEPH S. FAIR
LAURA H. PAWLE
CAROLYN M. MURRAY
JACKIE COWIN
SARAH N. TURNER
JEFFREY T. BLAKE
R. ERIC SLAGLE

May 23, 2005

Dr. Rasko P. Ojdrovic
Simpson Gumpertz & Heger Inc.
41 Seyon Street
Building 1, Suite 500
Waltham, MA 02453

Re:     AGM Marine Contractors, Inc. v. Southeast Floating Docks, Inc.

Dear Dr. Ojdrovic:

        In connection with the above-referenced matter, and as we discussed, please find enclosed one original Release Agreement between the Town and Simpson Gumpertz & Heger Inc.

        Should you have any questions, please feel free to contact me.

                                Very truly yours,

                                Richard T. Holland

RTH/sjm
Enc.
cc:     Town Manager
        Director of Public Works

251757/PROVMACPIER/0008

## Rasko Ojdrovic - RE: MacMillan Pier--CONFIDENTIAL, NOT A PUBLIC DOCUMENT

**From:**     "Richard T. Holland" <RHolland@k-plaw.com>
**To:**        "Rasko Ojdrovic" <RPOjdrovic@sgh.com>
**Date:**     7/16/2004 7:59 AM
**Subject:**  RE: MacMillan Pier--CONFIDENTIAL, NOT A PUBLIC DOCUMENT
**CC:**        <dpwdirector@provincetown-ma.gov>

Rasko,

Please continue with an analysis of the actual failure of the floating dock system, which is the second part of our analysis (the first having been the analysis of the storm compared to the design parameters for the dock system). This analysis would include anticipation and refutation of potential arguments by the manufacturer/contractor, e.g., alleged failure to tighten through-rods, deletion of wave attenuator.

I will shortly be forwarding to you documents obtained from the Engineer's sub-consultant, woods hole, for your review and analysis.

Please let me know the current status of our review of the failure of the dock system—I believe you may have begun this prior to your vacation—and give me an idea of how much time you think this analysis will take to complete.

Rick.

Richard T. Holland
Kopelman and Paige, P.C.
31 St. James Avenue
Boston, MA 02116
(617) 556-0007
(617) 654-1735 (fax)
rholland@k-plaw.com

        -----Original Message-----
        **From:** Rasko Ojdrovic [mailto:RPOjdrovic@sgh.com]
        **Sent:** Thursday, July 15, 2004 10:56 AM
        **To:** Richard T. Holland
        **Subject:** RE: MacMillan Pier

        Rick,

        I am back from vacation. Please let me know if you need anything from us. Thank you.

        Rasko

        >>> "Richard T. Holland" <RHolland@k-plaw.com> 6/3/2004 12:20:20 PM >>>
        Great. Please bring with you any documents you feel may be necessary so that we can make whatever
        inquiry of FS&T is necessary to ensure we have all information relative to the design of the dock
        system. Let's touch base on Monday before the meeting to be sure we're all on the same page as to
        what our efforts will entail. I will call you and David on Monday morning if such time is good for all and
        we can discuss. Thank you.

        Rick.

        Richard T. Holland
        Kopelman and Paige, P.C.
        31 St. James Avenue



Boston, MA 02116
(617) 556-0007
(617) 654-1735 (fax)
rholland@k-plaw.com
-----Original Message-----
**From:** Rasko Ojdrovic [mailto:RPOjdrovic@sgh.com]
**Sent:** Thursday, June 03, 2004 12:07 PM
**To:** Richard T. Holland
**Subject:** Re: MacMillan Pier

Rick,

I will be available.

Rasko

>>> "Richard T. Holland" <RHolland@k-plaw.com> 6/3/2004 11:59:10 AM >>>
Rasko,

We have scheduled an appointment for next **Tuesday, June 8, at 1 pm**, in my Boston office for a meeting with the project engineer FS&T to confirm that we have all of engineering information necessary.  It is important that you attend as well.  Please advise as to your availability.

Thank you.

Rick

Richard T. Holland
Kopelman and Paige, P.C.
31 St. James Avenue
Boston, MA 02116
(617) 556-0007
(617) 654-1735 (fax)
rholland@k-plaw.com



**Rasko Ojdrovic - MacMillan Pier Project, CONFIDENTIAL, NOT A PUBLIC DOCUMENT**

| | |
|---|---|
| **From:** | "Richard T. Holland" <RHolland@k-plaw.com> |
| **To:** | "Rasko Ojdrovic" <RPOjdrovic@sgh.com> |
| **Date:** | 7/16/2004 8:05 AM |
| **Subject:** | MacMillan Pier Project, CONFIDENTIAL, NOT A PUBLIC DOCUMENT |
| **CC:** | <dpwdirector@provincetown-ma.gov> |

Rasko,

Following up on my earlier email of this morning requesting an analysis of the failure of the floating dock system, I would also like for you to analyze the potential liability of the Owner's Engineer, FST, in terms of its design and the administration of the contract; in other words, was the design reasonable; did FST approve of submittals (e.g., Gary Greene calculations) which it should have rejected; did FST satisfy the "standard of care" applicable, i.e., that measure of care that a similarly situated engineer would have shown in this or a similar project.

In summary, please analyze:

1. failure of floating dock system
2. potential defenses (and refutations to the same) to be raised by contractor and manufacturer
3. potential liability of FST

Again, if you could please provide me with a time frame for this work and the amount of hours you believe it will take to complete.

Let me know if you have any questions.

Richard T. Holland
Kopelman and Paige, P.C.
31 St. James Avenue
Boston, MA 02116
(617) 556-0007
(617) 654-1735 (fax)
rholland@k-plaw.com



## Rasko Ojdrovic - FW: MacMillan Pier Project, CONFIDENTIAL, NOT A PUBLIC DOCUMENT

| | |
|---|---|
| **From:** | "Richard T. Holland" <RHolland@k-plaw.com> |
| **To:** | "Rasko Ojdrovic" <RPOjdrovic@sgh.com> |
| **Date:** | 7/26/2004 4:24 PM |
| **Subject:** | FW: MacMillan Pier Project, CONFIDENTIAL, NOT A PUBLIC DOCUMENT |

Rasko,

I received your voice message regarding the remaining analysis to be performed and your estimate of approximately 80 hours to complete the same. I understand that your estimate depends upon the level of detail required. As for the level of detail, let's begin with a basic analysis sufficient to identify all material considerations/calculations. When you complete this basic level of analysis, we can confer and review the same, and then move on to the next level of detail as necessary. Please begin with the analysis in accordance with this email and my previous email, a copy of which I am forwarding to you for your convenience.

Thank you.

Rick.


Richard T. Holland
Kopelman and Paige, P.C.
31 St. James Avenue
Boston, MA 02116
(617) 556-0007
(617) 654-1735 (fax)
rholland@k-plaw.com
-----Original Message-----
**From:** Richard T. Holland
**Sent:** Friday, July 16, 2004 9:06 AM
**To:** 'Rasko Ojdrovic'
**Cc:** 'dpwdirector@provincetown-ma.gov'
**Subject:** MacMillan Pier Project, CONFIDENTIAL, NOT A PUBLIC DOCUMENT

Rasko,

Following up on my earlier email of this morning requesting an analysis of the failure of the floating dock system, I would also like for you to analyze the potential liability of the Owner's Engineer, FST, in terms of its design and the administration of the contract; in other words, was the design reasonable; did FST approve of submittals (e.g., Gary Greene calculations) which it should have rejected; did FST satisfy the "standard of care" applicable, i.e., that measure of care that a similarly situated engineer would have shown in this or a similar project.

In summary, please analyze:

1. failure of floating dock system
2. potential defenses (and refutations to the same) to be raised by contractor and manufacturer
3. potential liability of FST

Again, if you could please provide me with a time frame for this work and the amount of hours you believe it will take to complete.

Let me know if you have any questions.

Richard T. Holland
Kopelman and Paige, P.C.
31 St. James Avenue
Boston, MA 02116
(617) 556-0007
(617) 654-1735 (fax)
rholland@k-plaw.com



**From:**      "Richard T. Holland" <RHolland@k-plaw.com>
**To:**        "Rasko Ojdrovic" <RPOjdrovic@sgh.com>
**Date:**      4/23/2004 11:55:15 AM
**Subject:**   Provincetown MacMillan Pier

Rasko,


Please let me know if you have any questions regarding my earlier email about the need to evaluate (1) the reasonableness of the assumption by Gary Greene about the 2.23 wave, 2.65 wave period, and 35 feet wave length; and (2) whether those wave parameters were exceeded during the storm.


Please let me know when you might expect to have the above analysis completed.


Also, could you please email to me in .PDF format the document submitted to us by Bourne consulting.


Thank you.


Richard T. Holland

Kopelman and Paige, P.C.

31 St. James Avenue

Boston, MA 02116

(617) 556-0007

(617) 654-1735 (fax)

rholland@k-plaw.com

53

**From:**      "Richard T. Holland" <RHolland@k-plaw.com>
**To:**        <dpwdirector@provincetown-ma.gov>, "Rasko Ojdrovic, PhD,PE" <rpojdrovic@sgh.com>
**Date:**      4/23/2004 11:54:30 AM
**Subject:**   RE: Confidential; Further Info needed from FS&T

David,

I think that is a good idea.  I recommend, however, that we wait until Rasko has first fully evaluated the RFI in question.  At that point, we will better know what impact, if any, the information contained in that RFI has on his analysis.

Therefore, as a first step, Rasko needs to:

1.  Evaluate the reasonableness of the assumption by the manufacturer's engineer about the wave heights, wave lengths, and wave periods from the North/Northwest, as contained in such engineer's calculations;

2.  Determine whether, irrespective of the reasonableness of such assumption, the storm wave heights, wave lengths, and wave periods so assumed by such engineer were below those occurring during the storm.

I will copy Rasko on this email with an instruction to expedite his review in that regard.

Rick.

Richard T. Holland
Kopelman and Paige, P.C.
31 St. James Avenue
Boston, MA 02116
(617) 556-0007
(617) 654-1735 (fax)
rholland@k-plaw.com

-----Original Message-----
From: David F. Guertin [mailto:dpwdirector@provincetown-ma.gov]
Sent: Friday, April 23, 2004 8:42 AM
To: Rasko Ojdrovic, PhD,PE; Richard T. Holland
Cc: Keith A. Bergman
Subject: Confidential; Further Info needed from FS&T

We should consider, in light of yesterday's development, a meeting with Fay
Spoffard & Thorndike. We need to understand the intent of Add #1 and the clarification they gave with RFI process. We have yet to hear from them but
we have not asked for anything either. Suggest meeting @ K&P w/ Rasko present...engineer to engineer. We then also get to discuss issue of "ordinary care" from the engineers of record. We will ultimately need to answer that question anyway. Your thoughts please. DFG



CC:          "Keith A. Bergman" <townmanager@provincetowngov.org>

55

Exhibit 12
10-17-06
(123)

## SUMMARY OF TELEPHONE CALL

| | |
|---|---|
| **DATE** 6-28-04 | **TIME** 3:30 ☐ AM ☑ PM | **JOB NO.** TP-080A |

**TO / FROM** Rick Holland

Kopelman & Paige

**TELEPHONE**

**CLIENT/PROJECT** P. Town

Concrete Floats

**ROUTE TO** ~~REB~~ CAB

**SUBJECT**

**SUMMARY**

Rick called to see if I got any info from Woods Hole Group. I told him I spoke with Eve Weisher on Friday. He said he would go through his archived files today to look for the memo on wave height / wavelength etc.

I told him I looked thru our files for dates of substantial / final completion. A substantial completion certificate was issued on Dec. 13, 2002, before the floats were installed. I told him it was a ceremony the Town wanted before end of that year.

I told him I couldn't find a final certificate. I mentioned that the Town was keeping A&M's contract open to possibly do some additional work, but the floats were installed by the end of June 2003.

**ACTION REQUIRED**

Rick said he will call back tomorrow P.M. to see if we got info from Woods Hole Group

**BY** Don Harvie

FORM 11.

FAY, SPOFFORD & THORNDIKE, INC.

(1)

FAY, SPOFFORD & THORNDIKE, INC.

# SUMMARY OF TELEPHONE CALL DATE: 8/23/04          TIME: 1:30 PM

(124)

ROUTE TO:
REB
DWH
CAB

FROM
Rick Holland
Kopelman & Paige

CLIENT/PROJECT
Provincetown / MacMillan Pier

JOB NO.
TP-090a

TELEPHONE NO.
(617)-556-0007

FACSIMILE NO.

SUBJECT:       Concrete Floating Docks

SUMMARY:

Rick commented that he received the information we sent him, but he hadn't looked at it in depth. He asked if we had included any info on the wave barrier. I told him the info includes the wave barrier. He asked about how the wave barrier was included / removed / changed. I explained as follows:
  - Town and fisherman requested a wave barrier in planning phase
  - FST evaluated different types of wave barriers
  - A timber fence type wave barrier was agreed upon.
  - When bid documents were nearly complete, the Town directed FST to eliminate the timber wave fence from the project. I understood it to be primarily due to aesthetic concerns.
  - A floating wave barrier was added to the project by addendum.
Rick asked if Bellingham Marine had met with the Town. I told him that Jay Varga of Bellingham Marine met with the Building Committee and gave them a presentation about floating wave barriers.
Rick asked if Bellingham Marine had indicated that the floating dock would not work without a wave barrier. He said that AGM Marine said that Bellingham Marine told AGM that the floating dock will not work without a wave barrier. I indicated that I did not recall ever hearing Bellingham Marine indicate that the floating docks would not work without a wave barrier. He indicated that he would also like to speak with Marc Nicolazzo about this matter, since Marc had several conversations with Bellingham Marine.
We also discussed the concrete floating docks and specs. He asked if we had specified Bellingham Marine floats. I indicated that the spec called for floats by Concrete Flotation Systems or equal. I mentioned that when we were evaluating different float types & manufacturers we were in contact with Concrete Flotation Systems. Later on in the design phase I understood that Bellingham Marine acquired Concrete Flotation Systems. Initially we were speaking with someone other than Jay Varga.

ACTION REQUIRED:

Have Marc Nicolazzo get in touch with Rick Holland.

BY: DWH
      Donald W. Harvie

TP-090A\TEL002.WPD

(2)

FAY, SPOFFORD & THORNDIKE, INC.

# SUMMARY OF TELEPHONE CALL  DATE: 8/24/04    TIME: 1:30 PM    125

ROUTE TO:
REB
DWH
CAB

| TO | CLIENT/PROJECT | JOB NO. |
|---|---|---|
| Rick Holland | Provincetown / MacMillan Pier | TP-090a |
| Kopelman & Paige | | |

TELEPHONE NO.    FACSIMILE NO.
(617)-556-0007

SUBJECT:    Concrete Floating Docks

SUMMARY:

Marc Nicolazzo and I called Rick Holland as a follow up to my conversation with Rick yesterday.
Rick asked Marc if he remembered any conversations with Bellingham Marine where Bellingham Marine indicated that the floating docks would not work if there was no wave barrier. Marc indicated that he did not remember any such conversations. Rick mentioned that Jay Varga indicated he had said to someone that the floating docks would not work without a wave attenuator, but could not remember who he said it to.

Rick also inquired about the information sent to FST from Bellingham Marine. Marc indicated that general information about Bellingham Marine's product had been sent.

I reminded Rick that the specification required that the contractor perform the design for the floating docks and that the required design wave was for a wave from any direction regardless of whether or not there was a wave barrier.

I told Rick that I had spoken to Bellingham Marine when we were preparing the addendum for a floating wave barrier to get some input and costs.

I informed Rick that one of the documents we sent to him last week, item 24, was some anonymous information regarding the quality of Southeast Concrete's Floating Docks that AGM had previously indicated to us they thought had been sent to us by Bellingham Marine. Rick said he hasn't read through all the information yet but he is planning to go through everything soon and he will call if he has any questions.

ACTION REQUIRED:

BY:    DWH
       Donald W. Harvie

R:\TP-090A\TEL003.WPD

3

FAY, SPOFFORD & THORNDIKE, INC.

# SUMMARY OF TELEPHONE CALL  DATE: 8/25/04    TIME: 3:30 PM

(12b)

ROUTE TO:
REB
DWH
CAB

| FROM | CLIENT/PROJECT | JOB NO. |
|---|---|---|
| Rick Holland | Provincetown / MacMillan Pier | TP-090a |
| Kopelman & Paige | | |

TELEPHONE NO.          FACSIMILE NO.
(617)-556-0007

SUBJECT:    Concrete Floating Docks

SUMMARY:

Rick called with a few more questions about the floating docks.

He asked if FST thought we needed a wave barrier for the floats to work. I said no.

He asked if the Town had not originally requested a wave barrier would we have. I indicated that a wave barrier will provide better comfort for the fisherman to perform their work, but in order for a wave barrier to effect the design of the floating docks, it would have to be all around the floats, not just on one side.

He asked if we believe floats can be designed that will work without a wave barrier. I said yes.

He questioned whether the spec was a performance spec. I said it was and I pointed out the section in the spec 'DESIGN AND PERFORMANCE CRITERIA'. He asked how the contractor would know which items he could hange. I indicated that the spec required P.E. Calculations for the 'design of floatation, structural components and connections'. I indicated that we showed the layout dimensions of the system, but the structural components, such as the wales were indicated as minimum sizes. I also pointed out we had never indicated the spacing or number of thru rods.

I commented to Rick that a few weeks ago we received a copy of a letter from AGM to the Town that indicated the final change order, Change Order No. 8, which was signed by AGM in September 2003, had never been paid and AGM was no longer agreeing to it. Rick asked me to fax him a copy of it.

ACTION REQUIRED:

Fax Rick copy of AGM's letter to the Town regarding Change Order No. 8.

BY: *DWH*
      Donald W. Harvie

R:\TP-090A\TEL004.WPD



FAY, SPOFFORD & THORNDIKE, INC.

# SUMMARY OF TELEPHONE CALL DATE: 8/26/04 | TIME: 9:00 AM

*(107)*

ROUTE TO:
REB
DWH
CAB

| | | |
|---|---|---|
| **FROM** | **CLIENT/PROJECT** | **JOB NO.** |
| Rick Holland | Provincetown / MacMillan Pier | TP-090a |
| Kopelman & Paige | | |

**TELEPHONE NO.**　　　　　　**FACSIMILE NO.**
(617)-556-0007

**SUBJECT:**　　Concrete Floating Docks

**SUMMARY:**

Rick called from his car with a few more questions about the floating docks. He indicated he was on route to a meeting with the surety company.

He asked if the December 2002 Substantial Completion Certificate, which did not include the flaoting docks, was the only one issued. I said yes.

He asked if there was a final complete certificate, or if the project had been closed out. I said no, The Town had previously indicated they wanted to keep AGM's contract open in case that they wanted AGM to do some additional work.

He asked when the punch list inspection was done. I told him in June 2003.

Ie asked when the floats were put into use by the Town. I told him I didn't know when they were put into use, but the installation was completed by early July 2003.

I told him I faxed him a copy of the recent letter from AGM to the Town regarding Change Order No. 8. I indicated that Change Order No. 8 did not include any items related to the floating docks. I mentioned that the Town and AGM had negotiated this change order and they had agreed not to include any amounts for the floating dock larger wales and increased number of thru-rods.

**ACTION REQUIRED:**

None

BY: *DWH*
　　Donald W. Harvie

R:\TP-090A\TEL005.WPD

*(5)*

FAY, SPOFFORD & THORNDIKE, LLC

Engineers • Planners • Scientists • Landscape Architects • Surveyors



CELEBRATING

**90**

YEARS

*Now, more than ever...*

June 22, 2004

Kopelman and Paige, P.C.
31 St. James Avenue
Boston, MA 02116

Attention:    Mr. Richard T. Holland

Subject:    Town of Provincetown, MA
MacMillan Pier - Concrete Floating Docks

Dear Mr. Holland:

Enclosed is the additional information we pulled from our files regarding the wind & wave design criteria for the concrete floating docks. It consists of the following:

- May 18, 1999 Memorandum from the Woods Hole Group (FST's subconsultant) indicating the the initial Wind & Wave parameters.

- February 12, 2002 telephone memo of call from AGM to FST regarding the wavelength.

In addition we have enclosed copy of May 21, 2002 letter from FST to AGM with associated letters of May 20, 2002 from AGM to S.E. Floating Docks, May 14, 2002 from FST to AGM, March 21, 2002 memo from S.E. Floating Docks to AGM, March 20, 2002 letter from Gary Greene to S.E. Floating Docks, and April 8, 2002 letter from Gary Greene to S.E. Floating Docks. These documents are all associated with RFI 81.

We did not find any other reference to the design wind speed being 70 mph, other than the March 13, 2003 letter from FST to AGM which you already have.

As we discussed, we could not find a copy of the memo from our subconsultant, the Woods Hole Group, regarding the revised wavelength and period that we provided to AGM in response to RFI 72. We called the Woods Hole Group to see if they can get us a copy of the memo, but the project manager, Dr. Lee Weishar, is out of the office until Thursday. We will call you the end of this week to update you on this matter.

Very truly yours,

FAY, SPOFFORD & THORNDIKE, INC.
By:

Donald W. Harvie, P.E.

cc:  D. Guertin, DPW Director

R:\TP-090A\K&P1.WPD

5 Burlington Woods
Burlington, MA 01803
T: 800.835.8666  |  T: 781.221.1000
F: 781.229.1115  |  www.fstinc.com



FAY, SPOFFORD & THORNDIKE, LLC
Engineers • Planners • Scientists • Landscape Architects • Surveyors

August 17, 2004

Kopelman and Paige, P.C.
31 St. James Avenue
Boston, MA 02116

Attention:       Mr. Richard T. Holland

Subject:       Town of Provincetown, MA
                   MacMillan Pier - Concrete Floating Docks

Dear Mr. Holland:

We are sending herewith a copy of 110 memos/letters/faxes dating from September 1998 through December 2003 dealing with the floating docks.

We retrieved this material from our files and believe that all of it has been previously sent to the Town.

We have prepared a listing of this information for your use.

Very truly yours,

FAY, SPOFFORD & THORNDIKE, INC.
By:

Robert E. Bertolino,
Senior Vice President

cc:   D. Guertin, DPW Director, w/copy of document listing

R:\TP-090A\K&P1_081704.WPD

5 Burlington Woods
Burlington, MA 01803
T: 800.835.8666 | T: 781.221.1000
F: 781.229.1115 | www.fstinc.com



TP-0904
~~Dton~~
~~RCB~~
C+B

*************** -COMM. JOURNAL- *************** DATE JUL-02-2004 ***** TIME 13:42 ********

MODE = MEMORY TRANSMISSION          START=JUL-02 13:40    END=JUL-02 13:42

   FILE NO.=202

| STN NO. | COMM. | ABBR NO. | STATION NAME/TEL NO. | PAGES | DURATION |
|---------|-------|----------|----------------------|-------|----------|
| 001     | OK    | ☎        | 916176541735         | 004/004 | 00:00:59 |

(121)

                                          -FAY, SPOFFORD&THORNDIKE -

************************************** -STRUCTURAL    - ***** -    781 221 5907- *********



# FAY, SPOFFORD & THORNDIKE, INC.
## 5 Burlington Woods • Burlington, Massachusetts 01803

## FAX TRANSMISSION FORM

DATE: July 2, 2004

ATTENTION:     Richard T. Holland

COMPANY:     Kopelman & Paige P.C.

CITY, STATE:     Boston, MA 02116

PROJECT #:     TP - 090A

FAX#:     617 - 654 - 1735          ☐ ORIGINALS MAILED

SUBJECT:     MacMillan Pier Rehabilitation - Concrete Floating Docks

COMMENTS:

    Copy of revised wave properties (March 5, 2002 from Woods Hole Group) and copy of Certificate of Substantial Completion.

FROM: FAY, SPOFFORD & THORNDIKE, INC. FAX#: (781) 229-1115

BY:    Don Harvie

TOTAL NUMBER OF PAGES INCLUDING THIS FORM:     4

IF THERE ARE ANY PROBLEMS, PLEASE CONTACT: Don Harvie
AT (781) 221-1143

(8)



# FAY, SPOFFORD & THORNDIKE, INC.
### 5 Burlington Woods • Burlington, Massachusetts 01803

## FAX TRANSMISSION FORM

DATE: July 2, 2004

ATTENTION:    Richard T. Holland

COMPANY:    Kopelman & Paige P.C.

CITY, STATE:    Boston, MA 02116

PROJECT #:    TP - 090A

FAX#:    617 - 654 - 1735

☐ ORIGINALS MAILED

SUBJECT:    MacMillan Pier Rehabilitation - Concrete Floating Docks

COMMENTS:

Copy of revised wave properties (March 5, 2002 from Woods Hole Group) and copy of Certificate of Substantial Completion.

FROM: **FAY, SPOFFORD & THORNDIKE, INC. FAX#: (781) 229-1115**

BY:    Don Harvie

TOTAL NUMBER OF PAGES INCLUDING THIS FORM:    4

IF THERE ARE ANY PROBLEMS, PLEASE CONTACT: Don Harvie AT (781) 221-1143

SOUTHEAST FLOATING DOCKS, INC.,

     Plaintiff

v.

AGM MARINE CONTRACTORS, INC.,
CHILDS ENGINEERING CORPORATION,
AND THE TOWN OF PROVINCETOWN,

     Defendants

DEFENDANT TOWN OF
PROVINCETOWN'S PRIVILEGE LOG
PURSUANT TO DISTRICT COURT'S
OCTOBER 18, 2007 ORDER

| NO. | DATE | FROM | TO | CC | DOC TYPE | SUBJECT |
|---|---|---|---|---|---|---|
| 1 | 12/12/2003 | DFG | JWG | KB | E-mail | Storm Damage |
| 2 | 12/12/2003 | RH | DFG | | E-mail | MacMillan Pier |
| 3 | 12/15/2003 | RH | DFG | | E-mail | MacMillan Pier |
| 4 | 12/15/2003 | DFG | RH | | E-mail | Proposal for Engineering Services |
| 5 | 12/16/2003 | RH | DFG | | E-mail | Proposal for Engineering Services |
| 6 | 12/16/2003 | RH | DFG | | E-mail | Proposal for Engineering Services |
| 7 | 12/23/2003 | RH | DFG | | E-mail | MacMillan Pier |
| 8 | 12/31/2003 | RH | DFG | | E-mail | MacMillan Pier Project |
| 9 | 02/04/2004 | RH | DFG | | E-mail | MacMillan Pier |
| 10 | 02/09/2004 | KB | JWG | | E-mail | Provincetown Litigation |
| 11 | 02/17/2004 | JWG | KB | DD | E-mail | Provincetown Litigation |
| 12 | 02/29/2004 | KB | JWG, DD, RH | DFG | E-mail | Dusenberry Proposal |
| 13 | 03/02/2004 | DFG | RH | JWG, KB | E-mail | MacMillan Pier |
| 14 | 03/08/2004 | DFG | KB | RH, ST | E-mail | MacMillan Pier |
| 15 | 03/09/2004 | DFG | RH | ST, KB | E-mail | MacMillan Pier |
| 16 | 03/09/2004 | DFG | RH | | E-mail | Report to Town Manager on need for berthing |

| 17 | 03/10/2004 | RH | DFG | | E-mail | Reinstallation Work |
|----|-----------|-----|-----|-----|--------|--------------------|
| 18 | 03/10/2004 | DFG | RH | | E-mail | Reinstallation Work |
| 19 | 03/10/2004 | DFG | RH | | E-mail | Reinstallation Work |
| 20 | 03/11/2004 | KB | DFG | JWG, ST, RH | E-mail | MacMillan Pier |
| 21 | 03/15/2004 | DFG | RH KB | ST | E-mail | MacMillan Pier |
| 22 | 03/16/2004 | DFG | RH | KB | E-mail | MacMillan Pier |
| 23 | 03/17/2004 | DFG | RH | KB | E-mail | Notice of Warranty Claim |
| 24 | 03/26/2004 | RH | DFG | | E-mail | MacMillan Pier |
| 25 | 03/30/2004 | RH | DFG | | E-mail | MacMillan Pier |
| 26 | 04/01/2004 | RH | DFG | | E-mail | MacMillan Pier |
| 27 | 04/05/2004 | RH | DFG | | E-mail | MacMillan Pier Video Tape |
| 28 | 04/06/2004 | RH | DFG | | E-mail | MacMillan Pier |
| 29 | 04/12/2004 | DFG | RH | KB | E-mail | MacMillan Pier/AGM Marine |
| 30 | 04/12/2004 | DFG | RH | KB | E-mail | MacMillan Pier/AGM Marine |
| 31 | 05/25/2004 | DFG | RH | KB | E-mail | Provincetown MacMillan Pier |
| 32 | 06/16/2004 | RH | DFG | | E-mail | MacMillan Pier |
| 33 | 06/16/2004 | DFG | RH | | E-mail | MacMillan Pier |
| 34 | 06/29/2004 | KB | RH | | E-mail | MacMillan Pier Damage |
| 35 | 07/26/2004 | RH | DFG | KB | E-mail | MacMillan Pier |
| 36 | 07/27/2004 | DFG | RH | | E-mail | MacMillan Pier |
| 37 | 07/27/2004 | RH | DFG | KB | E-mail | MacMillan Pier |
| 38 | 08/31/2004 | RH | DFG | KB | E-mail | Floating Dock System |
| 39 | 09/03/2004 | KB | DFG | RH, MJ | E-mail | MacMillan Pier Repairs |
| 40 | 09/03/2004 | DFG | KB | RH, MJ | E-mail | MacMillan Pier Repairs |
| 41 | 09/08/2004 | KB | DFG | RH, MJ | E-mail | MacMillan Pier Repairs |
| 42 | 09/08/2004 | DFG | RH, KB | | E-mail | MacMillan Pier Repairs |
| 43 | 09/09/2004 | DFG | RH, KB | | E-mail | MacMillan Pier Repairs |

| 44 | 09/09/2004 | KB | RH, DFG | | E-mail | MacMillan Pier Repairs |
|----|-----------|-----|---------|----|--------|------------------------|
| 45 | 09/22/2004 | KB | DFG | RH | E-mail | MacMillan Pier Repairs |
| 46 | 10/20/2004 | RH | DFG | | E-mail | MacMillan Pier |
| 47 | 11/15/2004 | RB | KB, DFG | RH, MJ | E-mail | MacMillan Pier-Floating Dock System |
| 48 | 11/15/2004 | KB | DFG, RB | RH, MJ | E-mail | MacMillan Pier-Floating Dock System |
| 49 | 11/16/2004 | KB | RM | RH, MJ, DFG, RB | E-mail | MacMillan Pier-Floating Dock System |
| 50 | 11/22/2004 | RH | DFG | | E-mail | MacMillan Pier-Pier Corp. |
| 51 | 11/30/2004 | DFG | RH | KB | E-mail | MacMillan Pier |
| 52 | 12/06/2004 | DFG | RH | JWG, KB | E-mail | Matrix for Litigation |
| 53 | 12/09/2004 | KB | DFG, JG, DD, RH | | E-mail | Matrix for Litigation |
| 54 | 12/10/2004 | RH | DFG, KB, DD | | E-mail | MacMillan Pier |
| 55 | 12/10/2004 | KB | RH | | E-mail | Floating Docks-Revised Matrix for Litigation |
| 56 | 12/10/2004 | KB | RH | | E-mail | Floating Dock recommend Joint Memo |
| 57 | 12/13/2004 | DFG | KB | | E-mail | Floating Dock recommend Joint Memo |
| 58 | 01/11/2005 | RH | DFG | | E-mail | MacMillan Pier |
| 59 | 01/14/2005 | RH | DFG | KB | E-mail | MacMillan Pier/Settlement Agreement |
| 60 | 01/14/2005 | RH | DFG | KB | E-mail | MacMillan Pier/Settlement Agreement |
| 61 | 01/25/2005 | RH | DFG | KB | E-mail | MacMillan Pier |
| 62 | 02/02/2005 | DFG | RH | JWG, KB, ST | E-mail | MacMillan Pier/Settlement Agreement |

| 63 | 02/03/2005 | RH | DFG | KB | E-mail | AGM/Settlement Agreement |
|----|-----------|----|----|----|--------|--------------------------|
| 64 | 02/14/2005 | RH | KB | DFG | E-mail | MacMillan Pier |
| 65 | 02/17/2005 | RH | DFG | | E-mail | MacMillan Pier |
| 66 | 02/17/2005 | RH | DFG | | E-mail | MacMillan Pier |
| 67 | 02/25/2005 | RH | DFG | | E-mail | Floating Dock |
| 68 | 02/28/2005 | RH | DFG | | E-mail | Floating Dock |
| 69 | 03/02/2005 | RH | DFG | KB | E-mail | Floating Dock Settlement Agreement |
| 70 | 03/04/2005 | RH | DFG | KB | E-mail | MacMillan Pier |
| 71 | 03/14/2005 | RH | DFG | | E-mail | MacMillan Pier |
| 72 | 03/14/2005 | RH | DFG | | E-mail | MacMillan Pier |
| 73 | 03/21/2005 | DFG | RH | KB | E-mail | MacMillan Pier |
| 74 | 03/22/2005 | RH | DFG | KB | E-mail | Floating Dock |
| 75 | 03/22/2005 | RH | DFG | | E-mail | AGM/MacMillan Pier |
| 76 | 03/22/2005 | RH | DFG | | E-mail | Floating Dock |
| 77 | 03/28/2005 | DFG | RH | KB | E-mail | MacMillan Pier |
| 78 | 03/31/2005 | RH | KB | DFG | E-mail | MacMillan Pier |
| 79 | 04/19/2005 | RH | DFG | | E-mail | Provincetown Release |
| 80 | 04/20/2005 | DFG | RH, KB | | E-mail | SGH Release |
| 81 | 02/03/2004 | KB | JWG | BOS, DFG | Facsimile | Floating Dock Costs |
| 82 | 02/06/2004 | RH | KB | | Facsimile | MacMillan Pier Reconstruction |
| 83 | 02/27/2004 | RH | KB | BOS, DFG | Memo | MacMillan Pier Reconstruction |
| 84 | 03/29/2004 | RH | DFG | | Facsimile | MacMillan Pier |
| 85 | 06/24/2004 | RH | KB | DFG | Facsimile | MacMillan Pier Reconstruction |
| 86 | 09/10/2004 | KB | RH | | Facsimile | Floating Dock System |
| 87 | 12/09/2004 | RH | KB | | Facsimile | MacMillan Pier Reconstruction |
| 88 | 12/10/2004 | RH | KB | | Facsimile | MacMillan Pier Reconstruction |
| 89 | 12/14/2004 | KB | RH | | Facsimile | Restoration of the MacMillan Pier Floating Dock System |
| 90 | 03/31/2005 | RH | KB | DFG | Facsimile | MacMillan Pier, Floating Dock System |

| | 03/31/2005 | PH | RH | KB, BOS | Letter | Settlement Agreement/Signature Page |
|---|---|---|---|---|---|---|
| 91 | | | | | | |

John W. Giorgio, Esq. (JWG) – Kopelman and Paige, P.C., Town's counsel.
Keith Bergman (KB) – Town Manager.
David F. Guertin (DFG) – Director, Town's Dept. of Public Works.
Richard Holland, Esq. (RH) – Kopelman and Paige, P.C., Town Counsel.
David Doneski, Esq. (DD) – Kopelman & Paige, P.C.
Sandra Turner (ST) – Deputy Director, Town's Dept. of Public Works.
Michelle Jarusiewicz (MJ) – Assistant Town Manger.
Regina "Ginny" Binder (RB) – Building Committee Member.
Rex McKinsey (RM) – MacMillan Pier Manager.
Board of Selectmen (BOS) – Provincetown Board of Selectmen.
Pam Hudson (PH) – Secretary to the Town Manager.

# EXHIBIT H

| NO. | DOC. REQUEST | OBJECTION | PRODUCED? | COMMENTS[1] | SUPPORT |
|-----|--------------|-----------|-----------|-------------|---------|
| 1 | Town's 51 pages of SGH documents with exhibits | The Court's order does not require a response to this request. | See Town's Memorandum, submitted herewith. | See Town's Memorandum. | |
| 2 | Town's 9 pages of FST documents with exhibits | The Court's order does not require a response to this request. | See Town's Memorandum. | See Town's Memorandum. | |
| 3 | Records of maintenance & modifications to docks | (1) Southeast does not specify a particular document and did not provide a copy of the document that it claims refers to the documents requested; (2) "Records of maintenance" were not requested in the Subpoena. | Yes, if the document(s) existed. | Any documents concerning maintenance and modifications to the floating docks would have been included in the documents inspected by Southeast's counsel on June 27 and 28, 2005. | David F. Guertin ("Guertin Affidavit"), submitted herewith; see also Town's Memorandum and exhibit B thereto. |
| 4 | Details of selection & design of fix. | Southeast does not specify a particular document and did not provide a copy of the report it claims refers to the documents requested. | Yes. | Any non-privileged documents regarding the repair and replacement of the floating docks following the December 2003 storm have been produced. | Guertin Affidavit; see also Town's Memorandum and exhibit B thereto. |

---

[1] References in the comments to documents that have been produced refers to non-privileged documents. See the Town's Privilege Log, submitted herewith.

| 5 | Backup & payment records, including C.O. #8 & Final Pay Application | N/A | Yes. | Documents regarding payments to AGM for the Project have been produced, including change order # 8 and all of AGM's applications for payment. (It should be noted that Change order # 8 was not approved by the Board of Selectmen until September 26, 2005, after AGM fulfilled its obligations under the settlement agreement between it and the Town; well after the issuance of the Subpoena on February 23, 2005; and well after the Town's production of documents to Southeast in accordance with the Subpoena.) | Guertin Affidavit; see also Town's Memorandum and exhibit B thereto. |
| 6 | Data on both storms | The Subpoena does not request data regarding any storm other than the storm that occurred in December 2003. | Yes, if the document(s) existed. | All written data regarding the December 2003 storm that caused damage to the floating docks were produced at various times, including at a meeting with Southeast on April 22, 2004, and pursuant to a letter from the Town's counsel dated August 2, 2005. In addition, any storm data existing in printed form would have been included in the documents inspected by Southeast's counsel in June 2005. | Guertin Affidavit; see also Town's Memorandum and exhibit B thereto. |
| 7 | Fully executed AGM settlement agreement with exhibits. | The Subpoena does not request a copy of any settlement agreements. | Yes. | The signed settlement agreement was produced. By letter dated August 2, 2005, from the Town's counsel, Southeast's counsel was asked if she needed another copy of the settlement | Guertin Affidavit; see also Town's Memorandum and exhibit F thereto. |

| | | | | agreement, and she never responded. | |
|---|---|---|---|---|---|
| 8 | Records relating to 1/05 nor'easter. | See Town's response to # 6, above. | Yes, if the document(s) existed. | See Town's response to # 6, above. | Guertin Affidavit. |
| 9 | Records relating to Town/FST settlement | (1) Southeast does not specify a particular document and did not provide copies of the documents it claims refer to the documents requested; (2) The Subpoena did not request documents regarding any such settlement. | No, because the documents do not exist. | There is no settlement agreement between the Town and FST in connection with the Project. | Guertin Affidavit. |
| 10 | "correspondence that needs to be issued" | (1) This request is vague; (2) Southeast does not specify a particular document and did not provide a copy of the memo that it claims refer to the documents requested. | Yes (see comments). | All non-privileged correspondence to or from the Town in connection with the Project and responsive to the Subpoena has been produced. | Guertin Affidavit; see also Town's Memorandum and exhibit B thereto. |
| 11 | Results of "due diligence" by Town staff & FST, including info. From NOAA (Taunton) | (1) This request is vague; (2) Southeast does not specify a particular document and did not provide copies of the memo and email it claims refers to the documents requested. | Yes (see comments). | Any documents reflecting the results of any investigation of the December 2003 storm damage to the floating docks have been produced. | Guertin Affidavit; see also Town's Memorandum and exhibit B thereto. |

| # | | | | |
|---|---|---|---|---|
| 12 | Town correspondence to FST, Zurich and others and all responses thereto. | Southeast does not specify a particular document and did not provide a copy of the memo it claims refers to the documents requested. | Yes. | Any correspondence from the Town to FST, Zurich North America (AGM's surety) and any correspondence received by the Town from those parties has been produced, including by way of cover letter dated July 8, 2004 from the Town's counsel. | Guertin Affidavit; see also Town's Memorandum and exhibit G thereto. |
| 13 | 9/23/04 meeting minutes. | (1) The subpoena does not request meeting minutes; (2) Southeast does not identify the Town board whose meeting minutes it claims were not produced. | Yes, if a meeting was held and minutes were prepared. | Minutes of meetings of the Town's boards and the Pier Corporation were available to Southeast on the Town's website, as Southeast's counsel was advised by the Town's counsel verbally in June 2005, and by email sent June 8, 2005. Moreover, meeting minutes relating to the Project would have been included in the documents inspected by Southeast's counsel on June 27 and 28, 2005, as confirmed by the documents listed in exhibit A of Southeast's Memorandum, which includes meeting minutes. | Guertin Affidavit; see also Town's Memorandum and exhibit B thereto. |
| 14 | Maintenance logs or other records of maintenance. | (1) Southeast does not specify a particular document and did not provide a copy of the document that it claims refers to the documents requested; (2) The Subpoena did not request maintenance logs or other records of maintenance. | Yes, if the document(s) existed. | Any records of maintenance of the floating docks have been produced, including by way of the documents inspected by Southeast's counsel on June 27 and 28, 2005. | Guertin Affidavit; see also Town's Memorandum and exhibit B thereto. |

| | | | | |
|---|---|---|---|---|
| 15 | Correspondence/proposed fix for steel float. | (1) Southeast does not specify a particular document and did not provide copies of the emails it claims refer to the documents requested; (2) The subpoena does not request correspondence or any proposed fix for a steel float, which is not part of the floating docks manufactured by Southeast. | Yes, if the document(s) existed. | Any correspondence regarding the steel float has been produced, including by way of the documents inspected by Southeast's counsel on June 27 and 28, 2005. | Guertin Affidavit; see also Town's Memorandum and exhibit B thereto. |
| 16 | Records relating to AGM's ownership of pieces of floats. | (1) This request is vague; (2) Southeast does not specify a particular document and did not provide a copy of the email it claims refers to the documents requested. | Yes, if the document(s) existed. | Non-privileged records regarding the floating docks have been produced, including documents, if any, that may relate to the allegation of "AGM's ownership of pieces of floats," including by way of the documents inspected by Southeast's counsel on June 27 and 28, 2005. | Guertin Affidavit; see also Town's Memorandum and exhibit B thereto. |
| 17 | AGM letter. | (1) This request is vague; (2) Southeast does not specify a date of the "AGM letter," and did not provide a copy of the report it claims refers to the letter requested. | Yes (see comments) | All letters from AGM received by the Town have been produced, including by way of the documents inspected by Southeast's counsel on June 27 and 28, 2005. | Guertin Affidavit; see also Town's Memorandum and exhibit B thereto. |
| 18 | Questionnaire re: AGM | (1) The Subpoena does not request such a | Yes. | There does exist a March 8, 2005 Past Performance Questionnaire signed by | Guertin Affidavit; see also Town's |

| # | Item | Objection | Response | Explanation | Source |
|---|------|-----------|----------|-------------|--------|
| | | document; (2) This request is vague; (3) Southeast did not provide a copy of the letter that it claims refers to the "questionnaire." | | the DPW Director for AGM. It would have been included with the documents inspected by Southeast's counsel on June 27 and 28, 2005. | Memorandum and exhibit B thereto. |
| 19 | Report of Zurich meeting dated 8/26/04 | The Subpoena does not request any "Report of Zurich meeting" or any other meeting. | Yes. | There exists an August 27, 2004 memo between the Town Manager, DPW Director and the Town's Counsel. The document was produced to Attorney Rosemary Hayes under cover of letter dated August 2, 2005 from the Town's counsel. | Guertin Affidavit; see also Town's Memorandum and exhibit B thereto. |
| 20 | AGM letter of 9/23/04 | Southeast did not provide a copy of the memo it claims refers to the "AGM letter of 9/23/04." | Yes, if the document(s) existed. | All letters received by the Town from AGM in connection with the Project have been produced, including by way of the documents inspected by Southeast's counsel on June 27 and 28, 2005. | Guertin Affidavit; see also Town's Memorandum and exhibit B thereto. |
| 21 | Exhibits to 9/23/04 Memo | Southeast did not provide a copy of the memo it claims refers to "exhibits to 9/23/04 Memo." | Yes. | The exhibits to the September 23, 2004 memo relate to a difference project, save for two (the "Pier Floating Dock Matrix" and "DEP Chapter 91 Plans"), both of which would have been included in the documents inspected by Southeast's counsel on June 27 and 28, 2005. | Guertin Affidavit; see also Town's Memorandum and exhibit B thereto. |
| 22 | Executed agreement for services & documentation relating thereto (Childs Eng'g) | The Subpoena did not request such a document. | Yes, if it existed. | The Town produced a copy of a December 15, 2003 letter proposal from Childs Engineering. That proposal, along with other correspondence from | Guertin Affidavit; see also Town's Memorandum and exhibit B thereto. |

| | | | | | |
|---|---|---|---|---|---|
| | | | | Childs to the Town, was produced to Attorney Rosemary Hayes under cover of letter dated August 2, 2005 from the Town's counsel. | |
| 23 | Documentation of AGM estimate of $150,000 | (1) This request is vague; (2) Southeast does not specify a particular document and did not provide a copy of the memo it claims refers to the documents requested. | Yes, if the document(s) existed. | Any documents regarding any estimate of AGM concerning the Project would have been included in the documents inspected by Southeast's counsel on June 27 and 28, 2005. | Guertin Affidavit; see also Town's Memorandum and exhibit B thereto. |
| 24 | FS&T 'post-mortem' & documents relating to sufficiency of FS&T design, the piling, its subconsultant's wind/wave analysis and issues relating thereto & responses to such inquiries | (1) This request is vague; (2) Southeast did not provide a copy of the memo it claims refers to the documents requested. | Yes, if the document(s) existed. | Any documents regarding any wind or wave analysis performed by FST or any of its consultants have been produced, including by way of a letter dated August 2, 2005 from the Town's counsel. | Guertin Affidavit; see also Town's Memorandum and exhibit B thereto. |
| 25 | Complete Zoino information re: piling | (1) This request is vague; (2) Southeast did not provide a copy of the memo it claims refers to the documents requested; (3) The Subpoena did not request "Zoino information." | Yes, if the document(s) existed. | The Town does not know what documents Southeast is referring to. Nevertheless, any documents containing such information, if related to the Project, would have been included in the documents inspected by Southeast's counsel on June 27 and 28, 2005. | Guertin Affidavit; see also Town's Memorandum and exhibit B thereto. |
| 26 | SK #1, FS&T report, email to pier users, notice of meeting, DPW report | (1) The Subpoena did not request "email to pier users" or "notice of | Yes, if the document(s) existed. | Southeast fails to specify the documents sought. Nevertheless, documents responsive to the Subpoena have been | Guertin Affidavit; see also Town's Memorandum and |

| | | | | |
|---|---|---|---|---|
| | | meeting"; (2) This request is vague; (3) Southeast did not provide a copy of the memo it claims refers to the documents requested. | | produced, including documents received by the Town from FST. | exhibit B thereto. |
| 27 | Childs' preliminary report, DPW's commentary, DPW 12/28/03 transmittal & attachments, color photos | (1) This request is vague; (2) Southeast did not provide a copy of the memo it claims refers to the documents requested. | Yes, if the document(s) existed. (See comments) | The single report prepared by Childs Engineering was produced, as were all non-privileged documents responsive to the Subpoena, including transmittals from the DPW. Photographs of the storm damage to the floating docks have been produced, including by way of an August 5, 2005 email from the Town's counsel. | Guertin Affidavit; Affidavit of Richard T. Holland, submitted herewith; see also Town's Memorandum and exhibit B thereto. |
| 28 | 9/23/04, 9/28/04 meeting minutes. | (1) The Subpoena does not request meeting minutes; (2) Southeast does not identify the Town board whose meeting minutes it claims were not produced; (3) Southeast did not provide a copy of the notice it claims references the meetings. | See # 13, above. | See the Town's comments to # 13, above. | Guertin Affidavit; see also Town's Memorandum and exhibit B thereto. |
| 29 | Pier Corp meeting minutes | The Subpoena does not request meeting minutes | Yes. | See the Town's comments to # 13, above. | Guertin Affidavit; see also Town's Memorandum and exhibit B thereto. |

| | | | | | |
|---|---|---|---|---|---|
| 30 | Calculations, results and records of remedial tests, testing in regard to southwest exposure, etc. | (1) This request is vague; (2) Southeast does not specify a particular document, and did not provide a copy of the memo it claims refers to the documents requested. | Yes, if the document(s) existed. | The Town does not know what calculations, results or tests Southeast is referring to. The Town did not conduct "testing in regard to southwest exposure." If any such documents existed, they would have been included in the documents inspected by Southeast's counsel on June 27 and 28, 2005, or included with letters from the Town's counsel. | Guertin Affidavit; see also Town's Memorandum and exhibit B thereto. |
| 31 | Wave analysis, wave design criteria, information on marina design criteria, ADA docking system criteria, preliminary design assumptions & parameters, design criteria for wave attenuation system | (1) Other than "proof of wind speed, wind direction, wave height," and "records concerning . . . removal of the wave attenuator," the Subpoena did not request such information; (2) Southeast does not specify a particular document. | Yes, if the document(s) existed. (See comments) | Documents referencing wave analysis or wave criteria were produced at various times, including at a meeting with representatives of Southeast on April 22, 2004, and pursuant to a letter from the Town's Counsel dated August 2, 2005. | Guertin Affidavit; see also Town's Memorandum and exhibits B and F thereto. |
| 32 | FEMA information and any requests & responses | (1) The Subpoena did not request FEMA information; (2) The request is vague; (3) Southeast did not provide a copy of the memo it claims refers to the documents requested. | Yes, if the document(s) existed. | Any correspondence to and from the Town regarding damage to the floating docks responsive to the Subpoena have been produced, including by way of the documents inspected by Southeast's counsel on June 27 and 28, 2005. | Guertin Affidavit; see also Town's Memorandum and exhibit B thereto. |
| 33 | All written, printed or pictorial materials | (1) The Subpoena does not request information | Yes, if the document(s) | Any documents responsive to the Subpoena and referencing or relating to | Guertin Affidavit; see also Town's |

| | | | | |
|---|---|---|---|---|
| | referencing or relating to design errors and/or negligence (including, but not limited to, piling and wind/wave analysis) by FS&T or its privies | regarding design errors or negligence of FST or its privies; (2) Southeast does not specify a particular document, and did not provide copies of the documents it claims refer to the information requested. | existed. | any design errors or negligence of FST in connection with the floating docks would have been included in the documents produced to Southeast. | Memorandum and exhibit B thereto. |
| 34 | Interim Agreement/Plan and weekend work product | (1) The Subpoena did not request such a document; (2) The request is vague; (3) Southeast did not provide a copy of the email it claims refers to the documents requested. | Yes, if the document(s) existed. | The June 14, 2004 email referenced by Southeast in support of its request includes the attachment referenced in the email. There is no other document known to exist by the Town. | Guertin Affidavit; see also Town's Memorandum and exhibit B thereto. |
| 35 | Plan for seasonal removal of docks and tests and results relating thereto | (1) The Subpoena did not request such a document; (2) The request is vague; (3) Southeast did not provide a copy of the email it claims refers to the documents requested. | Yes, if the document(s) existed. | The subject matter of the April 20, 2005 email referenced by Southeast in support of its request is not responsive to the Subpoena, and the email itself is dated after the date of the Subpoena. Thus, the email is not responsive to the Subpoena. Nevertheless, such documents, if the document(s) existed, would have been included in the documents inspected by Southeast's counsel on June 27 and 28, 2005. | Guertin Affidavit; see also Town's Memorandum and exhibit B thereto. |
| 36 | The simple matrix and subsequent analysis to include expenses | The matrix constitutes an attorney-client communication and is protected from disclosure | No, because it is privileged. | See Town's Privilege Log, submitted herewith. | Privilege Log; June 2, 2005 Order. |

| | | by the attorney-client privilege. | | | |
|---|---|---|---|---|---|
| 37 | Responsive email [to 3/24/04 email referenced by Southeast] | (1) The request is vague; (2) Southeast did not provide a copy of the email it claims refers to the documents requested. | Yes, if it existed, but there is no known email response to the 3/24/04 email. | The March 24, 2004 email referenced by Southeast in support of its request does not request an email response, and nothing indicates that one was ever sent. In addition, emails responsive to the Subpoena have been produced, including by way of a letter dated August 2, 2005 from the Town's counsel. | Guertin Affidavit; see also Town's Memorandum and exhibit B thereto. |
| 38 | Site observation video. | Southeast continues to request the video of the December 2003 storm, even though it was shown the video and its counsel has acknowledged receiving a copy of the video. | Yes. | The video of the December 2003 storm was shown to Southeast's representatives at an April 22, 2004 meeting, and was delivered to Attorney Rosemary Hayes under cover of a letter dated June 3, 2005 from the Town's Counsel. | Guertin Affidavit; see also Town's Memorandum and exhibits B and E thereto. |
| 39 | Repair procedure submitted to DPW | (1) The request is vague; (2) Southeast does not specify a particular document, and did not provide a copy of the email it claims refers to the "repair procedure." | Yes, if the document(s) existed. | The Town is not aware of what document Southeast is referring to. Any documents made or received by the Town regarding the repair of storm damage to the floating docks have been produced, including by way of the documents inspected by Southeast's counsel on June 27 and 28, 2005. | Guertin Affidavit; see also Town's Memorandum and exhibit B thereto. |
| 40 | All communications to/from steel float supplier regarding failure of steel float during 12/03 | (1) The Subpoena did not request such communications; (2) Southeast does not | Yes, if the document(s) existed. | The steel float has nothing to do with, and is not a part of, the floating docks, and is not the subject of any of the requests in the Subpoena. Nevertheless, | Guertin Affidavit; see also Town's Memorandum and exhibit B thereto. |

| | | | | |
|---|---|---|---|---|
| | and/or 1/05 storms | specify a particular document. | | any documents regarding the steel float, if the document(s) existed, have been produced, including by way of the documents inspected by Southeast's counsel on June 27 and 28, 2005. | |
| 41 | 35 pages of backup for C.O. #8, original transmittal | N/A | Yes. | Change Order No. 8 and its attachments have been produced. | Guertin Affidavit; see also Town's Memorandum and exhibit B thereto. |
| 42 | Final application for payment & backup | N/A | Yes. | AGM's final application for payment to the Town, and any "backup" to that change order, have been produced. | Guertin Affidavit; see also Town's Memorandum and exhibit B thereto. |
| 43 | 2/19/99 meeting minutes and information provided by Bellingham Marine | (1) The Subpoena does not request meeting minutes; (2) Southeast does not identify the Town board whose meeting minutes it claims were not produced; (3) Southeast did not provide a copy of the memo it claims references the meeting. | Yes, if the document(s) existed. | As to the request for meeting minutes, see the Town's comments to # 13, above. | Guertin Affidavit; see also Town's Memorandum and exhibit B thereto. |
| 44 | 12/07/04 meeting minutes & draft of BOS re: dock re-design | (1) The Subpoena does not request meeting minutes; (2) Southeast does not identify the Town board whose meeting minutes it claims were not produced; (3) | Yes, it the documents existed. (See also # 13, above) | As to request for meeting minutes, see the Town's comments to # 13, above. | Guertin Affidavit; see also Town's Memorandum and exhibit B thereto. |

| # | | | | |
|---|---|---|---|---|
| | | Southeast did not provide a copy of the notice it claims references the meeting. | | |
| 45 | 1999 estimate from Bellingham Marine. | (1) The Subpoena did not request estimates from Bellingham Marine; (2) Southeast did not provide a copy of the memo it claims refers to the documents requested. | Yes, if the estimate existed. | The Town is not aware of what estimate Southeast is referring to. If such an estimate had been received by the Town for the Project, it would have been included in the documents inspected by Southeast's counsel on June 27 and 28, 2005. | Guertin Affidavit; see also Town's Memorandum and exhibit B thereto. |
| 46 | Insurance records. | The Subpoena does not request "insurance records," but instead requests "all demands for insurance coverage and responses thereto." | Yes. (See comments) | Documents regarding "demands for insurance coverage and responses thereto," as requested in the Subpoena, have been produced. The Town had no insurance for the floating docks, and Southeast's counsel has been advised of this fact repeatedly. | Guertin Affidavit; see also Town's Memorandum and exhibit B thereto. |
| 47 | February 2004 Town meeting minutes. | (1) The Subpoena does not request meeting minutes; (2) Southeast does not identify the Town board whose meeting minutes it claims were not produced; (3) Southeast did not provide a copy of the memo it claims references the meetings. | See # 13, above. | As to the request for meeting minutes, see the Town's comments to # 13, above. | Guertin Affidavit; see also Town's Memorandum and exhibit B thereto. |
| 48 | Records reflecting how Town came to blame | Southeast does not specify a particular | Yes. (See comments) | All documents responsive to the Subpoena have been produced or made | Guertin Affidavit; see also Town's |

| | | | |
|---|---|---|---|
| | Southeast & meeting minutes reflecting this decision | document, and did not provide a copy of the meeting minutes that it claims refers to the records requested. | available to Southeast. (In addition, the Town sought relief for the damage to the floating docks from AGM who, in turn, sought relief from Southeast, with whom AGM, and not the Town, had a contract. | Memorandum and exhibit B thereto. |
| 49 | Complete expert opinions and information, including in regard to FS&T and its subconsultants | Southeast continues to request expert opinions even though the Town has repeatedly represented that all such opinions have been produced or made available to Southeast | Yes, if the document(s) existed. (See comments) | The Town has produced or made available to Southeast all expert opinions received by the Town regarding the storm damage to the floating docks. | Guertin Affidavit; Holland Affidavit; see also Town's Memorandum and exhibit B thereto. |
| 50 | Records of investigation, analysis & decision on "survivability without a wave barrier." | (1) The Subpoena did not request such documents, but instead requested only documents "concerning . . . removal of the wave attenuator or 'breakwater' from the original project design"; (2) Southeast does not specify a particular document, and did not provide a copy of the email it claims refers to the records requested. | Yes, if the document(s) existed. (See comments) | The December 7, 2003 email does not state that there was any "investigation, analysis & decision on 'survivability without a wave barrier.'" Any documents regarding any such investigation, analysis or decision have been produced or made available to Southeast, including by way of the documents inspected by Southeast's counsel on June 27 and 28, 2005. | Guertin Affidavit; see also Town's Memorandum and exhibit B thereto. |
| 51 | Meeting minutes for 12/8/03 Town meeting(s) | (1) The Subpoena does not request meeting minutes; (2) Southeast | See # 13, above. | See the Town's comments to # 13, above. | Guertin Affidavit; see also Town's Memorandum and |

|  |  |  |  |  |  |
|---|---|---|---|---|---|
|  | does not identify the Town board whose meeting minutes it claims were not produced; (3) Southeast did not provide a copy of the memo it claims references the meetings. |  |  |  | exhibit B thereto. |
| 52 | Buoy data obtained by Harbor Master | (1) The Subpoena does not request buoy data; (2) Southeast does not specify a particular document, and did not provide a copy of the memo it claims references the data requested. | Yes, if the document(s) existed. | Any buoy data regarding the December 2003 storm existing in printed form would have been produced or made available to Southeast by way of the documents inspected by Southeast's counsel on June 27 and 28, 2005, or the documents transferred to Southeast by the Town's counsel. | Guertin Affidavit; see also Town's Memorandum and B thereto. |
| 53 | R. Holland's request for info provided by FS&T on 6/22/04, all materials provided & analysis of wavelength, etc. referenced | N/A | Yes. | All documents attached to the June 22, 2004 letter to Attorney Richard Holland have been produced by way of the documents inspected by Southeast's counsel on June 27 and 28, 2005, or the documents transferred to Southeast by the Town's counsel. | Guertin Affidavit; see also Town's Memorandum. |

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION
NO. 05CV11039EFH

SOUTHEAST FLOATING DOCKS, INC.,

      Plaintiff

v.

AGM MARINE CONTRACTORS, INC.,
CHILDS ENGINEERING CORPORATION,
AND THE TOWN OF PROVINCETOWN,

      Defendants

AFFIDAVIT OF DAVID F. GUERTIN

I, David F. Guertin, on oath, hereby depose and say of my own personal

knowledge as follows:

1.      I am the Director of the Department of Public Works ("DPW") for the Town of

Provincetown and have been so employed since 1998.

2.      In or about 2000, the DPW was made responsible for administering the project

commonly known as "MacMillan Pier Reconstruction" ("Project"), which is the subject

of this litigation.  I was designated by the Town Manager to be his liaison with the

Town's Building Committee, which, under the Town Charter, is responsible for

overseeing, generally, the Town's construction projects and making recommendations

regarding such projects to the Town's Board of Selectmen.

3.      The DPW is required to maintain, at its offices, documents created or received by

the Town for those construction projects administered by the DPW, like the Project.  The

DPW was therefore required to maintain Project documents at the DPW's offices located

at 26 Alden Street, Provincetown.

4.       On June 27 and 28, 2005, Attorney Rosemary Hayes, represented to be counsel for Southeast Floating Docks, Inc., inspected and scanned Project documents maintained at the DPW's offices.  Other than written communications to and from the Town and its counsel, all of the Town's Project documents maintained at the DPW were made available to Attorney Hayes for inspection on June 27 and 28, 2005.

5.       I reviewed the February 4, 2005 Subpoena issued on behalf of Southeast Floating Docks, Inc., at or about the time of its issuance.  I understand that a copy of the Subpoena is included in exhibit D of "Plaintiff's List of Records Not Produced by Town in Violation of Multiple Subpoenas, Representations of Counsel, a Court Order & Appellate Mandates," dated November 1, 2007.

6.       The "Exhibit A" that is attached to the Subpoena lists seven requests for documents.  If the documents requested in the Subpoena existed in printed form, they would have been included in the documents inspected by Attorney Hayes on June 27 and 28, 2005, except for the documents requested in subparagraph (a) of the exhibit ("all written demands made by or on behalf of the town . . . under M.G.L. 93A") and any documents prepared by the Town's litigation consultants (Childs Engineering Corporation and Simpson Gumpertz Heger), which I understand have been provided to Attorney Hayes by the Town's counsel, and except for those documents withheld by the Town's counsel under a claim of attorney-client privilege.

SIGNED UNDER THE PAINS AND PENALTIES OF PERJURY THIS FIFTEENTH

DAY OF NOVEMBER 2007.

/s/ David F. Guertin_____
David F. Guerin

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION
NO. 05CV11039EFH

SOUTHEAST FLOATING DOCKS, INC.,

     Plaintiff

v.

AGM MARINE CONTRACTORS, INC.,
CHILDS ENGINEERING CORPORATION,
AND THE TOWN OF PROVINCETOWN,

     Defendants

AFFIDAVIT OF RICHARD T. HOLLAND

I, Richard T. Holland, on oath, hereby depose and say as follows:

1.     I am an attorney employed by Kopelman and Paige, P.C., which serves as Town Counsel to the Town of Provincetown.

2.     In response to the February 4, 2005 arbitration Subpoena of Southeast Floating Docks, Inc. ("Southeast") issued to the Town in connection with an arbitration between Southeast and defendant AGM Marine Contractors, Inc. ("AGM"), I faxed on May 23, 2005 to Southeast's counsel, Attorney Rosemary Hayes, a written report dated January 6, 2004, prepared by Childs Engineering Corporation ("Childs"), and an undated power-point presentation document created by Simpson Gupertz Heger ("SGH"). Childs and SGH were retained by the Town in anticipation of litigation as a result of the failure of the so-called floating docks.

SIGNED UNDER THE PAINS AND PENALTIES OF PERJURY THIS FIFTEENTH

DAY OF NOVEMBER 2007.

/s/ Richard T. Holland_____
Richard T. Holland

Table 2 - AFFIRMATIONS BY TOWN (Emphasis Added) – Exhibit 5 to Southeast's 12/7 Court-Ordered response

| DATE | AFFIANT | CONTENT | DOCKET |
|---|---|---|---|
| 6/1/05 | HOLLAND | "TOWN COUNSEL [WILL] CONTINUE TO WITHHOLD SEVERAL DOCUMENTS *CONSISTING OF* COMMUNICATIONS BETWEEN TOWN COUNSEL & THE PROJECT ENGINEER, FS&T, [UNDER] ATTORNEY-CLIENT PRIVILEGE." ¶ 12 | 11 |
| 6/27/05 | HOLLAND | "AT THE 6/1/05 HEARING, TOWN COUNSEL REPRESENTED THE TOWN WAS WILLING TO [PRODUCE] NON-PRIVILEGED DOCUMENTS…" ¶ 3 | 15 |
| 6/27/05 | HOLLAND | "*THE PRIVILEGED DOCUMENTS CONSTITUTED OR MEMORIALIZED CONVERSATIONS BETWEEN TOWN COUNSEL AND FS&T*, THE PROJECT ENGINEER…" ¶ 5 | 15 |
| 6/27/05 | HOLLAND | …"SGH AND CHILDS ENGINEERING CORP. WERE RETAINED BY THE TOWN IN ANTICIPATION OF LITIGATION …COMMUNICATIONS BETWEEN TOWN COUNSEL AND SGH AND CHILDS WERE NECESSARY FOR TOWN COUNSEL TO PROVIDE ADEQUATE AND INFORMED LEGAL ADVICE AND ASSISTANCE TO THE TOWN."[i] ¶ 22 | 15 |
| | | "SGH WAS RETAINED BY THE TOWN IN ANTICIPATION OF LITIGATION…AND [] *CERTAIN DOCUMENTS PROTECTED…BY ATTORNEY-CLIENT PRIVILEGE [] WITHIN THE FILES OF SGH… WOULD NOT BE PROVIDED*…IN ACCORDANCE WITH THE COURT'S 6/2/05 ORDER." ¶ 16 | |
| 11/15/05 | GUERTIN | "IF THE DOCUMENTS REQUESTED IN THE SUBPOENA EXISTED *IN PRINTED FORM*, THEY WOULD HAVE BEEN INCLUDED IN THE DOCUMENTS INSPECTED…JUNE 27 AND 28, 2005, *EXCEPT FOR*… DEMANDS…UNDER MGL 93A…AND…DOCUMENTS WITHHELD [AS] ATTORNEY CLIENT PRIVILEGE[D]." ¶ 6 | 56 |
| | | "*OTHER THAN WRITTEN COMMUNICATIONS TO AND FROM THE TOWN AND ITS COUNSEL, ALL OF THE TOWN'S PROJECT DOCUMENTS MAINTAINED AT THE DPW WERE MADE AVAILABLE…ON JUNE 27-28, 2005*."[ii] ¶ 4 | |
| 11/15/07 | HOLLAND | "IN RESPONSE TO THE 2/2/05 ARBITRATION SUBPOENA… I FAXED [] A WRITTEN REPORT …BY CHILD'S ENGINEERING…AND AN UNDATED POWER POINT PRESENTATION…BY SGH  [ EXPERTS] RETAINED BY THE TOWN IN ANTICIPATION OF LITIGATION…" ¶ 2 | 57 |

---

[i] These affirmations on behalf of the Town lead one to believe that there are no other privileged documents. The affidavit post-dates the Town's production of the Childs Engineering Corp. report; however, no privileged documents relating to Childs have ever been identified nor are they on the Town's privilege log. The only "privileged" documents were the impounded records from SGH and FS&T. The affidavit is either in error or there are other "privileged" materials that the Town has failed to identify.

[ii] *What about the purportedly privileged impounded documents?*