IN THE UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| SOUTHEAST FLOATING DOCKS, INC., | Case No.: 1:05-CV-11039 <br> Assigned to: Senior Judge Harrington |
| Plaintiff, | **SOUTHEAST'S OBJECTIONS TO <br> NEW PRIVILEGE LOG PURSUANT <br> TO COURT ORDER OF 3/10/08 <br> (_Doc. 67_)** |
| vs. | |
| TOWN OF PROVINCETOWN, MASS, <br> Etc., | |
| Defendants. | |

Southeast complies with the latest Order on the Town's records.[1] (Doc. 67)

## I. INTRODUCTION

The Court entered an Order giving Southeast 11-days to file additional objections to another privilege log (the "New Log"). (Doc. 67) The New Log was ordered to "supplement" the "11/15/07 Log." (Doc. 64) Specific objections to log entries are detailed on Exhibit "1" to this brief.

---

[1] Southeast files its affidavit in support to also address the Order that possibly misapprehends counsel's unsuccessful effort to confirm (a) that the logged documents were, in fact, presented for _in camera_ review; and, (b) request copies of the Town's **substantive, admittedly non-privileged, _ex parte_ communications to the Court**. (Doc. 69) As stated in Southeast's affidavit, undersigned has _never_ received a copy of Mr. Holland's letter (Doc. 61) other than when the Clerk filed it with the ECF system, nor was Southeast copied with non-privileged portion of the documents submitted _ex parte_ to the Court. The affidavit and Southeast's prior, outstanding objection (Doc. 62) are hereby incorporated by reference.

HAYES & CARABALLO, PL
830 Lucerne Terrace
Orlando, FL 32801

On January 2, 2008, the Court entered a different Order giving the Town 2-weeks to file the records on its 11/15/07 Log for *in camera* review. (Doc. 59)

The most recent Order finds that the 11/15/07 Log includes "salient information" such as "time of communications and [] parties thereto" however, "some greater specificity may be helpful," according to the Court. (Doc. 64) Therefore, the Town is ordered as follows:

> [T]o supplement its privilege log with a very brief characterization of the documents or other such additional information **that might assist the *Plaintiff* in appraising the privileges asserted** [but] the Town is obviously not obligated to convey privileged information.

Id. (emphasis supplied).

## II. MEMORANDUM OF LAW

According to binding authority, a nonparty's failure to timely make objection to a subpoena generally requires the court to find all objections, including the attorney-client privilege, have been waived. The First Circuit has permitted a nonparty more than 14-days to file objections based on attorney-client privilege. See Winchester Cap. Mngm't Co., Inc. v. Manuf. Hanover Trust Co., 144 F.R.D. 170, 176 (D.C. Mass. 1992). However, *where a party with an interest in the underlying proceedings* such as the Town does not (1) make a timely objection or to quash, and, fails to (2) assert a claim of attorney-client privilege expressly, and (3) *as of more than **three** **(3)** **years** after* the subpoena, remains unwilling or unable to provide the details required by Rule 45, Federal Rules of Civil

HAYES & CARABALLO, PL
830 Lucerne Terrace
Orlando, FL 32801

Procedure, it has waived the protection of the attorney-client privilege as to the documents commanded. Id.

Respectfully, the Court's Order that the Town supplement its log with "information that might assist Plaintiff in appraising the privileges asserted" (Doc. 67) necessarily constitutes a finding the Town had yet to comply with Rule 45. In other words,

> [w]hen information subject to a subpoena is withheld on a claim that it is privileged or subject to protection as trial preparation materials, the claim shall be made expressly and shall be supported by a description of the nature of the documents, communications or things not produced that is *sufficient to enable the demanding party to contest the claim*.

Fed. R. Civ. P. 45(d)(2)(e.a.)[2]

"[T]the rule,[is] the party 'asserting the privilege', i.e., 'the proponent':... must provide the court with enough information to enable the court to determine privilege, and the proponent must show by affidavit that precise facts exist to support the claim of privilege." Borase v. M/A COM, Inc. 171 F.R.D. 10, 14 (D.C. Mass. 1997). This is especially true where, as here, the Town's New Log suggests counsel's role was one of technical or business adviser more than being requested

---

[2] Providing copies of non-privileged attachments transmitted *ex parte* to assist the Court in evaluating the privilege would also help undersigned counsel; however, the Court has not ruled on Southeast's objection (Doc. 62). Southeast can only (a) accept Mr. Holland's representation that attachments were otherwise provided; and (b) engage in pure speculation, guessing which records might "match."

-3-

to supply and supplying only legal advice. Id.; see table at Exhibit "1." The attorney-client privilege does not apply to the communications between the Town and its counsel designed to keep Kopelman and Paige appraised of the status of repairs and technical matters regarding the docks. Borase at 14-15. Where counsel was a participant in technical and business matters, the burden associated with establishing communications were attorney-client privileged is not sustained absent evidence to establish "that legal advice was being sought or rendered." Id.

The Court does not discuss the results of *in camera* review and counsel was unable to confirm with the Clerk's office that documents were tendered.[3] The Court has not ruled on, nor does it mention, Southeast's outstanding objection requesting the non-privileged portion of the Town's submission as described in Mr. Holland's letter. (Doc. 60, 61, 62, 69)

Southeast is uncertain if the Court's statement that "the Town is obviously not obligated to convey privileged information" in the current Order is based on the Court's review of same. (Doc. 64) Southeast is not clear if this statement is a rejection of the authority Southeast presented on issues of waiver and the crime-fraud exception, in extensive briefings to the Court. See Doc. 54, 59, citing, In re Grand Jury Subpoena, 274 F.3d 563, 576 (1st Cir. 2001)(Where subpoenaed party

---

[3] See affidavit filed herewith regarding SGH records the Town said it tendered for *in camera* inspection that went missing and have never been located. (Doc. 69)

HAYES & CARABALLO, PL
830 Lucerne Terrace
Orlando, FL 32801

is not without knowledge of the communications to which the subpoena pertained and lawyer had possession of them, failure to produce timely privilege log is fatal to claims of privilege). If the foregoing has been decided, Southeast respectfully requests the Court enter an Order with findings mandated by the Circuit Court.

Southeast incorporates in full its prior arguments in that there is no authority by virtue of which the Town can wait 2.5 years before presenting its initial identification of its own purportedly privileged records via the legally insufficient 11/15/07 Log and now be allowed another 6-months to "supplement" with a New Log after an Order for *in camera* review.[4] "The party who invokes the privilege bears the burden of establishing that it applies to the communications at issue and that it has not been waived." In re Keeper of Records,  348 F.3d 16, 22 (1st Cir. 2003).  The only result supported by governing authority is a finding of waiver.

Southeast maintains the Court need not go beyond the issue of waiver to finally resolve this matter. In an abundance of caution, the crime-fraud exception to attorney-client privilege is based on the client's use of the attorney-client privilege to further its plan to perpetrate a fraud. *In re Grand Jury Proceedings*, 417 F.3d 18, 22 (1st Cir. 2005). In this case, Southeast proffers as an example, Exhibit "2," a copy of one "draft" of the many versions of a settlement agreement

---

[4] Notwithstanding the Court's Order, which necessarily is a finding the Town has yet to comply with Rule 45, the Town has the audacity to seek sanctions against Southeast and its counsel for daring to make the same complaint.

HAYES & CARABALLO, PL
830 Lucerne Terrace
Orlando, FL 32801

between the Town and AGM, the complete attachments to which *AGM was also privy,* but Southeast has been denied. This settlement agreement is the subject of many entries on the Town's logs and Southeast has annotated it with the numbers 1-5, in blue, for the Court's ease of reference. See Exhibit "2." It is candidly difficult to imagine a more distressing misuse of the attorney-client privilege than the Town's successful reliance upon it to avoid production of technical attachments to a settlement agreement that call into question, e.g.:

- Whether the Town's engineers properly "specified" the dock system;
- The specifics of replacement of insufficient piling selected by the Town's engineers;
- Use of a "redacted" edition of the original specifications provided to Southeast;
- Wind, wave and impact loads different than those specified to Southeast; and,
- The fact of and basis for payment to AGM.

See table at Exhibit "1," with specific objections to the New Log, and Exhibit "2."

The Town has deliberately made use of the attorney-client privilege to perpetrate a fraud and, in all due respect, the Court may find it helpful to compare the findings in the arbitration award that is the subject of the companion case with the documents presented by the Town for *in camera* review. U.S. v. Reeder, 170 F.3d 93 (1st Cir. 1999)(defendant impermissibly sought attorney's services to enable him to commit what he knew or reasonably should have known to be fraud).

HAYES & CARABALLO, PL
830 Lucerne Terrace
Orlando, FL 32801

The Town is a governmental entity that is not a party to the underlying arbitration or any other proceeding relating to the dock system at MacMillan Pier. It should have no legitimate reason to hide behind the attorney-client privilege in regard to a settlement consummated long ago with AGM. The attorney-client privilege has been subject to narrow construction because it comes with substantial costs and stands as an obstacle to the search for truth. See U.S. v. Nixon, 418 U.S. 683, 709-710 (1974). In this instance, the Town's attorney-client privilege has already resulted in substantial costs and it continues to obstruct the search for the truth.

<u>CERTIFICATE OF SERVICE</u>

I certify this brief was filed via the CM/ECF system on March 17, 2008 which sends notification by email to: rholland@k-plaw.com

s/Rosemary H. Hayes
Rosemary H. Hayes
Florida Bar no.: 549509
Hayes & Caraballo, PL
830 Lucerne Terrace
Orlando, FL 32801
(Voice) 407.649.9974
(Fax) 407.649.9379
rhayes@const-law.com
*Attorneys for Plaintiff*

**REVISED**
9:08 am, Mar 16, 2008

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION
NO. 05CV11039EFH

\*\*SOUTHEAST ASSERTS
ALL PRIVILEGE CLAIMS
WERE WAIVED UNDER
APPLICABLE LAW.

SOUTHEAST FLOATING DOCKS, INC.,

    Plaintiff

v.

AGM MARINE CONTRACTORS, INC.,
CHILDS ENGINEERING CORPORATION,
AND THE TOWN OF PROVINCETOWN,

    Defendants

DEFENDANT TOWN OF
PROVINCETOWN'S PRIVILEGE
LOG PURSUANT TO DISTRICT
COURT'S OCTOBER 18, 2007
ORDER, SUPPLEMENTED
PURSUANT TO DISTRICT COURT'S
FEBRUARY 21, 2008 ORDER

SEFD CANNOT
IDENTIFY ATTACHMENTS:

SEFD
COMMENT

| NO. | DATE | FROM | TO | CC | DOC. TYPE | SUBJECT | SUMMARY OF CONTENTS | |
|-----|------|------|-----|-----|-----------|---------|---------------------|---|
| 1 | 12/12/2003 | DFG | JWG | KB | E-mail | Storm Damage<br><br>TOWN SHOULD FURNISH ATTACH-MENTS. | Request for legal advice in connection with the failure of the dock system during the December 2003 storm; and transmitting (1) copies of 12/10/03 and 12/11/03 memoranda of DFG to Building Committee and KB, respectively, regarding strategy to repair dock system, and (2) copy of notice of building committee meeting. | This is the only entry citing legal advice. |
| 2 | 12/12/2003 | RH | DFG | | E-mail | MacMillan Pier | Discussion regarding Town's search for expert witness. | NOT LEGAL ADVICE |
| 3 | 12/15/2003 | RH | DFG | | E-mail | MacMillan Pier | Discussion regarding remaining project work and contractor's insurance coverage. | |
| 4 | 12/15/2003 | DFG | RH | | E-mail | Proposal for Engineering Services | Discussion regarding Town's search for expert witness and transmitting proposal of Childs Engineering Corp. | |
| 5 | 12/16/2003 | RH | DFG | | E-mail | Proposal for Engineering Services | Discussion regarding Town's search for expert witness and proposal of Childs Engineering Corp. | |



| 6 | 12/16/2003 | RH | DFG | | E-mail | Proposal for Engineering Services | Discussion regarding contractor's insurance coverage. | NOT LEGAL ADVICE |
|---|---|---|---|---|---|---|---|---|
| 7 | 12/23/2003 | RH | DFG | | E-mail | MacMillan Pier | Discussion regarding removal of damaged dock system and payment for the removal. | |
| 8 | 12/31/2003 | RH | DFG | | E-mail | MacMillan Pier Project | Discussion regarding payment for the removal of damaged dock system. | |
| 9 | 02/04/2004 | RH | DFG | | E-mail | MacMillan Pier | Discussion regarding upcoming meeting with Childs Engineering Corp. | |
| 10 | 02/09/2004 | KB | JWG | | E-mail | Provincetown Litigation | Discussion regarding litigation matters discussed by the BOS in executive session meeting. | Insuff. info. |
| 11 | 02/17/2004 | JWG | KB | DD | E-mail | Provincetown Litigation | Discussion regarding Town Counsel's search for expert witness. | NOT LEGAL ADVICE |
| 12 | 02/29/2004 | KB | JWG, DD, RH | DFG | E-mail | Dusenberry Proposal | Discussion regarding the proposal of Simpson, Gumpertz & Heger Inc. ("SGH"). | |
| 13 | 03/02/2004 | DFG | RH | JWG, KB | E-mail | MacMillan Pier | Discussion regarding Town Counsel's discussions with SGH. | |
| 14 | 03/08/2004 | DFG | KB | RH, ST | E-mail | MacMillan Pier | Discussion regarding SGH visit to project site and the re-installation of undamaged dock components. | |
| 15 | 03/09/2004 | DFG | RH | ST, KB | E-mail | MacMillan Pier | Discussion regarding the making of a demand on AGM Marine Contractors Inc. ("AGM"). | Crime-Fraud |
| 16 | 03/09/2004 | DFG | RH | | E-mail | Report to Town Manager on need for berthing | Transmitting 12/26/03 memo of DFG to KB regarding meeting to establish guidelines for small boat fisheries berthing at the pier. | NOT LEGAL ADVICE |
| 17 | 03/10/2004 | RH | DFG | | E-mail | Reinstallation Work | Transmitting for review by Town letter drafted by Town Counsel and addressed to counsel for AGM. | Crime-fraud – the direct issue in arb. is stlmnt w/AGM |
| 18 | 03/10/2004 | DFG | RH | | E-mail | Reinstallation Work | Discussion regarding additional items to include in Town Counsel's draft letter to counsel for AGM. | |

| 19 | 03/10/2004 | DFG | RH | | E-mail | Reinstallation Work | Discussion regarding additional items to include in Town Counsel's draft letter to counsel for AGM. |
|---|---|---|---|---|---|---|---|
| 20 | 03/11/2004 | KB | DFG | JWG, ST, RH | E-mail | MacMillan Pier | Discussion regarding AGM's request for a meeting with the Town to discuss issues raised in Town Counsel's letter to counsel for AGM. |
| 21 | 03/15/2004 | DFG | RH KB | ST | E-mail | MacMillan Pier | Confirmation of upcoming meeting between Town and AGM. |
| 22 | 03/16/2004 | DFG | RH | KB | E-mail | MacMillan Pier | Confirmation of fax sent by Town to Town Counsel of certain weekly reports prepared by the clerk of the works for the project. |
| 23 | 03/17/2004 | DFG | RH | KB | E-mail | Notice of Warranty Claim | Discussion regarding Town's review of Town Counsel's draft warranty-claim letter to Southeast Floating Docks, Inc. ("Southeast"). |
| 24 | 03/26/2004 | RH | DFG | | E-mail | MacMillan Pier | Discussion regarding potential meeting between consultants for AGM and the Town. |
| 25 | 03/30/2004 | RH | DFG | | E-mail | MacMillan Pier | Discussion regarding status of SGH calculation of wave heights during December 2003 storm. |
| 26 | 04/01/2004 | RH | DFG | | E-mail | MacMillan Pier | Discussion regarding status of SGH calculation of wave heights during December 2003 storm. |
| 27 | 04/05/2004 | RH | DFG | | E-mail | MacMillan Pier Video Tape | Discussion regarding copy of video recording of December 2003 storm. |
| 28 | 04/06/2004 | RH | DFG | | E-mail | MacMillan Pier | Request for information regarding progress of re-installation of undamaged components of dock system. |
| 29 | 04/12/2004 | DFG | RH | KB | E-mail | MacMillan Pier/AGM Marine | Discussion regarding Southeast's request to view the dock system. |
| 30 | 04/12/2004 | DFG | RH | KB | E-mail | MacMillan Pier/AGM Marine | Discussion regarding Southeast's request to view the dock system, and upcoming meeting between Southeast, Town and AGM. |

`Crime-fraud – the central issue in arb. is Town stlmnt w/AGM NOT LEGAL ADVICE`



`Crime-Fraud?`

`NOT LEGAL ADVICE & Crime-Fraud`



`Crime-Fraud?`

| 31 | 05/25/2004 | DFG | RH | KB | E-mail | Provincetown MacMillan Pier | Discussion regarding SGH power point slides regarding wave heights and wind speed during December 2003 storm. |
|----|------------|-----|-----|-----|--------|------|------|
| 32 | 06/16/2004 | RH | DFG | | E-mail | MacMillan Pier | Confirmation of Town Counsel's upcoming meeting with BOS. |
| 33 | 06/16/2004 | DFG | RH | | E-mail | MacMillan Pier | Confirmation of Town Counsel's upcoming meeting with BOS. |
| 34 | 06/29/2004 | KB | RH | | E-mail | MacMillan Pier Damage | Confirmation of BOS vote in executive session meeting authorizing Town Counsel to make claim against AGM and its surety, Zurich North America ("Zurich") and Southeast. |
| 35 | 07/26/2004 | RH | DFG | KB | E-mail | MacMillan Pier | Discussion regarding Zurich's request for meeting in response to Town's bond claim. |
| 36 | 07/27/2004 | DFG | RH | | E-mail | MacMillan Pier | Discussion regarding Zurich's request for meeting in response to Town's bond claim. |
| 37 | 07/27/2004 | RH | DFG | KB | E-mail | MacMillan Pier | Confirmation of meeting between Town, AGM and Zurich. |
| 38 | 08/31/2004 | RH | DFG | KB | E-mail | Floating Dock System | Discussion regarding meeting between Town, AGM and Zurich and AGM's expression of willingness to install a new dock system for the Town. |
| 39 | 09/03/2004 | KB | DFG | RH, MJ | E-mail | MacMillan Pier Repairs | Discussion regarding options for repair of the dock system. |
| 40 | 09/03/2004 | DFG | KB | RH, MJ | E-mail | MacMillan Pier Repairs | Transmitting, and discussion regarding, DFG's incomplete draft report about Town's strategy for litigation and for the repair of the dock system. _Attachment should be produced._ |
| 41 | 09/08/2004 | KB | DFG | RH, MJ | E-mail | MacMillan Pier Repairs | Confirmation of upcoming BOS executive session meeting regarding repair options for the dock system. |
| 42 | 09/08/2004 | DFG | RH, KB | | E-mail | MacMillan Pier Repairs | Discussion regarding need for Town Counsel to attend upcoming executive session meeting of BOS. |



NOT LEGAL ADVICE

Crime-Fraud



NOT LEGAL ADVICE

Crime-Fraud/ NOT LEGAL ADVICE



| 43 | 09/09/2004 | DFG | RH, KB | | E-mail | MacMillan Pier Repairs | Discussion of upcoming executive session meeting of BOS, and Town Counsel's opinion regarding settlement. |
|---|---|---|---|---|---|---|---|
| 44 | 09/09/2004 | KB | RH, DFG | | E-mail | MacMillan Pier Repairs | Discussion regarding upcoming executive session meeting of BOS and Town Counsel's opinion regarding possible settlement. |
| 45 | 09/22/2004 | KB | DFG | RH | E-mail | MacMillan Pier Repairs | Discussion regarding upcoming executive session meeting of BOS and Town Counsel's opinion regarding possible settlement. |
| 46 | 10/20/2004 | RH | DFG | | E-mail | MacMillan Pier | Discussion regarding status of settlement negotiations between Town and AGM. |
| 47 | 11/15/2004 | RB | KB, DFG | RH, MJ | E-mail | MacMillan Pier-Floating Dock System | Discussion regarding status of review of potential repair options for dock system. |
| 48 | 11/15/2004 | KB | DFG, RB | RH, MJ | E-mail | MacMillan Pier-Floating Dock System | Discussion regarding status of review of potential repair options for dock system. |
| 49 | 11/16/2004 | KB | RM | RH, MJ, DFG, RB | E-mail | MacMillan Pier-Floating Dock System | Discussion regarding status of review of potential repair options for dock system. |
| 50 | 11/22/2004 | RH | DFG | | E-mail | MacMillan Pier-Pier Corp. | Discussion regarding consensus on the layout of the dock system to service the fleet. |
| 51 | 11/30/2004 | DFG | RH | KB | E-mail | MacMillan Pier | Discussion regarding the Pier Corporation's plan for the restoration of the dock system; and transmitting notice of 12/13/04 public hearing. |
| 52 | 12/06/2004 | DFG | RH | JWG, KB | E-mail | Matrix for Litigation | Transmitting, and discussion regarding, list of Town's options in litigation prepared at the request of Town Counsel (the "Litigation Matrix"). |
| 53 | 12/09/2004 | KB | DFG, JG, DD, RH | | E-mail | Matrix for Litigation | Discussion regarding fax from Town Counsel and Litigation Matrix; and transmitting copy of Litigation Matrix. |

Attachment should be produced. (row 51)

The Town's "Litigation Matrix" may implicate issues pending in the related case of SEFD v. AGM. (row 52)

Attachment should be produced. (row 53)

Crime-Fraud?

NOT LEGAL ADVICE

Crime-Fraud

| No. | Date | From | To | CC | Type | Subject | Description | |
|---|---|---|---|---|---|---|---|---|
| 54 | 12/10/2004 | RH | DFG, KB, DD | | E-mail | MacMillan Pier | Transmitting, and discussion regarding, the Litigation Matrix and Town Counsel's revisions to the same. | Crime-Fraud |
| 55 | 12/10/2004 | KB | RH | | E-mail | Floating Docks-Revised Matrix for Litigation | Transmitting, and discussion regarding, the Litigation Matrix and Town Counsel's revisions to the same. | |
| 56 | 12/10/2004 | KB | RH, DD | JWG | E-mail | Floating Dock recommend Joint Memo | Transmitting to the Town Counsel a copy of a 11/12/07 memorandum from the Building Committee and Pier Corporation to KB and BOS regarding options for the repair of the dock system. | NOT LEGAL ADVICE |
| 57 | 12/13/2004 | DFG | KB | | E-mail | Floating Dock recommend Joint Memo | Discussion regarding concerns voiced to the Town by Town Counsel. | Not to or from counsel |
| 58 | 01/11/2005 | RH | DFG | | E-mail | MacMillan Pier | Request for information regarding details of dock system that AGM has agreed to install. | Crime-Fraud – at issue in arb |
| 59 | 01/14/2005 | RH | DFG | KB | E-mail | MacMillan Pier/Settlement Agreement | Transmitting, and discussion regarding, draft of settlement agreement between Town and AGM. | |
| 60 | 01/14/2005 | RH | DFG | KB | E-mail | MacMillan Pier/Settlement Agreement | Transmitting, and discussion regarding, draft of settlement agreement between Town and AGM. | |
| 61 | 01/25/2005 | RH | DFG | KB | E-mail | MacMillan Pier | Request for comments regarding draft settlement agreement and information regarding timber floats to be installed by AGM. | |
| 62 | 02/02/2005 | DFG | RH | JWG, KB, ST | E-mail | MacMillan Pier/Settlement Agreement | Discussion regarding the type of floats to be installed by AGM as part of the settlement with the Town. | |
| 63 | 02/03/2005 | RH | DFG | KB | E-mail | AGM/Settlement Agreement | Transmitting, and discussion regarding, draft settlement agreement. | |
| 64 | 02/14/2005 | RH | KB | DFG | E-mail | MacMillan Pier | Discussion regarding revisions to settlement agreement proposed by AGM's counsel. | |

Overlay annotations:
- Row 54: Attachment should be produced.
- Row 55: Attachments not produced.
- Row 56: TOWN SHOULD PRODUCE ATTACHMENTS.
- Row 59: Attachment should be produced.
- Row 60: Attachment should be reduced.
- Row 63: Attachment should be produced.

| 65 | 02/17/2005 | RH | DFG | | E-mail | MacMillan Pier | Discussion regarding cost and plan of the remedial work to be performed by AGM as part of the settlement with the Town. |
|---|---|---|---|---|---|---|---|
| 66 | 02/17/2005 | RH | DFG | | E-mail | MacMillan Pier | Discussion regarding cost and plan of the remedial work to be performed by AGM as part of the settlement with the Town. |
| 67 | 02/25/2005 | RH | DFG | | E-mail | Floating Dock | Transmitting, and discussion regarding, a revised settlement agreement between the Town and AGM. |
| 68 | 02/28/2005 | RH | DFG | | E-mail | Floating Dock | Discussion regarding the remedial dock system proposed to be installed by AGM; and transmitting, and discussion regarding, revised settlement agreement and technical specification for inclusion therein. |
| 69 | 03/02/2005 | RH | DFG | KB | E-mail | Floating Dock Settlement Agreement | Transmitting, and discussion regarding, draft of settlement agreement between the Town and AGM. |
| 70 | 03/04/2005 | RH | DFG | KB | E-mail | MacMillan Pier | Discussion regarding the specification proposed to be included in the settlement agreement by AGM; and transmitting, and discussion regarding, revised settlement agreement. |
| 71 | 03/14/2005 | RH | DFG | | E-mail | MacMillan Pier | Request for information regarding status of settlement agreement. |
| 72 | 03/14/2005 | RH | DFG | | E-mail | MacMillan Pier | Request for information regarding status of settlement agreement. |
| 73 | 03/21/2005 | DFG | RH | KB | E-mail | MacMillan Pier | Discussion regarding Town's comments on settlement agreement and specification attached thereto. |
| 74 | 03/22/2005 | RH | DFG | KB | E-mail | Floating Dock | Discussion regarding SGH review of submittals during the installation of the new dock system by AGM. |

Attachment should be produced.

NOT LEGAL ADVICE/ Crime-Fraud



| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| 75 | 03/22/2005 | RH | DFG | | E-mail | AGM/MacMillan Pier | Request for copy of change order for inclusion as exhibit to settlement agreement. | NOT LEGAL ADVICE/ Crime-Fraud |
| 76 | 03/22/2005 | RH | DFG | | E-mail | Floating Dock | Request for copy of change order for inclusion as exhibit to settlement agreement. | |
| 77 | 03/28/2005 | DFG | RH | KB | E-mail | MacMillan Pier | Discussion regarding AGM's signing of the settlement agreement. | |
| 78 | 03/31/2005 | RH | KB | DFG | E-mail | MacMillan Pier | Discussion regarding fax of letter to Town. | |
| 79 | 04/19/2005 | RH | DFG | | E-mail | Provincetown Release | Transmitting, and discussion regarding, release agreement between SGH and Town in connection with SGH's administration of the repair work to be performed by AGM. | |
| 80 | 04/20/2005 | DFG | RH, KB | | E-mail | SGH Release | Discussion regarding, release agreement between SGH and Town in connection with SGH's administration of the repair work to be performed by AGM. | |
| | | | Attachment should be produced. | | | | | |
| 81 | 02/03/2004 | KB | JWG | BOS, DFG | Facsimile | Floating Dock Costs | Transmitting to Town Counsel copy of 1/30/04 memo from ST to KB regarding costs of removal of the damaged dock system. | |
| | | | Attachment should be produced. | | | | | |
| 82 | 02/06/2004 | RH | KB | | Facsimile | MacMillan Pier Reconstruction | Discussion regarding Town Counsel's opinion of the Town's claims arising out of the failure of the dock system. | |
| 83 | 02/27/2004 | RH | KB | BOS, DFG | Memo | MacMillan Pier Reconstruction | Discussion regarding Town Counsel's efforts to retain an expert witness to review the failure of the dock system; and transmitting copy of resume of Don Dusenberry, P.E., of SGH. | |
| | | | Attachment should be produced. | | | | | |
| 84 | 03/29/2004 | RH | DFG | | Facsimile | MacMillan Pier | Fax cover sheet transmitting March 24, 2004 letter of Attorney Rosemary Hayes to Town Counsel. | |
| | | | Attachment should be produced. | | | | | |
| 85 | 06/24/2004 | RH | KB | DFG | Facsimile | MacMillan Pier Reconstruction | Discussion regarding Town Counsel's opinion of the Town's claims arising out of the failure of the dock system. | |

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| 86 | 09/10/2004 | KB | RH | | Facsimile | Floating Dock System | Fax cover sheet transmitting copy of 9/13/04 Agenda Action Request memorandum from KB to BOS regarding Town's litigation strategy. | Crime-Fraud |
| 87 | 12/09/2004 | RH | KB | | Facsimile | MacMillan Pier Reconstruction | Discussion regarding Town Counsel's efforts to retain an expert witness to review the failure of the dock system. | NOT LEGAL ADVICE |
| 88 | 12/10/2004 | RH | KB | | Facsimile | MacMillan Pier Reconstruction | Transmitting, and discussion regarding, the Litigation Matrix. | Crime-Fraud/ NOT LEGAL ADVICE |
| 89 | 12/14/2004 | KB | RH | | Facsimile | Restoration of the MacMillan Pier Floating Dock System | Fax cover sheet transmitting copy of 12/14/04 memo from KB to DFG and RM regarding Town's plan for the repair of the dock system. | |
| 90 | 03/31/2005 | RH | KB | DFG | Facsimile | MacMillan Pier, Floating Dock System | Transmitting, and discussion regarding, the settlement agreement signed by AGM. | |
| 91 | 03/31/2005 | PH | RH | KB, BOS | Letter | Settlement Agreement/Signature Page | Transmitting signature page of settlement agreement signed by Town. | |

*Overprinted on rows 86–91:*
- Row 86: Town should produce attachment.
- Row 88: Attachment should be produced.
- Row 89: Attachment should be produced.
- Row 90: Attachment should be produced.
- Row 91: Attachment should be produced.

John W. Giorgio, Esq. (JWG) – Kopelman and Paige, P.C., Town's counsel.
Keith Bergman (KB) – Town Manager.
David F. Guertin (DFG) – Director, Town's Dept. of Public Works.
Richard Holland, Esq. (RH) – Kopelman and Paige, P.C., Town Counsel.
David Doneski, Esq. (DD) – Kopelman and Paige, P.C.
Sandra Turner (ST) – Deputy Director, Town's Dept. of Public Works.
Michelle Jarusiewicz (MJ) – Assistant Town Manger.
Regina "Ginny" Binder (RB) – Building Committee Member.
Rex McKinsey (RM) – MacMillan Pier Manager.
Board of Selectmen (BOS) – Provincetown Board of Selectmen.
Pam Hudson (PH) – Secretary to the Town Manager.

330966v3/24207/0008

## SETTLEMENT AGREEMENT

This Settlement Agreement (the "Agreement") is made by AGM Marine Contractors, Inc. ("AGM") and the Town of Provincetown, Massachusetts ("Town") in connection with the public works construction project known as MacMillan Pier Reconstruction (the "Project") each on its own behalf and on behalf of its employees, agents, predecessors, successors, assigns, legal representatives and attorneys, respectively.

WHEREAS, the Town and AGM entered into an agreement dated October 16, 2000 (the "Construction Agreement") by which AGM was to provide construction services for the Project; and

WHEREAS, AGM caused to be manufactured, and constructed and installed, as part of the Project, a floating dock system; and

WHEREAS, a portion of the floating dock system was destroyed during a storm that occurred in December 2003; and

1 WHEREAS, a dispute has arisen as to whether the floating dock system was properly specified, manufactured, constructed and installed; and

WHEREAS, the parties have resolved to have a floating dock system manufactured, purchased, constructed and installed by AGM at no cost to the Town, in exchange for the Town's agreeing to release AGM from any liability on account of the aforesaid dispute;

NOW THEREFORE, in exchange for the covenants stated herein, and for other reasonable consideration, the receipt and sufficiency of which are hereby acknowledged, AGM and the Town agree as follows

1. AGM will cause to be manufactured, procure, construct or have constructed, and install or have installed, all at no cost to the Town, a floating dock system (the "Work") to replace a portion of the existing floating dock system, as such work is contemplated in the January 5 and February 17, 2005 letters from AGM to the Town, copies of which are attached hereto as Exhibit A. The Work will include, but not be limited to, the following:

   A. The installation of timber floats to replace the existing finger floats in accordance with the following.

      (1) (1)     AGM will furnish and install twenty-one (21) timber floating finger docks (the "Timber Floats"). Each Timber Float finger dock will be six by forty feet (6' x 40').

      (1)(2)   AGM will furnish and install a sufficient number of Timber Floats for the main dock to extend the main dock to its original, specified and constructed length.

**Formatted:** Bullets and Numbering

**Formatted:** Indent: Left: 1"

**Formatted:** Bullets and Numbering

(3<del>2</del>)    The Timber Floats and any and all other equipment or material incorporated into the Work shall be new, of high quality *(\*\*\*can this be defined???)*, and free of defects.

> **Formatted:** Font: Bold, Italic
> **Formatted:** Font: 7 pt

(4<del>3</del>)    The Timber Floats will be constructed with pressure treated timbers. AMG shall employ only those pressure treating chemicals that are accepted and approved for this use by all applicable municipal, state, and federal rules and regulations.  The floatation component will be high impact resistant polyethylene floats with a foam core.

(5<del>4</del>)    All steel hardware and brackets to be used in the construction and installation of the Timber Floats will be hot dipped galvanized.  *(\*\*\*There are references to ASTM tandards in the original specs. should specify the galvanizing, if possible.  However, it does not appear that the original specs quantified the galvanizing)*

> **Formatted:** Font: Bold, Italic
> **Formatted:** Font: Bold, Italic

(6<del>5</del>)    The Timber Floats will have cleats and rubber bumpers on both sides of the floats.

(7<del>6</del>)    The Timber Floats will be installed in accordance with the original configuration of the floating dock system depicted in the "Contract Documents," as such term is defined in the Construction Agreement.  A copy of the Construction Agreement is attached hereto as Exhibit B.

(8)    The Timber Floats shall be equipped with all utilities services (e.g., electrical service, water service, etc.) as was required under the Contract Documents

<del>2</del>(9)    The design and construction of the Timber Floats shall be in accordance with those technical portions of the Contract Documents attached hereto as Exhibit C *(\*\*\*this should be the redacted concrete specs, and should include the relevant information about the original loading requirements, submittals, etc.)*

> **Formatted:** Font: Bold, Italic
> **Formatted:** Font: Bold, Italic
> **Formatted:** Font: Bold, Italic

(10)    The Timber Floats shall be designed, fabricated, and installed to facilitate easy removal from the water for winter storage, maintenance, or for any other purpose as deemed appropriate by the Town.  To this end, Timber Floats shall be constructed in integral units, not exceeding \*\*\* ft in length, that can be lifted by a crane.  The Timber Floats shall be equipped with lifting lugs as required for this purpose, and connections between units and between the finger piers and the main piers must be able to be disassembled easily from the top surface of the dock with commonly available tools.  If special tools are required for this purpose, AMG shall provide four sets of such tools at no cost to the Town.  The Timber Floats shall be designed with sufficient strength to be able to be lifted without

damage by the lifting lugs provided, with due consideration for weights associated with any water which might be contained within the Timber Floats at the time that they are lifted.

B.   All work incident to, and necessary to complete, the installation of the Timber Floats.

C.   All components installed by AGM pursuant to this Agreement shall be, or shall be caused by AGM to be, compatible with any existing components.  The intent of this provision is to require the installation of Timber Floats that match in all functional characteristics (e.g., elevation of top surfaces, slip resistance of walking surfaces, buoyancy characteristics, stability, etc.) of the concrete floats that are to remain.  All joints and connections between Timber Floats units and between Timber Floats units and the main dock shall be designed to prevent tripping and pinching hazards for users of the dock.

D.   AMG shall thoroughly inspect all concrete floats that are to remain and submit to the Town complete inspection reports itemizing all cracks, damage, and deficiencies in the structural integrity or seaworthiness of the floats.  AMG shall propose to the Town means and methods to repair all noted conditions for the Town's approval.  AMG shall repairs all noted conditions at no cost to the Town.

3

E.   AMG shall thoroughly survey and inspect all piles for position and adequacy as supports for the reconstructed dock system.  At no cost to the Town, AMG shall replace, with appropriately designed and installed piles, all piles not in proper position or which do not have the appropriate strength and stiffness for the purpose of support for the reconstructed dock system.

FD.    If existing components are not ready to receive the Timber Floats or any other components to be installed by AGM pursuant to this Agreement, such existing components will be made ready by AGM so to receive the Timber Floats and all such components.  AMG shall demonstrate through calculations or tests that the concrete floats, and any modifications necessary thereto for the purpose of connection of the Timber Floats, are of adequate structural strength and seaworthiness to support the forces associated with connection to the Timber Floats under the action of the specified loads.

4GE.   The Timber Floats and other components to be installed by AGM pursuant to this Agreement shall be of such a design as to (1) constitute an "flexiblearticulated" system; (2) enable the Timber Floats to be removed from the water in winter months; and (3) enable the Timber Floats designed to withstand a storm of the magnitude of a 50 year stormthe loads specified in Exhibit C. *(***it would be better to refer to the wind, wave, and impact loads specified in the original documents – with some clarifications – rather than referring to a return period.  That approach will reduce the chance of disputes about the design parameters, and provides the Town with a design at least nominally as it originally purchased)*61.

3

2.   ~~Before commencement of the Work, AGM shall submit, for approval by the Director of the Provincetown Department of Public Works ("DPW"), a descriptive specification or detailed plan of the Work to be performed ("Plan").  No work shall begin until AGM has received from the DPW Director written approval of the Plan.~~

3.   ~~For~~ the purpose of this Agreement, the Work shall be subject to the Contract Documents accompanying and made part of the Construction Agreement, as set forth in the project manual dated December 1999 and entitled Bidding Documents, Agreement and Specification for MacMillan Pier Reconstruction, and all of the provisions thereof, excluding those portions of Part B - Technical Specifications not specifically referenced herein, and except as otherwise provided in this Agreement.  A copy of the Table of Contents for Contract Documents is attached hereto as Exhibit C.

4~~3~~.   Time is of the essence for the completion of the Work.  Accordingly, AGM shall prosecute the Work as expeditiously and as diligently as the orderly and safe progress of the Work will permit.  Absent circumstances beyond the reasonable control of AGM, AGM will ~~complete~~ commence the Work no later than May ~~15~~9, 2005, and shall achieve final completion of the Work within forty-five (45) calendar days thereafter.  This paragraph notwithstanding, AGM will not be subject to damages due to circumstances beyond its control.

5~~4~~.   Where, during the course of the Work, AGM requires information or direction that, under the Contract Documents, would have been elicited from Fay, Spofford and Thorndike, the engineer for the Project, such information or direction shall be requested in writing from the following individual, with a copy simultaneously delivered to the Town's Contact Person (see below): Dr. Rasko Ojdrovic, Simpson, Gumpertz & Heger, Inc., 41 Seyon Street, Building 1, Suite 500, Waltham, MA 02453 (hereinafter, the "Engineer").  Such information or direction shall be furnished to AGM with reasonable promptness.  *(\*\*\*SGH will need a release from the assumption of design and performance responsibility)*

5

6~~5~~.   ~~To the extent practicable so as to not delay the completion of the Work,~~ AGM shall provide to Engineer submittals identified in Exhibit C *(\*\*\*the redacted specs)* and such other information as is reasonably required by the Engineer and as is consistent with accepted industry practice.

7~~6~~.   AGM shall provide a performance bond, in form satisfactory to the Town and issued by a surety qualified to do business in Massachusetts, in the amount of $150,000.  AGM shall present to the Town the document(s) evidencing satisfaction of the requirements of this paragraph, along with original powers of attorney, prior to commencing the Work.

8~~7~~.   Prior to commencing the Work, AGM shall provide certificates of insurance evidencing that it maintains the insurance coverage required by the Contract Documents.  As provided in the Contract Documents, the Town shall be named as an additional insured on the insurance policies maintained by AGM for the Work, and such insurance shall be

4

---

**Formatted:** Highlight

**Formatted:** Indent: Left: 0", Hanging: 0.5"

**Comment [D1]:** Why are the requirements for specifications and a plan not part of the agreement?

**Formatted:** Highlight

**Formatted:** Font: 12 pt, Highlight

**Formatted:** Font: 12 pt, Highlight

**Formatted:** Highlight

**Formatted:** No underline, Font color: Auto, Highlight

**Formatted:** Font: Bold, Italic

**Formatted:** Font: Bold, Italic

**Formatted:** Font: Bold, Italic

obtained from insurance companies qualified to do business in Massachusetts and satisfactory to the Town.

9~~8~~.     The Work shall be subject to the approval of the Town as such approval is required, expressly or impliedly, by the Contract Documents.  Such approval will not be unreasonably withheld.

6~~10~~~~9~~.     The Town agrees that, upon execution of this Agreement, the Town shall release to AGM 50 percent of the amount that the Town has determined to be payable to AGM under Change Order No. 8 to the Construction Agreement, a copy of which is attached hereto as Exhibit E.  The remaining 50 percent payable under such change order shall be released to AGM upon ~~Substantial Completion of the Work.  For the purpose of this paragraph, "Substantial Completion" shall mean that less than 1 percent of the value of the Work remains to be completed and the Town may occupy and use the Work for its intended use, as reasonably determined by the Town.~~final completion of the Work.

> **Formatted:** No underline, Font color: Auto, Highlight

1~~1~~0.     ~~AGM shall complete all remaining work ("Final Completion") to the reasonable satisfaction of the Town within 60 days of the date of Substantial Completion.~~

~~12.~~   Upon ~~F~~final ~~C~~completion of the Work by AGM, the parties shall forthwith execute the mutual Releases attached hereto as Exhibit F.

> **Formatted:** Indent: Left:  0", Hanging:  0.5"

13~~1~~.     The parties agree to resolve in good faith any disputes arising under this Agreement.  AGM shall diligently prosecute the Work pending resolution of any such disputes unless otherwise directed by the Town.

14~~2~~.     The undersigned represent and warrant that each has the right, capacity and all necessary authority to execute this Agreement on behalf of its respective party.

15~~3~~.     The undersigned represent and warrant that each has had the opportunity to review this Agreement and has had the advice of its counsel prior to executing this Agreement and that it executes this Agreement as its free act and deed.

The terms of this Settlement Agreement are contractual and not a mere recital.

Dated this _____ day of _____, 2005.

AGM Marine, Inc,

By:

_____          _____
  Printed Name:
  Title:

Town of Provincetown,

_____

By:

_____

Printed Name:

Title: _____, duly authorized

240714v3/PROVMACPIER/0008

6