# UNITED STATES DISTRICT COURT
# DISTRICT OF MASSACHUSETTS

* * * * * * * * * * * * * * * * * * * * * * * * *

SOUTHEAST FLOATING DOCKS, INC.,

        Plaintiff

      v.                          CIVIL ACTION NO.:
                                      05-11039-EFH

AGM MARINE CONTRACTORS, INC.,
CHILDS ENGINEERING CORPORATION,
AND THE TOWN OF PROVINCETOWN,

        Defendants.

* * * * * * * * * * * * * * * * * * * * * * * * *

# ORDER

April 14, 2008

HARRINGTON, S.D.J.

## I.  Introduction

This case revolves around the efforts of Southeast Floating Docks (Southeast), a party to an arbitration, to secure compliance with an arbitral subpoena issued to a third party, the Town of Provincetown (the Town).  Before the Court is 1) Southeast's Motion for Contempt, which requires the Court to determine whether the Town is in substantial compliance with the subpoena; 2) Southeast's request that the Court order Town officials to submit to a deposition; 3) the Town's assertion of attorney-client privilege; and 4) Southeast's contention that the Town had waived the privilege.

II.  Factual and Procedural Background

As part of the Town's MacMillan Pier Project, the Town entered into an agreement with a general contractor, AGM Marine Contractors, Inc. (AGM), to install a concrete floating dock system.  The dock system was manufactured by Southeast.  The dock system failed during a December 2003 storm, and a dispute arose between the Town, AGM, and Southeast regarding which party was to blame for this failure.  The Town and AGM eventually settled their dispute. An arbitration between AGM and Southeast ensued.  The arbitrator issued subpoenas to the Town and to engineering firms that had done work for the Town: Fay, Spofford & Thorndike (FST), and Childs Engineering (Childs).

On May 18, 2005, Southeast filed a complaint in which it alleged that the Town and Childs failed to comply with the arbitrator's subpoenas.  (Docket 1).  The complaint focuses on an engineering report authored by Childs, although it does allude in passing to other, unspecified documents encompassed by the subpoenas.  (Docket 1).

Responding to Southeast's allegations, the Town stated that it turned over the Childs report a few days after the complaint was filed, that it had provided the plaintiff with a video of the December 2003 storm, and that it had extended to Southeast an offer to allow it to review Town documents and to view the damage to the dock.  (Docket 10; Docket 11).  The Town also stated that it told counsel for Southeast that it reserved the right to withhold documents relating to communications between Town Counsel and consultants that had done work for the Town, asserting attorney-client privilege as its basis.  (Docket 11).

At a hearing on June 1, 2005, the Town reiterated its willingness to allow the plaintiffs to review non-privileged Town documents.  At the hearing, the Town presented FST materials to

2

the Court that it contended were privileged and invited the Court to inspect them.  The Court took the case under advisement.  The day after the hearing, the Court dismissed the complaint on the condition that the Town provide Southeast with "access to such of its subpoenaed documents that are not covered by the attorney-client privilege."  (Docket 12).

The next day, the plaintiff wrote a letter to FST's counsel, seeking FST documents. (Docket 15).  Southeast apparently did not inform FST's counsel that the Court had reviewed FST documents.  FST mailed Southeast various materials.  Learning of this, Town Counsel asked counsel for Southeast to return the package from FST unopened so that the Town could remove privileged documents and return the unprivileged documents back to Southeast, but it does not appear that counsel for Southeast complied with that request.  (Docket 15).  Southeast also attempted to acquire further documents from Childs, as well as documents from another engineering firm that had done work for the Town, Simpson, Gumpertz & Heger Inc. (SGH). The Town contended that the SGH documents were privileged as well.  (Docket 15).  Southeast responds that the documents were not privileged, and that the firms themselves did not consider the documents privileged.  (Docket 16).

Following the hearing, the Town offered to search for and produce to Southeast documents in the Town's Project Files responsive to the subpoena.  (Docket 27, 41).  Southeast declined this offer, and Southeast's counsel was instead permitted to personally inspect the Town's non-privileged Project Files, which are housed at the Town's Department of Public Works.  The Town also agreed to allow Southeast to scan documents during its inspection on the condition that Southeast give the Town a copy of the CD containing the documents it copied.

(Docket 27, 41).[1] The Town also imposed other conditions, such as preventing counsel for Southeast from speaking with Town officials. (Docket 13, Exhibit A).[2] Other non-privileged documents, including items that did not exist in printed form, were produced (or already had been produced) on separate occasions.

On June 27 and 28, 2005, counsel for Southeast inspected records at the Department of Public Works and spent sixteen hours reviewing and copying documents. Southeast has contended that the overwhelming majority of these documents were not responsive to the subpoena.[3]

On July 7, 2005, the Court denied Southeast's June 16, 2005 Motion for Attorneys' Fees and Costs and to Keep Case Open Pending Compliance with Court Order, as well as its Motion for Bill of Costs. On July 18, 2005, the Court granted the Town's motion to seal documents from FST and SGH, and it denied Southeast's July 1, 2005 Motion for Contempt. Southeast also moved for a "final appealable order" (Docket 25), which the Court denied.

_____

[1]The Town alleges that Southeast reneged on its agreement to provide this CD. Southeast does not appear to deny this, contending instead that the Town should have formally requested the CD under Fed. R. Civ. P. 34. (Docket 43). (Southeast did eventually provide the CD pursuant to an order by the Court).

[2]Southeast seems to take great exception to the restrictions placed on its review. (Docket 13 at 5). The Town argues that the restrictions must be viewed in light of the relationship between the two parties, which had grown acrimonious and bitter. The Town ascribes the origins of this contentious relationship to Southeast's attempts to acquire documents that the Town considered privileged and to extremely caustic correspondence from Southeast's counsel. The Town also notes that some restrictions about which Southeast complained in its first Motion for Attorneys' Fees had been lifted prior to the filing of that motion, a detail that Southeast omitted to mention in that pleading. (Docket 15).

[3]Indeed, in one of its filings, Southeast alleges that "despite 2-days spent reviewing records as offered by the Town's lawyer, Provincetown produced 1-record responsive to the subpoena where there obviously exist thousands." (Docket 25).

Southeast appealed to the First Circuit and prevailed.  Regarding the denial of Southeast's motion for contempt, the First Circuit concluded that the record did not "permit[] a clear understanding of why [this Court] ruled as it did." Southeast Floating Docks, Inc. v. Town of Provincetown, 05-2262 (1st Cir. August 8, 2006) (quoting F.D.I.C. v. Ogden Corp., 202 F.3d 454, 460 (1st Cir. 2000) (quotation marks omitted)).  With regard to the Court's order granting the Town's motion to impound the SGH documents, the Court of Appeals held that it could not be discerned from this Court's order whether the Court had actually reviewed the documents. Id.

Upon remand, a hearing was held on October 17, 2006, subsequent to which the Court granted disclosure of the impounded documents from SGH and ordered the case closed.  (Docket 42).  Southeast appealed, and the case proceeded again to the First Circuit.  The First Circuit determined that although the Court addressed the impounded documents, it had neglected  to determine whether the Town had failed to produce properly requested documents from its own files. Southeast Floating Docks, Inc. v. Town of Provincetown, 06-2703 (1st Cir. August 8, 2006).

Upon the second remand, a status conference was held on October 18, 2007.  At the conference, Southeast asked the Court to order the Town to make Town officials available for a deposition.  Southeast also expressed concerns over the formerly impounded documents, questioning whether the documents it had received pursuant to the Court's disclosure order were the same as those that were originally submitted to the Court.  (At some point, the original documents were misplaced.  At the October 17, 2006 hearing [before the second remand], counsel for the Town gave the Court a copy of the documents.)

Following the October 18, 2007status conference, the Court ordered Southeast to list the

documents it was still seeking. (Docket 53). The Town was ordered to respond to Southeast's list and, with respect to each document, either produce it, assert a privilege, state that it has already provided the document, or state that the document does not exist. (Docket 53). The Court issued this order so that the parties and the Court could all be on the same page and have a common basis from which the case could proceed. Southeast filed a comprehensive list and explained why it thought that the various documents it was seeking might exist (Docket 54); the Town responded to that list. (Docket 55). The Town essentially averred that all of the documents sought by Southeast, if they existed and were non-privileged, were either made available to Southeast during its inspection of the Town files or had otherwise been provided to them. (Docket 55).[4] The Town asserted privilege as to correspondence between counsel and Town officials and submitted a privilege log. The Town noted that at least some of the documents on the privilege log fell outside the ambit of the subpoena, but included them for the sake of completeness.

Having received this response from the Town, the Court ordered Southeast to specify the issues left for the Court to determine. (Docket 58). In its response to that order, Southeast argued that the Court should 1) either order the production of the items listed on the Town's privilege log or review those documents *in camera*; 2) require Town officials to submit to a deposition; and 3) reconsider the denial of Southeast's motion for contempt. (Docket 59). Southeast also argued that the log was both untimely and inadequate as a matter of law, and that the Town's response to the subpoena was inadequate.

---

[4]The Town also contended that Southeast requested documents that fell outside the scope of the subpoena, requested documents that it had already been provided, and offered frivolous reasons for arguing that certain documents were likely to exist in Town files. (Docket 55).

The Court ordered the Town to produce the documents for *in camera* review. (Docket 60). The Town complied.[5] Because the Court agreed with Southeast that greater specificity in the privilege log might be helpful, it ordered the Town to provide more detail. (Docket 64). Pursuant to that order, the Town submitted an updated, and fairly detailed, privilege log. The Court invited Southeast to respond to this updated privilege log and raise any objections to assertions of privilege that it may have. Southeast did so. (Docket 70). The Court subsequently ordered the Town to explain why it had not produced a privilege log earlier (Docket 71), which the Town did. (Docket 72).

### III.    Southeast's Motion for Contempt and for a Deposition

Southeast contends that the Town should be found in contempt because it has failed to substantially comply with the arbitral subpoena. Southeast has also asked to depose Town officials. For the foregoing reasons, the Court concludes that the Town has substantially complied with the subpoena and that Southeast's motion for contempt should be denied. The Court further concludes that the Town has asserted valid claims of privilege with respect to the great majority of documents on its privilege log, with the exception of a handful of documents, which must be disclosed. The Court also denies Southeast's request to depose Town officials.

---

[5]Southeast has suggested that the Town's cover letter to its submission of documents for *in camera* review constituted an improper *ex parte* communication with the Court. Southeast is mistaken. Contemporaneous with the Town's mailing of the documents for *in camera* review and the accompanying cover letter, the Town electronically filed the cover letter, which electronic filing was reflected automatically on the docket. Both the hard copy of the cover letter and the documents for review arrived at Chambers shortly thereafter. Southeast has suggested that the only reason Southeast learned of the cover letter was because the clerk had filed it. This is not correct. As the docket reflects, the Town, not the clerk, filed the electronic copy of the cover letter. Southeast evidently received this letter electronically in due course. In short, there was no improper *ex parte* communication from the Town.

A.          Southeast's Motion for Civil Contempt

1.     Substantial Compliance

Civil contempt must be established by clear and convincing evidence.  Accusoft v. Corp. v. Palo, 237 F.3d 31, 36(1st Cir. 2001).  "[S]ubstantial compliance can avert a finding of contempt." Langton v. Johnston, 928 F.2d 1206, 1220 (1st Cir. 1991).  The Court has had the opportunity to see these parties on several occasions, and has conducted a thorough review of the parties' filings, including the affidavits, e-mails, and other materials attached thereto.  Throughout these proceedings, the Town has evinced a willingness to comply with the subpoena and take any reasonable steps that might bring this matter to a close.  The Court credits the various affidavits the Town has filed on its behalf, as well as its representations to this Court, and concludes that the Town has substantially complied with the subpoena.

Southeast lodges numerous accusations of malfeasance against the Town and Town Counsel.  Southeast alleges that the Town is attempting to falsely assign blame to Southeast for the dock failure, that the Town has used the services of Town Counsel to perpetrate a fraud, that the Town is deliberately withholding information that would exonerate Southeast, and that Town Counsel has made false statements to the Court.  The Court rejects these allegations.

In support of its accusations, one of Southeast's arguments is that the Town deliberately misled Southeast and the Court into believing that the only privileged documents in the Town's possession were the ones pertaining to Town consultants that were filed under seal, thereby concealing a trove of additional privileged documents that it eventually identified in its November 15, 2007 privilege log.  (Docket 59).  The Court does not take so sinister a view of the Town's actions.  It must be noted that Southeast's complaint was essentially restricted to the Childs

8

report, which the Town gave to Southeast shortly after the commencement of this action. A review of the filings and the first hearing makes clear that Southeast's pursuit of records later evolved to include other documents, most notably documents pertaining to materials from the Town's engineering consultants.[6] Those materials occupied the lion's share of the parties' and the Court's attention. Read in context, it is clear that when the Town referred to privileged documents in various filings, it was speaking of the documents that were actively contested by the parties and was not intending to make any universal claims about the existence of other documents. It is apparent that the Town adopted an essentially pragmatic approach to the subpoena, throwing the Project files open to Southeast (which may have given Southeast access to documents that fell outside the ambit of the subpoena as well) and providing Southeast with any non-privileged expert reports that Southeast was seeking, while simultaneously attempting, out of concerns for attorney-client privilege, to shield from disclosure some documents that Southeast was actively seeking. Later, when the Court denied Southeast's motion to keep the case open and for a finding of contempt (which denial left the case dismissed as per the Court's June 2 order), the Town saw no occasion to take further action. The Court completely rejects the notion that the Town was seeking to obscure or obfuscate anything.

    The real problem is not that the Town neglected to file a complete privilege log at an early stage, but that these proceedings quickly became unmoored from the two documents that should have cabined and guided this case: the complaint, which was focused on the Childs engineering report, and the subpoena. Indeed, the terms of the subpoena have, over time, been relegated to a largely supporting role in these proceedings. The complaint appears to have been long since

---

    [6]Southeast also made specific mention of insurance records during the first hearing.

forgotten.

It is against the broader factual context of this case that the Town's response must be appraised. Perhaps it would have been better, more punctilious, if the Town had prepared a privilege log of these e-mails from the very beginning, but the Town's omission in this regard was not motivated by some dark purpose, as Southeast suggests, but appears to have been instead driven by its obvious and understandable wish to resolve in a practical and expeditious fashion what was, for the Town (the recipient of a third party arbitral subpoena), an entirely tangential and inconsequential matter.[7]

The Court rejects any suggestion that the Town is attempting to falsely blame the dock failure on Southeast. It seems rather implausible that the Town cares enough about the results of the arbitration (if it cares at all) that it would endeavor to deceive Southeast, the arbitrator, and the Court. The Court also rejects Southeast's other accusations, including the contention that the Town has used counsel's services to perpetrate a fraud. Southeast's allegations, which border on the frivolous and vexatious, lack merit.

In sum, Southeast has failed to show civil contempt by clear and convincing evidence. Indeed, far from being clear and convincing, Southeast's evidence and arguments are often murky, confusing, and wholly unpersuasive. The Court concludes that the Town has substantially complied with the subpoena.[8]

2.      Privilege

---

[7]Scattered throughout Southeast's filings are other arguments, which the Court has considered and rejects.

[8]In so concluding, the Court considered, *inter alia*, the table produced by Southeast that explained Southeast's reasons for believing that certain items existed.

a.    Waiver

Southeast has argued that the Town's latest privilege log was belated and thus waived the Town's privilege as to the documents listed therein.  For essentially the reasons stated above and for the reasons set forth by the Town in its March 31, 2008 response (Docket 72), the Court concludes that the privilege log was not untimely and that there was no waiver.  Moreover, given the facts of this case (notably, the fact that the Town's response to the subpoena was driven by its belief that Southeast was interested in documents from engineers that had done work for the Town), even if the Town's assertion of privilege was arguably untimely in some fashion, it would not be appropriate under the various circumstances of this case to deem the privilege waived. Dorf & Stanton Comms., Inc. v. Molson Breweries, 100 F.3d 919, 923 (2d Cir. 1996) (indicating that the consequences of a party's untimely or otherwise defective assertion of privilege must be determined in light of the surrounding context and the seriousness of the party's missteps).[9] There was no waiver.[10]

b. Assertion of Privilege

The Town has asserted privilege as to a number of documents.  There are several e-mails, however, between Town officials in which counsel is merely "cc'd."  For several of these e-mails, it appears that their primary purpose is communication between town officials for informational purposes rather than for eliciting or receiving legal advice.  About eight of these e-mails arguably fall within the scope of the subpoena and thus should be disclosed. (Entries 14, 39, 40, 41, 45, 47,

---

[9]Among these circumstances is the fact that this whole case was premised on Southeast's effort to obtain the Childs report, which it received very early on.

[10]The Court also concludes that Southeast has failed to show that the privilege should be pierced pursuant to the crime-fraud exception.

48, 49).

There are also documents that are, in essence, cover sheets/memoranda to faxes or e-mails. They principally depict the sender of the message, its recipient, and the time the message was sent. Such material is not privileged. Most of these, because they relay no information, are outside the scope of the subpoena. There are, however, two e-mails that contain a small amount of information in the subject line, and which arguably fall within the scope of the subpoena. (Entries 56, 81).

Finally, there are two e-mails that pertain to scheduling matters and arguably fall within the scope of the subpoena. (Entries 29, 30).

The aforementioned documents must be disclosed.

The Court stresses, however, that this order of disclosure does not vitiate the Court's conclusion that the Town has substantially complied with the subpoena and that Southeast has failed to establish civil contempt. These documents are entirely "too trivial to make out non-compliance," Southeast Floating Docks, Inc. v. Town of Provincetown, 05-2262 (1st Cir. August 8, 2006), particularly in light of the Town's substantial efforts to fulfil its obligations under the subpoena and to accommodate Southeast's pursuit of documents.[11]

3.     The Impounded Documents

Southeast has voiced concerns that the impounded documents that it received pursuant to the Court's disclosure order are not the same as those that were originally submitted to the Court,

---

[11]Substantial compliance would have posed a closer question if the Town had waived the privilege, or if the Court had concluded that a majority of the documents were subject to disclosure. Nevertheless, the Court would have still concluded that the Town had substantially complied even under those circumstances.

but subsequently misplaced prior to that order. The Town has represented that the two sets of documents are the same.[12] In light of this representation, if these two sets of FST and SGH documents are in fact different, one of two things must have occurred: either counsel for the Town is simply mistaken in his representation to the Court that they are the same or Town Counsel engaged in a deeply unethical (and highly risky) bait-and-switch. Both possibilities are wildly implausible.

Southeast also appears to contend that it is not enough that Southeast received the documents in question from SGH and FST — it must also receive a copy of these same documents from the Town's own files. (Docket 54). Any failure to present copies from the Town's files, Southeast suggests, calls into question the Town's representations that it has complied with the subpoena. The Court rejects Southeast's argument. First, the Town has stated that many of the documents at issue were never part of the Town's files in the first place. Second, the documents that were provided to the Court and later disclosed to Southeast came from the Town Counsel, not from SGH or FST. Finally, the Town adopted the SGH and FST privilege logs as its own; turning over copies of the documents satisfies the requirements of the subpoena, whether or not they are the physical copies housed at the Town or those located at the offices of the Town's consultants.

B.    Deposition

The Court has considered Southeast's reasons for seeking a deposition and conclude that they lack merit. Moreover, because the Court has already determined that the Town has

---

[12]In addition, the Town contends that Southeast has received no fewer than three copies of these documents and that Town Counsel extended to Southeast's counsel an invitation to view the original SGH and FST files. (Docket 55).

substantially complied with the subpoena, there is no reason for a deposition. Accordingly, the Court denies Southeast's request to take the deposition of Town employees.[13]

### III.  Conclusion

For the foregoing reasons, Southeast's Motion for Civil Contempt (Docket 16), and its request to take a deposition of Town employees are denied. (Docket 59). The Court orders the Town to disclose the following documents: entries 14, 29, 30, 39, 40, 41, 45, 47, 48, 49, 56, 81.

SO ORDERED.

/s/ Edward F. Harrington
EDWARD F. HARRINGTON
United States Senior District Judge

---

[13]The Court also denies Southeast's request that it order the Town to file the non-privileged attachments to the documents conveyed to the Court for *in camera* review. Southeast already has these attachments (with one exception). Southeast appears to suggest that it has been put in the position of having to "speculate" which attachments pertain to which assertedly privileged documents. The Court believes that Southeast has overstated the matter. The updated privilege log seems to identify the attachments (if any) pertaining to each entry in the log. For example, entry 84 (whose attachment Southeast argues should be turned over) indicates that the attachment in question is a "March 24, 2004 letter of Attorney Rosemary Hayes [Southeast's counsel] to Town Counsel."